**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles CA 90067
T: (310) 277-8481
F: (310) 288-8483
Email: bryan@altmanlawgroup.net

**LAW OFFICES OF WILLIAM I. ROTHBARD**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
INTERMARKETING MEDIA LLC
dba RESORT ADVISORY GROUP,
LAW OFFICES OF DAVID ALAN KLEIN, and
DAVID ALAN KLEIN, ESQUIRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

1

| | |
|---|---|
| 1 | INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP, LAW OFFICES OF DAVID ALAN KLEIN, P.C, a law firm, and DAVID ALAN KLEIN, ESQUIRE, |

INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP, LAW OFFICES OF DAVID ALAN KLEIN, P.C, a law firm, and DAVID ALAN KLEIN, ESQUIRE,

Plaintiffs,

v.

BRENT DAVID BARLOW, an individual; BARLOW & ASSOCIATES, a law firm; COOPERATIVE DISPUTE RESOLUTION SOCIETY (unknown entity type/location); PHOENIX INVESTMENTS ALLIANCE, LLC, a limited liability company; ATTFUND (unknown entity type/location); CASE IN CHIEF LLC, a California Limited Liability Company; and John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley, and Connie Perley, each an individual, collectively ("Consumer Defendants")

and DOES 1-100.

Defendants

No.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**1. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C. 1961-1968)**

**2. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA) (18 U.S.C. 1030)**

**3. THREAT TO INJURE BUSINESS (18 U.S.C. 875(d))**

**4. THREAT TO ACCUSE OF A CRIME BY MAIL (18 U.S.C. 876(d)**

**5. VIOLATION OF DEFEND SECRETS ACT (18 U.S.C 1836(b))**

**(TRADE SECRET MISAPPROPRIATION)**

**6. VIOLATION OF DEFEND SECRETS ACT (18 U.S.C. 1836(b)) (CONSPIRACY TO COMMIT TRADE SECRET MISAPPROPRIATION)**

**7. VIOLATION OF 18 U.S.C. 1951 (HOBBS ACT)**

**8. VIOLATION OF 18 U.S.C. 1957**

**9. VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (PENAL CODE 502)**

**10. VIOLATION OF BUSINESS & PROFESSIONS CODE 17200**

**11. VIOLATION OF CALIFORNIA PENAL CODE SECTION 532**

**(THEFT BY FALSE AND FRAUDULENT REPRESENTATION(S) OR PRETENSE)**

**12. CONVERSION AND**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONSPIRACY TO COMMIT CONVERSION**

**13. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**14. INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**15. FALSE LIGHT**

**16. DEFAMATION - LIBEL**

**17. BREACH OF CONTRACT**

**18. CONSTRUCTIVE FRAUD**

**19. QUANTUM MERUIT**

**20. EMBEZZLEMENT**

**21. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

**22. MISAPPROPRIATION AND MISUSE OF CONFIDENTIAL INFORMATION**

**23. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**

**24. EXTORTION – WRONGFUL THREAT OF CRIMINAL AND CIVIL PROSECUTION**

**25. ABUSE OF PROCESS**

**26. WRONGFUL USE OF CIVIL PROCEEDINGS**

**27. CONSTRUCTIVE TRUST**

**28. FRAUD AND CONSPIRACY TO DEFRAUD**

**29. BREACH OF FIDUCIARY DUTY**

**30. LEGAL MALPRACTICE**

**31. LEGAL MALPRACTICE: ACTIVE CONCEALMENT /CONFLICT OF INTEREST**

**32. MONEY HAD AND RECEIVED**

**33. INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

<u>**INTRODUCTION**</u>

<u>**JURISDICTION AND VENUE**</u>

1.    The federal jurisdiction of this action is based upon alleged violations of 18 U.S.C. §§ 1961–1968, 18 U.S.C. §1341, 18 U.S.C. §1343, 18 U.S.C. §1030, 18 U.S.C. §1832, 18 U.S.C. §1951, 18 U.S.C. §1957, and 18 U.S.C. 875(d), and 18 U.S.C. 876(d).

2.    This Court has diversity jurisdiction over these actions pursuant to 28 U.S.C 1332(d)(2)(A) because Plaintiffs and Defendants are citizens of different states.

3.    This Court has subject matter jurisdiction over claims arising under 18 U.S.C. §§ 1961–1968, 18 U.S.C. §1341, 18 U.S.C. §1343, 18 U.S.C. §1030, 18 U.S.C. §1832, 18 U.S.C. §1951, 18 U.S.C. §1957, 18 U.S.C. 875(d), and 18 U.S.C. 876(d).

4.    Plaintiff Intermarketing Media LLC is a foreign limited liability company formed on October 23, 2011 under the laws of Wyoming, doing business in California as Resort Advisory Group ("Resort Advisory Group" or "ResortAG").

5.  Plaintiff, Law Offices of David Alan Klein, P.C. is a professional corporation with a business address of Ten Grove Street, Haddonfield, New Jersey.

6.  Plaintiff, David Alan Klein, Esquire, is an attorney licensed to practice law in the Commonwealth of Pennsylvania and State of New Jersey with a business address of Ten Grove Street, Haddonfield, New Jersey (collectively, Klein and his law offices are referred to herein as "Attorney").

7.  Defendant Brent David Barlow ("Barlow") is an individual domiciled in California.

8.  Defendant Barlow & Associates is a law firm operating in California, New York and Washington D.C., believed to be wholly owned by Defendant Barlow.

9.  Defendant Cooperative Dispute Resolution Society is believed to be a "private association" wholly owned and/or controlled by Defendant Barlow and working with Defendants Barlow and Barlow & Associates in their scheme to unfairly compete with, defame and extort Plaintiffs.

10.  Defendant Phoenix Investments Alliance, LLC, is a limited liability company believed to be a designee of Defendant Cooperative Dispute Resolution Society, wholly owned and/or controlled by Defendant Barlow, and the purported assignee of all rights, title and interest to all claims of Defendants in this action collectively referred to as the "Barlow 10," as described in more detail below.

11.  Defendant Case in Chief LLC is a California limited liability company engaged in litigation strategy and support to the public and is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

12.  Defendant ATT Fund ("ATT Fund") is currently an unknown entity type believed to be doing business in California and other states for the purposes of funding individual trial litigation. ATT Fund is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

13.  Defendants John Pressney and Pamela Pressney, husband and wife, are

former clients of Plaintiff, residents of California, and plaintiffs in a civil action filed against Plaintiff in the Superior Court of Orange County, California.

14.     Herman Abel and Debora Abel, husband and wife, are former clients of Plaintiff and residents of California.

15.     Morris Hannah and Virginia Hannah, husband and wife, are former clients of Plaintiff and residents of Tennessee.

16.     Lee Harris Turk is a former client of Plaintiff and a resident of Mississippi.

17.     Bernardo and Carol Bettinelli, husband and wife, are former clients of Plaintiff and residents of Massachusetts.

18.     Lari Castle is a former client of Plaintiff and a resident of California.

19.     Gilbert and Eva Castro, husband and wife, are former clients of Plaintiff and residents of California.

20.     Paul and Renee Martinez, husband and wife, are former clients of Plaintiff and residents of Colorado.

21.     Robert and Mary Zimmerman, husband and wife, are former clients of Plaintiff and residents of Wisconsin.

22.     Glenn Perley and Connie Perley, husband and wife, are former clients of Plaintiff and residents of Michigan.

23.     This Court has personal jurisdiction over Defendant Barlow because he is domiciled in Los Angeles County, California and practices law in this state as a California licensed attorney. Defendant Barlow & Associates is a law firm doing business in Los Angeles County at 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant Case in Chief LLC's registered address with the Secretary of State is 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant ATTFund, upon information and belief, is doing business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. Defendant Cooperative Dispute Resolution Society, upon information and belief, is doing

business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. Defendant Phoenix Investments Alliance, LLC, upon information and belief, is doing business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. Defendants Barlow, Barlow & Associates, Case in Chief LLC and ATTFund, Cooperative Dispute Resolution Society, and Phoenix Investments Alliance, LLC, shall be referred to collectively herein as the "Barlow Defendants."

24.     This Court has personal jurisdiction over:

    a.     Defendants **John and Pamela Pressney** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a civil lawsuit against plaintiff in Orange County, which is located within this District, and a criminal complaint against Plaintiffs with the District Attorney for Orange County;

    b.     **Herman and Debora Abel** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

    c.     **Morris and Virginia Hannah** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney

for Orange County;

d.      **Lee Harris Turk** because he has done business with Plaintiff Resort Advisory Group which is domiciled in this District, is doing business with the Barlow Defendants, who are domiciled in this District, and is purposefully availing himself of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

e.      **Bernardo and Carol Bettinelli** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

f.      **Lari Castle** because she resides in California, has done business with Plaintiff Resort Advisory Group which is domiciled in this District, is doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, is purposefully availing herself of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

g.      **Bernardo and Carol Bettinelli** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

h.      **Gilbert and Eva Castro** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in

this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed, or threatened to file, a criminal complaint against Plaintiffs with the District Attorney for Orange County or other law enforcement authority in this District;

i.   **Paul and Renee Martinez** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed,  a criminal complaint against Plaintiffs with the District Attorney for Orange County;

j.   **Robert and Mary Zimmerman** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are, on information and belief, purposefully availing themselves of the privileges and amenities of this District by having filed, or threatened to file, a criminal complaint against Plaintiffs with the District Attorney for Orange County or other law enforcement authority in this District.

k.   **Glen and Connie Perley** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are, purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County.

l.   Defendants named in Paragraph 24 (a)-(k) shall be referred to collectively herein as the "Barlow 10".

**VENUE**

25.   Venue is proper in this Court pursuant to 28 U.S.C Section 1391 because Defendant Barlow's address registered with the California Bar Association is listed

as 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. This address is

within the boundaries of Los Angeles County and within the geographical

jurisdiction of the U.S District Court for the Central District of California.

Defendant Barlow & Associates shares the same registered address. Defendant

Case in Chief LLC shares the same address registered with the California Secretary

of State website. Defendant ATT Fund, upon information and belief, shares the

same address. Defendant Cooperative Resolution Society, upon information and

belief, shares same address. Defendant Phoenix Investments Alliance, LLC,

upon information and belief, shares the same address. Venue is also proper because

Plaintiff's principal place of business is located in Mission Viejo, California, and

within this District.

26.    The Barlow Defendants have additionally purposefully availed themselves of

the privileges and amenities of this district by, including but not limited to,

operating a law practice known as Barlow & Associates within the venue, soliciting

customers and business from residents in the venue, and maintaining a website fully

available to customers in the district.

27.    The Barlow 10 Defendants have additionally purposefully availed themselves

of the privileges and amenities of this district by doing business with Plaintiff

Resort Advisory Group and the Barlow Defendants, many of whom are domiciled

in this District, and by having filed, or threatened to file, civil and/or criminal

complaints within the state judicial system within this District.

28.     Plaintiffs have sustained damages in excess of $75,000.

## **TIMELINESS**

29.    This action is timely filed within the applicable statutes of limitation, which

is 10 years from the date of the most recent ancillary Racketeering Influenced and

Corrupt Organization Act ("RICO") violation under 18 USC §§ 1961(5).

30.    This action is timely filed within the applicable statutes of limitation, which

is two (2) years from the date of discovery of the unauthorized access of a protected

computer under the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C §1030 *et. seq.*

31.    This action is timely filed within the applicable statutes of limitation, which is three (3) years from the date of discovery or the date it reasonably should have been discovered that trade secrets have been misappropriated under the Defend Secrets Act, 18 U.S.C. §1836(d).

32.    This action is timely filed within the applicable statutes of limitation, which is 3 from the date of discovery of the theft or misappropriation of trade secrets, 18 U.S.C. §§1832, 1836(d).

33.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of interference with commerce by threats or violence, 18 U.S.C. §1951.

34.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of engaging in monetary transactions with the proceeds of criminal activity, 18 U.S.C. §1957.

35.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of interstate communication to threaten the business of the Plaintiff with the intent to extort, 18 U.S.C. §875(d).

36.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of mailing threats to harm the business reputation of Plaintiff,18 U.S.C. §876(d).

37.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of California Penal Code 502.

38.    This action is timely filed within the applicable statutes of limitation, which is (4) years from the date of violation of California Unfair Competition Law, B.P.C. 17200.

39.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of California Penal Code 532.

40.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of acts comprising conversion in California.

41.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of intentional interference with contractual relations in California.

42.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of intentional interference with prospective economic relations in California.

43.    This action is timely filed within the applicable statutes of limitation, which is (1) years from the date of violation of false light in California.

44.    This action is timely filed within the applicable statutes of limitation, which is (1) years from the date of violation of Defamation – Libel in California.

45.    This action is timely filed within the applicable statutes of limitation, which is (4) years from the date of violation of Breach of Contract in California

46.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of Constructive Fraud in California.

47.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of Embezzlement in California.

48.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of Breach of Covenant of Good Faith and Fair Dealing in California.

49.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of Misappropriation and Misuse of Confidential Information in California

50.    This action is timely filed within the applicable statutes of limitation, which is (4) years from the date of violation of Breach of Fiduciary Duty and Loyalty in California.

51.    This action is timely filed within the applicable statutes of limitation, which

is (2) years from the date of violation of Extortion – Wrongful Threat of Criminal and Civil Prosecution in California.

52.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of Abuse of Process in California.

53.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of Abuse of Civil Proceedings in California.

54.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of violation of actions giving rise to a claim of Constructive Trust in California.

55.    This action is timely filed within the applicable statutes of limitation, which is (3) years from the date of violation of Fraud and Conspiracy to Defraud in California.

56.    This action is timely filed within the applicable statutes of limitation, which is (1) years after the date of injury due to attorney malpractice.

57.    This action is timely filed within the applicable statutes of limitation, which is (2) years from the date of discovery of a quantum meruit claim pursuant to California Code of Civil Procedure Section 339.

58.    This action is timely filed within the applicable statute of limitation, which is (2) years from the date of discovery of a loss due to money had and received.

## **SUPPLEMENTAL JURISDICTION**

59.    The Judicial District of the United States District Court of the Central District of California has supplemental jurisdiction over the state law claims as alleged in this complaint pursuant to 28 U.S.C §1367(a). The reason supplemental jurisdiction is proper in this action is because all the claims derived from federal law and those arising under state law, as herein, arose from a common nucleus of operative facts and arose out of the same transactions.

60.    The common nucleus of operative facts and the subject transactions includes, but is not limited to, incidents where the Barlow Defendants knowingly and purposefully devised a scheme to access Plaintiff Resort Advisory Group's proprietary trade secrets and private client database without authorization, further took dominion and control over this illegally accessed information and then misappropriated Plaintiff Resort Advisory Group's proprietary trade secrets and client database for Defendants' sole benefit, including circumventing and competing with Plaintiff Resort Advisory Group in violation of Barlow Defendants' contractual, fiduciary, and ethical duties to Plaintiff Resort Advisory Group. Barlow Defendants also knowingly and purposefully engaged in a systematic course of conduct of defamation of Plaintiffs to the public and Plaintiff's Resort Advisory Group's clients , and in concert with the Barlow 10, engaged in a pattern of abuse of the civil and criminal justice systems, all for the purpose of attempting to extort a large sum of money from Plaintiffs, amongst other related claims, in violation of both federal and state laws. Based upon these allegations, the state law claims, as stated herein are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

## PARTIES

### I.    PLAINTIFFS

61.    Plaintiff Resort Advisory Group is a timeshare resolution company, with its principal place of business at 27201 Puerta Real #300, Mission Viejo, CA 92691. As a timeshare resolution company, it assists individuals who have been misled into entering timeshare contracts with timeshare developers and wish to cancel and withdraw from their contracts. Plaintiff provides timeshare resolution services both directly and indirectly, through attorneys retained by it and to whom it refers timeshare purchasers who have met its qualifications for assistance in cancelling

and withdrawing from their timeshare contracts.  Those attorneys have included Defendants Brent David Barlow and Barlow and Associates.

62.    Plaintiff, David Alan Klein, Esquire ("Attorney"), is an attorney licensed to practice law in the Commonwealth of Pennsylvania and State of New Jersey with a business address of Ten Grove Street, Haddonfield, New Jersey, 08033, and the principal attorney in the Law Offices of David Alan Klein, P.C.  Although Attorney has advised Plaintiff, Resort Advisory Group on various general legal matters, including, as it relates to this Complaint, the impropriety of Defendant Barlow's actions and conduct during Barlow's tenure as Plaintiff Resort Advisory Group's primary timeshare resolution attorney, unlike Defendant Barlow, neither Attorney David Alan Klein nor his law firm has ever provided timeshare resolution legal services or any other legal representation to any of Plaintiff Resort Advisory Group's current or former clients, including the Barlow 10.[1]

## II.    DEFENDANTS

63.    Defendant **Brent David Barlow** is an individual domiciled in California and an attorney licensed to practice law in California, Bar Number 168645.  From on or about January 17, 2017 to August-September of 2018, Defendant Barlow was retained by Plaintiff Resort Advisory Group as its "personal counsel" to provide legal services to clients of Plaintiff Resort Advisory Group to assist them in cancelling and withdrawing from their timeshare contracts.  Defendant Barlow was terminated by Plaintiff Resort Advisory Group for cause in August-September 2018, including for breach of contract and fiduciary duty to Plaintiff Resort Advisory Group through his surreptitious solicitation of Resort Advisory Group's clients and competition with Plaintiff Resort Advisory Group in the provision of

---

[1] Individual Defendants admit in their baseless claims against Attorney Klein that there was no representation of any of the defendants herein.

timeshare resolution services to those clients. Thereafter, he embarked upon, and is continuing to perpetrate, a pattern of racketeering and related offenses against Plaintiff Resort Advisory Group for the purpose of harming Plaintiffs' reputation, harming their business, and extorting Plaintiffs.

64.    Defendant **Barlow & Associates** is a law firm operating in California, New York and Washington D.C., believed to be wholly owned by Defendant Barlow, with its principal office at 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant Barlow has carried out his pattern of racketeering and related offenses against Plaintiffs through his firm, Barlow & Associates.

65.    Defendant **Case in Chief LLC** is a California limited liability company engaged in litigation strategy and support to the public and is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

66.    Defendant **ATT Fund** ("ATT Fund") is currently an unknown entity type believed to be doing business in California and other states for the purposes of funding individual trial litigation. ATT Fund is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

67.    Defendant **Cooperative Dispute Resolution Society** is believed to be a "private association" doing business in California and other states for the purpose of working with Defendants Barlow and Barlow & Associates and providing a front in their scheme to unfairly compete with, defame and extort Plaintiff, Resort Advisory Group and to defame Plaintiff Attorney David Klein and his law firm. Cooperative Dispute Resolution Society is believed to be wholly or partially owned and/or controlled by Defendants Barlow and Barlow & Associates.

68.    Defendant **Phoenix Investments Alliance, LLC,** is believed to be a designee of Cooperative Dispute Resolution Society, doing business in California and other

states for the purpose of working with the other Barlow Defendants and the Barlow 10 in a collective scheme to defame and extort and defame Plaintiff Resort Advisory Group and Plaintiff Attorney David Klein and his law firm.

69.    Defendants **John and Pamela Pressney** reside at 2224 Canyon View Road, Fallbrook, California 92028.  They were clients of Plaintiff Resort Advisory Group from on or about May 18, 2018, to  in, about, or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including frivolously suing Plaintiff Resort Advisory Group and filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

70.    Defendants **Herman and Debora Abel** reside at 64 Montego Key, Novato, California 94949.  They were clients of Plaintiff Resort Advisory Group from on or about July 3, 2018,  to in, about or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

71.    Defendants **Morris and Virginia Hannah** reside at 4356 Hannah Ford Road, Pegram, Tennessee 37143.  They were clients of Plaintiff Resort Advisory Group from on or about January 19, 2017, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

72.    Defendant **Lee Harris Turk** resides at 303 North Pearl Street, Natchez,

Mississippi 39120.  He was a client of Plaintiff Resort Advisory Group from on or about December 29, 2017, to about or some time on or after August-September 2018, at which time, at the inducement of Barlow, he became an active participant in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

73.    Defendants **Bernardo and Carol Bettinelli** reside at 78 Pratts Court, Stoughton, Massachusetts  02072.  They were clients of Plaintiff Resort Advisory Group from or about July 30, 2017 to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

74.    Defendant **Lari Castle** resides at 7559 Gibraltar Street, Unit 16, Carlsbad, California  92009.  She was a client of Plaintiff Resort Advisory Group from on or about March 7, 2018, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, she became an active participant in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

75.    Defendants **Gilbert and Eva Castro** reside at 2373 Mather Drive, Manteca, California  95337.  They were clients of Plaintiff, Resort Advisory Group from on or about August 29, 2016 to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with

federal and state law enforcement authorities.

76.    Defendants **Paul and Renee Martinez** reside at 15 Queensbridge Drive, Pueblo, Colorado  81001.  They were clients of Plaintiff Resort Advisory Group from on or about November 21, 2017,  to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

77.    Defendants **Robert and Mary Zimmerman** reside at 492 Windwood Circle, Edgerton, Wisconsin  53534.  They were clients of Plaintiff Resort Advisory Group from on or about March 24, 2016, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

78.    Defendants **Glenn and Connie Perley** reside at 5786 South Saddler Road, Chase, Michigan  49623. They were clients of Plaintiff Resort Advisory Group from on or about June 19, 2017,  to in, about or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

# **CIVIL CONSPIRACY**

79.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, had knowledge of the unlawful conduct alleged herein.

80.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, agreed to the unlawful conduct alleged herein.

81.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, acted with a common purpose and participated in the unlawful conduct as alleged herein.

82.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, consented to the unlawful conduct alleged herein.

83.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, authorized the unlawful conduct alleged herein.

84.    PLAINTIFFS believe and thereon allege that DEFENDANTS, and each of them, ratified the unlawful conduct alleged herein.

85.    PLAINTIFFS believe and thereon allege that no individual DEFENDANT was punished for the unlawful conduct alleged herein.

86.    PLAINTIFFS believe and thereon allege that the individual DEFENDANTS may have participated in the unlawful conduct described herein for personal gain.

87.    California law states "Conspiracy" simply means that the individual DEFENDANTS had knowledge of, participated in, and/or ratified the unlawful conduct described herein. As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on *all* of them, regardless of whether they actually commit the tort themselves… The effect of charging … conspiratorial conduct is to implicate all… who agree to the plan to commit the wrong as well as those who actually carry it out.[2]

---

[2] (Wyatt v. Union Mortgage Company (1979) 24 Cal. 3d 773, 784.)

# FACTUAL BACKGROUND

## Plaintiff Resort Advisory Group's Business

88.    Plaintiff Resort Advisory Group's offers its timeshare resolution services in interstate commerce to consumers who have entered into timeshare contracts which they wish to cancel and withdraw from.  It accepts only consumers who have a credible claim that they have been the victim of deception by a timeshare developer, such as a false promise that the consumer will be able to rent the unit or receive a buyback offer from the developer if there is a significant increase in the value of the property.  Because abuse in the timeshare industry is unfortunately common, there is demand for Plaintiff Resort Advisory Group's services, which can provide an important and valuable benefit to timeshare purchasers who contact it for help.

89.    Timeshare purchasers who credibly appear to have been victimized by a timeshare developer and are qualified and accepted as a suitable client are referred to an attorney on retainer with Plaintiff Resort Advisory Group who will then provide legal representation to the client to help it attempt to cancel and withdraw from the timeshare contract. For its service of qualifying the consumer and making a legal referral, Plaintiff Resort Advisory Group charges the consumer a fee, one that is considerably below that charged by some of Plaintiff Resort Advisory Group's competitors.

90.    Plaintiff Resort Advisory Group has an A+ rating with the Better Business. A true and correct copy of its BBB A+ rating is attached as Exhibit 1.

## Plaintiff Resort Advisory Group's Attorney-Client Relationship with Barlow

91.    On or about January 17, 2017, Plaintiff Resort Advisory Group retained Defendant Barlow to provide legal services to the company.  A true and correct copy of the retainer agreement is attached as Exhibit 2.

92.    The retainer agreement ("Retainer") provided that Barlow was to:

> "serve as personal counsel for Client [ResortAG] with respect to any legal advice and services which may need to be rendered in relation to client's business, specifically; assistance with Clients customers in their efforts to withdraw from and/or cancel timeshare contracts with various developers and to assist those Clients customers in obtaining refunds if and when possible. Firm [Barlow] agrees to work exclusively with Resort Advisory Group, LLC on matters pertaining to timeshare cancellation services. Firm will ensure such Services are properly performed and in compliance with any and all applicable rules and regulations."

Exhibit 2, Section III.  For his services, Barlow was paid a set fee upon each referral from Plaintiff Resort Advisory Group of a qualified client in need of timeshare resolution services as set forth in Section III of the retainer agreement. Notwithstanding the contractual term of a flat fee per referral, over time, this arrangement morphed into a weekly payment of $4,000 or more to Barlow to provide timeshare resolution services to clients referred to him by Plaintiff, Resort Advisory Group.  Barlow has acknowledged this "preexisting attorney/client relationship" between him and Plaintiff, Resort Advisory Group.

93.    In addition to his Retainer to serve as "personal counsel" to Plaintiff Resort Advisory Group, Barlow also had written representation agreements with clients referred to him from Plaintiff Resort Advisory Group.  A true and correct copy of a representative agreement between Barlow and referred clients is attached as Exhibit 3.

94.    Over the course of the attorney-client relationship between Plaintiff Resort Advisory Group and Barlow, Plaintiff referred approximately 235 clients to Barlow and paid him close to $300,000.00.

**Barlow's Access to Trade Secrets of Resort Advisory Group**

95.    The Retainer contained this confidentiality/non-circumvention/non-compete clause:

> All information disclosed by either party hereunder ("Confidential Information"), including any information concerning an Approved Prospect, shall always be treated as confidential by each party during the term of this Agreement and thereafter and shall not be disclosed to any third party without the prior written consent of both parties. Neither party shall use any of the Confidential Information except in the performance of its duties hereunder. All Confidential Information provided to either party shall be returned to the disclosing party immediately upon termination of this Agreement. The parties further agree that neither party shall use the Confidential Information disclosed by the other party to compete with the disclosing party or circumvent the business of the disclosing party.

Exhibit 2, Section V.  Pursuant to this contractual promise by Barlow to protect the confidential and proprietary information of Plaintiff,  Resort Advisory Group, and not to use it to circumvent or compete with its business, Plaintiff Resort Advisory Group gave Barlow, and Barlow had, authorized  access to the company's Customer Relationship Management ("CRM") software system (a computerized client data base), including proprietary data related to an assigned client's income, debt, credit rating, the amount paid and/or still owed to Plaintiff Resort Advisory Group Plaintiff Resort Advisory Group's agreements with the assigned clients, and client-timeshare developer agreements; in short, essentially an entire picture of clients' finances, contractual obligations, and relationship with Plaintiff.  He also necessarily had access to all confidential, proprietary and highly valuable aspects of ResortAG's business model, including, for example, its marketing, sales, and client case evaluation methodologies and pricing structures (collectively, "Business Knowhow").  As counsel to ResortAG, with access to its confidential information

and proprietary internal business operations and strategies, Barlow was in a position to learn practically everything there is to know about how ResortAG conducts its timeshare resolution service.

96.    ResortAG's client database and the method of synthesizing its clients' circumstances surrounding their timeshare purchases are its most valuable assets. As a consumer service business, it lives and dies by the acquisition, expansion, maintenance and security protection of its clientele, methodologies and consumer goodwill. Plaintiff Resort Advisory Group acquires customers through extensive advertising and marketing, into which it has invested millions of dollars.  It does not accept any consumer as a client but only ones who can credibly claim to have been victimized by an unscrupulous timeshare developer.  To identify and qualify such consumers, Plaintiff Resort Advisory Group invests heavily in a staff of dozens of sales and intake representatives, who take the consumer through a thorough vetting process. Once those consumers have been approved to become clients, it relies on a customer service staff to provide ongoing timeshare resolution assistance to them, including monitoring of their cases with our attorneys and offering advice regarding their interactions with their timeshare developer as they seek to cancel and withdraw from their contracts.  The investment Plaintiff Resort Advisory Group makes in the acquisition, growth, maintenance and servicing of its clients represents the lion's share of our budget.

97.    Because its clients and business methodologies are its most vital assets, Plaintiff Resort Advisory Group is vigilant about protecting the client database in its CRM and the sensitive confidential client information it contains, and its confidential and proprietary business methodologies and strategies contained in its computers and other files.   Security measures include password protection, a login provided and needed from the program administrator, and access tracking.  These measures are intended not only to protect the personal privacy of its clients, but to

protect Plaintiff Resort Advisory Group's client database from access by third

parties who would stand to benefit economically from that access and use of the

information. This includes would be competitors. Since the attorneys who Plaintiff

Resort Advisory Group hires to assist in providing timeshare resolution services

are, theoretically, potential competitors, yet still need access to the client database

to do their jobs, Plaintiff Resort Advisory Group includes confidentiality, non-

circumvention and non-compete clauses in our attorney retainer agreements (like

the one in Defendant Barlow's cited above), prohibiting an attorney from using

access to the client database for any purpose other than in the performance of his

duties as an attorney for Plaintiff Resort Advisory Group's clients.

## Plaintiff, Resort Advisory Group's Termination of Barlow

98.    In or about August-September 2018, Plaintiff Resort Advisory Group

terminated its attorney-client relationship with Barlow and his law firm for cause.

Plaintiff Resort Advisory Group had begun to hear from clients it had referred to

Barlow that he was failing to respond to their telephone calls and emails and to act

on their behalf to provide timeshare resolution services, as required by the Retainer,

and as for which he had been paid by Plaintiff Resort Advisory Group. From other

clients Plaintiff Resort Advisory Group was hearing not only that Barlow had

ceased to provide representation to them on Resort Advisory Group's behalf but

was encouraging them to consider alternative means of timeshare resolution

representation. He also was failing to respond to Plaintiff Resort Advisory Group's

telephone calls, emails, and correspondence about its clients' concerns about his

cessation of service and mention of an "alternative" solution to their problems.

Although the foregoing was more than sufficient grounds to terminate Barlow and

Barlow and Associates, Barlow is aware that, in addition to the foregoing, Attorney

Klein made ResortAG aware of concerns that Barlow was engaging in the
unlicensed practice of law in states other than California.

## Barlow's Post-Termination Ongoing Vendetta Against Plaintiffs

99.    Following his termination, and continuing to this day, Barlow has been
engaged in a ceaseless and unlawful campaign of unfair competition, interference
with Plaintiff Resort Advisory Group's business and clients, and disparagement,
extortion and defamation of Plaintiffs, all in blatant violation of his contractual and
fiduciary obligations as counsel to Plaintiff Resort Advisory Group and to
Plaintiffs' great detriment.  His bitter and damaging vendetta against Plaintiffs
includes the following:

### Unauthorized Access to and Use of Trade Secrets from Plaintiff's CRM

98.    As stated above, Barlow had authorized access to Plaintiff Resort Advisory
Group's confidential client database in its CRM and its Business Knowhow.  When
he was terminated, his authorization to access and use data from the CRM was also
terminated.  Nevertheless, after being terminated, and in contravention of his
contractual and fiduciary duty to use Plaintiff, Resort Advisory Group's
confidential information only in [his] duties under the Retainer, and not to use it to
"compete with…or circumvent the business" of Plaintiff Resort Advisory Group
Barlow, without authorization,  took full advantage of the confidential client
information he had been able to access prior to his termination.  In a brazen conflict
of interest, he used that information to which he no longer had authorized access to
go into competition with Plaintiff Resort Advisory Group in the timeshare
resolution business.

### Barlow's Competition with Plaintiff Resort Advisory Group

99.    Taking full advantage of this unauthorized access to confidential and
proprietary client data in Plaintiff, Resort Advisory Group's CRM, and to its
Business Knowhow, Barlow used these assets of Plaintiff Resort Advisory Group in

violation of his contractual and fiduciary duties to Plaintiff Resort Advisory Group
to target certain of its clients, and began independently to offer and provide
timeshare resolution services to them, re-charging them for the same or similar
services for which he had already been paid by Plaintiff Resort Advisory Group and
for which they had already paid Plaintiff, Resort Advisory Group.  In unsolicited
letters he sent to Plaintiff, Resort Advisory Group's clients, he was using his
influence, which he had gained only in his capacity as counsel to Plaintiff Resort
Advisory Group to steer them away from a timeshare "exit" company such as
Plaintiff Resort Advisory Group and toward an alternative means of timeshare
resolution representation from a purported "consumer advocacy" organization - by
the name of the Cooperative Dispute Resolution Society ("CDRS"), which he
termed a "private association."  He claimed to Plaintiff, Resort Advisory Group's
clients that CDRS will "singlehandedly destroy the timeshare industry" and that
"CDRS guarantees the timeshare customers who they agree to work with will get
back, ***minimally***, every single cent they mistakenly gave the timeshare developer."
(Emphasis in original.) CDRS's impact on the timeshare companies, he wrote, is
"absolutely devastating and eclipses any 'promise' made by a so-called 'exit'
company," like Plaintiff, Resort Advisory Group.  Pressuring them to jump at the
opportunity, he stressed to Plaintiff, Resort Advisory Group's clients that "You
should be aware that CDRS is limiting the number of new timeshare customers they
are willing to assist.  They are certain that, due to their efforts, the timeshare
industry will be no more in the near future."  True and correct copies of
representative examples of these improper solicitations of Plaintiff's clients by
Barlow is attached as Exhibit 4.  At a "shakedown" meeting with Plaintiff Resort
Advisory Group on March 2, 2020, Barlow admitted that he sent such solicitations
to "select clients" of the company and referred at least 52 who responded to this
purported organization.

100.  An Internet search of Cooperative Dispute Resolution Society" reveals no such organization, consistent with Barlow's representations to Plaintiff Resort Advisory Group that there are "no corporate filings or whatever" for this supposed entity.  On information and belief, Plaintiffs alleges that the so-called CDRS is a phantom organization, invented by Barlow to lure away and be able to re-charge clients of Plaintiff Resort Advisory Group for the timeshare resolution services for which he had already been paid by Plaintiff, Resort Advisory Group.  Indeed, he has admitted charging defendants Herman and Debora Abel $5,000 for resolution services for which he had already been paid by Plaintiff, Resort Advisory Group, and that he had similarly offered his services to other Plaintiff clients for an additional charge.

### Barlow's Defamatory Interference with Plaintiff Resort Advisory Group's Business and Clients

101.  Using his unauthorized access to Plaintiff, Resort Advisory Group's confidential and proprietary client database and Business Knowhow, Barlow has sent, and is continuing to send, unsolicited letters to Plaintiff, Resort Advisory Group's clients that contain disparaging falsehoods and misrepresentations about Plaintiffs.  He also is disparaging Plaintiff, Resort Advisory Group in social media. True and correct copies of such false and disparaging posts about Plaintiff on Facebook and Yelp are attached as Exhibit 5 hereto.

### Barlow's Malicious Turning of Plaintiff, Resort Advisory Group's Clients Against Them

102.   Barlow not only has used his unauthorized access to confidential and proprietary client information in the CRM to compete unfairly and disparage Plaintiffs to Resort Advisory Group's clients, he has actively and effectively worked to turn numerous clients against Plaintiff, Resort Advisory Group and to enlist them in his vendetta against Plaintiffs.  These consumers include the Barlow

10 Defendants. With Barlow's active encouragement, two of these individuals, John and Pamela Pressney, have even gone so far as to sue Plaintiff, Resort Advisory Group - frivolously. Barlow used his position and authority as an attorney, and the reputation and expected honesty of his law firm, Barlow & Associates, to recruit and manipulate the Barlow 10 into becoming willing participants and co-conspirators in his illicit scheme.

**Barlow's and His Co-Conspirators' Criminal Complaints Re Plaintiffs**

103.  With Barlow's active encouragement, the Pressney Defendants not only have filed a civil action against Plaintiff, Resort Advisory Group, they have gone to the ultimate extreme of lodging criminal complaints against Plaintiffs with multiple law enforcement agencies, on the baseless ground that BBB A+ rated Plaintiff Resort Advisory Group and additional Plaintiffs defraud consumers in providing timeshare resolution services because it knows or should know that the timeshare contracts its clients entered into are inherently voidable and thus unenforceable.[3]  According to this circular logic, because the contracts are purportedly unenforceable and voidable, consumer victims need no help in voiding and cancelling them; the contracts, and developers' efforts to enforce them, are magically "self-voiding" and "self-cancelling."

104.  But the Pressneys are not Plaintiff, Resort Advisory Group's only former clients making such ridiculous claims to the criminal authorities, spurred on by Barlow.  Other members of the Barlow 10 Defendants – the Abels, Hannahs, and Lee Turk - also have filed criminal complaints similar to the Pressneys' and virtually identical to one another against Plaintiffs.[4]  As each party's complaints are

---

[3] They lodged criminal complaints with, respectively, the San Diego County District Attorney on or about December 27, 2019, the United States District Attorney for the Southern District of California on December 27, 2019, and the Orange County District Attorney on January 8, 2020.
[4] Herman and Debora Abel filed complaints with, respectively, the San Diego County District Attorney on March 4, 2020, the Orange County District Attorney on March 4, 2020, and the U.S. Attorney for the Southern District of California on March 4, 2020. Morris and Virginia Hannah

essentially identical to one another, and to the others, a true and correct representative copy of the complaints each submitted to the above-named law enforcement offices is attached as Exhibit 6.  And Barlow has continued to threaten more of them against Plaintiffs, as evidenced in attached Exhibit 7, which contains true and correct copies of emails from Barlow (in which he also provides a link to 33 already filed criminal complaints, including the 12 aforementioned criminal complaints and additional ones filed by the Bettinelli, Martinez, Perley and Castle Defendants), and in statements he made to Plaintiff at a meeting on March 2, 2020 (see Paragraph 114 herein).

105.  Most recently, in emails from Barlow to clients of ResortAG dated May 5, 2020 ( true and correct copies of which are also contained in Exhibit 7), which the clients immediately forwarded to ResortAG, Barlow continues his campaign of disparagement against ResortAG and Attorney Klein, references the criminal charges filed against ResortAG by former clients he has turned against the company, and discloses that the number of criminal complaints filed against ResortAG with federal and state law enforcement authorities is now 33, including ones now also filed by Defendant Castle and the Bettinelli, Martinez and Perley Defendants. The email provides a link to all the criminal complaints against Resort AG as well as criminal complaints and bar association complaints filed against one of its attorneys, Plaintiff David Klein, who does not even provide timeshare resolution legal services on behalf of ResortAG and whom individual defendants acknowledge in these baseless claims **never** represented them.

## Barlow's Infliction of Damage on Resort Advisory Group

filed complaints with, respectively, the San Diego County District Attorney on or about March 18, 2020, the Orange County District Attorney on or about March 18, 2020, and the U.S. Attorney for the Southern District of California on or about March 18, 2020; and Lee Harris Turk filed complaints with, respectively, the San Diego County District Attorney on or about March 17, 2020, the Orange County District Attorney on or about March 17, 2020, and the U.S. Attorney for the Southern District of California on or about March 17, 2020.

106.   To provide timeshare resolution representation to clients who Barlow abandoned, as well as to qualified new clients, Plaintiff Resort Advisory Group has had to hire replacement attorneys, at an estimated cost of $100,000. Additionally, Plaintiff Resort Advisory Group has had to expend substantial time and valuable resources engaging in "damage control" with its clients, correcting the falsehoods and misrepresentations contained in Barlow's communications with them.  In addition to other damages, Plaintiff Resort Advisory Group has lost a significant number of clients due to these intentionally inflammatory and disparaging communications.

107.   In addition to Barlow's defamatory communications with Plaintiff Resort Advisory Groups' clients, he has recently made defamatory statements about Plaintiff Resort Advisory Group in social media.  (See Exhibit 5.)

108.   The damage to Plaintiff Resort Advisory Group's business and reputation from Barlow's misappropriation and misuse of its confidential and proprietary client information, unfair competition, tortious interference with Plaintiff Resort Advisory Group's clients and business, inducement of clients to turn against Plaintiff Resort Advisory Group (even to the extent of suing it and lodging criminal complaints), and disparagement of Plaintiff Resort Advisory Group to its clients and to the world through social media, is presently incalculable and irreparable.

## Barlow's Defamation of and Infliction of Damage on Attorney and Attorney's Law Firm

109.  As set forth above, Barlow and Barlow and Associates intentionally and purposefully, in furtherance of the conspiracy to damage Plaintiffs and Attorney, and extort monies therefrom, induced individual defendants to file false and baseless criminal and bar complaints against said Plaintiffs.

110.  Notwithstanding the foregoing, and the fact that individual defendants acknowledge in these baseless claims that Attorney **never** represented them, these

multiple complaints, nevertheless, have damaged and irreparably harmed said Plaintiffs and are threatening additional unlawful, false and defamatory claims if Defendants' extortion claims are not met.

## Barlow's and the Barlow 10's Attempted Extortion of Plaintiffs

111.  Barlow is using his campaign of unfair competition, vexatious litigation, baseless criminal and state bar complaints, deception, disparagement, and association with a shadowy, and most likely illusory, "consumer advocacy" group - all in an astonishingly flagrant breach of his fiduciary duties to Plaintiff - to extort a payment of over $800,000 from Plaintiffs for himself and the Barlow 10 as the "price" for ending his and their vicious conspiratorial campaign. This amount represents approximately *treble* the compensation received by Plaintiff Resort Advisory Group from the Barlow 10 who were deceived and "turned" by Barlow and are now claiming to be victims of Plaintiffs.  For each of these clients, each of whom Plaintiffs are suing in this action because of their complicity in Barlow's extraction scheme, Barlow gave Plaintiff Resort Advisory Group, in his own handwriting, a sheet of paper stating how much Plaintiffs "owed" each one. A true and correct copy of this handwritten note by Barlow is attached as Exhibit 8.

112.  As with his enticements of clients to leave Plaintiff Resort Advisory Group in aid of his extortionist demand, Barlow claims to be working with the Cooperative Dispute Resolution Society ("CDRS"), which supposedly has taken on the timeshare resolution cause of former clients in concert with his vendetta against Plaintiffs.  To reiterate, on information and belief, the so-called CDRS is a phantom organization, invented by Barlow to put pressure on Plaintiffs to cave to his attempted shakedown. (See Exhibits 4 and 7 linking Barlow to CDRS.)  If Plaintiffs will simply pay him and the Barlow 10 over $800,000, he has told Plaintiff Resort Advisory Group that he will call off the CDRS and he and the Barlow 10 will

withdraw the civil and criminal complaints and cease their attacks on Plaintiffs.

113. Barlow most recently communicated his extortionist demand in text exchanges with Plaintiff Resort Advisory Group between February 27-March 4, 2020, a true and correct copy of which is attached as Exhibit 9, at an in-person meeting with Plaintiff Resort Advisory Group and others at his office on March 2, 2020, and in emails dated April 3, 2020 and May 5, 2020 (Exhibits 4 and 7).

114. Plaintiffs anticipated and expected an extortion demand at this meeting with Barlow based upon his previous illicit behavior. His demand at the meeting, made on his and the other Defendants' behalf, included these statements:

    a. When consumers, including the former-client defendants in this action, entered into their relationship with an "exit company" like Plaintiff Resort Advisory Group, "there was no reason or need for your services. So either you didn't know that and made a mistake, mistakes are forgivable, no harm no foul, give us back our money and we'll go our happy way -- or your failure to do that can only be interpreted as an intentional act. And as such, we're obligated to notify the authorities of what we know by way of a sworn affidavit…."

    b. There "is a lien [on Plaintiff's Manager's property] currently for the aggregate value, which is in the several millions of dollars category."

    c. "There are nine people right now that have already been committed to by CDRS to help with -- get their money back from Resort Advisory Group. Basically, a demand for what they paid treble, three times what they paid. … Got the Pressney lawsuit out there. I

don't know if you know this, but there is also some liens on some personal and real property [mine -- they've begun filing liens, whatever they could find and placing liens against that."

d. "They've [CDRS] committed to nine….next week, it's going to be three more on top of the nine that I have already have."

e. "If they do more than three filings, they're going to put you out of business. So then they just, you know, come at you personally."

f. "I've gotten their [CDRS] commitment that if you're -- if you're able to settle with these nine clients, that they will go away. I've gotten the clients to agree to accept nothing other than what they demanded in their letter to you, treble damages for the hassle and inconvenience that they have been put through….they will waive any claim to any amounts above what was in the initial demand…. treble damages. What they paid -- so they paid 10 bucks, they get 30 back….They're willing to walk away from those claims. They are willing to facilitate the dismissal of the present [Pressney] lawsuit….Remove all liens… against [my] personal and real property…."

g. "[P]ayment of the treble damages to the nine -- now, that also stops any more….will stop it right there….It's around 800 grand….For the nine -- for the nine people -- I mean, the Pressneys alone was 70 grand or something like that. Lee Turk was close to 80 grand. So just those two was most of it, I think. You know, Lari Castle was only 4500 bucks….So if we can settle this, make this claim go away, the Pressneys can go away, all these go away, stop all further, and get cooperation from all these people that nothing ever

happened, it's all good…"

h.  "They're unwilling to stop the process until that check is written….
come Wednesday, is my understanding, the next batch of criminal
complaints --…..the next one is coming on Wednesday….my
understanding is that the Abels have four complaints or affidavits
that are going to be filed as soon as Wednesday."

i.  "[Y]ou're going to have to figure out how to write a check.  Not
writing a check is your decision….[treble]….  That's the number."

j.  "I would…to facilitate a resolution, I would -- and I've already
talked to all of these people about this -- I would be willing to
accept that money in my    client trust account…and I would hold it
as an escrow agent pending those dollars clearing then providing a
signed settlement document and exchanging it -- in the Pressneys'
circumstance, it would include not just the signed settlement
document but a filed dismissal as well….And satisfying these nine,
I've gotten CDRS to    agree they won't add a 10th and an 11th and
a 12th –….The nine are…the Abels, Battineli, Castle, Hannah,
Martinez, Pressney, Turk, and Zimmermann…."

k.  "I need to know what the plan is so I can tell them don't continue
because these guys are going to be make this happen.  As it is right
now, where    I've gotten them to is they're going to waive those --
any additional above the treble.  They're going to facilitate a
dismissal in the Pressney lawsuit.  They're going to release all liens
that have been filed to this point.  They're going to agree to a no

comment confidentiality agreement.  If anybody asks, it was their -- their misunderstanding that was resolved amicably."

l.  "As we end this conversation, I want to make sure I'm not creating any kind of false impression.  I have been told in no uncertain terms that unless and until a solution is arrived at, they're going to continue to tenaciously, deliberately, and without fail. So as of right now, I'm telling you I was told that -- that the Abel package is being put together for filing on Monday -- or on Wednesday. So I don't want any misunderstanding or delusions that I've held them off or I've done anything."

m.  "[T]hey're [CDRS]…not willing to walk away from these nine that they've already committed to….if we are able to get that treble figured out, they're agreeing to walk away from everything…

n.  "I tend to think in big grand gestures.  If you guys are able to satisfy them…by paying them treble, they're willing to walk away…."

116.   Soon after this meeting, the Abel, Hannah and Turk Defendants filed their criminal complaints against Plaintiffs, as Barlow threatened they would do if Plaintiffs would not meet his and their shakedown demand for over $800,000, treble what was collected from them and the other Barlow 10 Defendants by Plaintiff Resort Advisory Group.

117.  Plaintiffs refuse to play Defendants' dirty game and be intimidated by their

tactics.  Yet their ongoing and intensifying vendetta and extortion scheme against Plaintiff has hurt it badly and is continuing to harm it.  Only an immediate order from this Court, restraining them, can finally bring the vendetta and extortion to a halt and stop Defendants from doing even more damage to Plaintiffs.

## FIRST CAUSE OF ACTION

**VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS PROVISIONS OF THE ORGANIZED CRIME CONTROL ACT ("RICO") 18 U.S.C. § 1961 *et seq.***

(By All Plaintiffs Against Barlow Defendants)

118.  Paragraphs 1-117 are alleged and incorporated herein by reference.

119.  As detailed above, Defendants Barlow, Barlow & Associates, ATT Fund, Case in Chief LLC, Cooperative Dispute Resolution Society and Phoenix Investment Alliance, LLC ("RICO Defendants") each conducted, conspired, or participated in the conduct of illegal activity through a pattern of racketeering activity in violation of 18 U.S.C. 1962(b) and 18 U.S.C. 1962(c) while being employed by, contracted by, and affiliated with Barlow & Associates. Barlow & Associates, as a law firm, and Cooperative Dispute Resolution Society provided the cover and credibility that RICO Defendants required in order to pursue and engage in their pattern and practice of racketeering activities. All four Barlow Defendants, by reason of their organization, structure, and activities, formed the "Barlow Racketeering Enterprise" which constitutes a RICO enterprise within the meaning of 18 U.S.C. 1961(4). The Barlow Racketeering Enterprise was initially comprised of one individual and three entities, all associated in fact as part of the Barlow Racketeering Enterprise, who then brought in and incorporated other individuals into the racketeering enterprise, the Barlow 10, also associated in fact with the enterprise, in order to expand the reach, effectiveness, and illegal activities of the

Barlow Racketeering Enterprise.

120.  The Barlow Racketeering Enterprise, through an agreement to commit two or more predicate acts, conspired to conduct or participate, and did conduct and participate, in the conduct of an illegal enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962(d).

121.  From in or about August-September 2018, and continuing through the current date, the Barlow Defendants,  the Barlow 10, and potentially other unknown individuals, being persons employed by, or associated into the Barlow Racketeering Enterprise by Defendant Barlow, Barlow & Associates, Cooperative Dispute Resolution Society, Phoenix Investments Alliance, LLC, Case in Chief LLC and/or ATT Fund, all of which are engaged in interstate commerce, unlawfully and knowingly conducted or participated in the affairs of the criminal enterprise through a pattern of racketeering activity, that is, through the commission of two or more separate but related racketeering acts within a 10-year period set forth herein.

122.  Plaintiff seeks to prohibit the Barlow Racketeering Enterprise from further utilizing and continuing the pattern of unlawful conduct in which they have repeatedly engaged within an open-ended scheme of racketeering which continues through the current date.

123.  Plaintiffs have been directly and substantially injured by the Barlow Racketeering Enterprise's acts of continuous racketeering activity.

**PREDICATE ACTS & THE PATTERN OF RACKETEERING ACTIVITY**

124.  Section 1961(1) of RICO provides that "racketeering activity" includes, but is not limited to, any act indictable under 18 U.S.C. § 1341 (relating to mail fraud), or 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, members of the Barlow Racketeering Enterprise engaged in conduct violating 18 U.S.C. §§ 1341 and 1343 to effectuate their unlawful scheme through their employment and association with Barlow & Associates.

125.  Section 1961(1) of RICO also provides that "racketeering activity" includes

any act or threat involving extortion, violations of section 1832 relating to theft of
trade secrets, violations of section 1836 relating to the misappropriation of trade
secrets, violations of section 1951 by interfering with commerce by extortion[5],
violations of section 1957 by engaging in monetary transactions derived from
specified unlawful activity which includes computer fraud and abuse violations
under section 1030. As set forth below, the Barlow Racketeering Enterprise also
engaged in a pattern of racketeering conduct violating 18 U.S.C. §§ 1030, 1832,
1836, 1951, 1957, amongst others, to effectuate their unlawful scheme with the
assistance and cover provided by the incorporation of Barlow & Associates into the
Racketeering Enterprise.

126.  The Barlow Racketeering Enterprise's acts were not isolated, but rather
formed a pattern of conduct and were committed with a common scheme in mind.
The pattern and practice of racketeering activity occurred in several planned phases,
and included the following goals: 1) access the protected computers of Plaintiff
Resort Advisory Group to acquire the trade secrets of  Resort Advisory Group 2)
begin to directly compete against Plaintiff Resort Advisory Group using the trade
secrets, 3) use the trade secrets to identify potentially vulnerable or susceptible
individuals to join in the Barlow Racketeering Enterprise, 4) use mail and interstate
communications to intentionally harm the business of Plaintiffs, 5) extort a large
sum of money from Plaintiffs in order to stop current and planned future illegal
activities harming the business reputations and livelihood of Plaintiffs.

127.  As alleged herein, the Barlow Racketeering Enterprise participants, including
Defendants and each of them, engaged and conspired to engage in acts in the
United States to further the goals of their criminal enterprise, in violation of U.S.
law.

---

[5]"[I]n order for conduct to serve as a state law RICO extortion predicate act, it must (1) violate a state extortion
statute and (2) satisfy the "generic" definition of extortion." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S.
393, 409, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003). (*United States v. Kirsch* (2d Cir. 2018) 903 F.3d 213, 221, fn.
9.)

128. The pattern of the Barlow Racketeering Enterprise's illegal racketeering activity, as defined by 18 U.S.C. 1961(1) and (5) and 18 U.S.C. §§ 1341, 1343, 1832, 1836, 1951, and 1957 is based upon the following facts:

**PREDICATE ACT 1:**

129.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to use the United States Postal Service in furtherance of the scheme to defraud Plaintiffs and Plaintiff Resort Advisory Groups' customers by utilizing illegally obtained trade secrets to contact current and former customers by mail to deceive them into payments of additional monies for legal services already fully paid for in violation of 18 U.S.C. 1341, for the benefit of the Barlow Racketeering Enterprise.

**PREDICATE ACT 2:**

130.   It was part of the Barlow Racketeering Enterprise's scheme, starting in, around or prior to August-September 2018 and continuing to the present day, to systematically send and receive payments derived from illegal activity, including but not limited to theft of trade secrets and misappropriation of trade secrets, by bank checks sent through the U.S. mail in violation of 18 U.S.C. 1341.

**PREDICATE ACT 3:**

131. It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to send a substantial number of letters through the mail to individuals identified from the theft and misappropriation of Plaintiff Resort Advisory Group's trade secrets to falsely accuse Plaintiffs of fraud in order to intentionally harm the reputation and business of Plaintiffs in violation of 18 U.S.C 1341.

**PREDICATE ACT 4**:

132.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to send a substantial number of letters through the mail to individuals identified from

the theft and misappropriation of Plaintiff Resort Advisory Group's trade secrets to

falsely accuse Plaintiffs of fraud in order to encourage and entice them to join in the

Barlow Racketeering Enterprise in violation of 18 U.S.C 1341.

**PREDICATE ACT 5:**

133.  It was part of the Barlow Racketeering Enterprise's scheme starting in,

around or prior to August-September 2018 and continuing to the present day, to

send letters and communications through the mail to individuals identified from the

theft and misappropriation of Plaintiff Resort Advisory Group's trade secrets to

assist and direct them in the filing of false civil and criminal complaints against

Plaintiffs in violation of 18 U.S.C 1341.


**PREDICATE ACT 6:**

134.  It was part of the Barlow Racketeering Enterprise's scheme starting in,

around or prior to August-September 2018 and continuing to the present day, to

send letters and other written communications through the mail to individuals

identified from the theft and misappropriation of Plaintiff Resort Advisory Group's

trade secrets to assist and direct them in the filing of false criminal complaints

against Plaintiffs and false and baseless state bar complaints against Attorney, in

violation of 18 U.S.C 1341.


**PREDICATE ACT 7:**

135.  It was part of the Barlow Racketeering Enterprise's scheme starting in,

around or just prior to August-September 2018, to use the internet to gain

unauthorized access to the protected computer systems of Plaintiff Resort Advisory

Group in breach of the fiduciary duties owed to  Resort Advisory Group by

racketeers Barlow and Barlow & Associates, in violation of 18 U.S.C. 1343. The

exact dates, times, and quantity of unauthorized access attempts is still being

investigated by Plaintiff.

**PREDICATE ACT 8:**

136.  It was part of the Barlow Racketeering Enterprise's scheme starting in, or around or prior to August-September 2018, to use the internet to illegally access and take control of the trade secrets of Plaintiff Resort Advisory Group in violation of 18 U.S.C. 1343 and in violation of the fiduciary and contractual obligations to Resort Advisory Group and  Resort Advisory Group's clients of racketeers, Barlow and Barlow & Associates.

**PREDICATE ACT 9:**

137.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to make use of interstate telephone lines to contact individuals contained within Plaintiff Resort Advisory Group's trade secrets to knowingly and falsely accuse Plaintiffs of committing fraud against them in violation of 18 U.S.C 1343.

**PREDICATE ACT 10:**

138.   It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to make use of the internet to send and receive emails to clients identified within the trade secrets to knowingly and falsely accuse Plaintiffs of defrauding them in violation of 18 U.S.C. 1343.

**PREDICATE ACT 11:**

139.  It was part of Barlow Racketeering Enterprise's scheme starting in,  around or prior to August-September 2018 and believed to be continuing to the present day, to make use of the internet to make knowingly and intentionally false posts about Plaintiff Resort Advisory Group's business practices on internet sites such as Facebook and Yelp in order to intentionally harm the business of Plaintiffs in violation of 18 U.S.C. 1343.

**PREDICATE ACT 12:**

140.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or

prior to August-September 2018 and continuing to the present day, to make use of the internet to communicate with individuals identified from the misappropriation of Plaintiff Resort Advisory Group's trade secrets to instruct and encourage them to file false civil and criminal allegations against Plaintiffs in violation of 18 U.S.C. 1343.

**PREDICATE ACT 13:**

141. It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018, to knowingly and purposefully access the protected computer systems of Plaintiff Resort Advisory Group without authorization through use of the internet in order to illegally access and take control of the trade secrets of Resort Advisory Group in violation of 18 U.S.C. 1030.

**PREDICATE ACT 14:**

142. It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to intentionally and purposefully misappropriate the private trade secrets of Plaintiff Resort Advisory Group for the sole benefit of Barlow Racketeering Enterprise. Barlow Racketeering Enterprise misappropriated the trade secrets of Resort Advisory Group in order to unfairly directly compete against Plaintiff for the benefit and furtherance of Barlow Racketeering Enterprise in violation of 18 U.S.C. 1836.

**PREDICATE ACT 15:**

143. It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to intentionally and purposefully misappropriate the private trade secrets of Plaintiff Resort Advisory Group in order to purposely deceive current and former clients of Resort Advisory Group into making substantial unwarranted payments directly to Barlow Racketeering Enterprise for services already fully paid for in violation of 18 U.S.C. 1836.

**PREDICATE ACT 16:**

144.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to misappropriate the trade secrets of Plaintiff Resort Advisory Group by identifying and contacting specific clients identified by use of the trade secrets and aiding and abetting them into making false claims of fraud by way of multiple fraudulent civil and criminal allegations in order to purposefully and intentionally harm the business of Plaintiffs in violation of 18 U.S.C. 1836.

**PREDICATE ACT 17:**

145.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018, to misappropriate the trade secrets in order to put into place, and conspire to execute, a plan to extort over $800,000 between February 27 and March 4, 2020, and continuing to the present,  in order to cease current and future misappropriation of Plaintiff Resort Advisory Group's trade secrets in violation of 18 U.S.C. 1836.

**PREDICATE ACT 18:**

146.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018, to attempt to extort Plaintiffs between February 27 and March 4, 2020, and continuing to the present, in the amount of over $800,000 such that, if paid, Barlow Racketeering Enterprise will stop all current and planned future obstructions and interference with the commerce of Plaintiffs in violation of 18 U.S.C. 1951.

//

**PREDICATE ACT 19:**

147.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018, to conspire to extort Plaintiffs between February 27 and March 4, 2020, and continuing to the present, in the amount of

over $800,000 in order for Barlow Racketeering Enterprise to stop illegal use of Plaintiff Resort Advisory Group's trade secrets and to stop all other current obstruction and interference in the commerce of Plaintiffs in violation of 18 U.S.C 1951.

**PREDICATE ACT 20:**

148.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to deceive and direct current and former clients of Plaintiff Resort Advisory Group into filing multiple false civil and criminal legal claims against Plaintiff as a pattern and practice of threatening the business of Plaintiffs in violation of 18 U.S.C. 1951.

**PREDICATE ACT 21:**

149.  It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to coordinate and orchestrate a fraudulent scheme to deceive, and cause clients and former clients identified through the misappropriation of trade secrets, to make unwarranted payments directly to Barlow Racketeering Enterprise in violation of 18 U.S.C. 1957.

**PREDICATE ACT 22:**

150.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to purposefully and knowingly access and steal the proprietary trade secrets of Plaintiff Resort Advisory Group, utilized in interstate commerce, for the economic benefit of Barlow Racketeering Enterprise who then used the trade secrets to deceive  Resort Advisory Group's clients to send payments directly to, and for the sole benefit of, Barlow Racketeering Enterprise in violation of 18 U.S.C. 1832.

**PREDICATE ACT 23:**

151.  It was part of the Barlow Racketeering Enterprise's scheme starting in,

around or prior to August-September 2018, to conspire together to access the protected computer systems of Plaintiff Resort Advisory Group in order to purposefully and knowingly steal the proprietary trade secrets of Resort Advisory Group, utilized in interstate commerce, for the economic benefit of Barlow Racketeering Enterprise who then used the trade secrets to deceive Resort Advisory Group's clients to send payments directly to Defendants Barlow and Barlow & Associates for the sole benefit of Barlow Racketeering Enterprise' in violation of 18 U.S.C. 1832.

## **IDENTIFICATION OF RICO DEFENDANTS**

152.  Plaintiffs are informed and believe, with further investigations still ongoing, that the following identified individuals, jointly and severally, conspired, planned, and participated in the predicate acts and RICO schemes starting in, around or prior to August-September 2018, and continuing through the current date:

**RICO DEFENDANT BARLOW**

153.  RICO Defendant Barlow is a lawyer registered with the California State Bar (SBN 168645)  to practice law in California and is believed to be, upon information and belief, the primary owner and controlling principal attorney for Barlow & Associates, a law firm providing legal services and representation to citizens of California, New York, and Washington D.C.. Barlow & Associates, through its legal representation status across multiple states, and through the use of interstate communication lines to communicate and transmit information to offices and consumers located in other states, engages in and directly affects interstate commerce.

154.  As part of the continuous pattern of racketeering activity, RICO Defendant Barlow has purposefully and tactically caused and conspired with Barlow & Associates to engage in mail and wire fraud in violation of 18 U.S.C. 1341 and 1343 believed to have begun at or prior to August 2018 and continuing through the present.

155.  For example, starting in, around or prior to August-September 2018, RICO

Defendant Barlow, along with other Barlow Racketeering Enterprise members,

conspired and did set into action, an illegal plan to access and steal the trade secrets

of Plaintiff Resort Advisory Group for use in furtherance of Barlow Racketeering

Enterprise members' illicit goals. Defendant Barlow initially orchestrated the

scheme to utilize Barlow & Associates' computer systems and internet account to

gain unauthorized access to the protected computer systems of Plaintiff Resort

Advisory Group in order to gain illegal control of the trade secrets for the benefit of

the Barlow Racketeering Enterprise. (18 U.S.C. 1030, 1836)

156.  RICO Defendant Barlow further directed and orchestrated a scheme for

Barlow & Associates to solicit, by way of U.S. mail, phone, and by internet,

substantial additional sums of money for timeshare "legal services," paid to

financial accounts exclusively controlled by Barlow and/or Barlow & Associates,

by identifying vulnerable clients from the illegal use of Plaintiff Resort Advisory

Group's trade secrets. Barlow Racketeering Enterprise members then set out, by

pattern and practice, to purposefully deceive the identified clients into falsely

believing that further payments were required when in fact full payment had

already been made by the clients to Resort Advisory Group. (18 U.S.C. 1832, 1957)

Even if one were to take the assumption as true that further payments were

somehow required, these payments rightfully belong to Resort Advisory Group, not

Barlow Racketeering Enterprise members.

157.  Barlow Racketeering Enterprise members also, by use of mail, phone, and

internet, utilized the trade secrets of Plaintiff Resort Advisory Group to identify

what they believed to be vulnerable or susceptible clients and then, through various

illegal means, encouraged and enticed them to join the Barlow Racketeering

Enterprise. These recruited members, currently identified as the Barlow 10,

willingly assisted the Barlow Racketeering Enterprise by knowingly and

intentionally filing false civil and criminal charges against Plaintiffs in order to

systematically and intentionally damage the reputation and business of Plaintiffs, and file false and baseless state bar complaints against Attorney, something that RICO Defendants Barlow and Barlow & Associates could not accomplish without substantial additional members.

158.  Plaintiffs allege, upon information and belief, that all Barlow Racketeering Enterprise members, including the Barlow Defendants and Barlow 10, had the joint, unified, illicit goal of extorting a substantial sum of money from Plaintiffs as the "rewards" of their racketeering activity. The demand of the extortion was a payment of over $800,000 as the price for Defendants to dismiss all intentionally filed frivolous claims against Plaintiffs, not file additional, threatened claims against Plaintiffs, and stop all illegal, harassing behavior which is damaging the reputation and profitability of Plaintiffs' business.

159.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

160.  RICO Defendant Barlow, in furtherance of the illegal scheme of Barlow Racketeering Enterprise, did conspire with and put into place on behalf of Barlow Racketeering Enterprise members, a plan of action to attempt to use force or threats to extort the sum of over $800,000 from Plaintiffs in order to cease use of, and return the trade secrets of Plaintiff Resort Advisory Group and stop all current and future illegal racketeering activities affecting Plaintiffs.

**RICO DEFENDANT BARLOW & ASSOCIATES**

161.  As part of the same scheme, Barlow Racketeering Enterprise utilized the inherent public trust and cover that an operating and licensed law firm has with the public, by utilizing Barlow & Associates as a key player in the furtherance of racketeering activity. Upon information and belief, Barlow & Associates is owned and controlled by RICO Defendant Barlow.

162.  RICO Defendant Barlow & Associates, for the benefit of all Barlow Racketeering Enterprise members and in furtherance of the pattern of racketeering activity, drafted and mailed through the U.S. mail a substantial quantity of communications on Barlow & Associates' letterhead to current and former clients of Plaintiff Resort Advisory Group identified using the trade secrets of Resort Advisory Group as part of the regular pattern and practice of racketeering activity. (18 U.S.C. 1341) Barlow & Associates, as a law firm, manipulated the inherent public trust that typically accompanies a firm practicing law in California, to make multiple false allegations against Plaintiffs in these communications, including accusations of fraud, as part of an orchestrated scheme to deceive current and former clients and gain their trust. RICO Defendant Barlow & Associates subsequently used this false trust to convince clients and former clients to make substantial additional payments directly to accounts controlled by Barlow Racketeering Enterprise for the same services already paid for by the same clients to Plaintiff. (18 U.S.C. 1957.)

163.  RICO Defendant Barlow & Associates, acting in concert with Barlow Racketeering Enterprise members, further used mail, telephone, and the internet to identify and recruit additional members into the Barlow Racketeering Enterprise. As part of the overarching scheme to extort a large sum of money from Plaintiffs, Barlow Racketeering Enterprise required substantial additional help in order to intentionally harm Plaintiffs' reputation and business by filing multiple false civil and criminal claims against Plaintiffs and false and baseless state bar complaints against Attorney. Barlow Racketeering Enterprise ultimately recruited the Barlow 10 to assist them in knowingly and intentionally filing false civil and criminal charges to threaten the current and future business of Plaintiffs in order to extort over $800,000. (18 U.S.C. 1951.) Plaintiffs believe the involvement of Barlow & Associates by Barlow Racketeering Enterprise was an essential part of their scheme to gain credibility and leverage over current and former clients as part of the pattern

1   of racketeering activity.

2   164.  Under California Penal Code Section 518 PC, extortion (commonly referred

3   to as "blackmail") is a criminal offense that involves the use of force or threats to

4   compel another person into providing money or property, or using force or threats

5   to compel a public official to perform or neglect an official act or duty.

6   165.  Further, Plaintiffs allege that the direct contact of current and former Resort

7   Advisory Group clients by Barlow & Associates by phone, mail, and internet to

8   spread false allegations and extract unwarranted payments was part of the overall

9   orchestrated scheme to purposefully harm the business and reputation of Plaintiffs

10  in order to effectuate an attempted extortion of over $800,000, occurring between

11  February 27 and March 4, 2020, and continuing to the present.

12  166.  Barlow & Associates is thereby inextricably intertwined with the pattern of

13  racketeering activity alleged herein and is being used by Barlow Racketeering

14  Enterprise as a cover for, and as a source of, false credibility in their illicit pattern

15  of racketeering activity.

16  **RICO DEFENDANT CASE IN CHIEF LLC**

17  167.  RICO Defendant Case in Chief LLC, upon information and belief, provides

18  litigation strategy and support services in interstate commerce and is owned and/or

19  controlled by RICO Defendant Barlow & Associates and Barlow. Upon

20  information and belief, Plaintiff alleges that Barlow Racketeering Enterprise

21  members Barlow and Barlow & Associates, as part of their pattern of racketeering

22  activity, have purposefully deceived multiple current and former clients of Plaintiff

23  Resort Advisory Group into falsely believing Plaintiffs committed fraud against

24  them.  Upon information and belief, Plaintiffs allege Barlow Racketeering

25  Enterprise then encouraged the contacted clients into joining Barlow Racketeering

26  Enterprise as willing participants.

27  168.   As part of the participation of the Barlow 10, Case in Chief LLC to provided

28  legal strategy assistance to the new racketeering members by phone, internet, and

by U.S. Mail to conduct further illegal activity for the benefit of Barlow Racketeering Enterprise. (18 U.S.C. 1341, 1343.) These new racketeering members have been previously identified as Barlow 10. Barlow Racketeering Enterprise then supervised, directed, and encouraged the Barlow 10, with the substantial litigation strategy assistance and direction of Case In Chief LLC, to file multiple fraudulent civil lawsuits and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, as a pattern of significant harassment and threats designed to damage the reputation of Plaintiffs, to interfere with the ability of Plaintiffs to continue in business, and to extort the sum of over $800,000 (18 U.S.C. 1951.)

169.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

170.  Upon further information and belief, Plaintiffs allege that Case in Chief LLC was also utilized and directed by Barlow Racketeering Enterprise to encourage, facilitate, and assist various members of the Barlow 10 into filing false claims against Plaintiffs with law enforcement to further threaten the business of Plaintiffs. (18 U.S.C. 1951.)

171.  Plaintiffs also allege that the pattern and practice by Barlow Racketeering Enterprise, including Case in Chief LLC, of encouraging Plaintiff's clients into making false civil claims and false legal claims to law enforcement was part of the unified plan amongst Barlow Racketeering Enterprise to extort over $800,000 from Plaintiff Resort Advisory Group between February 27 and March 4, 2020, and continuing to the present, in order to cease further illegal activities conducted by Case in Chief LLC and other Barlow Racketeering Enterprise members.

172.  Case in Chief LLC is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering

Enterprise to continually engage in a pattern of racketeering activity.

**RICO DEFENDANT ATTFund**

173.  RICO Defendant ATT Fund, upon information and belief, provides pre-trial and trial funding for litigation in California and across the U.S. and is engaged in interstate commerce. ATT Fund is believed to be wholly owned and controlled by RICO Defendants Barlow & Associates and/or Barlow.

174.  Plaintiffs allege, upon information and belief, that ATT Fund participated in the continual pattern of racketeering by providing litigation funding directly and indirectly to RICO Defendants Barlow and Barlow & Associates and to members of the Barlow 10 who joined Barlow Racketeering Enterprise. Plaintiffs allege ATT Fund provided the underlying litigation funding and financial support to accomplish the joint racketeering goal of filing multiple false civil lawsuits against Plaintiffs in order to substantially harm the reputation of Plaintiffs and directly threaten Plaintiffs' ability to conduct business. (18 U.S.C. 1951) This was also part of the racketeering plan to extort $800,000 from Plaintiffs.

175.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

176.  Plaintiffs further allege that RICO Defendant ATT Fund, through providing litigation funding sources for the illegal activities of Barlow Racketeering Enterprise, was further an integral part of the orchestrated scheme to extort over $800,000 from Plaintiff between February 27 and March 4, 2020, and continuing to the present, in order to cease further illegal activities conducted by ATT Fund and the other Barlow Racketeering Enterprise members.  Plaintiffs believe that without the substantial financial support of ATTFund, all or virtually all of the false criminal and civil lawsuits filed by Barlow Racketeering Enterprise members Barlow 10, nor false and baseless state bar complaints against Attorney would have

been accomplished.  ATTFund is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

### RICO DEFENDANT COOPERATIVE DISPUTE RESOLUTION SOCIETY

177.  RICO Defendant Cooperative Dispute Resolution Society ("CDRS"), provides purported consumer advocacy services in interstate commerce and is owned and/or controlled by RICO Defendants Barlow & Associates and Barlow. Upon information and belief, Plaintiffs allege that Barlow Racketeering Enterprise members Barlow, Barlow & Associates, and CDRS, as part of their pattern of racketeering activity, have purposefully deceived multiple current and former clients of Plaintiff Resort Advisory Group into falsely believing Plaintiffs committed fraud against them and that CDRS provides an "alternative" timeshare resolution service for them.  Upon information and belief, Plaintiffs allege Barlow Racketeering Enterprise then encouraged the contacted clients into joining Barlow Racketeering Enterprise as willing participants.

178.   As part of the participation of the Barlow 10, CDRS provided legal strategy assistance to the new racketeering members by phone, internet, and by U.S. Mail to conduct further illegal activity for the benefit of Barlow Racketeering Enterprise. (18 U.S.C. 1341, 1343.) These new racketeering members have been previously identified as Barlow 10. Barlow Racketeering Enterprise then supervised, directed, and encouraged the Barlow 10, with the substantial purported consumer advocacy assistance and direction of CDRS, to file multiple fraudulent civil lawsuits against Plaintiffs as a pattern of significant harassment and threats designed to damage the reputation of Plaintiffs, to interfere with the ability of Plaintiffs to continue in business, and to extort the sum of over $800,000 (18 U.S.C. 1951.)

179.  Under California Penal Code Section 518 PC, extortion (commonly referred

to as "blackmail") is a criminal offense that involves the use of force or threats to
compel another person into providing money or property, or using force or threats
to compel a public official to perform or neglect an official act or duty.

180.  Upon further information and belief, Plaintiffs allege that CDRS was also
utilized and directed by Barlow Racketeering Enterprise to encourage and assist
various members of the Barlow 10 into filing false claims against Plaintiffs with
law enforcement to further threaten the business of Plaintiffs. (18 U.S.C. 1951.)

181.  Plaintiff also alleges that the pattern and practice by Barlow Racketeering
Enterprise, including CDRS, of encouraging Plaintiff Resort Advisory Group's
clients into making false civil claims and false legal claims to law enforcement and
false and baseless state bar complaints against Attorney, was part of the unified
plan amongst Barlow Racketeering Enterprise to extort over $800,000 from
Plaintiff between February 27 and March 4, 2020, and continuing to the present, in
order to cease further illegal activities conducted by CDRS and other Barlow
Racketeering Enterprise members.

182.  CDRS is thereby inextricably intertwined with the pattern of racketeering
activity alleged herein and is being used by Barlow Racketeering Enterprise to
continually engage in a pattern of racketeering activity.

**RICO DEFENDANT PHOENIX INVESTMENTS ALLIANCE, LLC**

183.  RICO Defendant Phoenix Investments Alliance, LLC ('Phoenix") upon
information and belief, is a designee of CDRS and the assignee of claims of the
Barlow 10 Defendants with respect to Plaintiff Resort Advisory Group. Upon
information and belief, Phoenix is engaged in interstate commerce. Phoenix is
believed to be wholly owned and controlled by RICO Defendants Barlow &
Associates and/or Barlow.

184.  Plaintiffs allege, upon information and belief, that Phoenix participated in the
continual pattern of racketeering by being assigned, at the direction of the other
Barlow Defendants, the illicit claims of the Barlow 10 Defendants with respect to

Plaintiffs and then making demands upon Plaintiffs as to those claims as part of the Barlow Racketeering Enterprise's scheme to extort Plaintiffs.  Plaintiffs allege Phoenix knowingly accepted the assignment of said illicit claims and made demands upon Plaintiffs as to them to accomplish the joint racketeering goal of extorting Plaintiffs in order to directly threaten Plaintiffs' ability to conduct business. (18 U.S.C. 1951) This was also a key part of the overall racketeering plan to extort $800,000 from Plaintiff Resort Advisory Group.

185.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

186.  Plaintiffs further allege that RICO Defendant Phoenix, through accepting the illicit claims of the Barlow 10 as to Plaintiff Resort Advisory Group and making demands upon Plaintiffs as to them, was further an integral part of the Barlow Racketeering Enterprise's orchestrated scheme to extort over $800,000 from Plaintiffs between February 27 and March 4, 2020, and continuing to the present, in order to cease further illegal activities conducted by Phoenix and the other Barlow Racketeering Enterprise members.

187.  Defendant Phoenix is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

**RICO DEFENDANTS BARLOW 10**

188.  Plaintiff hereby incorporates the factual details about the Barlow 10 already represented previously as if specifically restated here. Rico Defendants Barlow 10, individually and jointly, participated in, and conspired to participate in, the illicit racketeering activities of Barlow Racketeering Enterprise. Each, individually and jointly, willingly joined in the illegal Enterprise for the illicit purposes of harming

the business of Plaintiff and extortion of Plaintiff. Barlow 10 were willing co-conspirators in the intentional acts to harm the business and reputation of Plaintiff and in all acts in furtherance of the extortion attempt on Plaintiff.

189.  Plaintiff alleges all Barlow 10 members aided and abetted one another, individually and jointly, with some filing false civil and some filing false criminal charges against Plaintiffs, and false and baseless state bar complaints against Attorney, for the joint illicit goals of all Barlow Racketeering Enterprise members. All Barlow 10 members, through their purposeful association in Barlow Racketeering Enterprise, actively participated in an orchestrated and systematic scheme of illegal and illicit activities for the joint goal of extorting a substantial sum of money from Plaintiffs in order to cease future illegal activities.

190.  Barlow 10 members did intentionally use the mail and the internet to plan, and conspire to plan, with all other Barlow Racketeering Enterprise members, to file false civil claims against Plaintiffs in order to harm the reputation and business of Plaintiffs in violation of 18 U.S.C. 1341. Barlow 10 members did use interstate communications to plan, and conspire to plan, in concert with all other Barlow Racketeering Enterprise members, to file false civil charges against Plaintiffs in violation of 18 U.S.C. 1343. Barlow 10 members did intentionally and knowingly plan, and conspire to plan, and aid and abet Barlow Racketeering Enterprise in the attempt to extort over $800,000 from Plaintiffs between February 27 and March 4, 2020, and continuing to the present, by way of interstate communications in violation of 18 U.S.C. 875.

191.  Barlow 10 members did intentionally and knowingly plan, and conspire to plan, to file numerous frivolous civil and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, and threaten to file additional frivolous claims against Plaintiffs in order to harm Plaintiffs' business and to interfere with Plaintiffs' business as part of the racketeering scheme to extort over $800,000 from Plaintiffs in violation of 18 U.S.C. 1951.

192.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

193.  Each Barlow 10 Defendant, individually and jointly, has violated California Penal Code Section 518 PC in furtherance of their illicit pattern of racketeering activity and has additionally violated 18 U.S.C. 1951, amongst others, in furtherance of their illicit pattern of racketeering activity.

194.  Barlow 10 Defendants are thereby inextricably intertwined with the pattern of racketeering activity alleged herein and are being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

**RICO Section 1962(b) Violations**

195.  Section 1962(b) of RICO provides that "it shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

196.  As alleged with particularity above, RICO Defendant Barlow, by his pattern of racketeering activity and ownership interest in and control of Barlow & Associates, has violated 18 U.S.C. 1962(b).

197.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of Case in Chief LLC, has violated 18 U.S.C. 1962(b).

198.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of ATT Fund, has violated 18 U.S.C. 1962(b).

**RICO Section 1962(c) Violations**

199.  Section 1962(c) of RICO provides that "it shall be unlawful for any person employed by … any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct, participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…".

200.  As set forth above, the RICO Defendants are employed by, associated with, or affiliated with Barlow & Associates which engages in interstate commerce and, upon information and belief, foreign commerce. Further, RICO Defendants are part of Barlow Racketeering Enterprise which, as a method of conducting illegal activity, has purposefully and intentionally utilized the U.S. mail and interstate communications, thereby engaging in interstate commerce. As set forth above, the members of Barlow Racketeering Enterprise, and/or affiliates of the Enterprise, used their positions with, and control of, Barlow and Associates to conduct, plan, and participate, both directly and indirectly, in the conduct of Barlow & Associates' affairs through a pattern of racketeering activity.

201.  Each Barlow Racketeering Enterprise member agreed to participate directly or indirectly in the conduct of the affairs of Barlow Racketeering Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud, extortion, theft and misappropriation of trade secrets, and to purposefully and knowingly harm the ability of Plaintiff to conduct interstate commerce. Each Barlow Racketeering Enterprise member so participated in, and had knowledge of, multiple violations of 18 U.S.C. 1962(c).

202.  As set forth herein, the Barlow Racketeering Enterprise's pattern of racketeering activity is comprised of multiple predicate acts including mail fraud (18 U.S.C. 1341), wire fraud (18 U.S.C. 1343), violation of the Computer Fraud and Abuse Act (18 U.S.C. 1030), theft of trade secrets (18 U.S.C 1832), violation of the Defend Trade Secrets Act (18 U.S.C 1836), engaging in monetary transactions in property derived from illegal activity (18 U.S.C. 1957) and the use

of extortion to purposefully interfere with the interstate commerce and ability to conduct commerce of Plaintiff in violation of 18 U.S.C. 1951.

203.  As set forth above, the pattern of racketeering activity engaged in by Barlow Racketeering Enterprise was for the common purpose of concealing and benefitting from the use of the stolen trade secrets of Plaintiff, to manipulate and deceive current and previous clients into sending RICO Defendants substantial sums of unwarranted payments directly to Barlow & Associates for use by, and  direct benefit of, Barlow Racketeering Enterprise.

204.  Members of the Barlow Racketeering Enterprise, as part of the scheme to deceive the public into a false belief Plaintiffs have engaged in wrongdoing, had the common purpose of putting into place a methodical pattern of defaming and purposefully harming Plaintiffs' business, both through the mail and by use of the internet and phones, with the goal of gaining leverage for extortion and to ultimately shut down the business completely and irreparably harm Attorney.

205.  All Barlow Racketeering Enterprise members shared the common joint purpose of attempting to extort the sum of over $800,000 from Plaintiffs in order to stop the pattern of racketeering activity and to silence Plaintiffs from exposing their substantial illegal activity.

206.  All Barlow Racketeering Enterprise members shared the common purpose of utilizing Barlow & Associates to attempt to conceal and avoid detection of the pattern of racketeering activity and to make the pattern of racketeering activity, including defrauding consumers and law enforcement, easier to accomplish.

207.  All Barlow Racketeering Enterprise members shared the common purpose of the filing of false criminal and civil claims against Plaintiffs, and false and baseless state bar complaints against Attorney, in order to harm the reputation and business of Plaintiffs as a method to set up the extortion attempt on Plaintiffs.

**RICO Section 1962(d) Violations**

208.  Section 1962(d) of RICO makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

209.  In pursuit of the Barlow Racketeering Enterprise's continuing racketeering activity, the Enterprise members have jointly planned and conspired together to obtain unlawful and unwarranted financial gains from use of Plaintiff Resort Advisory Group's trade secrets and have jointly planned and conspired together to interfere with the contractual and business relations of Resort Advisory Group by purposefully and intentionally harming Plaintiffs' business reputation.

210.  All Barlow Racketeering Enterprise members have further conspired, and continue to conspire, to utilize Plaintiff Resort Advisory Group's trade secrets to deceive its clients into making substantial additional unwarranted payments directly to Barlow Racketeering Enterprise, through member Barlow & Associates, for services already paid for in full by the clients.

211.  Barlow Racketeering Enterprise conspired together to orchestrate a plan to use Barlow & Associates as a cover to recruit former clients into the Enterprise to enable the filing false civil and criminal actions against Plaintiff Resort Advisory Group, and false and baseless state bar complaints against Attorney, in order to intentionally harm their business and as part of the overall scheme to extort money.

212.  Further, all Barlow Racketeering Enterprise members conspired, as part of the orchestrated plan of racketeering activity, to attempt to extort Plaintiffs in the amount of over $800,000 between February 27 and March 4, 2020, and continuing to the present, in order to cease current and planned future illegal activities.

213.  Finally, the racketeering activity that Barlow Racketeering Enterprise conspired to continually commit is particularly egregious because it was done through the knowing and planned utilization of the law firm of Barlow& Associates headed by RICO Defendant and attorney Barlow, giving Barlow Racketeering Enterprise substantial false cover and credibility in order to continually deceive the

public.

214.  As set forth above, the pattern of racketeering activity engaged in by Barlow Racketeering Enterprise was for the common purpose of concealing and benefitting from the use of Plaintiff Resort Advisory Group's trade secrets, purposefully misrepresenting the business practices of Plaintiffs, defrauding consumers, to extort payment to cease current and future planned illegal actions, and to intentionally harm the business of Plaintiffs for the sole benefit of RICO Defendants in multiple violations of 18 U.S.C. 1962(d).

**RICO COUNT 1: VIOLATION OF RICO 18 U.S.C. 1962(b)**

215.  Plaintiffs reallege and incorporate by reference against the Barlow Racketeering Enterprise the allegations contained in paragraphs 1 – 214 above, as if fully set forth herein.

216.  Plaintiffs are unaware of any convictions or the status of any current law enforcement investigations of this allegation.

217.  As alleged with particularity above, the facts demonstrate that the RICO Defendants Barlow and Barlow & Associates, willingly and knowingly have ownership interests in, and control of, entities engaged in a systematic pattern of racketeering activity in violation of 18 U.S.C. 1962(b).

218.  As alleged with particularity above, as a direct and proximate result of RICO Defendants Barlow and Barlow & Associates' ownership interest in and control of these entities, Plaintiffs have suffered substantial financial harm and the business reputation has been irreparably damaged, substantially limiting the ability to provide employment and derive revenues going forward.

219.  The illicit actions of RICO Defendants Barlow and Barlow & Associates, in conjunction with Barlow Racketeering Enterprise, has cause substantial damages to Plaintiffs of at least $75,000, in an amount to be proven at trial.

220.  As alleged with particularity above, the RICO Defendants Barlow and

Barlow & Associates are jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

221.  To the extent permitted by law, Plaintiffs are entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

**RICO COUNT 2: VIOLATION OF RICO 18 U.S.C. 1962(c)**

222.  Plaintiff realleges and incorporates by reference against Barlow Racketeering Enterprise contained in paragraphs 1 – 221 above, as if fully set forth herein.

223.  Plaintiff is unaware of any convictions or the status of any current law enforcement investigations of this allegation.

224.  As alleged with particularity above, the facts demonstrate that each and every Barlow Racketeering Enterprise member willingly and knowingly conducted or participated directly or indirectly in the conduct of Barlow Racketeering Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

225.  As alleged with particularity above, as a direct and proximate result of Barlow Racketeering Enterprise's aforementioned RICO conduct, Plaintiffs have suffered substantial financial damages and the business reputation of Plaintiffs has been irreparably damaged, significantly limiting the ability to provide employment and derive revenues going forward.

226.  As alleged with particularity above, the Barlow Racketeering Enterprise members are each jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

227.  To the extent permitted by law, Plaintiffs are is entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

**RICO COUNT 3: VIOLATION OF RICO 18 U.S.C. 1962(d)**

228.  Plaintiffs reallege and incorporates by reference against Barlow Racketeering Enterprise the pleadings in paragraphs 1 – 227 above, as if fully set forth herein.

229.  Plaintiffs are unaware of any convictions or the status of any current law enforcement investigations of this allegation.

230.  As alleged with particularity above, the facts demonstrate that the Barlow Racketeering Enterprise members conspired to violate 18 U.S.C. 1962(d) by conspiring to conduct the affairs of Barlow Racketeering Enterprise through a pattern of racketeering activity and conspired with one another in the continuation of racketeering activity targeting Plaintiffs and the public, and included the use of a registered law firm as a key component in furtherance of, and to provide coverage for, their illicit pattern of racketeering activity.

231.  As alleged with particularity above, as a direct and proximate result of Barlow Racketeering Enterprise's aforementioned RICO conduct, Plaintiffs have suffered substantial financial damages and the business reputation of Plaintiffs have been irreparably damaged, significantly limiting the ability to provide employment and derive revenues going forward.

232.  As alleged with particularity above, the members of Barlow Racketeering Enterprise are jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

233.  To the extent permitted by law, Plaintiffs are therefore entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

//

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")**

**(18 U.S.C 1030)**

(By All Plaintiffs Against All Defendants)

234.  Paragraphs 1-233 are alleged and incorporated herein by reference.

235.  On the basis of the misconduct detailed herein, Defendants Barlow and Barlow & Associates have violated the following sections of the CFAA: Theft of computer data (CFAA § 1030(a)(2)(C)); Unauthorized access with intent to defraud (1030(a)(4)); and Conspiring to illegally access a computer (1030(b).

**CFAA § 1030(a)(2)(C) Violations**

236.  Section 1030(a)(2)(C) of the CFAA prohibits a person from intentionally accessing a protected computer without or in excess of authorization and obtaining information from a protected computer, "[w]however … [i]ntentionally access a computer without authorization or exceeds authorized access, and hereby obtains … information from any protected computer … shall be punished as provided for in subsection (c) of this section." (18 U.S.C. 1030(a)(2)(C).)

237.  A "protected computer" is a computer "which is used in or affecting interstate commerce or communication…" (18 U.S.C. 1030(e)(2)(B).) Any device that processes data and connects to the internet falls within the ambit of a "protected computer."[6]

---

[6] *See United States v. Yucel, 97 F. Supp. 3d 413, 418 (S.D.N.Y. 2015)* ("The government contends that [the CFAA's] definition [of a protected computer] encompasses any computer with an interet connection, and a number of court's have so held. *See Freedom Banc Mortg. Servs., Inc. v. O'Harra, 2012 U.S. Dist. LEXIS 125734,* at *6 (S.D. Ohio Sept. 5, 2012) (holding that '[a] computer that is connected to the interet … satisfies § 1030(e)(2)'s interstate commerce requirement even if the plaintiff used that connection to engage in only intrastate communications"); *United States v. Fowler, 2010 U.S. Dist. LEXIS 118260,* at *2 (M.D. Fla. Oct. 25, 2010) (holding that evidence that computers were connected to the internet and were used to send emails was sufficient to show that they were 'protected'); *Multiven, Inc. v. Cisco Systs., Inc., 725 F. Supp. 2d 887, 891-92 (N.D. Cal. 2010)* (holding that the parties' agreement that the defendant's network was connected to the interet was sufficient to establish that the computers using the network were 'protected'); *Expert Janitorial, LLC v. Williams, 2010 U.S. Dist. LEXIS 23080,* at *8 (E.D. Tenn. Mar. 12, 2010) (holding that the allegation that a computer was used to access email accounts, and thus was connected to the internet, was sufficient to satisfy the 'protected computer' requirement)."). *See also BHL Boresight, Inc. v. Geo-Steering Solutions, Inc., 2016 U.S. Dist. LEXIS 44729,* at *45-46 (S.D. Tex. March 29, 2016) ("[C]ourts regularly conclude that systems and devices that function with individual data processing devices are covered by the statute. *See, e.g., Genesco Sports Enter., Inc. v. White, 2011 U.S. Dist. LEXIS 147599,* at *5 (N.D.

238.  The term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter. (18 U.S.C. 1030 (e)(6).)

239.  The term "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity. (18 U.S.C. 1030 (e)(12).)

240.  The computer systems of Plaintiff Resort Advisory Group, including its proprietary customer database, are protected computers within the meaning of the CFAA because the computers are used in and affect interstate commerce. The information on the computers, including trade secrets, is not open to the public and has restricted access.

241.  Defendants Barlow and Barlow & Associates, by way of an employment agreement, had broad, but not unlimited, authorized access to the computer systems of Plaintiff between on or around January 17, 2017 and in or about August-September 2018.

242.  Defendant Barlow and Barlow & Associates provided legal timeshare resolution services to the clients of Plaintiff. Barlow was assigned clients on an "as needed" basis for a fixed fee. During legal representation of the assigned client, Barlow had access to Plaintiff's computer database file of that client and to all details from that client's file on Plaintiff Resort Advisory Group's protected computers.

243.  It was not within Defendant Barlow's authorized access to the protected computer systems of Plaintiff Resort Advisory Group to access the  files of clients he was unassociated with and/or he provided no legal representation to, nor did

---

Tex. Oct. 27, 2011), *report and recommendation adopted*, *2011 U.S. Dist. LEXIS 147063* (N.D. Tex. Dec. 22, 2011) (corporate server is protected computer); *Donahue v. Tokyo Electron Am., Inc., 42 F. Supp. 3d 829, 843 (W.D. Tex. 2014)* (computer network is protected computer). *See also NovelPoster v. Javitch Canfield Group, 140 F. Supp. 3d 938,* at *13 n.4 (N.D. Cal. Aug. 4, 2014) (online accounts are protected computer) … [Devices that] provide data storage functions [are] potentially [] within the ambit of the definition of a computer ('computer' . . . includes any data storage facility . . . directly related to or operating in conjunction with such [data Processing] device.').").

Defendant Barlow and Barlow & Associates have authorized access to the financial records of Plaintiff's company, nor the private contractual arrangements of Plaintiff with other attorneys, vendors, landlords, and employees stored on the protected computer systems without prior approval from Plaintiff.

244.   Unknown to Plaintiff Resort Advisory Group, who is continuing to investigate, in, around or prior to August-September 2018, Defendant Barlow and Barlow & Associates substantially and completely breached their fiduciary and ethical duties to Plaintiff and utilized Plaintiff's protected computer systems, without authorization, in a scheme to redirect client activity and payments to accounts exclusively controlled by Barlow and Barlow & Associates.

245.   Upon discovery of the illicit scheme and unauthorized access and use of Plaintiff's protected computers Plaintiff Resort Advisory Group immediately confronted Defendants Barlow and Barlow & Associates in or about August-September 2018 and terminated them as independent legal counsel for Plaintiff.

246.   At the same time, it was made clear to Defendant Barlow and Barlow & Associates that all access to Plaintiff Resort Advisory Group's computer systems for any reason was rescinded and revoked.

247.   Upon information and belief, Plaintiff alleges that Defendants Barlow and Barlow & Associates planned, and conspired to plan with other Defendants, to access the protected computer systems of Plaintiff Resort Advisory Group without authorization in order to gain access and steal the trade secrets of Plaintiff after all access privileges had been revoked.

248.   Plaintiff Resort Advisory Group alleges the motivations for this illegal access were to steal the trade secrets and full client database of Plaintiff[7] to start a competing firm and to set upon a path of revenge by purposefully using the illegally

---

[7] In the 1996 amendments to section 1030, Congress clarified that section 1030(a)(2) would 'ensure that the theft of intangible information by the unauthorized use of a computer is prohibited in the same way theft of physical items are protected.'" H. Marshall Jarrett, Michael W. Bailie, Ed Hagen, and Scott Eltringham, *Prosecuting Computer Crimes*, p.18 (Office of Legal Ed. Jan. 14, 2015) www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ccmanual.pdf (quoting S. Rep. No. 104-357, at 7, *available at* 1996 WL492169).

obtained data to harass and interfere with the legitimate business prospects and contracts of Resort Advisory Group  and to ultimately set Plaintiffs up for an extortion attempt to "resell" the stolen trade secrets back to Plaintiffs and stop all other interfering, illegal activities against Plaintiffs.

249.  These intentional actions by Barlow and Barlow & Associates to illegally access the protected computer systems of Plaintiff Resort Advisory Group were done without authorization of any kind, and even if Defendants Barlow and Barlow & Associates had accessed the computer systems of Plaintiff prior to the complete revocation of authorization and access rights to obtain the same trade secrets of Plaintiff, it would have greatly exceeded the bounds of the authority granted to Barlow and Barlow & Associates by Resort Advisory Group..

250.  Plaintiff Resort Advisory Group further alleges that Defendant Barlow conspired with Barlow & Associates and other Defendants to gather protected trade secrets belonging exclusively to Plaintiff as part of an orchestrated scheme of deriving illicit profits, and of harassment and defamation of Resort Advisory Group.  Indeed, Defendant Barlow conspired with Barlow & Associates to interrupt and disrupt the business operations of Plaintiffs and to purposely damage the reputation and business prospects of Plaintiffs.

251.  Plaintiff additionally alleges, upon information and belief, that Defendant Barlow conspired to accomplish the above acts with Barlow & Associates and other Defendants for the additional illegal purpose of extorting Plaintiff Resort Advisory Group for more than $800,000 to return the trade secrets and stop other illegal activities aimed at Plaintiff's business.

252.  It is currently unknown how many illegal access attempts were made by Defendants Barlow and Barlow & Associates to steal the trade secrets of Plaintiff Resort Advisory Group. Plaintiff does have actual knowledge of the unauthorized access of Plaintiff's protected computers by way of obtaining and analyzing solicitation letters sent out by Defendant Barlow to individuals containing

information and names Defendant Barlow and Barlow & Associates could not have known, and had no authority to know, without gaining illegal unauthorized access to Resort Advisory Group  protected computers.  (See, e.g., Exhibit 6 attached hereto.)

253.  Defendant Barlow has himself, and in conjunction with Barlow & Associates, has aided and abetted with others to intentionally ignore and breach his fiduciary duty to Plaintiff Resort Advisory Group by illegally accessing the trade secrets contained on the protected computer systems of Plaintiff without authorization.

254.  Having targeted Plaintiff Resort Advisory Group's protected computer systems without authorization in order to illegally obtain and use the trade secrets of Plaintiff, Resort Advisory Group  alleges that Defendant Barlow put into effect his illicit plan to purposely harm the reputation of Resort Advisory Group , derive illicit and unwarranted payments from the clients identified in the trade secrets of Resort Advisory Group , purposefully and intentionally disrupt the business of Resort Advisory Group , and to ultimately use the illicitly gained trade secrets to attempt to extort Plaintiff to pay over $800,000 to stop current and future illegal activities by Defendants.

255.  Plaintiff Resort Advisory Group further alleges this was part of an ongoing illegal scheme to contact current and former clients of Plaintiff to falsely accuse Resort Advisory Group of committing fraud on consumers, to aid, encourage, and coach clients and former clients of Resort Advisory Group  to file frivolous civil actions against Resort Advisory Group , and to further aid and encourage clients and former clients of Resort Advisory Group  to contact law enforcement to file false criminal charges against Resort Advisory Group  in hopes to put Resort Advisory Group  out of business entirely.

**PLAINTIFFS HAVE STANDING TO BRING A CIVIL CFAA CLAIM**

256.  While the CFAA is a criminal statute, "[a]ny person who suffers damage or loss by reason of a violation [thereof] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" so long as the violation "involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c )(4)(A)(i)." (18 U.S.C. 1030(g).)

257.  One of the enumerated factors that may be found before a civil action under the CFAA is permitted is a "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." (18 U.S.C. 1030(c)(4)(A)(i)(I).)

258.  The term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." (18 U.S.C. 1030(e)(11).)

259.  In furtherance of the above allegations, Defendants furthered their scheme of illegally accessing the protected computers of Plaintiff Resort Advisory Group and taking control of the trade secrets and customer database, by then attempting to extort over $800,000 from Plaintiffs in order to return the stolen information and discontinue other illegal activities currently being orchestrated by Barlow and other Defendants against Plaintiffs through use of the proprietary information.

260.  By attempting to extort Plaintiffs to pay over $800,000 for return of the protected trade secrets and the cessation of other illegal acts against Plaintiffs, Defendants, by their own actions and words, jointly and severally have admitted and agreed that the damages incurred by Plaintiffs due to the unauthorized access of Plaintiff's protected computers are well in excess of $5,000.

261.  Plaintiffs further allege that the cost of the investigation, remediation, and lost revenue caused by the unauthorized access of Plaintiffs' computers by Barlow Defendants has cost Plaintiff far in excess of $5,000 within the last year.

262.  By virtue of the aforementioned conduct, Defendants Barlow and Barlow & Associates violated, and have conspired with others to violate, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing the protected computer systems and databases of Plaintiff Resort Advisory Group used for interstate commerce and communications, without authorization or by exceeding his authorized access to the computer systems and databases, in order to take possession and control of the data contained on these protected computer systems for an orchestrated scheme of illegal activity including, but not limited to, defamation, extortion, the purposeful interference with the business and contractual relations of Plaintiff, and the wrongful use of civil proceedings.

263.  Plaintiffs have has sustained substantial damage and loss by, *inter alia*, being forced to expend substantial sums of money well in excess of $5,000 to respond to and defend against the frivolous lawsuits orchestrated by the illegal behavior of Barlow, the investigation of the unauthorized access of Resort Advisory Group 'ss protected computer systems by Barlow, lost revenues, and substantial costs currently in excess of $50,000 in responding to the attempted extortion attempt by Barlow to monetize the illegal fruits of his unauthorized computer access.

264.  Plaintiffs are is entitled to damages for Barlow and Barlow & Associates violation of Section 1030(a)(2)(C) in an amount to be determined at trial but believed to be at least $75,000.

265.  Plaintiffs further seek damages for the lost revenues from the damage caused by Barlow Defendants illegal computer access and subsequent misappropriation of trade secrets.

266.  Plaintiffs further seek damages for losses related to the investigation of the computer access and subsequent required legal actions against Barlow Defendants.

267.  Due to the oppressive, malicious, and fraudulent nature of the illegal actions of Barlow Defendants, Plaintiffs are entitled to punitive damages.

**CFAA § 1030(b) Violations**

268.  Section 1030(b) of the CFAA prohibits a person from conspiring to violation any other subsection of the CFAA.

269.  Barlow has violated the CFAA by conspiring with other Barlow Racketeering Enterprise members to commit the 18 U.S.C. § 1030(a) offenses listed above.

270.  Upon information and belief, Defendants Barlow and Barlow & Associates conspired to access the protected computer systems without authorization in order to access and steal the full confidential client database and trade secrets of Plaintiff Resort Advisory Group for use by the Barlow Racketeering Enterprise on, around, or after August – September 2018.

271.  Upon information and belief, Defendants Barlow and Barlow & Associates conspired to access the protected computer systems in substantial excess of any granted authorization, believed to occur on multiple occasions between January 2018 and August-September 2018, for the illicit purpose of stealing and redirecting clients and client payments directly for the exclusive benefit of Barlow and Barlow & Associates

272.  Upon information and belief, Barlow conspired with Defendant ATTFund, Defendant Case in Chief LLC, Defendant CDRS and Defendant Phoenix to intentionally make unauthorized access and to intentionally make access in violation of authorization of Plaintiff Resort Advisory Group's protected computer systems in order to obtain trade secrets and proprietary customer and former customer information to engage in various illegal acts to purposefully interfere with and harm the contractual and business prospects of Plaintiffs, and to further conspire with Defendants to attempt to extort an over $800,000 payment from Plaintiffs between February 27 and March 4, 2020, and continuing to the present, in return for a cessation of current and future illegal activities by Defendants.

273.  Upon information and belief, Plaintiffs allege Defendant Barlow further

conspired to use the trade secrets and proprietary information obtained from violation of the CFAA to contact current and former clients of Resort Advisory Group and purposefully and falsely defame the business reputation of Plaintiffs, both orally and in writing, that Plaintiffs have committed fraud against them and other consumers in order to deceive them and gain their trust.  Plaintiffs further allege that Defendant Barlow then conspired with deceived current and former clients, including conspiring with other Barlow Defendants to provide legal and financial assistance to file frivolous civil claims of fraud against Plaintiffs and to additionally make false allegations of illegal activity to law enforcement about Plaintiffs' business activities.

274.  Plaintiffs are entitled to damages for Barlow Defendants violation of Section 1030(b) in an amount to be determined at trial but believed to be at least $75,000.

275.  Plaintiffs further seek damages for the lost revenues from the damage caused by Barlow Defendants illegal computer access and subsequent misappropriation of trade secrets.

276.  Plaintiffs seek consequential damages resulting from Barlow Defendant's theft and misappropriation of Trade Secrets.

277.  Plaintiffs further seek damages for losses related to the investigation of the computer access and subsequent required legal actions against Barlow Defendants.

278.  Due to the oppressive, malicious, and fraudulent nature of the illegal actions of Barlow Defendants, Plaintiffs are is entitled to punitive damages.

### THIRD CAUSE OF ACTION

(By All Plaintiffs Against All Defendants)

### THREAT TO INJURE BUSINESS (18 U.S.C. 875(d))

279.  Paragraphs 1-278 are alleged and incorporated herein by reference.

280.   On the basis of the misconduct detailed herein, Defendants Barlow and Barlow & Associates have purposefully, intentionally, and repeatedly violated, and

conspired to do the same, 18 U.S.C. 875 section (d) and 18 U.S.C. 876 section (d).

Additionally, Defendants Barlow 10 have purposefully, intentionally, and

repeatedly violated, and conspired to the same, 18 U.S.C. 875 section (d) and 18

U.S.C. 876 section (d).

**Joint Factual Basis for Third Cause of Action 18 U.S.C. 875(d) and Fourth
Cause of Action 18 U.S.C. 876(d)**

281.  Upon information and belief, Plaintiffs allege alleges that starting in or

around August-September 2018 and continuing on to the present date, Defendants

Barlow and Barlow & Associates, in conjunction with Barlow Racketeering

Enterprise, knowingly and intentionally devised a plan to purposefully harm the

business prospects and reputations of Plaintiffs in order to extort money from

Plaintiffs in order to stop harming and harassing Plaintiffs and their the businesses.

282.  The plan involved first accessing and obtaining the trade secrets of Plaintiff

Resort Advisory Group, including the entire client database. This was accomplished

by Defendants Barlow and Barlow & Associates illegally accessing the protected

computers of Resort Advisory Group in, around, or prior to August-September

2018, and then taking possession of the trade secrets and client database.

283.  Defendants Barlow and Barlow & Associates then, at regular intervals,

drafted and mailed letters to clients in the database containing purposefully false

information that Plaintiffs had committed various acts of fraud against them and

offered "assistance." These letters were not sent directly to Plaintiff Resort

Advisory Group, they were targeted to Plaintiff's clients and former clients for the

explicit purpose of utilizing unwitting victims to threaten the business of Plaintiffs.

284.  Once Defendant's Barlow and Barlow & Associates determined they had

gained the confidence of the victim, they then sent further correspondence by mail,

in conjunction with Defendant CDRS, Phoenix, Case in Chief LLC and ATTFund,

instructing and assisting the unknowing victim to purposefully and intentionally

threaten the business of Plaintiffs through the filing of false civil and criminal

charges against Plaintiffs, and false and baseless state bar complaints against

Attorney, and/or threaten to accuse Plaintiffs of committing a crime by contacting

law enforcement to file false criminal charges against Plaintiffs with the direct goal

of substantially harming the business of Plaintiffs.

285.  Plaintiffs allege Defendants continued this course of action for more than a

year before putting the next phase of the plan into action.  Between February 27 and

March 4, 2020, and thereafter, Defendant Barlow and Barlow & Associates

admitted to the filing of at least twelve criminal complaints against Plaintiffs at

Defendants Barlow and Barlow & Associates direction by Barlow 10 racketeering

members and demanded the sum of over 800,000 be paid to an account controlled

by Barlow and Barlow & Associates to make them go away.

286.  Defendants Barlow and Barlow & Associates, during this time, additionally

threatened, directly and indirectly, that more lawsuits were coming, and more harm

would occur, if the monies were not paid. Defendant Barlow and Barlow &

Associates actually threatened that this payment is required to make the complaints

go away or Plaintiffs will be ruined and put out of business with additional

complaints.

287.  Defendants Barlow and Barlow & Associates framed the conversation during

this time  as a "negotiation," but, all Defendants at all times knew that the

underlying claims were frivolous, false, and entirely orchestrated by them in order

to threaten and harm the business of the Plaintiffs as a ruse to extort money from

Plaintiffs. At no point did Barlow and Barlow & Associates (nor their purported

"clients") have any legitimate claim to the monies demanded and at all times, the

acts were in furtherance of the overarching plan to extort a substantial sum of

money by Defendants.

**VIOLATION OF 18 U.S.C. 875 (d)**

288.  18 U.S.C. 875(d) makes it illegal to knowingly and intentionally use

interstate communications to wrongfully threaten to accuse of a crime, wrongfully

threaten to injure the property, or wrongly threaten the reputation of a party with an intent to extort.[8]

289.  The intent to extort has been defined in the Hobbs Act, 18 U.S.C. 875 et. seq., as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right" which has been interpreted under section (d) as "the use of a wrongful threat to procure something of value." (*Id.*)

290.  18 U.S.C. 875 does not require the threat to be directly communicated to its target; it prohibits communication containing any threat regardless of whether it reaches its target.[9]

291.  As detailed above, Defendants Barlow and Barlow & Associates have purposefully and knowingly transmitted, by way of interstate commerce, multiple communications directing deceived consumers to wrongfully threaten the business and reputation of Plaintiffs by filing false civil and criminal charges against Plaintiffs, and false and baseless state bar complaints against Klein, in order to extort a sum of over $800,000 in direct violation of 18 U.S.C. 875(d).

292.  The Barlow 10 did knowingly and intentionally cause to be filed and published, by way of interstate commerce, false civil and criminal charges against Plaintiffs in order to threaten the business of Plaintiffs.

293.  Additionally, Plaintiffs allege alleges that Defendants, individually and jointly, additionally transmitted, by way of interstate commerce, multiple communications specifically to threaten criminal charges, by way of assisting, instructing, and funding third parties to report false crimes to law enforcement against Plaintiffs as part of the overarching scheme to extort money from Plaintiffs in violation of 18 U.S.C. 875(d).

---

[8] (See *United States v. Coss* (6th Cir. 2012) 677 F.3d 278, 280.)
[9] (*United States v. Jeffries* (6th Cir. 2012)  692 F.3d 473, 2012 FED App. 0286P, reh'g denied, reh'g, en banc, denied, 2012 U.S. App. LEXIS 24057 (6th Cir. Oct. 31, 2012), cert. denied, 571 U.S. 817, 134 S. Ct. 59, 187 L. Ed. 2d 25 (2013).)

294.  Further, the Barlow 10 each aided and abetted one another for the common goal of intentionally threatening criminal charges against Plaintiffs by threatening to, and actually filing, false criminal allegations with law enforcement with the knowledge that these allegations would be publicly published by way of interstate commerce.

295.  Plaintiff Resort Advisory Group further alleges that:

a)  Plaintiff is operating a limited liability company, dba Resort Advisory Group which is considered a corporation or, alternatively, a firm or association as defined under 18 U.S.C. 875(d);

b)  Plaintiff alleges that, between February 27 and March 4, 2020, and continuing to the present, Defendants Barlow and Barlow & Associates attempted to extort over $800,000 from Plaintiffs, which is "money or other thing of value" under 18 U.S.C. 875(d);

c)  Upon information and belief, Plaintiff alleges that this extortion attempt by Defendant was intentional and done in furtherance of violations of 18 U.S.C 875(d) as well as other crimes enumerated in this Complaint;

d)  On multiple occasions between in or about August-September 2018 and the present, Barlow Defendants drafted and sent interstate communications to the Barlow 10 and others to intentionally and purposefully threaten the reputation and business of Plaintiffs;

e)  Defendants Barlow and Barlow & Associates demanded this illegal payment to stop further interstate threatening communications and withdraw pending false civil and criminal claims against Plaintiffs.

f)  Defendants did transmit, by way of interstate commerce, multiple threatening communications by mail, email and phone, to third parties which the Barlow Defendants had intentionally deceived and created a false confidence in;

g)  Defendants communications included what a reasonable person would

1    interpret as threats to injure the business reputation of Plaintiffs;

2        h)    Defendants communications included what a reasonable person would

3    interpret as threats to falsely accuse Plaintiffs of crimes;

4        i)    Barlow Defendants did not send the threatening communications

5    directly to Plaintiffs, but instead intended that third parties forward and/or

6    carry out the threats against Plaintiff in furtherance of multiple violations of

7    18 U.S.C. 875(d);

8        j)    Defendant does not need to have actually followed through with the

9    threats to be in violation of 18 U.S.C. 875(d);

10        k)    Barlow Defendants did encourage and provide direct assistance to the

11    Barlow 10 and other third parties to follow through with the threats to the

12    reputation of Plaintiffs by actually filing multiple false civil claims against

13    Plaintiffs;

14        l)    Barlow Defendants did encourage and provide direct assistance to

15    Barlow 10 and third parties to follow through with the threats to falsely

16    accuse Plaintiffs of crimes to law enforcement, and false and baseless state

17    bar complaints against Attorney.

18        m)    Barlow Defendants further conspired, and continue to conspire, with

19    other Defendants to accomplish the illicit goals, and future illicit goals, of

20    repeated violations of 18 U.S.C. 875(d).

21    296. As a result of Defendants actions to violate 18 U.S.C. 875(d), the public

22    reputation of Plaintiffs has been substantially and irreparably harmed and the

23    business of Plaintiffs has been substantially and irreparably harmed.

24    297. Further, Plaintiffs have sustained substantial damages from the violation of

25    18 U.S.C. 875(d) by the Plaintiffs in an amount to be determined at trial, but at least

26    $75,000.00.

27    298.  Plaintiffs additionally seek to enjoin Defendant from further threatened

28    continual violations of 18 U.S.C. 875(d).

## **FOURTH CAUSE OF ACTION**

### **VIOLATION OF 18 U.S.C. 876(d) – Mailing Threatening Communications**

(By all Plaintiffs against all Defendants)

299.  Paragraphs 1-298 are alleged and incorporated herein by reference.

300.  18 USCS § 876 (d) prohibits the mailing of threatening communications, with intent to extort, of harm to property or reputation which is addressed to a natural person.[10] It is not necessary that the writer of the threatening communication be the person who will actually carry out the threat.[11] Moreover, it is not necessary to prove a defendant has a subjective intent to intimidate or threaten in order to establish a communication is a threat, all that is required is a showing that a reasonable person would have found the communication conveyed an intent to cause harm or injury.[12] It is also not required that the purported "victim" of the threats actually receives the communications.[13]

301.  By way of the facts previously asserted above, Defendants Barlow and Barlow & Associates, with assistance from Defendants CDRS, Phoenix Investments Alliance, LLC, Case in Chief LLC and ATT Fund, caused to be mailed through the U.S. mail multiple letters to clients who are natural persons, identified by Defendants Barlow and Barlow & Associates through the stealing and misappropriation of Plaintiff's trade secrets, threats to the business of Plaintiffs and threats of criminal charges against Plaintiffs, and false and baseless state bar complaints against Attorney, in order to extort money from Plaintiffs.

302.  Defendants set upon a course of action to accomplish this goal through the

---

[10] (*United States v. Havelock* (9th Cir. 2012) 664 F.3d 1284, 40 Media L. Rep. (BNA) 1129. (requiring that the threatening communication be addressed to a "natural person" when analyzing requirements of 18 U.S.C. 876.)
[11] (*United States v. Reynolds* (7th Cir. 1976) 532 F.2d 1150, overruled in part *United States v. Johnson* (7th Cir. 1992) 965 F.2d 460.)
[12] (*United States v. Mabie* (8th Cir. 2011) 663 F.3d 322, cert denied 568 U.S. 829 (2012).)
[13] (*United States v. Geisler* (7th Cir. 1998) 143 F.3d 1070; *United States v. Ahmad* (M.D. Pa 1971) 329 F. Supp 292.)

use and deception of third parties, by way of a series of deceptive communications sent by mail, to instruct and encourage the deceived third parties into filing a series of frivolous civil lawsuits against Plaintiffs in order to damage the reputation of Plaintiffs and harm the business prospects of Plaintiffs.

303.  Defendants further set upon a course of action to deceive third parties, through a series of deceptive communications by mail, to instruct the deceived third parties to file false criminal charges against Plaintiffs for the purpose of harming the reputation and business prospects of Plaintiffs.

304.  Once these goals of mailing the threatening communications had been accomplished to the satisfaction of Defendants, Defendants then set about to extort an amount of approximately $800,000 between February 27 and March 4, 2020, and continuing to the present, in order to discontinue mailing further threatening communications and cease other illegal activities targeting Plaintiffs that were being perpetuated by Defendants.

305.  Plaintiffs allege alleges, therefore, that the mailing of communications to deceived third parties that encourage and instruct them to file false civil and/or criminal charges against Plaintiffs, and false and baseless state bar complaints against Attorney, are reasonably interpreted as threats designed to harm the reputation and business prospects of Plaintiffs. Defendant has therefore clearly violated 18 U.S.C. 876(d).

306.  Plaintiffs Resort Advisory Group further alleges that:

(a)     Defendants drafted multiple letters that a reasonable person would interpret as threats to the reputation and business of Plaintiffs;

(b)     Defendants deposited each of the threatening letters into the U.S. mail;

(c)     Defendants addressed each of the threatening letters to a natural person identified from the illegal acquisition of Plaintiff Resort Advisory Group's trade secrets and client database;

(d)     Defendants encouraged and instructed the third parties to carry out the

instructions in the threatening letters to either file false civil lawsuits against
Plaintiffs or to file false criminal charges against Plaintiffs with law
enforcement;

(e)     Defendant is not required to actually carry out the threats, or carry out
the threats themselves to be liable;

(f)     Defendants knew, at all times, that the information contained in the
mailed letters was substantially and demonstrably false, and even without any
action by third party recipients, intended to threaten and harm the reputations
of Plaintiffs;

(g)     Defendants reasonably believed that a pattern of repeated false civil
and criminal complaints against Plaintiffs would cause substantial harm to
Plaintiffs' business and reputation and thereby knew that each of the
communications they sent by mail constitutes a threat; and

(h)     Defendants intended, and did attempt to, extort Plaintiffs for the sum
of over $800,000 in conjunction with the mailing of the threatening
communications.

307.  Plaintiffs' reputation has been substantially and irreparably harmed by the
continuing illegal conduct of Defendant and threatened future illegal conduct.

308.  Plaintiffs have sustained significant damages as a direct result of Defendants'
illegal actions in violation of 18 U.S.C. 876(d) in an amount to be determined at
trial, but at least $75,000.00.

309.  Plaintiffs additionally seek to enjoin Defendants from further threatened
continual violations of 18 U.S.C. 876(d).

## FIFTH CAUSE OF ACTION

**VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C 1836(b))**

(By Plaintiff Resort Advisory Group Against All Defendants)

310.  Paragraphs 1-309 are alleged and incorporated herein by reference.

311.  Plaintiff Resort Advisory Group operates a business offering counseling and legal assistance to aggrieved consumers who have been subject to illegal and unconscionable practices during the sales process by a timeshare sales company to consumers in California and across the United States through their public website and offices in Mission Viejo, California.

312.  Plaintiff Resort Advisory Group has trade secrets which include, without limitation, sales, marketing and client case evaluation methodologies, pricing structures, specific methods of attack on various types of timeshare contracts, proprietary analysis and valuation techniques, company balance sheets, private contractual details with third parties, bank account balances (collectively, "Business Knowhow") and a private proprietary client database which includes substantial personal, accounting, and work product details for each client and potential client. The trade secrets are not available to the public by any means.

313.  The trade secrets are contained on the protected computer systems of Plaintiff Resort Advisory Group with password protected access, and the information accessible is regulated by management depending on employee job duties. Plaintiff Resort Advisory Group regularly takes reasonable steps to ensure the integrity of the protected computer system, including password protection, login access controlled by the program administrator, and access tracking.

314.  The information contained in Plaintiff Resort Advisory Group's trade secrets has substantial and significant independent value as both trade secret intellectual property (methods and means of conducting business) and monetary value (private client list of pending, current, and past clients) such that in the possession of a potential competitor who endeavored to enter this business, they would likely have an absolute, immediate, and irrefutable competitive advantage.

315.  Plaintiff Resort Advisory Group has expended substantial amounts of money, time, and business efforts over multiple years to develop the proprietary trade secret information contained on their protected computer systems.

316.  Likewise, a competitor seeking to harm Plaintiff Resort Advisory Group's business, or gain an unfair competitive advantage, certainly could do so with access to Plaintiff's protected trade secrets. Indeed, the trade secrets of Plaintiff, including its Business Knowhow and proprietary client database, are both central and essential to the company's successful ability to compete, assist consumers, and generate profits as a going concern.

317.  Trade secret theft can occur when an individual believes the information they are accessing or attempting to access is a trade secret, regardless of whether the data constitutes an actual trade secret.[14]

318.  Defendant Barlow and Barlow & Associates formerly assisted Plaintiff Resort Advisory Group with legal timeshare resolution services as an independent contracted lawyer between on or around January 17, 2017 and in or about August-September 2018.  For client referrals and their services, they received either a fixed fee per client or a weekly fee. Defendant Barlow and Barlow & Associates did have limited authorized access to Plaintiff Resort Advisory Group's protected computer systems to access client information and Business Knowhow for clients assigned to Barlow. During the tenure of the employment of Barlow, he was paid approximately $300,000.00 fees for client referrals and services.

319.  In or about August-September 2018, and since, Plaintiff Resort Advisory Group discovered through investigation, information and belief, that Barlow had been diverting payments owed to Plaintiff Resort Advisory Group to accounts solely controlled by Barlow and Barlow & Associates and had been siphoning away clients in violation of his contractual agreements and fiduciary duties to Plaintiff. Plaintiffs confronted Barlow with the allegations and terminated the employment relationship in or about August-September 2018.

320.  As part of the termination of Barlow's employment, all rights to access the protected computer systems of Resort Advisory Group were immediately revoked.

---

[14] (*United States v. Hsu* (3d Cir. 1998) 155 F.3d 189, 47 U.S.P.Q 2d (BNA) 1784)

321.  Plaintiff alleges that Barlow, in conjunction with Barlow & Associates and other Defendants, then planned and conspired together to put a plan into action to get revenge on Resort Advisory Group for severing the employment relationship, in conjunction with deciding to compete directly against Plaintiff, by gaining access to Resort Advisory Group protected computers systems without authorization, accessing and stealing all of Plaintiffs' trade secrets, misappropriating those trade secrets to compete with Resort Advisory Group and to identify vulnerable customers that Barlow and other Defendants could deceive, and then use those deceived clients to purposely harm the business reputation of Plaintiffs through the filing of false civil and criminal claims against Plaintiff.

322.  The overarching goal of Defendants in illegally accessing the protected computer systems of Resort Advisory Group was to misappropriate the trade secrets of Resort Advisory Group to substantially damage Plaintiffs' business in order to gain significant leverage in order to extort, and conspire to extort, a large sum of money to stop the illegal behavior.

323.  Between February 27 and March 4, 2020, and continuing to the present, Defendant Barlow and Barlow & Associates did actually attempt to extort Plaintiffs for the sum of over $800,000 in order to stop current and future misappropriation of Resort Advisory Group's trade secrets and stop all other current and future illegal activity.

324.  Therefore, Plaintiff further alleges:

  a)      In, around, prior to and after August-September 2018, Defendant Barlow and Barlow & Associates did, purposefully and without authorization, gain access to the protected trade secrets of Plaintiff Resort Advisory Group;

  b)      Defendant Barlow and Barlow & Associates stole the trade secrets of Resort Advisory Group for their own, unauthorized, personal use and in furtherance of Barlow Racketeering Enterprise goals;

  c)      Defendant Barlow and Barlow & Associates did actually use the trade

secrets of Plaintiff Resort Advisory Group to purposefully target what they believed to be vulnerable clients and former clients in order to leverage the superior knowledge contained in the trade secrets to deceive the clients into various false beliefs such that Barlow Defendants could utilize them to orchestrate a scheme to purposefully and intentionally harm the business and business reputation of Plaintiffs;

d)      Defendant Barlow and Barlow & Associates did actually and knowingly use the trade secrets of Plaintiff Resort Advisory Group to generate substantial income from clients and former clients for their own personal benefit;

e)      Defendant Barlow and Barlow & Associates knew, or had reason to know prior to the time of access, that the trade secrets accessed by them were done without the consent of the Resort Advisory Group;

f)      Defendant Barlow and Barlow & Associates knew, or had reason to know, prior to illegal access of the trade secrets of Plaintiff Resort Advisory Group, that the methods used to access the trade secrets of Plaintiff were improper and unauthorized and further that neither Barlow nor Barlow & Associates had any authorization to view or utilize the trade secrets of Resort Advisory Group for any purpose;

g)      Defendant Barlow and Barlow & Associates, in conjunction with Defendants CDRS, Phoenix Investments Alliance, LLC, Case in Chief LLC and ATTFund, planned, and conspired to plan, to willfully and maliciously misappropriate the trade secrets of Plaintiff Resort Advisory Group for their own personal financial gain and to ultimately extort Plaintiffs for a large sum of money in violation of multiple Federal and state laws;

h)      All of the actions taken by Barlow and Barlow & Associates to illegally access and misappropriate the trade secrets of Plaintiff Resort Advisory Group occurred in, around, prior to and/or after August-September

2018.

325.  Plaintiff Resort Advisory Group has been substantially harmed by the misappropriation of trade secrets by Barlow and Barlow & Associates in an amount to be determined at trial but believed to be well in excess of $75,000.

326.  Plaintiff Resort Advisory Group further seeks punitive damages against the Barlow Defendants for willfully and maliciously misappropriating the trade secrets of Resort Advisory Group.

327.  Plaintiff Resort Advisory Group alleges that Defendants continue to misappropriate the trade secrets of Plaintiff for their own financial benefit and will continue to do so in the future unless enjoined by the Court to immediately cease all use and access.  Plaintiffs therefore requests the Court to enjoin Defendants from any further access and use of the trade secrets of Plaintiff Resort Advisory Group.

328.  Plaintiffs further seeks attorney's fees and costs pursuant to the provisions of the Defend Trade Secrets Act;

329.  Plaintiff also seeks to enjoin Barlow Defendants from further willful and malicious misappropriation of the trade secrets of Plaintiff.

## SIXTH CAUSE OF ACTION

### VIOLATION OF ECONOMIC ESPIONAGE ACT - 18 U.S.C. 1832

(By Plaintiff Resort Advisory Group Against All Defendants)

330.  Paragraphs 1-329 are alleged and incorporated herein by reference.

331.  Plaintiff Resort Advisory Group has standing to bring this cause of action pursuant to the Defend Trade Secrets Act of 2016.

332.  18 U.S.C. 1832 defines actionable conduct to steal or attempt to steal the trade secrets of an individual or business. It states:

"(a) Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy."[15]

333.  A defendant can violate 18 U.S.C. 1832 simply by seeking to acquire information they believe to be a trade secret, whether or not that information actually qualifies as a trade secret or not.[16]

334.  Defendants Barlow and Barlow & Associates did knowingly, starting prior to August or September 2018 and continuing thereafter, steal and misappropriate the trade secrets of Plaintiff Resort Advisory Group, without any authorization, for the mutual and joint benefit of all Barlow Racketeering Enterprise Members.

335.  Defendants Barlow and Barlow & Associates did knowingly steal, copy, and misappropriate the proprietary Business Knowhow of Plaintiff Resort Advisory Group for purposes of unfair competition and to harm the business of Resort Advisory Group, starting on or around August or September 2018.

336.  Defendants Barlow and Barlow & Associates did knowingly steal, copy, and misappropriate the proprietary trade secret client database of Plaintiff Resort Advisory Group for purposes of unfair competition and to harm the business of Resort Advisory Group, starting on or around August or September 2018.

---

[15] 18 U.S.C. 1832(a)

[16] (*United States v. Hsu* (3d Cir. 1998) 155 F.3d 189, 47 U.S.P.Q 2d (BNA) 1784)

337.  Plaintiff further alleges that all Defendants, including the Barlow 10, conspired to continually utilize the stolen trade secrets of Plaintiff Resort Advisory Group in furtherance of the illegal goals of Barlow Racketeering Enterprise, as previously detailed.

338.  The trade secrets of Resort Advisory Group, at the time of theft and misappropriation by Defendants, was in active use in interstate commerce.

339.  Defendants intended that the theft and misappropriation of the trade secrets of Plaintiff Resort Advisory Group cause harm to Resort Advisory Group as part of their overall scheme to harm the business and extort money.

340.  As a direct and proximate result of the above illicit acts, Plaintiff Resort Advisory Group has sustained substantial damages in excess of $75,000, in an exact amount to be proven at trial.

341.  Plaintiff Resort Advisory Group is also seeking exemplary and punitive damages for the willful, malicious, and fraudulent acts of Defendants to conspire and intentionally harm Resort Advisory Group by the theft and misappropriation of their trade secrets.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. 1951 (Hobbs Act)

(By All Plaintiffs Against Barlow and Barlow 10)

342.  Paragraphs 1-341 are alleged and incorporated herein by reference.

343.  18 U.S.C. 1951 is also known as the Hobbs Act. That Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."[17]

344.  Plaintiffs have standing to bring this claim under the Hobbs Act as the Supreme Court has indicated "the Hobbs Act expand[s] the scope of common-law

---

[17] (*Scheidler v. NOW, Inc.* (2003) 537 U.S. 393, 397) (18 U.S.C. § 1951(b)(2).)

extortion to include private individuals. (*Id.*) Defendant Barlow is an individual, as are all members of the Barlow 10, as is Plaintiff Klein.

345. "Extortion requires that one obtains the property of another using threat as the method employed to deprive the victim of his property. This "obtaining" is further explained as bringing about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another." (*Id.*)

346. Defendant Barlow, conspiring with the Barlow 10, put into place a patten and practice of racketeering activity to intentionally harm the business of Plaintiffs for the purposes of extortion. Barlow, working directly with the Barlow 10, began a methodical plan to file knowingly false civil claims against Plaintiffs and at the same time, had other members of the Barlow 10 file knowingly false criminal charges against Plaintiffs for the purposes of an extortion attempt. Defendants Barlow and Barlow 10 intended these false civil and criminal claims be filed, and false and baseless state bar complaints against Attorney, specifically because they knew the claims would be made public and damage the reputation of Plaintiffs. Additionally, they would require Plaintiffs to have to hire legal counsel to defend against the charges, at substantial cost, and also disrupt the business.

347. Plaintiffs believe these actions were planned over the course of 2019 by Barlow Racketeering Enterprise Members.

348. Between February 27 and March 4, 2020, and continuing to the present, with initial efforts and plans by Barlow and Barlow 10 in the days prior, Defendant Barlow, acting on behalf of, and in furtherance of, all Barlow Racketeering Enterprise members, communicated and met with Plaintiff Resort Advisory Group and demanded a sum of over $800,000 be paid immediately in order for the group to dismiss the false claims and stop current and future use of the stolen trade secrets of Plaintiffs.

349. At the same meeting, Barlow also threatened Plaintiffs with additional false complaints against Plaintiffs he stated were ready to go the following week. He

further threatened that the Defendants would not stop filing claims until the money

demand was met and would go after Plaintiff's management individually, including

placing liens on their property and assets.

350.  The predicate acts of filing false criminal and civil charges to set up the

extortion attempt directly and substantially harmed the business of Plaintiffs by

publicly damaging the reputation of Plaintiffs and damaging the ability to maintain

and grow their proprietary customer base in California and other states. The future

threats of additional false civil and criminal claims, and false and baseless state bar

complaints against Attorney, were made specifically to indicate that Defendants had

planned future harm to the business of Plaintiffs as well if the demands were not

met.

351.  By intentionally interfering with the business of Plaintiffs and then

attempting to extort the sum of over $800,000 belonging to Plaintiffs in order to

stop current and future planned false civil and criminal charges against Plaintiffs,

Defendants Barlow and Barlow 10 each, individually and jointly have violated the

Hobbs Act, 18 U.S.C. 1951.

352.  The intentional interference with the business of Plaintiffs, and subsequent

extortion, occurred through the use of mail, internet, phone, as well as in-person

threats.

353.  As a direct and proximate result of Defendant's illegal actions to violate 18

U.S.C. 1951, Plaintiffs have has suffered substantial damages in the amount of at

least $75,000, in an exact amount to be proven at trial.

354.  Additionally, Plaintiffs' business reputation has been harmed, and continues

to be threatened by, Defendants actions in violation of 18 U.S.C. 1951 in an

immeasurable amount, given that Plaintiffs business largely relies on trust and

reputation by public customers.

355.  Plaintiffs  therefore request the Court to enjoin all current and future

violations of 18 U.S.C. 1951 by Defendants in the filing of false civil and criminal

lawsuits in order to intentionally harm the business of Plaintiffs for purposes of extortion and intentional harm to the reputation and viability of the business of Plaintiffs.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. 1957

(By All Plaintiffs Against All Defendants)

356.  Paragraphs 1-355 are alleged and incorporated herein by reference.

357.  18 U.S.C. 1957 prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified illegal activity.[18] Specified "illegal activity" has been defined, in part, by the list of unlawful activity under 18 U.S.C. 1956(a) which in turn relies or refers to the list of specified unlawful activity under 18 U.S.C. 1961(1)(A.)[19]

358.  Each individual transaction of money in furtherance of, or as a result of, specified illegal activity gives rise to a separate violation of 18 U.S.C. 1957.[20]

359.  Contained in this list of specified unlawful activity is extortion, economic espionage and theft of trade secrets (18 U.S.C. 1832), and interference with commerce by robbery or extortion. (18 U.S.C. 1951)

360.  Upon information and belief, Defendants, through the actions of Defendant Barlow acting on behalf of all Defendants, did attempt to engage in a monetary transaction in excess of $10,000 between February 27 and March 4, 2020, and continuing to the present, resulting from illegal activity, namely extortion, in order

---

[18] (*Flores v. Emerich & Fike* (E.D.Cal. Mar. 31, 2009, No. 1: 05 - CV - 0291 AWI DLB) 2009 U.S.Dist.LEXIS 26965, at *26.)

[19] The "specified unlawful activity" at issue in a Section 1956(a) violation can be an activity constituting an offense listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7)(A). Section 1961(1)(A) lists specific crimes that can constitute predicate acts of racketeering. Under Section 1956(c)(1), this list can also serve as the "specified unlawful activity" necessary to show Section 1956(a) money laundering. (*Flores v. Emerich & Fike* (E.D.Cal. Mar. 31, 2009, No. 1: 05 - CV - 0291 AWI DLB) 2009 U.S.Dist.LEXIS 26965, at *24.)

[20] *See, e.g.*, *United States v. Prescott*, 42 F.3d 1165 (8th Cir. 1994); *United States v. Conley*, 826 F. Supp. 1536 (W.D. Pa. 1993)

to stop the illegal use of Plaintiff Resort Advisory Group's stolen trade secrets and to stop intentionally harming and interfering with Plaintiff's business by the filing of false civil and criminal charges., and false and baseless state bar complaints against Attorney.

361.  Further, Defendant Barlow, upon information and belief, has misappropriated and continues to misappropriate, the protected trade secrets of Plaintiff Defendants Barlow and Barlow & Associates did knowingly steal, copy, and misappropriate the proprietary Business Knowhow of Plaintiff Resort Advisory Group for purposes of unfair competition and to harm the business of Plaintiffs, starting on or around August or September 2018.

362.  The trade secrets of Plaintiff Resort Advisory Group were acquired and misappropriated illegally by Defendant Barlow in or about or prior to August-September 2018. Defendant Barlow has used these trade secrets for his own competitive timeshare resolution business and has used the proprietary client list and database of Plaintiff to knowingly derive illicit criminally derived revenues paid by Plaintiff's clients to Barlow and Barlow & Associates in excess of $10,000 within the last year for the benefit of Barlow, Barlow & Associates, and Barlow 10.

363.  Plaintiffs are currently unaware of how many illicit monetary transactions Barlow and Barlow & Associates may have caused to take place from money derived through participation in the specified illegal activities, but it is believed to be substantially more than one.

364.  Defendants Barlow and Barlow & Associates have also used the stolen and misappropriated trade secrets of Plaintiff to unfairly compete directly with Plaintiff in the timeshare resolution business. Upon information and belief, Plaintiff alleges that Defendants Barlow and Barlow & Associates have misappropriated the trade secrets of Plaintiff to knowingly generate monetary transactions from the public for the sole benefit of Barlow and Barlow & Associates in excess of $10,000.

365.  As a direct and proximate result of Defendants violation of 18 U.S.C. 1957,

Plaintiffs have sustained damages in an amount of at least $75,000, with an exact amount to be proven at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (PENAL CODE 502)

(By Plaintiff Resort Advisory Group Against All Defendants)

366. Paragraphs 1-365 are alleged and incorporated herein by reference.

367. California Penal Code 502 is a general computer crimes statute enacted by the Legislature of California.

368. Plaintiffs have standing to bring this cause of action because Penal Code 502(a) expressly includes a statement of intent that individuals can protect themselves via this section, and Penal Code section 502(e) expressly states that the owner of the computer or computer system damaged by acts in violation of this section can bring a civil action.

**Penal Code Section 502(c)(1)**

369. Penal Code Section 502(c)(1) prohibits "knowingly access[ing] and without permission alter[ing] ... or otherwise using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."

370. As described herein, Barlow Defendants knowingly and without permission or authorization, accessed the computer systems and computer networks of Plaintiff Resort Advisory Group in order to wrongfully obtain proprietary protected trade secrets of Plaintiff as the initial phase of their wrongful scheme to directly compete with Plaintiff for their own personal monetary gain. Barlow Defendants utilized the trade secrets of Resort Advisory Group to contact current and former clients and cajole, entice, and/or deceive them into paying substantial additional sums of

money directly to Barlow Defendants for legal services already fully paid for and contracted with Plaintiff.

371.  Further, Barlow Defendants used the illegal access of the computer systems of Plaintiff Resort Advisory Group to gain control of the trade secrets, with the goal of identifying current and former clients of Plaintiff targeted to be susceptible or vulnerable, based upon information contained in the trade secrets of Plaintiff, to join the Barlow Defendants conspiracy and in furtherance of Barlow Racketeering Enterprise goals. The ultimate goal was to purposely and knowingly damage the reputation and business of Plaintiffs as a method of extorting money from Plaintiffs in order to stop current and future planned illegal activity by Defendants.

372.  Plaintiff is currently unaware of the total number of times, beyond at least one (1), the protected computers and computer networks of Plaintiff were illegally accessed without any authorization by Defendant in or about or prior to August-September 2018, as the investigation is still ongoing.

373.  Plaintiff is informed and believes, based upon a review of various communications sent to Plaintiff Resort Advisory Group's clients by Barlow Defendants on or after August-September 2018, that Defendants had gained unauthorized access to the protected trade secrets of Resort Advisory Group, because the information contained in the communications could not have been discovered or known by Defendants without such illegal access.

### Penal Code Section 502(c)(2)

374.  Penal Code Section 502(c )(2) prohibits anyone who "[k]nowingly accesses and without permission takes, copies or makes use of any data from a computer, computer system, or computer network, or takes or copies supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

375.  Between approximately in, about or prior to August-September 2018, Barlow Defendants knowingly accessed the protected computer systems of Plaintiff Resort

Advisory Group without permission in order to copy and make use of the proprietary trade secrets contained on the protected computer systems of Plaintiff. The data on Plaintiff's protected computer systems, including Trade Secrets, was then knowingly copied without permission by Barlow Defendants to an unknown number of outside storage devices and/or computers owned and controlled by Barlow Defendants.

376.  Barlow Defendants then utilized this illegally obtained computer data for their own competitive interests against, and in direct conflict with, Resort Advisory Group's business, and further for purposes of a common scheme amongst all Defendants to intentionally harm the business of Plaintiffs in order to extort a large sum of money to stop current and future planned illegal activities by Defendants against Plaintiffs.

377.  Plaintiff further alleges:

a)  Barlow Defendants did access the protected computer systems of Plaintiff without authorization on at least one occasion in, about or prior to August-September 2018;

b)  At the time Barlow Defendants accessed the protected computer systems of Plaintiff, any and all employment relationships had been terminated by Plaintiff and all computer access by Barlow Defendants permanently revoked.

c)  Barlow Defendants had actual knowledge of the revocation of computer access and termination of employment at or prior to the time of illegal access of Plaintiff's computers;

d)  Barlow Defendants copied, took control of, downloaded, and stored the proprietary trade secrets of Plaintiffs by way of this illegal computer access;

e)  The computer access by Barlow Defendants was part of a scheme or artifice to deceive, defraud, and extort;

f)  Barlow Defendants utilized the stolen trade secrets to identify and contact clients and former clients of Plaintiff to engage them in the larger scheme to

extort money from Plaintiff;

g)  Barlow Defendants utilized the stolen trade secrets to identify and contact clients and former clients of Plaintiff to fraudulently deceive them into paying fees for unneeded legal services directly to Barlow Defendants.

378.  As a result of Defendants violations of Penal Code Section 502(1) and (2) as described herein, Plaintiffs have suffered damages of at least $75,000, in an amount to be proven at trial.

379.  Plaintiffs seek attorney's fees as provided for by Section 502(e)(2).

380.  Plaintiffs are seeking exemplary and punitive damages for the despicable, malicious, deceitful and fraudulent acts of Defendants.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW § 17200
### (UNLAWFUL, UNFAIR, OR FRAUDULENT ACTS OR PRACTICES)

(By Plaintiff Resort Advisory Group Against Barlow Defendants)

381.  Paragraphs 1-380 are alleged and incorporated herein by reference.

382.  To assert a California Unfair Competition Act (UCL) claim, a private plaintiff needs to have suffered injury in fact and lost money or property as a result of the unfair competition. A plaintiff's "personal information" does not constitute property under the UCL.[21]

383.  In *Rubio v.Capital One Bank* (572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010)), the Central District court explained the requirements for stating a claim under California B.P.C. 17200:

"[T]o state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law.[22] "By proscribing 'any

---

[21] (*In re Facebook Privacy Litig.* (N.D.Cal. 2011) 791 F.Supp.2d 705, 708.)
[22] (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180)

unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable."[23] Where a plaintiff cannot state a claim under the "borrowed" law, [they] cannot state a UCL claim either.[24]

The UCL establishes three varieties of unfair competition - acts or practices which are (1) unlawful, or (2) unfair, or (3) fraudulent.[25]

**Unlawful Business Activity**

384.  An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law.[26] "A business practice is 'unlawful' if it is 'forbidden by law.'"[27]

**Unfair Business Practice**

385.  A business practice is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[28]

**Fraudulent Business Practice**

386.  The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest[29], or to allege that "members of the public are likely to be deceived."[30]

**Court Has the Power to Enjoin Unfair Competition**

387.  Additionally, "any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The

---

[23] (*Id.*)
[24] (See, e.g., Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 718) (citations)
[25] (*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157.)
[26] (*Blank*, 39 Cal.3d at 329, 216 (citing *People v. McKale* (1979) 25 Cal.3d 626, 631-632).)
[27] *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169, 121 (quoting *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.)
[28] (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.)
[29] ," (*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D. Ca. 2001) 178 F.Supp.2d 1099, 1121)
[30] (*Schnall v. Hertz Corp.*(2000) 78 Cal.App.4th 1144, 1167; *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 U.S. Dist. LEXIS 41411, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

1  court may make such orders or judgments . . . as may be necessary to restore to any

2  person in interest any money or property, real or personal, which may have been

3  acquired by means of such unfair competition.[31]

4   388.  Defendant Barlow, in conjunction with Barlow & Associates and Barlow

5  Defendants, did purposefully and intentionally plan and conspire to commit

6  multiple unfair business practices which directly harmed Plaintiff Resort Advisory

7  Group's business, provided substantial monetary benefits to all Defendants, and

8  substantially deceived the public.

9   389.  As previously explained, Barlow Defendants, by way of a business

10  relationship and employment agreement with Plaintiff Resort Advisory Group,

11  gained limited access to the trade secrets and client database of Plaintiff Resort

12  Advisory Group. Barlow Defendants received substantial advance payments from

13  Resort Advisory Group for the expected legal services required for Plaintiffs'

14  clients, yet sometime in, about or prior to August-September 2018, stopped

15  providing any legal services for payments received and started private solicitation

16  of Resort Advisory Group clients to make payments directly to accounts controlled

17  by, and solely for the benefit of, Barlow Defendants. Upon confrontation by

18  Plaintiff Resort Advisory Group of these claims, Barlow and Barlow & Associates

19  business relationship and employment agreement were terminated by Plaintiff in or

20  about August- September 2018.

21   390.  Upon information and belief, Plaintiffs Resort Advisory Group allege that

22  even prior to the August-September 2018 termination of employment by Plaintiff,

23  the Barlow Defendants had planned and conspired to compete directly against

24  Resort Advisory Group, in contravention to signed agreements and both fiduciary

25  and ethical duties, in order that they not have to share in any of the payments made

26  from consumers with Plaintiff.

27   391.  Rather than be paid by Resort Advisory Group, Barlow Defendants instead

28  ――――――――――――
[31] (*Flores v. EMC Mortg. Co.* (E.D.Cal. 2014) 997 F.Supp.2d 1088, 1117.)

determined it to be far more profitable to simply steal the trade secrets of Plaintiff, including the entire client database and its Business Knowhow, and use that to start a timeshare assistance business of their own for their exclusive monetary benefit without the substantial time, effort, and money required to develop their own business from scratch.

392. Put simply, Plaintiffs allege that Barlow Defendants set out to steal the entire business of Resort Advisory Group, to re-create it on their own using Plaintiff's trade secrets and clients, and at the same time planned and conspired to plan to substantially harm the business of Resort Advisory Group in order to set up a future extortion attempt to extract a large sum of money from Plaintiffs. This plan includes the continuing deception of the Barlow 10 to gain their confidence and then incorporating them as willing participants into planning and conspiring to plan illicit activities to harm Plaintiff Resort Advisory Group.

393. Plaintiff Resort Advisory Group further alleges that:

a)    Barlow Defendants conspired to steal, and did in fact steal, the trade secrets of Resort Advisory Group, in, about, prior to and/or after September 2018, to intentionally harm Plaintiff's business and for use in their own timeshare assistance business. Theft of trade secrets as a method of business is and unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1832.

b)    Barlow Defendants purposefully and intentionally misappropriated, and conspired to misappropriate, the trade secrets of Resort Advisory Group in, about or prior to August-September 2018, in order to make their competing business substantially and immediately profitable and the direct expense of, and cost to, Plaintiff Resort Advisory Group's business. Misappropriation of trade secrets as a method of business is and unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1836.

c)    Barlow Defendants conspired to access, and did in fact access, the protected computer systems of Resort Advisory Group without authorization

in, about or prior to August-September 2018 to gain access to the trade secrets of Plaintiff.  The intentional access of a protected computer without authorization as a method of business is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1030 *et. seq.*

d)      Barlow Defendants conspired to mail, and did in fact mail, multiple letters starting in, around or after August-September 2018 to current and former clients of Resort Advisory Group using details obtained through the theft of trade secrets in order to purposely defame the business and business practices of Plaintiff, knowing that such statements are false. The intentional mailing of letters by U.S. mail in furtherance of efforts to purposefully and intentionally defame the business and business practices of Resort Advisory Group is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1341.

e)      Barlow Defendants conspired to mail, and did in fact mail, multiple letters in, around or after August-September 2018 to intentionally harm the business of Resort Advisory Group by: contacting current and former clients of Resort Advisory Group using details obtained through the theft of trade secrets in order to intentionally deceive them and give them a false confidence, and then encouraging, instructing and assisting them to file knowingly false civil and criminal charges against Plaintiffs. Using the mail to encourage, assist, and direct another in the commission of an illegal act (Abuse of Process, Wrongful Use of Civil Proceedings) is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1341.

f)      Barlow Defendants conspired to mail, and did in fact mail, multiple letters in, around, prior to and/or after August-September 2018 to intentionally harm the business of Resort Advisory Group by: purposefully and knowingly creating a false set of facts accusing Plaintiff of committing fraud against the client and then sending those false facts to client through the mail in order to

harm the reputation of Plaintiffs. Using the mail to send knowingly false facts designed to harm the business and reputation of Plaintiff is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1341.

g)      Barlow Defendants conspired to use interstate communications, and did use interstate communications in, around, prior to and/or after August-September 2018, to intentionally harm the business of Resort Advisory Group by: contacting current and former clients of Resort Advisory Group using details obtained through the theft of trade secrets,  intentionally deceived the contacts and gave them a false confidence in order to instruct them to file knowingly false criminal charges against Plaintiff. Using interstate communications to encourage, assist, and direct another in the commission of an illegal act (Abuse of Process, Wrongful Use of Civil Proceedings) is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1343.

h)      Barlow Defendants conspired to use interstate communications, and did in fact use interstate communications, to make telephone calls and send emails in, around, prior to and/or after August-September 2018 to intentionally harm the business of Resort Advisory Group by: purposefully and knowingly creating a false set of facts accusing Plaintiffs of committing fraud against the client and then communicating those false facts to client through the use of interstate communications technology in order to harm the reputation of Plaintiffs. Using interstate communications to send knowingly false facts designed to harm the business and reputation of Plaintiffs is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1341.

i)      Barlow Defendants and Barlow 10 conspired with one another and each individually chose to participate in, an orchestrated and purposeful pattern and practice of racketeering activity, previously identified as Barlow Racketeering Enterprise, to intentionally access the protected computer systems of Resort Advisory Group without authorization to steal the trade

secrets of Plaintiff Resort Advisory Group, to purposefully and intentionally file false civil and criminal charges against Plaintiffs to harm the business and reputation of Plaintiffs, for the goal of extorting a large sum of money from Plaintiffs. Barlow Defendants in conjunction with Barlow 10 Defendants, did attempt to extort over $800,000 from Plaintiffs between February 27 and March 4, 2020, and continuing to the present, and additionally threatened to continue to take further illegal actions to intentionally harm the business of Plaintiffs unless the payment was made.  Engaging in a pattern of repeated racketeering activity in order to intentionally harm the business of Plaintiffs is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1960 *et. seq*.

j)      Barlow Defendants and Barlow 10 each individually and jointly, planned and conspired to plan to falsely accuse Plaintiffs of committing crimes to law enforcement by the use of interstate communications. Barlow Defendants utilized interstate communications to send threatening communications to Barlow 10 instructing, encouraging, and guiding them to file knowingly false criminal charges against Plaintiffs. Barlow 10 Defendants did actually, as part of the plan and conspiracy, contact law enforcement to report that Plaintiffs had committed crimes against certain members of Barlow 10. The sending of threatening interstate communications to intentionally harm the reputation and business of Plaintiffs is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 875(d).

k)      Barlow Defendants and Barlow 10 each individually and jointly, planned and conspired to plan to falsely file civil charges against Plaintiffs by the use of interstate communications. Barlow Defendants utilized interstate communications to send threatening communications to Barlow 10 instructing, encouraging, and guiding them to file knowingly false civil charges against Plaintiffs. Barlow 10 Defendants did actually, as part of the plan and

conspiracy, file false civil claims against Plaintiffs alleging they were harmed by Plaintiff's illegal conduct in order to intentionally damage the reputation and business prospects of Plaintiffs. The sending of threatening interstate communications to intentionally harm the reputation and business of Plaintiffs is an unfair, deceptive, or fraudulent business practice under18 U.S.C. 875(d).

l)      Barlow Defendants and Barlow 10 each individually and jointly, planned and conspired to plan to falsely accuse Plaintiffs of committing crimes to law enforcement by the use of the U.S. mail. Barlow Defendants utilized the U.S. mail to send threatening communications to Barlow 10 instructing, encouraging, and guiding them to file knowingly false criminal charges against Plaintiffs. Barlow 10 Defendants did actually, as part of the plan and conspiracy, contact law enforcement to report that Plaintiffs had committed crimes against certain members of Barlow 10. The mailing of threatening communications to intentionally harm the reputation and business of Plaintiffs is an unfair, deceptive, or fraudulent business practice under18 U.S.C. 876(d).

m)      Barlow Defendants and Barlow 10 each individually and jointly, planned and conspired to plan, to falsely file civil charges against Plaintiffs by the use of the U.S. mail. Barlow Defendants utilized the U.S. mail to send threatening communications to Barlow 10 instructing, encouraging, and guiding them to file knowingly false civil charges against Plaintiffs. Barlow 10 Defendants did actually, as part of the plan and conspiracy, file false civil claims against Plaintiff alleging they were harmed by Plaintiff's illegal conduct in order to intentionally damage the reputation and business prospects of Plaintiffs. The mailing of threatening letters to intentionally harm the reputation and business of Plaintiffs is an unfair, deceptive, or fraudulent business practice under18 U.S.C. 875(d).

n)      Barlow Defendants and Barlow 10, each individually and jointly, planned and conspired to plan, to extort Plaintiffs as part of their intentional

efforts to damage the business and reputation of Plaintiffs. Barlow Defendants and Barlow 10 Defendants did actually attempt to extort Plaintiffs of the sum of over $800,000 between February 27 and March 4, 2020 and continuing to the present. The extortion attempt by Defendants, intended to directly affect the ability of Plaintiffs to engage in interstate commerce, is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1951.

   o)    Barlow Defendants, by and through the intentional theft of trade secrets from Plaintiff Resort Advisory Group and further through the intentional breach of their fiduciary, contractual, and ethical duties, have knowingly and intentionally used the trade secrets of Plaintiff to extract unwarranted payments from Resort Advisory Group's clients and former clients to accounts exclusively controlled by Barlow Defendants for the sole use and benefit of Barlow Defendants. The misappropriation and use of trade secrets to generate monetary transactions for the benefit of Barlow Defendants is an unfair, deceptive, or fraudulent business practice under 18 U.S.C. 1957.

394.  Plaintiffs have been substantially damaged by the pervasive and repeated violations of California Business and Professions Code 17200 by Barlow Defendants and Barlow 10 Defendants of at least $75,000, with the exact amount to be proven at trial.

395.  Plaintiffs further request that the intentional, pervasive and repeated violations of B.P.C. 17200 by Defendants, acting with oppression, fraud, and malice, entitle Plaintiffs to an award of punitive damages per California Civil Code Section 3294.

396.  Plaintiffs request the Court to enjoin the activity of Defendants to stop the repeated and intentional harm to Plaintiffs business from the continual illegal use of Plaintiff Resort Advisory Group's trade secrets to compete against Plaintiff. Barlow Defendants also continue to intentionally deceive and defraud the public by encouraging, and threatening to encourage, other as yet unknown clients, to pay

Barlow Defendants unwarranted additional payments and further to file false civil and criminal charges.

397.  Plaintiffs also request that the Court enjoin Barlow Defendants to cease all activities to compete, directly or indirectly, with Plaintiff Resort Advisory Group's timeshare resolution business.

398.  Plaintiffs believe that if not enjoined, Barlow Defendants will continue to harm Plaintiff Resort Advisory Group's business through unethical and unfair competitive behavior.

### ELEVENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA PENAL CODE SECTION 532
### (THEFT BY FALSE AND FRAUDULENT REPRESENTATION(S) OR PRETENSE)

(By Plaintiff Resort Advisory Group Against All Defendants)

399.  Paragraphs 1-398 are alleged and incorporated herein by reference.

400.  Penal Code 523 states that "very person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, or who causes or procures others to report falsely of his or her wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

401.  Based upon information and belief, Plaintiffs allege that starting in, around or prior to August-September 2018,  Barlow Defendants set into motion, and conspired to set into motion, a plan to directly compete with Resort Advisory Group's business by the theft of trade secrets and then to use those trade secrets to contact susceptible clients and former clients in order to deceive them into willingly

joining in Barlow Defendants illegal scheme.

402.  Plaintiffs further allege that Barlow Defendants scheme involved at least three (3) phases, one of which involved purposefully using the stolen trade secrets, combined with the inherent public trust as an attorney (Barlow) and a law firm (Barlow & Associates), to engage in a series of illicit acts by mail, internet and phone, to contact clients and former clients and deceive them into willingly assisting Barlow and Barlow & Associates in the next phase of the plan.

403.  Barlow Defendants then assisted, instructed, and directed Resort Advisory Group's clients to file false civil charges against Plaintiffs as a purposeful method to damage the reputation of Plaintiff and to harm Plaintiff's ability as a going concern.

404.  Barlow Defendants also assisted, instructed, and directed Resort Advisory Group clients to contact local law enforcement in order to file false criminal charges against Resort Advisory Group, and false and baseless state bar complaints against Attorney, as a secondary method of harming the reputation of Plaintiffs and substantially impairing Plaintiffs' ability to maintain existing clients and gain new clients.  At the same time as this pattern of illicit behavior was ongoing. Barlow Defendants, through the false confidence they created, encouraged Resort Advisory Group's clients to pay substantial sums of money directly to Barlow & Associates for legal counseling and assistance that the clients had already paid in full for previously.

405.  Barlow Defendants then planned, and conspired to plan with, Plaintiffs' clients to extort over $800,000 from Plaintiffs in order to stop using the stolen trade secrets and stop all other illegal activities aimed at Plaintiffs.

406.  Plaintiff further alleges:

    a)      Barlow Defendants purposefully and intentionally set out to deceive the clients of Plaintiff;

    b)      Barlow Defendants, purposefully and intentionally, and in violation of

contractual, fiduciary, and ethical duties, planned and conspired to plan to steal the trade secrets of Plaintiff;

  c)      Barlow Defendants repeatedly contacted specifically selected clients by phone, by internet, and in writing of Plaintiff under false pretenses in order to gain their confidence;

  d)      Barlow Defendants intended and knew that the use of Barlow, a California licensed attorney and the law firm of Barlow & Associates would make the deception easier to accomplish;

  e)      Barlow Defendants used the substantial false pretenses to fraudulently represent that Plaintiff had committed fraud against clients;

  f)      Barlow Defendants utilized these deceptions to cause Plaintiffs clients to send substantial sums of money to Barlow Defendants for legal counseling and services already fully paid for previously to Plaintiff, thereby gaining possession of money under false pretenses;

  g)      Barlow Defendants utilized their deception to fraudulently gain the labor efforts of Plaintiffs clients as part of the overall scheme to extort Plaintiffs by directing, encouraging, and assisting Plaintiffs clients to file multiple false civil and criminal charges against Plaintiffs, and false baseless state bar complaints against Attorney.

406.  Plaintiffs have been substantially damaged by these illegal actions of Barlow Defendants to violation Penal Code 532 in an amount of at least $75,000, with the actual amount to be proven at trial.

407.  Plaintiffs believe that the deception by Barlow Defendants is currently ongoing and continuing to the current day and requests that the Court enjoin Barlow Defendants from further use of any assets of Plaintiff Resort Advisory Group to gain money by false pretenses and forbid Barlow Defendants from further contact with any of Plaintiff's clients and former clients.

//

## TWELFTH CAUSE OF ACTION

## CONVERSION AND CONSPIRACY TO COMMIT CONVERSION

(By Plaintiff Resort Advisory Group Against Defendants Barlow and Barlow & Associates)

408.  Paragraphs 1-407 are alleged and incorporated herein by reference.

409.  "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."[32] It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." . . .' "[33]

410.  "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [34]

411.  Defendants Barlow and Barlow & Associates, and each of them, have wrongfully converted, aided and abetted, and caused to be converted, to their own use, and that of their friends, families, associates, and accomplices, money, funds, and property belonging to Plaintiff Resort Advisory Group. Such conversions have been for the benefit of the Defendants and their friends, families, associates, and accomplices, and to the detriment of the true owners of the property, Plaintiff Resort Advisory Group.

---

[32] (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.)

[33] (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)

[34] (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.)

412.   The proprietary trade secrets and clients of Plaintiff Resort Advisory Group exclusively belong to Plaintiff and are a result of substantial business efforts, money, and time. Such acts of conversion include, but are not limited to, theft and use of the trade secrets of Plaintiff by Defendant Barlow and Barlow & Associates, using deception and manipulation to convince Resort Advisory Group's clients to send money properly belonging to Resort Advisory Group for services rendered to accounts solely controlled by Barlow, Barlow & Associates, or other accounts owned or controlled by Barlow Racketeering Enterprise members.

413.   Defendants Barlow and Barlow & Associates unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other, and with others to convert money, funds, and property belonging to Resort Advisory Group and its clients to their own use, and that of their friends, families, associates, and accomplices. In furtherance of the conspiracy and to affect the objects thereof, Defendants committed the overt acts, among others, referenced above.

414.   As a direct and proximate result of these acts of conversion by Defendants Barlow and Barlow & Associates, Plaintiffs have suffered damages in an amount to be determined at trial, and presently estimated to be not less than $75,000.

415.   In committing the acts and perpetrating the schemes alleged herein, Defendants intended to injure Plaintiffs and acted with malice and oppression and with a willful and conscious disregard for the rights of Resort Advisory Group and its clients. In so doing, Defendants acted toward Plaintiff and its clients in such manner as to warrant disgorgement of any revenue derived from their illicit  uses of the proprietary trade secrets of Resort Advisory Group, disgorgement of any monies derived from the deception of Plaintiff's clients to pay monies directly to Barlow, Barlow & Associates or any other entity or account controlled by Barlow Racketeering Enterprise, together with an award of punitive and exemplary damages in an amount no less than $ 75,000, to be proven at trial.

## THIRTEENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

(By Plaintiff Resort Advisory Group Against All Defendants)

416.  Paragraphs 1-415 are alleged and incorporated herein by reference.

417.  "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."[35]

418.  Plaintiff Resort Advisory Group has signed valid contracts with each of its clients, including the Barlow 10, for representation of their legal interests to remove or eliminate their timeshare contract obligations. An example of this contract, standard between Plaintiff's clients, is attached as Exhibit 3.

419.  Defendants Barlow and Barlow & Associates, by way of their own employment relationship with Plaintiff Resort Advisory Group and working directly with clients assigned to them, knew of these valid existing contracts between the clients and Resort Advisory Group.

420.  Defendants Barlow and Barlow & Associates intended to disrupt the performance of the contracts between Plaintiff Resort Advisory Group and its' clients and took direct actions to induce or entice breaches of contract by Plaintiff's clients.

421.  Upon information and belief, staring in or around or before August-September 2018, Defendant's Barlow and Barlow & Associates began directly contacting clients of Resort Advisory Group to accuse Plaintiff of committing fraud against them and directed, guided, and encouraged them to not only breach their

---

[35] (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126)

contract with Plaintiff, but to additionally file false civil and criminal charges against Plaintiffs.

422.  The intent behind Defendants Barlow's and Barlow & Associates' encouragement and directive to clients of Resort Advisory Group to file false civil and criminal charges against Plaintiffs  was to purposely and knowingly damage the business reputation of Plaintiffs such that it has actually harmed Resort Advisory Group's ability to contract with prospective clients and caused other clients to breach their contract with Plaintiff or to request unwarranted refunds.

423.  The Barlow 10 also directly and intentionally participated in, and knowingly acted in furtherance of, the plan to interfere with Plaintiff's contractual relations by breaching those relations and filing false civil and criminal complaints against Plaintiffs. The purpose of these false civil and criminal complaints was to publicly and substantially harm the reputation and disrupt the business prospects of Plaintiffs to contract with new clients, in addition to other illicit goals.

424.  The Barlow Defendants, acting individually and jointly, also sought to interfere with Plaintiff's ability to contract with existing and new clients by way of intentionally posting knowingly false and defamatory statements about Plaintiffs in social media, including Facebook and Yelp. The intent of these actions was to interfere with and prevent performance of contractual obligations between Plaintiff and its' clients.

425.  As a direct and proximate result of the actions of Barlow and Barlow & Associates to interfere in the contractual relations of Plaintiffs, Plaintiffs have suffered substantial harm and economic damages. Plaintiff Resort Advisory Group has suffered, and continues to suffer from, losses in earnings from current and future contractual clients and a substantial harm to the reputation of the business.

426.  As a direct and proximate result of the actions of the Barlow 10 to interfere in the contractual relations of Resort Advisory Group, Plaintiff has suffered substantial harm and economic damages. Resort Advisory Group has suffered, and

continues to suffer from, losses in earnings from current and future contractual clients and a substantial harm to the reputation of the business.

427.  Plaintiff has been harmed by Defendants tortious actions in an amount of at least $75,000, in an exact amount to be proven at trial.

428.  Defendants, individually and jointly, have acted with intentional and purposeful malice, oppression, and fraud toward Plaintiff Resort Advisory Group for the benefit of their own illicit goals. Plaintiffs are therefore seeking an award of punitive and exemplary damages in an amount to be proven at trial.

## FOURTEENTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

(By All Plaintiffs Against All Defendants)

429.  Paragraphs 1-428 are alleged and incorporated herein by reference.

430.  Plaintiff Resort Advisory Group currently has business relationships with hundreds of existing customers. Plaintiff holds prospective economic relations with their clients and other prospective clients in the ordinary course of business, including the sale of timeshare resolution services with which Defendants are intentionally interfering.

431.  Plaintiff Attorney currently has business relationships with hundreds of existing clients., including Resort Advisory Group, and Attorney holds prospective economic relations with clients and prospective clients in the ordinary course of business, including providing general legal services in several states.

432.  Defendants intentionally and wrongfully interfered with these relationships by, *inter alia*, intentionally utilizing confidential and trade secret information misappropriated from Plaintiff Resort Advisory Group and engaging in the intentional dissemination of false information and accusations of fraud against Plaintiffs that has substantially negatively affected Plaintiffs' prospective economic

relations.

433.   Defendants Barlow and Barlow & Associates additionally intentionally and wrongfully entered into direct competition with Plaintiff Resort Advisory Group utilizing the stolen and misappropriated trade secrets of Plaintiff in substantial breach of contractual, fiduciary, and ethical duties owed to Resort Advisory Group that has substantially negatively affected Plaintiff's prospective economic relations.

434.   The Barlow 10, acting at the encouragement and direction of the Barlow Defendants, have also knowingly and intentionally filed, as part of their pattern and practice of racketeering activity, multiple false civil and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, in order to purposely harm the business and business relationships of Plaintiffs.

435.   These actions by Barlow 10, Barlow, and Barlow & Associates have substantially negatively affected Plaintiffs prospective economic relations. The intent of these actions by Defendants was to cause colleagues, partners, investors, clients, and prospective clients to distrust Plaintiffs and cease current and future planned economic activity with Plaintiffs, which has actually occurred.

436.   As a direct and proximate result of the aforementioned conduct, Plaintiffs' relationship with their customers and potential customers and other third parties have been, and are being disrupted, and the intentional disruption has caused damages in amount of at least $75,000, in an exact amount to be proven at trial.

437.   Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit, racketeering, and concealment of material facts known to the Plaintiffs with the intention of depriving Plaintiffs of property or legal rights or otherwise causing injury.

438.   Further, Defendants' conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

# **FIFTEENTH CAUSE OF ACTION**

## **FALSE LIGHT**

(By All Plaintiffs Against All Defendants)

439. Paragraphs 1-438 are alleged and incorporated herein by reference.

440. California law has generally followed Prosser's classification of privacy interests as embodied in the Restatement:[36] "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[37]

441. "In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well."[38]

442. Starting from approximately August or September 2018, Defendant Barlow did plan, and conspire to plan, with Defendant Barlow & Associates, to intentionally breach his contractual fiduciary, and ethical duties as a California licensed attorney to Plaintiff Resort Advisory Group, to illegally access and acquire the trade secrets of Plaintiff for the illicit purposes of directly competing against Resort Advisory Group.

443. As part of the scheme to unfairly compete against Resort Advisory Group, and in violation of their contractual obligations and fiduciary duties, Defendants Barlow and Barlow & Associates purposefully and intentionally set about on a course of conduct to enhance their ability to compete by intentionally accusing

---

[36] (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 24)
[37] Restatement of Torts, section 652E
[38] (*Fellows v. National Enquirer* (1986) 42 Cal.3d 234, 238–239)

Plaintiff Resort Advisory Group and Plaintiff Attorney Klein of fraud against the company's clients and accusing the entire business model of Plaintiff of being fraudulent.

444. These statements were published in writing to specific clients of Plaintiff Resort Advisory Group identified by Barlow and Barlow & Associates by way of theft of proprietary information and trade secrets of Plaintiff.

445. Defendants also caused, and conspired to cause, to be published knowingly false claims in criminal complaints and state bar complaints targeting Plaintiffs.

446. Barlow and Barlow & Associates knowingly used the letterhead of the law firm and the signature/name of attorney Barlow to give the published false statements substantially enhanced credibility that they normally would not have. This was part of the plan by Barlow and Barlow & Associates to overcome questioning by even skeptical public recipients of the false statements in order to make their illegal campaign easier to accomplish.

447. The intent of Barlow and Barlow & Associates, working with Barlow 10, in making these false statements accusing Plaintiffs of engaging in fraud, was to harm the reputation of Plaintiffs for the benefit of Barlow and Barlow & Associates, to harm the business prospects of Plaintiffs for the benefit of Barlow and Barlow & Associates, and as part of an orchestrated scheme of racketeering activity with Barlow 10 to extort money from Plaintiffs.

448. These false statements included: "The impact of [the CDRS] approach on the timeshare companies is absolutely devastating and **eclipses any 'promise' made by a so-called timeshare 'exit' company."** (Emphasis added.) He also portrayed Plaintiff Resort Advisory Group in a false light to its clients by painting it as inferior to CDRS, in that CDRS, he boasted to Resort Advisory Group's clients, will "singlehandedly destroy the timeshare industry" and "guarantees the timeshare customers who they agree to work with will get back, *minimally*, every single cent they mistakenly gave the timeshare developer….They are certain that, due to their

efforts, the timeshare industry will be no more in the near future." (Emphasis in original.) (Exhibit 4 hereto.)  He additionally portrayed Resort Advisory Group in a false light in social media by, among other things, telling the world, including clients and prospective clients of Plaintiff, that "You really need to do your homework before working with these guys! [and] more of these [criminal] complaints are being filed [against Plaintiff]." (Exhibit 5 hereto.)

449.  The false statements about Plaintiff Attorney, made in correspondence, criminal complaints, and complaints to the state bars of Pennsylvania and New Jersey, appear in Exhibits 6-7 and 10-11 hereto. (Exhibit 11 contains true and correct copies of bar complaints by the Abel Defendants against Attorney that are representative of Pennsylvania and New Jersey bar complaints also filed against Attorney by the Bettinelli, Martinez, Perley, Castle and Turk defendants.)

450.  Plaintiffs allege, upon information and belief, that the repeated false statements made by Defendants Barlow and Barlow & Associates accusing Plaintiffs of fraud were made intentionally, with actual malice, and were intended to cause others, including current, former, and potential clients of Plaintiffs, investors in Plaintiffs and colleagues of Plaintiffs, to cease dealing with Plaintiffs or to stop trusting Plaintiffs.

451.  Further, Defendants Barlow and Barlow & Associates, in conjunction with the Barlow 10, intentionally and purposefully caused or aided and abetted the filing and publication of false civil claims against Plaintiff Resort Advisory Group in a California court.

452.  The civil complaint filed by the Defendants John and Pamela Pressney, at the direction, guidance, and instruction of Barlow and Barlow & Associates, is based upon the same orchestrated and false claims of fraud.

453.  The Barlow and Pressney Defendants knew at the time of filing of these false and frivolous claims that civil lawsuits are public records and that the claims against Plaintiff Resort Advisory Group would be published to the public at large to

further intentionally damage the reputation and business of Plaintiff. These false civil claims intentionally placed Plaintiff in a false light because they accuse Plaintiff of operating a business for improper and illegal purposes and methods, something that the Barlow and Pressney Defendants knew was not true at the time the case was filed.

454.  The true motive for placing Plaintiff Resort Advisory Group in a false light by the filing of this fraudulent civil action was to so substantially damage the public reputation of Resort Advisory Group and the business prospects of Plaintiff that an extortion attempt in exchange for withdrawing the public lawsuit would have an increased odds of success.

455.  In addition to the Pressney's civil lawsuit, members of the Barlow 10, working under the guidance and direction of Barlow and Barlow & Associates, chose to further the campaign of placing Plaintiffs Resort Advisory Group and Attorney in a false light by contacting various District and United States attorneys and formally accusing Plaintiffs of criminally defrauding them, knowing that these claims were false. This was designed and intended to further harm the business reputation and ability to generate revenue of Plaintiffs because Defendants knew criminal allegations made by citizens become or could public documents and would further disseminate the intentional false light orchestrated by Defendants. These claims too were part of the pattern and practice of racketeering activity by Defendants to orchestrate an extortion attempt on Plaintiffs.

456.  The repeated publications by Defendants accusing Plaintiffs of fraud and fraudulent business practices would be highly offensive to a reasonable person in Plaintiffs' position.

457.  The filing, planning to file, and conspiring to file false civil claims of fraud against Plaintiff Resort Advisory Group, knowing the claims would be published to the public for wide dissemination, would be highly offensive to a reasonable person in Plaintiff's position.

458. The filing, planning to file, and conspiring to file false criminal allegations against Plaintiffs, and false and baseless state bar complaints against Attorney, knowing these allegations would or could be published to the public for wide dissemination, would be highly offensive to a reasonable person in Plaintiffs' situation.

459. The false statements by Defendants were made with the knowledge they would create a false impression about Plaintiffs and were made with reckless disregard for the truth.

460. Alternatively, Defendants were negligent in determining the truth of the information or whether a false impression would be created by its publication.

461. As a direct and proximate cause of Defendants actions to create a false light, Plaintiffs have been substantially harmed in an amount of at least $75,000, with the exact amount to be proven at trial.

462. The conduct of the Defendants in causing the false light of the Plaintiffs was a substantial factor in causing Plaintiffs harm.

463. Plaintiffs are entitled to, and are asking for, injunctive relief.

464. The aforementioned conduct of Defendants was a pattern and practice of intentional misrepresentation, deceit, or concealment of material facts known to Defendants, with the intention of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury to Plaintiffs.

465. This conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in substantial disregard for Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## SIXTEENTH CAUSE OF ACTION

### DEFAMATION - LIBEL

(By All Plaintiffs Against All Defendants)

466. Paragraphs 1-465 are alleged and incorporated herein by reference.

467. Libel "is a false and unprivileged publication by writing, printing, picture,

effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."[39]

468.  To determine whether a representation may be libelous, "we look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication. [Citation.] . . . In this connection the expression used as well as the 'whole scope and apparent object of the writer' must be considered. [Citation.]"[40]

469.  The key measure of libel is whether the published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact by an average reader that the libelous material is targeted at.[41]

470.  California permits defamation liability so long as it is consistent with the requirements of the United States Constitution.[42]

471.  Defendants Barlow and Barlow & Associates did, on numerous occasions starting in, before or after August-September 2018, knowingly and intentionally mail written letters to clients of Plaintiff Resort Advisory Group identified using the trade secrets of Plaintiff to falsely disparage Plaintiffs Resort Advisory Group and Attorney Klein and falsely accuse Plaintiffs of committing fraud against them.

472.  Barlow, through his firm of Barlow & Associates, knowingly and purposefully used the law office name, letterhead, and public prestige to mail out dozens of letters to specific individuals obtained through the illegal theft and analysis of Plaintiff Resort Advisory Group's trade secrets to falsely state to them that Plaintiff's business was a ruse, Plaintiffs had committed fraud against them, and that they should not have paid any money for the timeshare exit services

---

[39] (*Alszeh v. Home Box Office* (1998) 67 Cal.App.4th 1456, 1460-1461)
[40] ( *Forsher v. Bugliosi* (1980) 26 Cal. 3d 792, 803, quoting *MacLeod v. Tribune Publishing Co*. (1959) 52 Cal. 2d 536, 546.)
[41] *Couch v. San Juan Unified School Dist.* (1995) 33 Cal. App. 4th 1491,1500)
[4242] *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 740-42. (stating a private person need prove only negligence rather than malice to recover for defamation.)

provided Plaintiff.

473.  Barlow knew at the time of publishing these letters by U.S. mail and by internet email that the statements made about Resort Advisory Group's business were false.

474.  These statements were made for the express intentional purpose of harming the business of Plaintiffs for the sole benefit of Barlow, Barlow & Associates and for the Barlow 10.

475.  These statements were particularly damaging because they came from a licensed attorney and were on law firm letterhead, giving them unwarranted credibility to even a skeptical recipient. They included, "The impact of [the CDRS] approach on the timeshare companies is absolutely devastating and **eclipses any 'promise' made by a so-called timeshare 'exit' company."**  (Emphasis added.)

476.  Barlow also portrayed Plaintiff  Resort Advisory Group in a false light to its clients by painting it as inferior to CDRS, in that CDRS, he boasted to Plaintiff's clients, will "singlehandedly destroy the timeshare industry" and "guarantees the timeshare customers who they agree to work with will get back, ***minimally***, every single cent they mistakenly gave the timeshare developer….They are certain that, due to their efforts, the timeshare industry will be no more in the near future." (Emphasis in original.) Exhibit 4 hereto.  He additionally portrayed Plaintiff Resort Advisory Group in a false light in social media by, among other things, telling the world, including clients and prospective clients of Plaintiff, that "You really need to do your homework before working with these guys! [and] more of these [criminal] complaints are being filed [against Plaintiff]." (Exhibit 5 hereto.)

477.  The false statements about Plaintiff Attorney, made by the Barlow and Barlow 10 Defendants in correspondence, criminal complaints, and complaints to the state bars of Pennsylvania and New Jersey, appear in Exhibits 6-7 and 10-11 hereto. (Exhibit 11 contains true and correct copies of bar complaints by the Abel Defendants against Attorney that are representative of Pennsylvania and New

Jersey bar complaints also filed against Attorney by the Bettinelli, Martinez, Perley, Castle and Turk defendants.)  Defendants knew at the time of publishing these statements about Attorney by U.S. mail and by internet email that they were false as Defendants admit and acknowledge that Attorney **never** represented any of them.

478.  Defendants Barlow and Barlow & Associates, by way of previously being employed by Plaintiff Resort Advisory Group and performing timeshare exit-related legal work on behalf of it, knew many of the trade secrets of Resort Advisory Group and understood the multiple processes developed by it to assist aggrieved clients into legally and properly exiting their timeshare contracts.

479.  Defendants Barlow and Barlow & Associates, on numerous and repeated occasions of more than a year, was assigned clients by Resort Advisory Group and did perform legal services to exit those clients from timeshare contracts on both a per-client fee basis and a weekly fee.

480.  At no point during the entire tenure of Barlow and Barlow & Associates as a contracted attorney and law firm of Resort Advisory Group did either Barlow nor Barlow & Associates ever contact the management of Resort Advisory Group, in writing or verbally, to voice any concern, complaint, or belief that its business or business practices  were fraudulent, illegal, or unneeded.  In fact, Defendants Barlow and Barlow & Associates were paid, and accepted as payment in full (approximately $300,000) from Resort Advisory Group as compensation for referral of and timeshare resolution assistance to its clients.

481.  As a licensed attorney, Defendant Barlow reasonably could and should have identified specific business practices or methods for timeshare exits developed by Plaintiff Resort Advisory Group as questionable, shady, or potentially fraudulent within a month or two of working with Plaintiff Resort Advisory Group if that were actually the case. Particularly so when the libelous statements repeatedly published by Barlow and Barlow & Associates called into question the entire business

practice of Resort Advisory Group as a fraud, including all proprietary and confidential methods of timeshare exits which Barlow himself utilized over the course of at least a year.

482.  Barlow did not detect or notify Plaintiff Resort Advisory Group of anything he believed to be fraudulent as he collected approximately $300,000.00 in fees because these claims are knowingly false and concocted as part of a fraudulent, illegal plan by Barlow and other Defendants to enrich themselves at the expense of Plaintiffs.

483.  Upon information and belief, at some point in or around or prior to August-September 2018, Defendants Barlow and Barlow & Associates decided it would be far more profitable to operate their own timeshare exit business and determined to directly compete with Plaintiff Resort Advisory Group rather than work for Plaintiff Resort Advisory Group any longer in substantial breach of their contractual and fiduciary obligations.

484.  As part of this plan to compete, and in violation of multiple state and federal laws, Defendants Barlow and Barlow & Associates stole the trade secrets of Plaintiff Resort Advisory Group in or around and after August-September 2018, began competitive operations, and then "suddenly" came to the revelation that their former employer's entire business was a "ruse."

485.  Defendants Barlow and Barlow & Associates then purposely and repeatedly caused and directed these false claims to be published in multiple letters to clients and former clients of Plaintiff, Resort Advisory Group.

486.  Defendants Barlow & Barlow and associates also caused to be published, on or before April 15, 2020, multiple knowingly false statements about Plaintiff Resort Advisory Group's business on Facebook and Yelp for the specific purpose of defaming it and harming its reputation for their own competitive benefit.

487.  Rather than these claims having any valid factual or legal basis, Plaintiffs allege they were designed to specifically further the business aspirations of

Defendants Barlow and Barlow & Associates at the direct expense of Plaintiffs by substantially harming the reputation of Plaintiffs and causing client loss and economic harm.

488.  Defendants Barlow and Barlow & Associates further had the common goal, after planning and conspiring with the Barlow 10, to purposefully and intentionally use these false fraud claims as a basis to file false civil and criminal charges against Plaintiffs, and false and baseless state bar complaints against Attorney, for the joint goal of extortion.

489.  At all times, Defendants knew these published statements were false, defamatory, and were a direct attack on the integrity and reputation of Plaintiffs. These statements were published in reckless disregard of whether the purported statements were false and defamed Plaintiffs, and Defendants Barlow and Barlow & Associates acted negligently by failing to learn whether the matter published was false and would defame the Plaintiffs to the public.

490.  Defendants Barlow and Barlow & Associates' defamatory statements tend to directly injure Plaintiffs in regard to their office, profession, trade or business, either by imputing to Plaintiffs general disqualifications in those respects by which the office or other occupation peculiarly requires, or by imputation of something with reference to the office, profession, trade, or business that has a natural tendency to lessen its profits.

491.  Defendants Barlow and Barlow & Associates did not have any privilege which covered the defamatory statements and otherwise did not have any public purpose to be served by their false defamatory statements against Plaintiffs.

492.  There was no valid reason at all for these open and public accusations against the character and integrity of Plaintiffs' businesses at the time they were made and Defendants Barlow and Barlow & Associates, rather than correct any false statements, have instead chosen to intentionally continue to repeat the false statements to additional persons by letter and in social media.

493.  Further, the Barlow 10, both individually and jointly, furthered the goals and aspirations of Barlow and Barlow& Associates' false and defaming statements by taking these statements and then filing frivolous civil and criminal complaints alleging Plaintiff Resort Advisory Group's business is a "ruse," knowing that these documents would be published publicly.

494.  By engaging in the furtherance and support of the defamation by Barlow and Barlow & Associates, the Barlow 10 have intentionally caused significant harm to the integrity and reputation of Plaintiffs through the substantially wide publication that a filed civil and criminal claim has due to the public nature of the judicial system.

495.  Each of the Barlow 10 knew at the time they made these false claims of fraud through civil complaints and additionally by criminal complaints, that the claims had absolutely no factual or legal basis and they were made in furtherance of the pervasive pattern of racketeering activity of the Barlow Racketeering Enterprise to intentionally harm the business reputation and integrity of Plaintiffs as part of a conspired plan to extort the sum of over $800,000 from Plaintiffs.

496.  At no point have any of the Barlow 10 who caused to be published false and defaming statements about Plaintiffs through the filing of false civil and criminal claims, and false and baseless state bar complaints against Attorney, ever retracted or attempted to correct their false statements. Their defamatory statements tend to directly injure Plaintiffs in regard to its office, profession, trade or business, either by imputing to Plaintiffs general disqualifications in those respects by which the office or other occupation peculiarly requires, or by imputation of something with reference to the office, profession, trade, or business that has a natural tendency to lessen its profits.

497.  The Barlow 10 Defendants who made these defamatory statements did not have any privilege which covered them and otherwise did not have any public purpose to be served by their false defamatory statements against Plaintiffs.

498.  As a direct and proximate result of Defendants' tortious defamation of Plaintiffs for their own illicit benefit and financial gains, Plaintiffs have suffered substantial damages in excess of $75,000, in an amount to be proven at trial.

499.  Plaintiffs assert that the conspiratorial activities of Defendants, each of whom aided and abetted one another, were utterly willful, and done with malice and intent to injure the Plaintiffs.

500.  These actions by Defendants to intentionally defame Plaintiffs were done with a conscious disregard of the rights of Plaintiffs and with the intent to cause Plaintiffs substantial harm and damage.  Defendants were, at all times herein, clearly aware of the probable consequences of their conduct but, nevertheless, willfully and deliberately failed to avoid the conduct that caused the consequences to Plaintiffs. This conduct thus constitutes acting with malice, oppression, fraud, and is despicable conduct.

501.  Plaintiffs are therefore entitled to recover punitive damages jointly and severally against Defendants in an amount to be proven at trial and in an amount sufficient to punish and deter others from engaging in similar tortious conduct.

502.  Plaintiffs are also entitled to injunctive relief.

## SEVENTEENTH CAUSE OF ACTION

### BREACH OF CONTRACT

(By Plaintiff Resort Advisory Group Against Defendants Barlow and Barlow & Associates)

503.  Paragraphs 1-502 are alleged and incorporated herein by reference.

504.  Under California law, to state a cause of action for breach of contract a plaintiff must plead: the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom. California law requires a showing of "appreciable and actual damage" to assert a breach of contract claim. Nominal damages and speculative harm do not

1   suffice to show legally cognizable damage under California contract law.[43]

2   505.  Plaintiff Resort Advisory Group is informed and believes, thereby alleging

3   that Defendant Barlow failed to provide contracted and paid for legal services to

4   Plaintiff's clients and further, directed payments from Plaintiff's clients to accounts

5   controlled by Barlow and Barlow & Associates for the exclusive use of Barlow,

6   Barlow & Associates and Barlow Racketeering Enterprise. Defendant Barlow and

7   Barlow & Associates further breached their contractual obligations by intentionally

8   engaging in a competing business with Plaintiff Resort Advisory Group.

9   506.  Attached hereto as Exhibit 3 and incorporated herein by reference as though

10   set forth in full, is a true and correct copy of the contract between Barlow and

11   Barlow & Associates and Plaintiff Resort Advisory Group.

12   507.  By engaging in this conduct, Defendant Barlow breached his contractual

13   obligations, as set out below.

14   508.  Defendant Barlow signed a contract with Resort Advisory Group on or

15   around January 17, 2017, to provide required legal services to the clients of

16   Plaintiff.

17   509.  Part of Defendant Barlow's contractual duties on behalf of Plaintiff was to

18   perform timeshare resolution services for clients of Plaintiff assigned to him.

19   510.  Plaintiff Resort Advisory Group understood that Defendant Barlow would be

20   utilizing Barlow & Associates, a law firm owned and operated by Barlow, to assist

21   in providing legal services to Plaintiff's clients.

22   511.  As contracted between Barlow and Resort Advisory Group, for each client

23   Barlow and Barlow & Associates assisted in timeshare exit legal services, they

24   were paid a flat rate per client up front, and then later a weekly fee, with services to

25   be completed as needed.

26   512.  As contracted between Barlow and Resort Advisory Group, each client

27   assigned to Barlow had already paid a fee for all services required directly to

28   ───────────────
[43] (*In re Facebook Privacy Litig.* (N.D.Cal. 2011) 791 F.Supp.2d 705, 708.)

Plaintiff and no other fees were required to be paid by any of Plaintiff's clients for timeshare cancellation services.

513.  As contracted between Barlow and Resort Advisory Group, Plaintiff would assign specific clients to Barlow at the exclusive discretion and control of Plaintiff.

514.  As contracted between Barlow and Resort Advisory Group, each client assigned to Barlow remained the exclusive client of Plaintiff.

515.  As contracted between Barlow and Resort Advisory Group, Barlow agreed to enforceable confidentiality, non-circumvention, and non-compete clauses with Plaintiff.

516.  As contracted between Barlow and Resort Advisory Group, clients assigned to Barlow by Plaintiff had already paid in full for all timeshare cancellation work to be completed by Barlow. Resort Advisory Group, and not Barlow, had the exclusive right to determine whether any particular client needed or required additional billing fees to successfully complete the timeshare resolution.

517.  As contracted between Barlow and Plaintiff, Defendant Barlow was provided with controlled access to the protected computer systems of Plaintiff in order to have access to the proprietary data in the client accounts assigned to Barlow by Resort Advisory Group. Barlow understood at all times that the information on Plaintiff's protected computer systems belonged to Plaintiff, and that the protected computer systems of Plaintiff contained trade secrets of Plaintiff.

518.  Upon information and belief, at some point in or around or prior to August-September 2018, Defendant Barlow began siphoning off clients from Resort Advisory Group for his own purposes in breach of his contractual obligations.

519.  Defendant Barlow, at some point in or around or prior to August-September 2018, began soliciting the clients of Resort Advisory Group for substantial additional payments in violation of his contractual obligations.

520.  Defendant Barlow, at some point in or around, prior to or after August-September 2018, accepted payments directly from Resort Advisory Group's clients

and deposited them into accounts exclusively controlled by Barlow and Barlow & Associates in breach of his contractual obligations.

521. Defendant Barlow, at some point in or around, prior to or after August-September 2018, took active steps to unjustly cover up the receipt of payments from clients and did not remit the payments to Resort Advisory Group in breach of contractual obligations.

522. Defendant Barlow, at some point in or around, prior to or after August-September 2018, began offering timeshare exit services to the public in breach of his contractual obligation not to compete with Resort Advisory Group.

523. Defendant Barlow, at some point in, around or prior to and after August-September 2018 and continuing thereafter, began to contact the clients of Resort Advisory Group assigned to him by mail, phone and internet to falsely accuse Plaintiff of defrauding them in violation of his contractual obligation to honestly represent the interests of Plaintiff.

524. Defendant Barlow, at some point in, around or prior to August-September 2018, and continuing thereafter, stole and misappropriated the trade secrets of Resort Advisory Group. Included in the trade secrets was the private client list of Plaintiff which Defendant Barlow took for himself in order to compete against Plaintiff in breach of multiple state and federal laws and in breach of his contractual obligations not to circumvent and compete with Plaintiff.

525. At all times Defendant Barlow breached the contract with Resort Advisory Group, he did so knowingly and intentionally.

526. As a direct and proximate result of Defendant Barlow's breach of his obligations under the contract, Resort Advisory Group's business reputation has been substantially damaged and Plaintiff has had substantial revenue belonging to Plaintiff diverted by Barlow for his own purposes. Plaintiff has also lost substantial current and future potential earnings as a result of Defendant Barlow's intentional breach of contract.

527.  The total damages sustained by Resort Advisory Group as a direct and proximate result of Defendant Barlow's breach of contract is at least $75,000, in an exact amount to be proven at trial.

## EIGHTEENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD

(By Plaintiff Resort Advisory Group Against Defendants Barlow & Barlow & Associates)

528.  Paragraphs 1-527 are alleged and incorporated herein by reference.

529.  "Constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another, even though the conduct is not otherwise fraudulent."[44]  If a fiduciary relationship exists, any concealment of material fact is fraud.[45] Unlike actual fraud, constructive fraud does not require an intentional deception, an "intent to deceive" being implied from the failure to disclose.[46]

530.  Reasonable reliance is presumed upon a nondisclosure of the fiduciary, absent direct evidence of lack of reliance.[47]  "The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud."[48]

531.  If an agent is in a fiduciary relationship, most acts by the agent in breach of their fiduciary duties constitute constructive fraud.[49]

532.  Defendant Barlow is an attorney licensed to practice law in the state of

---

[44] (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562; 2 Miller & Starr, Cal. Real Estate (2d ed. 1989), §3:20, p. 120-121; Civ. Code §1573(1).)

[45] . (*Byrum v. Brand* (1990) 219 Cal.App.3d 926, 937-938; *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1997) 67 Cal.App.3d 19, 32.)

[46] (*Mary Pickford Co. v. Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 525.)

[47] (*Estate of Gump* (1991) 1 Cal.App.4th 582, 601.)

[48] (*Salahutdin v. Valley of California, Inc. (1994) 24 Cal.App.4th 555.*)

[49] *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415

California. It is fundamental that all attorneys owe fiduciary duties to their clients, meaning they must put the interests of their clients ahead of their own.

533.  As previously stated, Plaintiffs entered into a contractual agreement with Defendants Barlow and Barlow & Associates, starting on or around on or around January 17, 2017, to provide required legal services for Resort Advisory Group and Plaintiff's clients involved with negotiating a resolution for the clients to problematic and illegal time share contracts and sales practices.

534.  Defendant Barlow and Barlow & Associates were paid by a fixed fee, either on a per-client or weekly basis, for client referrals and the legal work required. This relationship is properly characterized as a principal/agent relationship between Barlow and Barlow & Associates and Resort Advisory Group who Resort Advisory Group appointed to act on behalf of the Resort Advisory Group to provide required legal services to their clients.

535.  Defendants Barlow and Barlow & Associates were also bound by their ethical and fiduciary duties, as an attorney and a licensed law firm, to act in the best interests of their client, Plaintiff, as well as the best interests of Resort Advisory Group's clients who were assigned to Defendants Barlow and Barlow & Associates.

536.  Plaintiff alleges Defendants Barlow and Barlow & Associates breached their fiduciary, contractual, and ethical duties owed to Resort Advisory Group and Resort Advisory Group's clients and engaged in a pattern and practice of constructive fraud:

   a)      Defendants Barlow and Barlow & Associates entered into a contractual agreement with Resort Advisory Group to provided necessary legal services to Plaintiff and Plaintiff's clients on or around January 17, 2017;

   b)      Defendants Barlow and Barlow & Associates each assisted the other in breaching the fiduciary duties owed to Resort Advisory Group and to Plaintiff's clients;

c)    At all times stated herein, upon information and belief, Defendant Barlow & Associates operated as a law firm owned and controlled by Defendant Barlow, acting at his sole control and direction;

d)    As a licensed attorney in the state of California, Defendant Barlow knew, or should have known, of the fiduciary duty owed to Resort Advisory Group;

e)    As a licensed attorney in the state of California, Defendant Barlow knew, or should have known, of the fiduciary duty owed to clients assigned to him by Resort Advisory Group;

f)    As a licensed law firm operating in the state of California, Defendant Barlow & Associates knew, or should have known, of the fiduciary duty owed to Resort Advisory Group;

g)    As his duties to Plaintiff required, Defendant Barlow was provided authorized access to the protected computer systems of Resort Advisory Group related to the client files that were assigned to Barlow by Resort Advisory Group;

h)    By way of his contractual obligations to P Resort Advisory Group and through his working with Resort Advisory Group to assist Plaintiff's clients exit illegal timeshare contracts, Defendants Barlow and Barlow & Associates gained constructive knowledge of the trade secrets of Resort Advisory Group;

i)    At all times mentioned herein, and throughout the entire contractual agreement with Defendants Barlow and Barlow & Associates, both Defendants had actual knowledge that the clients assigned to them by Resort Advisory Group were the clients of Plaintiff, and that Resort Advisory Group had acquired the clients through substantial business effort and expenditure;

j)    At all times mentioned herein, Defendants Barlow and Barlow & Associates had actual knowledge that the clients assigned to them by Resort Advisory Group had already negotiated and paid a full and upfront flat-rate fee

directly to Resort Advisory Group for all timeshare related services;

k)    At all times mentioned herein, Defendants Barlow and Barlow & Associates owed a duty of loyalty, as the limited agent of Resort Advisory Group, to act in the best interest of Plaintiff and Plaintiffs' assigned clients;

l)    At all times mentioned herein, Defendants Barlow and Barlow & Associates had actual knowledge that any additional fees or costs that might arise due to the unique circumstances of a particular assigned client were to be paid by the client directly to Resort Advisory Group, who would then provide supplementary payments to Barlow and Barlow & Associates, if required;

m)    At all times mentioned herein, Defendants Barlow and Barlow & Associates knew they had no authority to directly bill or charge the assigned clients of Resort Advisory Group for timeshare cancellation services without the express consent and direction of Plaintiff;

n)    For each of Resort Advisory Group's clients that Defendant Barlow and Barlow & Associates assisted, Plaintiff made upfront payments to Defendants Barlow and Barlow & Associates;

o)    Between on or around January 17, 2017 and in or around August-September 2018, Plaintiff assigned approximately 235 clients to Defendants Barlow and Barlow & Associates and paid approximately $300,000.00 fees to Defendants Barlow & Barlow & Associates;

p)    At some point, beginning in or around or prior to August-September 2018, and continuing thereafter, Defendants Barlow and Barlow & Associates engaged in an intentional and purposeful pattern and practice of convincing Resort Advisory Group's clients, through manipulation and deceit, that additional payments were required, done outside of the knowledge and purview of Resort Advisory Group and without any authorization from Plaintiff, in violation of Defendant Barlow and Barlow & Associates' contractual, ethical, and fiduciary duties to Plaintiff;

q)    At some point, in or around or prior to August-September 2018, and continuing thereafter, Defendants Barlow and Barlow & Associates solicited and received multiple unwarranted additional payments from Resort Advisory Group's clients for timeshare work paid directly to accounts controlled by Barlow and Barlow & Associates;

r)    Defendants Barlow and Barlow & Associates intentionally covered up and kept these additional payments for their own benefit in violation of the agency duties owed to plaintiff and in substantial violation of the fiduciary duties owed to Resort Advisory Group and the clients of Plaintiff;

s)    Plaintiff uncovered these illegal actions by Defendants Barlow and Barlow & Associates in or around August-September 2018, terminated all contracts with Defendants Barlow and Barlow & Associates, and rescinded all authorization to access the protected computer systems of Resort Advisory Group;

t)    The fiduciary duties of Defendants Barlow and Barlow & Associates survive this termination, covering, and continuing to cover, all clients, client data, trade secrets, and business operation knowledge acquired by Defendants Barlow and Barlow & Associates during the business relationship with Resort Advisory Group;

u)    At some point in time, in, around, prior to and after August-September 2018, Defendants Barlow and Barlow & Associates, purposefully and without authorization of any kind, stole trade secrets of Resort Advisory Group from its client database in breach of the continuing fiduciary and ethical duties owed to Resort Advisory Group and Plaintiff's clients;

v)    At some point in time, believed to be after the alleged unauthorized access of Resort Advisory Group's computer systems, or in excess of authorization, Defendant Barlow and Barlow & Associates, in violation of contractual obligations to not circumvent and compete and in violation of

fiduciary and ethical duties, misappropriated the stolen trade secrets of Resort Advisory Group to start a competing business against Plaintiff;

w)      Defendant Barlow and Barlow and Associates, in conjunction with Defendants Case in Chief LLC and ATTFund, then planned and conspired to plan to use the misappropriated trade secrets of Resort Advisory Group to identify susceptible or vulnerable clients whom they then mailed letters, emails, and made telephone calls to, intentionally and falsely accusing Resort Advisory Group of committing fraud against them, in breach of their fiduciary duty to Resort Advisory Group and Plaintiff's clients, in order to purposefully harm the reputation and business of Plaintiff and as an illegal method of doing business;

x)      Barlow and Barlow & Associates further continued, from at least August- September 2018, to deceptively solicit and accept unwarranted payments directly for the benefit of Barlow Defendants from Resort Advisory Group's clients and former clients for services already paid for in full, in further breach of contractual, ethical, and fiduciary duty to Resort Advisory Group and Plaintiff's clients;

y)      The Barlow Defendants planned and conspired to plan with members of the Barlow 10 to intentionally file false civil claims against Resort Advisory Group as a form of illegal business practice and as part of a scheme to harm the reputation and business prospects of Resort Advisory Group in order to extort money from plaintiff. Barlow and Barlow & Associates involvement, assistance, and guidance to these Barlow 10 Defendants is in substantial breach of the fiduciary, ethical, and contractual duties owed to Resort Advisory Group;

z)      The Barlow Defendants planned and conspired to plan with members of the Barlow 10 to intentionally file false criminal claims against Plaintiffs as a form of illegal business practice and as part of a scheme to harm the reputation and business prospects of Plaintiffs in order to extort money from Plaintiffs. Barlow and Barlow & Associates involvement, assistance, and guidance to

these Barlow 10 Defendants is in substantial breach of the fiduciary, ethical, and contractual duties owed to Resort Advisory Group;

aa)      Defendants Barlow and Barlow & Associates planned, and conspired to plan, and attempted to extort over $800,000 from Plaintiffs to cease current and future planned illegal actions against Plaintiffs between February 27 – March 4, 2020, and continuing to the present, including at a meeting between Barlow and Resort Advisory Group on March 2, 2020. The attempt to extort money from Plaintiff by Barlow & Barlow & Associates is a clear breach of the fiduciary, contractual, and ethical duties owed to Resort Advisory Group.

537.  Plaintiffs have suffered significant damages as a result of the constructive fraud of Defendants Barlow & Barlow & Associates of at least $75,000, in an exact amount to be proven at trial.

538.     Plaintiff Resort Advisory Group has suffered, and continues to suffer, from the repeated and continual breaches of fiduciary duty by Barlow & Barlow & Associates through the illegal control and use of the trade secrets of Plaintiff.

539.  Plaintiff Resort Advisory Group requests the Court to further enjoin Barlow Defendants from further access, use, or control of any trade secrets of Plaintiff pending the outcome of the trial in this matter.

## NINETEENTH CAUSE OF ACTION

## QUANTUM MERUIT

(By Plaintiff Resort Advisory Group Against All Defendants)

540.  Paragraphs 1-539 are alleged and incorporated herein by reference.

541.  Quantum meruit is a form of restitution where the plaintiff has performed services for defendant and seeks to recover their fair value. The law, in appropriate situations, will imply a quasi-contract. It is not consensual. It is not a contract. It is a remedial device which the law affords to accomplish justice and prevent unjust

enrichment.[50] A party is entitled to plead quantum meruit in the alternative, as a stop-gap measure in the event a contract, or the relevant portion of a contract, is held invalid.[51]

542.  Unjust enrichment is based on the idea that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.[52]

543.  Plaintiffs allege, as previously stated herein, that Defendants Barlow and Barlow & Associates have unjustly received and kept, including but not limited to, the following:

   a)    Payments from Plaintiff Resort Advisory Group while Defendant Barlow was in an employment relationship with Plaintiff, but for which Barlow intentionally did not perform any legal services.

   b)    The trade secrets of Plaintiff Resort Advisory Group, illegally acquired by Defendant Barlow and Barlow & Associates without permission, authorization, or license, used by Barlow to illicitly compete.

   c)    The entire client list of Plaintiff Resort Advisory Group, illegally acquired by Defendant Barlow and Barlow & Associates without permission, authorization, or license.

   d)    Revenues derived by Barlow Defendants from the unauthorized and illegal use of trade secrets of Plaintiff Resort Advisory Group.

   e)    Payments received by Barlow Defendants from the solicitation of clients in the illegally obtained client list.

---

[50] (*United States ex rel. TBH & Assocs., LLC v. Wilson Constr. Co.* (D.Or. 2013) 965 F.Supp.2d 1215, 1218.)
[51] (*Id.*)
[52] (*Brooks v. Motsenbocker Advanced Devs., Inc.* (S.D.Cal. July 21, 2008, No. 07cv773 BTM(NLS)) 2008 U.S.Dist.LEXIS 55392, at *1.)

f)      Use of the trade secrets and exclusive client database of Plaintiff Resort Advisory Group to gain an unfair competitive advantage to derive unwarranted revenues at the expense of Plaintiff.

544.  Defendants Barlow and Barlow & Associates retain the benefits alleged herein because they have not returned these benefits to Plaintiff Resort Advisory Group, in whole or in part.

545.  Defendants Barlow and Barlow & Associates retention of the benefits which are alleged herein is at the direct expense of Plaintiff Resort Advisory Group because Plaintiff has expended substantial money, time and business efforts, including the risk of failure, to obtain and retain the exclusive client list and further develop the trade secrets of Plaintiff used in the profitable operation and growth of Plaintiff's business.

546.  The continued retention of these benefits by Defendants Barlow and Barlow & Associates is unjust and the amount of those benefits is at least $75,000, in an exact amount to be proven at trial.

## TWENTIETH CAUSE OF ACTION
### EMBEZZLEMENT

(By Plaintiff Resort Advisory Group Against Barlow and Barlow & Associates)

547.  Paragraphs 1-546 are alleged and incorporated herein by reference.

548.  As an attorney employed by Plaintiff to assist Plaintiff's customers, Defendant Barlow and the law firm Barlow & Associates were contractually responsible for providing timeshare resolution services to Plaintiff's clients.

549.  As a licensed attorney and law firm, Barlow and Barlow & Associates had substantial trust from Plaintiff that Barlow and Barlow & Associates would uphold their fiduciary, contractual, and ethical duties to Plaintiff and Plaintiff's clients while carrying out his duties. Additionally, as a licensed attorney and law firm, both Barlow and Barlow & Associates automatically have a substantial fiduciary duty to clients, co-workers, and employers to act ethically and honestly.

550.  By way of engaging in the regular business activities on behalf of Plaintiff, Defendant Barlow and Barlow & Associates were entrusted to view and use the property of Plaintiff, namely the trade secrets of Plaintiff, partially provided to Barlow on a case-by-case basis for clients assigned to Barlow by Plaintiff. Barlow was provided partial access to the trade secrets and confidential information by Plaintiff because Barlow and Barlow & Associates were trusted by Plaintiff to competently, honestly, and ethically perform their required job duties which required access to this information.

551.  By way of engaging in a pattern of racketeering activity and in breach of their contractual and fiduciary duties, Defendant Barlow and Barlow & Associates did intentionally convert the confidential and trade secret information entrusted to them by Plaintiff for their own personal benefit. The intention of Barlow and Barlow & Associates at the time of conversion of the trade secrets of Plaintiff was to intentionally deprive Plaintiff of the property's use and instead use it to generate revenue and profits for the exclusive benefit of Barlow and Barlow & Associates and other Barlow Racketeering Enterprise members.

552.  Further, Defendant Barlow and Barlow & Associates, beginning in, around, prior to or after August-September 2018, used intentional misrepresentation, deceit, fraud, and concealment to intentionally extract payments from Plaintiff's clients assigned to Barlow through the trust of Plaintiff, and direct those payments to bank accounts exclusively controlled by Barlow and Barlow & Associates. The intent of Barlow and Barlow & Associates was to permanently deprive Plaintiff of the money.

553.  By way of the above embezzlement of Plaintiff's trade secrets and money, Defendants Barlow and Barlow & Associates have caused Plaintiff substantial injury in an amount of at least $75,000, with an exact amount to be proven at trial.

554.  The conduct of Barlow and Barlow & Associates herein was despicable, malicious, and subjected Plaintiff to cruel and unusual hardship in conscious

disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## **TWENTY-FIRST CAUSE OF ACTION**
### **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
(By Plaintiff Resort Advisory Group Against Defendants Barlow and Barlow & Associates)

555.  Paragraphs 1-554 are alleged and incorporated herein by reference.

556.  Implied into every contract is a covenant of good faith and fair dealing wherein the parties thereto covenant that they will do nothing to deprive each other of the fruits and benefits each has contracted for under the terms of the contract.

557.  On or around January 17, 2017, Defendants Barlow and Barlow & Associates signed a valid contract whereby Defendant's Barlow would provide timeshare resolution services to Resort Advisory Group's clients for a specified fee. A true and correct copy of the initial agreement is contained in Exhibit 3.

558.  Plaintiff Resort Advisory Group is informed and believes and thereon alleges that Defendants Barlow and Barlow & Associates intentionally and purposefully breached the implied covenant of good faith and fair dealing by engaging in illicit behavior, including:  contacting Plaintiff's clients, without Plaintiff's authorization or knowledge, and convincing them to send additional sums of money directly to Barlow and Barlow & Associates for services already paid for in full; purposefully engaging in a course of conduct to compete directly with the business of Resort Advisory Group in violation of contractual and fiduciary duties; intentionally misappropriating the trade secrets of Resort Advisory Group for the benefit of Barlow and Barlow & Associates; directly and intentionally interfering with the contractual relations between Resort Advisory Group and Resort Advisory Group's clients, and intentionally causing and assisting clients of Plaintiff to file false civil and criminal charges against Resort Advisory Group in order to harm the business

reputation and prospects of Plaintiff.

559.  As a direct and proximate result of the breaches of the covenant of good faith and fair dealing in the contract agreement referenced above, and further in violation of his ethical duties as an attorney licensed by the state of California, Resort Advisory Group has been substantially harmed, and continues to be harmed in an amount of at least $75,000, with the exact amount to be proven at trial.

560.  As a direct and proximate result of the breaches of the covenant of good faith and fair dealing in the contract agreement referenced above, Resort Advisory Group faces irreparable injury. Resort Advisory Group is threatened with loss of its trade secrets, customers, contractual revenues, proprietary business methods and technology, its competitive advantage and goodwill in amounts which may be difficult or impossible to determine unless Defendants Barlow and Barlow and Associates are enjoined and restrained by order of the Court.

561.  As a direct and proximate result of the breaches of the covenant of good faith and fair dealing the contractual agreement above, including the willful and malicious theft and misappropriation of the trade secrets of Resort Advisory Group, Plaintiff is entitled to an award of exemplary damages, including but not limited to those under the Defend Trade Secrets Act of 2016 and California Civil Code section 3294.

## TWENTY-SECOND CAUSE OF ACTION
## MISAPPROPRIATION AND MISUSE OF CONFIDENTIAL INFORMATION

(By Plaintiff Resort Advisory Group Against All Defendants)

562.  Paragraphs 1- 561 are alleged and incorporated herein by reference.

563.  As part of the exclusive methods and processes developed, tested, and refined by Plaintiff Resort Advisory Group for timeshare resolution services over its years in business, Plaintiff acquires, develops, maintains, and retains proprietary

and confidential information which includes, but is not limited to, detailed and consolidated confidential information on its clients and its Business Knowhow. Together, these are herein referred to as "Confidential Information."

564.  Maintaining the secrecy of this Confidential Information is critical to the success of Resort Advisory Group's business as a timeshare resolution company. The Confidential Information is not generally known to the public or to Resort Advisory Group's competitors and is subject to reasonable efforts by Plaintiff to maintain its secrecy on Plaintiff's protected computer systems and offices.

565.  Resort Advisory Group has expended substantial amounts of money, business efforts, and time to develop and maintain the Confidential Information. It has independent economic value which extends beyond Resort Advisory Group, including to any potential competitor who does not lawfully have a license or right to possess all or part of this Confidential Information.

566.  Further, the Confidential Information relating to customers financial information is protected from disclosure to third parties by state and federal laws prohibiting such disclosure, including but not limited to, the Financial Services Modernization Act of 1999, 15 U.S.C. 6801 *et. seq*., the California Information Privacy Act, Cal Civ. Code 4050 *et seq*., the California Consumer Privacy Act[53] and California Civil Code sections 1798.80 through 84.

567.  As part of his employment agreement with Resort Advisory Group, Defendants Barlow and Barlow & Associates were given limited authorized access to the Confidential Information on clients they were assigned to assist by Resort Advisory Group. Defendants Barlow and Barlow & Associates were entrusted and contractually agreed to maintain the secrecy of this information and knew that this information was proprietary and confidential, but nevertheless conspired with other Defendants to misappropriate Plaintiff's Confidential Information for illicit

---

[53] TITLE 1.81.5. California Consumer Privacy Act of 2018 [1798.100 - 1798.199] *( Title 1.81.5 added by Stats. 2018, Ch. 55, Sec. 3)*

purposes. This was done without any express or implied consent of Resort Advisory Group and was done in breach of Barlow's and Barlow & Associates' fiduciary duties owed to Resort Advisory Group and it's clients and in substantial breach of the ethical duties of a California attorney.

568.  As a result of Barlow and Barlow & Associates conspiracy with other Defendants to engage in such wrongful conduct, Resort Advisory Group has suffered and continues to suffer substantial economic loss and other general and specific damages including, but not limited to, damage to business reputation, lost profits, lost revenue, and lost business opportunities, in an amount of at least $75,000, with exact amounts to be proven at trial.

569.  Resort Advisory Group further requests injunctive relief to prevent further misappropriation of the Confidential Information of Plaintiff, which is additionally, upon information and belief, being used to further deceive and harm the public for the benefit of Barlow and other co-conspirators.

570.  Unless Defendants are restrained by appropriate injunctive relief, their conduct will continue to cause Resort Advisory Group substantial immediate and irreparable harm for which there is no adequate remedy at law, including but not limited to, the continued misappropriation and illicit use of the Confidential Information by Defendants.

571.  The Defendants committed the wrongful acts alleged herein maliciously, oppressively, and with intent to defraud. Resort Advisory Group is entitled to punitive and exemplary damages from Defendants, jointly and severally, in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

## <u>TWENTY-THIRD CAUSE OF ACTION</u>
### <u>BREACH OF DUTY OF LOYALTY</u>

(By Plaintiff Resort Advisory Group Against All Defendants Barlow and Barlow

& Associates)

572.  Paragraphs 1 - 571 are alleged and incorporated herein by reference.

573.  As previously alleged above, Defendant Barlow owed a fiduciary duty to Resort Advisory Group and to the clients assigned to Barlow for required legal timeshare resolution services.  He had a duty of loyalty to perform these services for the benefit of Resort Advisory Group and its' clients, not for his own personal benefit or for the benefit of his co-conspirators and accomplices in the Barlow Racketeering Enterprise. Defendant Barlow also had a duty of loyalty to act in the best interests of his employer as the agent of the employer, not for his own pecuniary or criminal purposes.

574.  By engaging in the acts above, including, but not limited to the following, Defendant Barlow had breached his duty of loyalty:

     a.  Engaging in a substantial pattern of racketeering activity targeting Resort Advisory Group through association with Barlow Racketeering Enterprise,

     b.  intentionally diverting client payments to himself rather than Resort Advisory Group,

     c.  intentionally and knowingly accepting payments for work on behalf of Resort Advisory Group with no intention of completing the work on behalf of Plaintiff,

     d.  acting adverse to his duty of loyalty and contractual duties to purposely enter into business competition with Resort Advisory Group,

     e.  purposely and intentionally accessing the protected computer systems of Resort Advisory Group to steal the trade secrets of Plaintiff without authorization,

     f.  purposely and knowingly committing mail and wire fraud through deception of clients and former clients to extract unwarranted payments to Barlow,

  g. aiding and abetting members of Barlow Racketeering Enterprise to file false criminal and civil charges against Plaintiffs as part of an elaborate scheme; and

  h. attempting to extort money from Plaintiffs.

575. At all times alleged herein, starting on or around January 17, 2017, and continuing through the present date, Defendant Barlow has been a licensed attorney with the state of California, beholden with fiduciary duties owing to Resort Advisory Group and the public. This includes a duty of loyalty to clients and not act adverse to their interests.

576. By engaging in the acts alleged above, Defendant Barlow has breached his duty of loyalty to Plaintiff and Plaintiff's clients.  As a direct and proximate result of said breaches, Resort Advisory Group has suffered substantial damages of at least $75,000, in an amount to be proven at trial.

577. In committing the acts and perpetrating the schemes alleged herein, Barlow intended to injure Resort Advisory Group and acted with malice and oppression and with a willful and conscious disregard for the rights of Plaintiff, its' employees, and its' clients.

578. In so doing, Barlow has acted toward Resort Advisory Group, its' employees, and its' clients in such a manner as to warrant disgorgement of all revenue derived from the illicit pattern of racketeering, disgorgement of all payments made to Barlow by Plaintiff , together with an award of punitive and exemplary damages in an amount sufficient to punish Defendants for these actions and to deter future similar conduct.

## TWENTY-FOURTH CAUSE OF ACTION

## EXTORTION- WRONGFUL THREAT OF CRIMINAL AND CIVIL PROSECUTION

### (By All Plaintiffs Against All Defendants)

579. Paragraphs 1-578 are alleged and incorporated herein by reference.

580.  Defendant's conduct, as complained about above, constitutes presently actionable civil extortion with specific regard to the communications and a meeting between Barlow and Resort Advisory Group between February 27 and March 4, 2020, and continuing to the present.

581.  Defendant Barlow, acting on behalf of and in furtherance of all co-conspirator Defendants, did attempt to extort a payment of over $800,000 as the price for Defendants' withdrawing filed civil and criminal claims, and not filing additional such claims, against Plaintiffs.

582.  This attempted extortion was made with knowledge by Defendants that the underlying civil and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney were false and were done in furtherance of the conspiracy to extort.

583.  In the same extortion attempt occurring between February 27 and March 4, 2020, Defendant Barlow, acting on behalf of, and in furtherance of all co-conspirator Defendants, also threatened Plaintiffs with additional criminal and/or civil charges that Defendants were prepared to file immediately unless payment was not made.

584.  Plaintiffs reasonably believed these threats were made in furtherance of the attempt to extort and to put additional pressure on Plaintiffs to pay the extortion demand. It was also hinted by Barlow that this type of harassment and substantial interference with Plaintiffs' ability to do business would continue indefinitely into the future unless the demand for money was obeyed immediately.

585.  Plaintiffs allege that all Defendants individually and jointly had actual knowledge of the numerous and substantial wrongful actions that they had individually and jointly undertook in furtherance of the extortion attempt, and that each had knowledge of and planned what occurred.

586.  Each Defendant also had a duty not to commonly plan and specifically engage in the substantially wrongful conduct collectively aimed at achieving the

financial goals of the extortion, with each having aided and abetted one another to achieve the extortion.

587.  As a direct and proximate result of all of Defendants' wrongful conduct, Plaintiffs have been substantially damaged in an amount of at least $75,000, with an exact amount to be proven at trial.

588.  These unlawful and wrongful acts of Defendants were done without regard for the legal rights of Plaintiffs and were willful, wanton, malicious, and oppressive and warrant an award of exemplary and punitive damages in an amount to punish Defendants and deter future similar conduct by other individuals.

## TWENTY-FIFTH CAUSE OF ACTION

### ABUSE OF PROCESS

(By All Plaintiffs Against All Defendants)

589.  Paragraphs 1-588 are alleged and incorporated herein by reference.

590.  Defendants have maliciously and purposely initiated a series of false civil and criminal complaints against Plaintiffs Resort Advisory Group and Attorney Klein, and false and baseless state bar complaints against Attorney.

591.  Defendants, acting individually and jointly, have misused the legal process by bringing a series of false complaints against Plaintiffs in bad faith to vex, annoy, harass, and intentionally harm Plaintiffs. Defendants have chosen to accuse Plaintiffs of fraud by making up a false legal theory of "magical voidability" that somehow exists in timeshare real estate contracts, which allows a timeshare purchaser to simply claim the contract as void, at their discretion, and walk away without further obligation. Because this "magical voidability" somehow exists, any and all charges for timeshare resolution services provided by Plaintiff Resort Advisory Group to the Barlow 10 are therefore "fraudulent", as no work of any kind is purportedly required.

592.  At the same time as the above farcical and fraudulent theory was being espoused in litigation and criminal complaints filed against Plaintiffs, Defendants

Barlow and Barlow & Associates billed clients misappropriated from Plaintiff Resort Advisory Group for "timeshare exit services," thereby purportedly committing the very fraud they falsely claim Plaintiffs have engaged in.

593.  It is clear from the above that the claims of "magical voidability" are solely designed as a false artifice to provide the most minimal basis to repeatedly initiate litigation and criminal complaints against Plaintiffs that would not be immediately dismissed or disregarded.

594.  The filing of such litigation and criminal complaints, and false and baseless state bar complaints against Attorney, was done intentionally and without any valid legal basis by Defendants. These complaints were all filed by Defendants without any probable cause to believe the underlying factual or legal basis has any merit. These complaints were made under knowingly false circumstances for the sole purpose, individually and jointly, of harming Plaintiffs in order to set up an attempt to extort Plaintiffs.

595.  Defendants did knowingly jointly and individually plan, and conspire to plan, to file the following false civil and criminal cases against Plaintiffs, and false and baseless state bar complaints against Attorney, as set forth in paragraphs 103-105 herein.

596.  The ulterior purpose and motivation of Defendants in so misusing the process in the above described matters was to obtain an unfair advantage over Plaintiff Resort Advisory Group in competing with Plaintiff in timeshare exit services by damaging the reputation and finances of Plaintiffs, to gain revenge on Plaintiffs, and for purposes of enhancing the success of an extortion attempt on all Plaintiffs.

597.  At all times mentioned herein, Defendants acted willfully and with the wrongful intention of harming Plaintiffs for the benefit of Defendants and from the improper motive of intentional malice against Plaintiffs. All Defendants knew of the falsity of the claims against Plaintiffs prior to the time they caused the filing of the false claims and knew the claims were part of a joint pattern and practice of

harassment, vexation, and harm to Plaintiffs in order to benefit Defendants. Defendants knew that the timeshare contracts are not "magically voidable" and that they could not simply walk away from the contracts without substantial legal consequences and risks.

598.  Defendants acted, individually and jointly, and each aided and abetted the other, in purposely engaging in the abuse of process for their own selfish and illegal benefits.

599.  As a direct and proximate result of Defendant's actions, Plaintiffs have sustained damages in an amount of at least $75,000, to be proven at trial.

600.  Defendants acted with substantial and purposeful oppression, fraud, and malice as defined in Civil Code Section 3294 and Plaintiffs are is therefore entitled to punitive damages for this cause of action.

## TWENTY-SIXTH CAUSE OF ACTION

### ABUSE OF CIVIL PROCEEDINGS

(By Plaintiff Resort Advisory Group Against All Defendants)

601.  Paragraphs 1-600 are alleged and incorporated herein by reference.

602.  Defendants Barlow and Barlow & Associates, in conjunction with the Barlow 10, were actively involved in encouraging, bringing, and conspiring to encourage and bring, multiple civil and criminal cases filed against Plaintiffs despite knowing the cases lacked any factual or legal merit.

603.  The singular, underlying basis for all the false claims filed against Plaintiffs that Plaintiffs committed fraud against a the Barlow 10 and other clients of Plaintiff Resort Advisory Group by offering and performing timeshare resolution services because each timeshare real estate contract is somehow "magically voidable" at the sole discretion of Defendants and no legal action of any kind is required. Therefore, under the frivolous claims, any fees charged by Plaintiff Resort Advisory Group are therefore fraudulent.

604.  This self-executing "magical" ability, lacking any valid factual, logical, or legal basis, is purportedly possessed by each Barlow 10 Defendant, even though, on information and belief, none of their timeshare contracts ever self-voided or self-cancelled themselves.

605.  Plaintiff Resort Advisory Group is a A+ rated company by the BBB and has reviewed hundreds of variations of timeshare contracts, including those of the Barlow 10, and "magical" voidability at the sole discretion of a timeshare purchaser simply does not exist in any contract or in the law.

606.  Defendants have no legal or factual basis for these claims, and provide no legal or factual basis as to how or why the timeshare companies would not pursue, to the fullest extent of the law, to enforce (and undoubtedly win)  a breach of contract claim against a purported client who simply states the contract is void and walks away from their contractual obligations.

607.  This is a part of a fraudulent ploy by Defendants to arrive at a purported "harm" in order to methodically, specifically, and intentionally file lawsuits against Plaintiff that they never intend to pursue, but for the sole purpose of harassment, damaging Plaintiffs, and for the joint benefit of Defendants' plan to extort money from Plaintiffs.

608.  As set forth in paragraphs 93-94 herein , the Pressney Defendants, with the encouragement and guidance of Defendant Barlow, has filed a fraudulent civil case in Los Angeles County Superior Court, *John Pressney et al. v. Intermarketing Media LLC dba Resort Advisory Group et al.,* Cal. Sup.Ct., Orange County, No. 30-2019-01093813-CU-BC-NJC (filed, August 28, 2019), in pursuit of their pattern of racketeering activity and in pursuit of their individual and joint goals of ultimately extorting Plaintiff, Resort Advisory Group.  The Pressneys' attorneys in this Civil Action have been made aware of the Pressneys' unlawful conduct and activities described herein and, nevertheless, continue to pursue this Civil Action.

609.   Defendants Barlow, Barlow & Associates, and the Barlow 10 have set out a pattern and practice of vexatious litigation for purposes of unfair competition, revenge, and ultimately as a pathway to extort Plaintiffs. Each of these Defendants aided and abetted each other to plan to file and subsequent filing of multiple false civil and criminal causes of action in order to further their common and joint purpose to harm Plaintiffs and extort money from Plaintiffs. Each Defendant is a knowing and willing participant in the scheme and worked for the furtherance of common goals amongst co-conspirators.

610.   The Pressney case cited above is still ongoing against Plaintiff Resort Advisory Group and has not yet been terminated by Defendants. Defendant Barlow, acting for the common benefit of all Defendants, made it clear in the extortion attempt between February 27-March 4, 2020, and continuing to the present, that the litigation will only be cancelled upon payment of over $800,000 to Defendants, and if payment is not made, additional civil and criminal cases are going to be filed.

611.   No reasonable attorney licensed in the state of California would believe that there are valid circumstances to bring cases like these against Plaintiffs or anyone else. In fact, Defendants Barlow and Barlow & Associates knew, and had reason to know, that the timeshare contracts entered into by Barlow 10 could not be reasonably altered or exited by any Barlow 10 Defendants without substantial legal attacks on the illegal sales processes, the unconscionable terms, or other valid contractual legal attacks and negotiations handled by a company similar to Plaintiff Resort Advisory Group in conjunction with use of an attorney.

612.   Further, all Barlow 10 Defendants knew, and had reason to know by way of experience, common sense, and otherwise, that their repeated monthly contractual payments and the subsequent use of timeshare properties pursuant to the various timeshare contracts is substantial consideration from both sides, and that the timeshare contracts were binding and enforceable against Barlow 10 without substantial legal assistance to negotiate and exit the contracts, if possible.

613.  Plaintiffs are informed and believe, and further allege that Defendants, in filing and pursuing the case above, acted primarily for a purpose other than succeeding on the merits of the claims, and that the case was purposely planned, brought, and prosecuted with malice, because the primary purpose was not for pursuing legal relief from the justice system, but to further a racketeering scheme by all Defendants to intentionally harm Plaintiffs' reputations and business for the purposes of extorting over $800,000.

614.  Plaintiffs have suffered substantial damages, including general damages, consequential damages, and reputational damages as a direct result of the wrongful, malicious, and ultimately frivolous prosecution of the above-mentioned case.

615.  Defendants Barlow, Barlow & Associates, and the Pressney Defendants' joint conduct as alleged herein is a substantial factor in causing the harms that Plaintiff has suffered.

616.  Plaintiffs, upon dismissal or termination, are entitled to attorney's fees for defense of the above-referenced civil case, and additionally, for the defense of the fraudulent criminal claims filed by Barlow 10, and false and baseless state bar complaints filed by them against Attorney.

617.  Due to the commission of the acts as described herein above, Defendants Barlow, Barlow & Associates, and the Barlow 10 have acted with oppression, fraud, and malice as defined in Civil Code Section 3294 and Plaintiffs are therefore entitled to punitive damages for this cause of action.

## TWENTY-SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE TRUST

(By Plaintiff Resort Advisory Group Against Barlow

Defendants)

618.  Paragraphs 1-617 are alleged and incorporated herein by reference.

619.  During Barlow and Barlow & Associates tenure with Plaintiff Resort

Advisory Group to assist clients with required legal assistance, he gained limited access to the protected computer systems of Plaintiff, gained valuable insight into the proprietary trade secrets and operations of Plaintiff, and had considerable leeway and trust to act in the best interests of Plaintiff Resort Advisory Group and Plaintiff's clients for the mutual benefit of all.

620.  Defendants Barlow and Barlow & Associates owed a fiduciary duty to Resort Advisory Group and its' clients to hold and control the assets of Plaintiff they were entrusted with for the benefit of Plaintiff Resort Advisory Group and not for their personal benefit or the benefit of Barlow Racketeering Enterprise and other associates and accomplices.

621.  As alleged above, Barlow and Barlow & Associates, aided and abetted by the other Defendants and co-conspirators, converted the assets of Resort Advisory Group for their personal benefit and the personal benefit of Barlow Racketeering Enterprise members, associates, and accomplices. They did so by theft of trade secrets, deception, illegal business practices, and attempted extortion, amongst other illicit acts aimed at Plaintiff and Plaintiff's assets. All such conversions of assets were done in knowing violation of Barlow and Barlow & Associates contractual, loyalty, and fiduciary duties to Resort Advisory Group. If these Defendants are permitted to retain such assets, they will be unjustly enriched at Plaintiff's expense.

622.  As a result of the foregoing, Plaintiff Resort Advisory Group is entitled to an imposition of a constructive trust for the benefit of Plaintiff over all monies or assets belonging to Plaintiff and currently held or controlled by Barlow, Barlow & Associates, Case in Chief LLC, ATTFund, CDRS, and Defendant Phoenix, including the bank accounts of the aforementioned Defendants which contain revenues and profits derived from the illicit use of Plaintiff's trade secrets by Barlow Racketeering Enterprise and any real property purchased or financed by the illicit revenues from the racketeering schemes.

623.  Defendants regularly misused and continue to misuse the corporate and other forms of business organization as a cloak for committing fraud and as a means of perpetrating injustice.

624.  By reason of the elaborate and fraudulent schemes used by Defendants to conceal the true nature of the fraudulent and illegal activities, it would be unjust and inequitable to require Plaintiffs to trace back the source of money used to acquire specific assets or to be deposited into specific accounts, or to prove that specific assets were acquired by use of misappropriated assets of Plaintiffs, or that specific accounts contain monies derived from the misappropriation of Plaintiff's assets. Instead, the burden should be shifted to Defendants to prove they had sources of income and revenue outside of the unlawful schemes described herein, and to prove that particular assets or bank accounts were derived from such independent, lawful income.

## **TWENTY-EIGHTH CAUSE OF ACTION**
### **FRAUD AND CONSPIRACY TO DEFRAUD**

(By Plaintiff Resort Advisory Group Against Barlow Defendants)

625.  Paragraphs 1-624 are alleged and incorporated herein by reference.

626.  In the course and conduct of participating in the Barlow Racketeering Enterprise, Defendants Barlow and Barlow & Associates made representations to Plaintiff Resort Advisory Group and others, which representations were false and necessary to implement the unlawful scheme to steal trade secrets; unfairly, fraudulently, and illegally compete against Plaintiff Resort Advisory Group; deceive public customers into sending Barlow Racketeering Enterprise substantial additional, unnecessary, and unjustified payments; and to ultimately attempt to extort over $800,000 from Plaintiffs in order for Barlow Racketeering Enterprise to stop all illicit activities targeting Plaintiffs, as previously described.

627.  As set forth above, Barlow and Barlow & Associates, each who owed a

fiduciary duty to Plaintiff and Plaintiff's clients, intentionally failed to disclose and otherwise concealed facts from Plaintiff Resort Advisory Group Plaintiff Resort Advisory Group's clients and others, the disclosure of which was necessary to make the representations by Barlow and Barlow & Associates not materially misleading. Both Barlow and Barlow & Associates knew the said facts were not being disclosed and that the facts were material, and he intended concealment of these facts to facilitate the continuation of his unlawful activities against Plaintiff and in furtherance of the illicit goals of Barlow Racketeering Enterprise.

628.  Plaintiff Resort Advisory Group relied to its' detriment on the representations of integrity by Barlow and Barlow & Associates. Both Barlow and Barlow & Associates flagrantly breached the trust and confidence of Plaintiff Resort Advisory Group by committing numerous acts of fraud, deceit, conversion, and racketeering alleged herein, through which they substantially damaged the reputation of Plaintiffs and plundered the assets of Plaintiff Resort Advisory Group for their own illicit gains.

629.  In the course of developing their elaborate scheme to defraud, Barlow and Barlow & Associates, who with the assistance of associates and accomplices, willfully and knowingly did combine, conspire, confederate, and agree together, with each other and with others to facilitate, aid and abet, and conceal the scheme and artifice to defraud, and to obtain money and trade secrets by false representations and promises, thereby enabling the massive diversions and concealment of the plan to substantially harm the business of Plaintiffs in order to extort, as previously stated in this Complaint.

630.  As a direct and proximate result of the foregoing fraudulent conduct and conspiracy to defraud, Plaintiff has suffered damages in an amount to be determined at trial, but of at least $75,000.00.

631.  In committing the acts and perpetrating the schemes alleged herein, Barlow and Barlow & Associates intended to injure Plaintiff, and acted with malice and

oppression and with a willful and conscious disregard for the rights of Plaintiff and its' clients.

632.  In so doing, Defendants Barlow and Barlow & Associates acted toward Plaintiff and its' clients in such a manner as to warrant disgorgement of any and all revenues derived from the illicit and illegal use of the trade secrets of Plaintiff together with an award of punitive and exemplary damages in an amount to be determined at trial.

### TWENTY-NINTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

(By Plaintiff Resort Advisory Group Against Defendant Barlow)

633.  Paragraphs 1-632 are alleged and incorporated herein by reference.

634.  Defendant Barlow entered into an Employment Agreement with Plaintiff Resort Advisory Group as a California licensed attorney to provide necessary legal services to Plaintiff's clients, pursuant to which he owed Resort Advisory Group broad fiduciary obligations as set forth in the Agreement and as expected and required of a licensed attorney.

635.  Plaintiff Resort Advisory Group fulfilled all of its fiduciary duties to Barlow and fulfilled all of its contractual obligations to Barlow.

636.  Defendant Barlow breached his fiduciary duties to Plaintiff, Resort Advisory Group by, *inter alia*:

    a.  Placing his own personal interests ahead of those of Plaintiff and its' clients.

    b.  Placing the personal interests of his law firm, Barlow & Associates, ahead of those of Plaintiff and its' clients.

    c.  Intentionally usurping the business and business opportunities of Plaintiff, for which Plaintiff expended substantial amounts of time, business efforts, and money to develop and grow, by purposefully

taking the proprietary business operational knowledge of Plaintiff and using it to unfairly compete with Plaintiff.

d.  Intentionally stealing and misappropriating the entire proprietary client database of Plaintiff for his own competitive use.

e.  Intentionally stealing and misappropriating the entire proprietary business model and trade secret business practices of Plaintiff for his own competitive use with virtually zero effort and risk of failure to the substantial detriment of Plaintiff who has expended years of time and millions of dollars to create, develop, test, and build at a great risk of failure.

f.  Intentionally diverting and/or dissuading clients of Plaintiff from fulfilling their contractual obligations with Plaintiff and diverting client payments to himself.

g.  Intentionally putting forth substantial fraudulent efforts to turn Plaintiff's clients against Plaintiff for purposes of revenge, personal greed, and extortion.

h.  Intentionally putting forth substantial efforts to encourage Plaintiff's clients and former clients to file false criminal charges against Plaintiff for purposes of illegal competition and extortion.

i.  By knowingly and intentionally diverting and embezzling client payments belonging to Plaintiff for his own use and in furtherance of his pattern of racketeering activity.

j.  By taking substantial efforts to conceal his scheme from Plaintiff Resort Advisory Group while still under the Agreement with Plaintiff, and all acts taken in furtherance of the scheme.

k.  By taking substantial efforts to recruit additional co-conspirators by accusing Plaintiff of fraud through the intentional solicitation of Plaintiff's proprietary client list by mail and the internet.

l.  By intentionally misrepresenting the business practices of Plaintiff as fraudulent to Plaintiff's clients for purposes of harming the business reputation and profits of Plaintiff.

637.  As a direct and proximate result of Barlow's breach of his fiduciary duties, Plaintiffs have been damaged in an amount of at least $75,000, in an exact amount to be proven at trial.

638.  Defendant Barlow engaged in the conduct described above willfully, fraudulently, maliciously, and oppressively, in direct and intentional breach of his fiduciary and other obligations to Plaintiff. Defendant Barlow's conduct thus gives rise to punitive damages in an amount to be proven at trial.

## THIRTIETH CAUSE OF ACTION
### LEGAL MALPRACTICE

(Plaintiff Resort Advisory Group Against Defendant Barlow and Barlow & Associates)

639.  Paragraphs 1-638 are alleged and incorporated herein by reference.

640.  Pursuant to a written retainer agreement, Defendants Barlow and Barlow & Associates promised to perform all required legal services, which were required of him to represent and protect all Resort Advisory Group's interests, in all matters relating to timeshare resolution services.

641.  Pursuant to a written retainer agreement, Defendants Barlow and Barlow & Associates promised to perform all required legal services, which were required of him to represent and protect the interests of clients assigned to Barlow by Resort Advisory Group, for all matters relating to timeshare resolution services.

642.  Defendant Barlow, through his law firm Barlow & Associates, agreed to provide legal services to protect the interests of Resort Advisory Group as they relate to the legal rights of Plaintiff that may arise through the ordinary course of business in operating timeshare resolution services to the public.

643.  By agreeing to act as Plaintiff's attorney, Defendants Barlow and Barlow & Associates were owed a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Resort Advisory Group, including but not limited to, a duty to disclose all facts known materially affecting the business of Resort Advisory Group, the status of assigned client's resolution services, and the actual adverse actions by clients or other known persons or entities that would harm or threaten the Plaintiff's interests.

644.  By agreeing to act as Resort Advisory Group's attorney, Defendants Barlow, and Barlow & Associates owed a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Resort Advisory Group, including but not limited to not trying to turn Resort Advisory Group's clients against it by legal or illegal means.

645.  By agreeing to act as Resort Advisory Group's attorney, Defendants Barlow, and Barlow & Associates owed a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Plaintiffs, including but not limited to not operating or attempting to operate a competing business against Plaintiff.

646.  By agreeing to act as Resort Advisory Group's attorney, Defendants Barlow and Barlow & Associates owed a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Plaintiffs, including but not limited to not trying to harm the business prospects of Plaintiff nor attempt to extort money from Plaintiff.

647.  Upon information and belief, Defendants Barlow and Barlow & Associates took the following actions in breach of their fiduciary duties in furtherance of their concealment of the illegal scheme to compete with Plaintiff and extort money from Plaintiff:

      a.  Defendants Barlow, and Barlow & Associates, while employed by Plaintiff Resort Advisory Group, knowingly and purposely redirected payments from Plaintiff's clients for timeshare resolution services and kept them for the sole benefit of Barlow and Barlow & Associates.

This was intentionally and purposely concealed from Plaintiff to avoid any detection and the true nature of his illicit redirection of client payments was not discovered until sometime in late 2019.

b. Defendants Barlow, and Barlow & Associates, while employed by Plaintiff Resort Advisory Group, knowingly and purposefully failed to complete required legal services for Plaintiff's clients for which he had already been paid in advance by Plaintiff. The full extent of Defendants Barlow, and Barlow & Associates' unethical abandonment and breach of fiduciary duties, giving rise to this claim, were not uncovered by Plaintiff until late 2019, with further details being discovered each month, described further below.

c. Upon investigation, information, and belief, Defendant Barlow, while employed by Plaintiff Resort Advisory Group, knowingly and purposefully stole Plaintiff's clients and Business Knowhow for his own use and that of his law firm Barlow & Associates. This was intentionally concealed from Plaintiff and was not discovered until late 2019.

d. Defendant Barlow, upon being confronted and terminated by Plaintiff Resort Advisory Group, did plan and conspire to access, and did actually access, the protected computer systems of Plaintiff without authorization to steal the entire client database and trade secrets of Plaintiff for illicit competitive use and extortion. This brazen illicit action was concealed from Plaintiff and the details of this theft was not uncovered by Plaintiff until late 2019.

e. Defendants Barlow and Barlow & Associates utilized the stolen trade secrets of Plaintiff Resort Advisory Group to unfairly operate a competitive business to Plaintiff.  Defendants Barlow and Barlow & Associates used Plaintiff's proprietary client database to illicitly

operate his business with virtually no risk and no expenditure of time, effort, and capital.

    f.  Defendants Barlow and Barlow & Associates encouraged and coached clients and former clients of Plaintiff Resort Advisory Group to file false civil and criminal charges against Plaintiffs in order to help his own competitive business and in furtherance of the conspiracy to extort Plaintiffs, believed to have begun in the second half of 2019.

    g.  Defendants Barlow and Barlow & Associates, between February 27 and  March 4, 2020, and continuing to the present, acting on behalf of himself and other co-conspirators, did attempt, and is continuing to attempt, to extort more than $800,000 from Plaintiffs in order for Barlow and others to dismiss the frivolous cases Defendants Barlow and Barlow & Associates caused to be filed against Plaintiffs.

648.  Upon information and belief, Defendants Barlow and Barlow & Associates have obtained substantial financial benefit as a result of his breaches of fiduciary duties owed to Resort Advisory Group and Plaintiff's clients and through his intentional misappropriation of the lucrative trade secrets of Resort Advisory Group.

649.  Defendants Barlow, and Barlow & Associates' breach of fiduciary duties toward Resort Advisory Group include, but are not limited to: the theft of Plaintiff's confidential and proprietary information, including its client database and Business Knowhow, which Plaintiff has expended substantial research, time, money, and business efforts to develop, maintain and use in building and conducting its timeshare resolution service.

650.   The use of the above has proven to be a successful business strategy of Resort Advisory Group for the benefit of its clients.

651.  Defendants Barlow and Barlow & Associates, as counsel to Plaintiff Resort Advisory Group, gained secretive, insider knowledge of Plaintiff's Business

Knowhow, which, in blatant breach of his fiduciary duties to Plaintiff, he stole and used for his own benefit. This use continues to the current day.

652. Defendants Barlow and Barlow & Associates abused their insider position of privilege and trust as Resort Advisory Group's counsel, with access to Plaintiff's confidential and proprietary information, including its client database and Business Knowhow, to take and use that information without authorization to put in motion an elaborate scheme to defraud and extort Plaintiff. The details of this unethical, illicit plan were not known by Plaintiff until approximately February or March 2020.

653. Defendants Barlow and Barlow & Associates have thus acted in substantial breach of ethical and fiduciary duties owed to Resort Advisory Group as its attorney, both during his tenure and continuing well after his termination.

654. Defendants Barlow and Barlow & Associates continue to act in substantial breach of their ethical and fiduciary duties owned to Resort Advisory Group as an attorney.

655. In breaching their respective fiduciary duties to Resort Advisory Group, as more fully set forth above, and below, Defendants Barlow and Barlow & Associates failed to exercise reasonable care, skill, diligence, knowledge ordinarily possessed by other attorneys similarly situated.

656. Additionally, by breaching their respective fiduciary duties to Resort Advisory Group, Defendants Barlow and Barlow and Associates' actions fell below the standard of care incumbent upon similarly situated attorneys and law firms in these circumstances.

657. As a result of the foregoing conduct, Resort Advisory Group has suffered actual damages in excess of $75,000, in an amount to be proven at trial.

658. Defendant Barlow engaged in the conduct described above willfully, fraudulently, maliciously, and oppressively, in direct and intentional breach of his fiduciary duties and other obligations to Resort Advisory Group and its clients, thus

giving rise to punitive damages in an amount to be proven at trial.

### THIRTY-FIRST CAUSE OF ACTION

**MALPRACTICE – ACTIVE CONCEALMENT/CONFLICT OF INTEREST**

(By Plaintiff Resort Advisory Group against Defendants Barlow and Barlow & Associates)

659.  Paragraphs 1-658 are alleged and incorporated herein by reference.

660.  Pursuant to a written retainer with Plaintiff Resort Advisory Group, Defendants Barlow and Barlow & Associates promised to perform all legal services which were required of him and to represent and protect Plaintiff's interests in all matters relating to timeshare resolution services offered to the public, including but not limited to, legal timeshare resolution services performed by him on behalf of Plaintiff's clients.

661.  By agreeing to act as Resort Advisory Group's attorney, and accepting substantial amounts of up-front payments from Plaintiff Resort Advisory Group for the performance of legal services, Defendants Barlow and Barlow & Associates, and each of them, obligated themselves to a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Plaintiff.

662.  These fiduciary duties included, but were not limited to, a duty to disclose all facts known materially affecting the status of all client transactions and potentially, actual and adverse actions by timeshare adversaries and/or Resort Advisory Group's clients, former clients, or potential clients, which would harm Resort Advisory Group.

663.  Upon information and belief, while still representing Resort Advisory Group, Defendant Barlow, provided with substantial assistance from Defendant Barlow & Associates, undertook planning and actual efforts to steal the business opportunities and trade secrets of Plaintiff, including its clients and Business Knowhow, and began unfairly competing with Resort Advisory Group.

664.  Due to purposeful concealment by Defendant Barlow, much of his illicit pattern of racketeering activity and breaches of duty were not readily detectible by Resort Advisory Group until a substantial amount of time had passed from the termination of Barlow by Plaintiff Resort Advisory Group. The full extent of Defendants Barlow and Barlow & Associates' theft of clients, theft of trade secrets, and illicit and unfair competition was not known by Plaintiffs until the latter part of 2019.

665.  Further, upon investigation, information, and belief, Resort Advisory Group alleges Defendants Barlow, and Barlow & Associates took the following actions to execute the scheme to usurp the proprietary business assets of Plaintiff:

      a.  Defendants Barlow and Barlow & Associates concealed and rerouted payments made by Resort Advisory Group's clients to Barlow and Barlow & Associates for their sole profit and economic benefit.

      b.  Defendants Barlow and Barlow & Associates concealed that they had fraudulently convinced Plaintiff's clients that additional payments for legal services were required even though the clients had already paid for the legal services of Plaintiff, provided through Defendant Barlow.

      c.  Defendants Barlow and Barlow & Associates stopped providing required legal services and stopped returning emails and phone calls, despite having accepted payment from Plaintiff Resort Advisory Group for those services.

      d.  Defendants Barlow and Barlow & Associates began secretly contacting clients of Resort Advisory Group and falsely accusing Plaintiff of fraudulent business practices in order to encourage the clients to leave Plaintiff and go with him in his competing business.

      e.  Defendants Barlow and Barlow & Associates had actual knowledge, but failed to advise Resort Advisory Group, that Barlow intended to create a competing timeshare resolution practice to usurp the business

opportunities and prospects of Plaintiff.

    f.  Defendants Barlow and Barlow & Associates had actual knowledge, before it occurred, to take proprietary information and trade secrets from Resort Advisory Group, including its client database and Business Knowhow,  to give them a substantial business advantage over rivals, including Plaintiff, with virtually no business or capital risk.

    g.  Defendant Barlow had actual knowledge, before it occurred, that he and Barlow and Barlow & Associates intended to take the Business Knowhow developed exclusively by Plaintiff Resort Advisory Group for its own benefit, for illegal use in a competing business with virtually no business or capital risk.

    h.  Defendant Barlow and Barlow & Associates both actively participated in the concealment of the aforementioned unlawful conduct in an attempt to avoid liability to Resort Advisory Group.

    i.  Defendants Barlow and Barlow & Associates' fiduciary duty to Plaintiff Resort Advisory Group transcended his employment with Plaintiff and did not simply end when Defendants Barlow and Barlow & Associates' employment was terminated by Plaintiff.

    j.  Defendants Barlow and Barlow & Associates continued this substantial breach of their fiduciary duties to Resort Advisory Group by actively continuing to illegally use the stolen trade secrets of Plaintiff to compete against Plaintiff and to intentionally harm the business prospects of Plaintiff through further false claims of fraud to clients and former clients, in continued conflict of interest with Plaintiff.

    k.  Defendants Barlow and Barlow & Associates, acting on behalf of co-conspirators Barlow Racketeering Enterprise members and in

furtherance of his conflict of interest, attempted to extort more than $800,000 from Plaintiffs between February 27 and March 4, 2020, and continuing to the present.

l.  By actively concealing their actions and representing and exalting the interests of the Barlow 10 (and other former "turned" clients of Resort Advisory Group) over the interests of its client, Resort Advisory Group, Defendants Barlow and Barlow & Associates created an irreconcilable conflict of interest that further breached their fiduciary duties to Resort Advisory Group.  In so doing, they acted in a manner that falls below the standard of care incumbent upon similarly situated attorneys and law firms in these circumstances.

m.  By breaching the foregoing standard of care and fiduciary duties to Resort Advisory Group, as more fully set forth above and below, Defendants Barlow and Barlow & Associates failed to exercise reasonable care, skill, diligence, and knowledge ordinarily possessed by other attorneys similarly situated.

666.  As a result of the foregoing conduct, Resort Advisory Group has suffered actual damages in an amount to be determined at trial but believed to be in excess of $75,000.

667.  Defendants Barlow and Barlow & Associates engaged in the conduct described above willfully, fraudulently, maliciously, and oppressively, in direct and intentional breach of his fiduciary and other obligations to Resort Advisory Group, thus giving rise to punitive damages in an amount to be proven at trial.

## THIRTY-SECOND CAUSE OF ACTION
## MONEY HAD AND RECEIVED

(By Plaintiff Resort Advisory Group against Defendants Barlow and Barlow &

Associates)

668.  Paragraphs 1-667 are alleged and incorporated herein by reference.

669.  Plaintiff Resort Advisory Group contracted with Defendant Barlow and Barlow & Associates to provide required legal services to its' timeshare resolution clients.

670.  Defendants Barlow and Barlow & Associates received multiple up-front payments from Plaintiff Resort Advisory Group, first on a per-client basis and later on a per-week basis, for the legal work required for each client. Defendant Barlow and Barlow & Associates were to then perform the pre-paid legal work on an as-needed basis, depending on the current status of the case, until the resolution of the timeshare contract was complete to the client's satisfaction.

671.  Upon information and belief, between approximately June 2018 and August 2018, Defendants Barlow and Barlow & Associates received upfront payments for to-be-performed legal work, but Defendants Barlow and Barlow & Associates did not perform the legal work and stopped responding to client phone calls and emails.

672.  Upon information and belief and an investigation of Defendants Barlow and Barlow & Associates actions based on customer complaints, Plaintiff Resort Advisory Group discovered that Defendants Barlow and Barlow & Associates had concealed that they were instead  using the monies paid by Resort Advisory Group and the trade secrets and Business Knowhow of Resort Advisory Group to operate their own timeshare resolution service in substantial breach of their fiduciary and contractual duties to Plaintiff Resort Advisory Group and its' clients.

673.  Plaintiff believes that Defendants Barlow and Barlow & Associates received payments in excess of $10,000 from Resort Advisory Group for legal services that were never rendered to its' clients.

674.  To date, Defendants Barlow and Barlow & Associates have not returned or paid back the monies retained but not earned.

675.  Plaintiff Resort Advisory Group had initial notice to believe a violation of

money had an received had been committed by Defendants Barlow and Barlow & Associates in August or September 2018, but the full extent of the breadth of the retention of unearned and unwarranted funds was not uncovered until much later and even now Plaintiff is unaware of the total amounts of funds received and illicitly retained by Barlow and Barlow & Associates that rightfully belongs to Resort Advisory Group.

676.  Upon information and belief, along with the concealment of their illegal competition with Plaintiff Resort Advisory Group, Defendants Barlow and Barlow & Associates did conceal that they were soliciting and accepting substantial amounts of payments directly from Resort Advisory Group clients and then redirecting those payments to accounts controlled by Barlow and Barlow & Associates.

677.  The payments solicited by Defendant Barlow and Barlow & Associates are payments legally belonging to Resort Advisory Group, but which were wrongly retained and concealed by Defendants Barlow & Barlow & Associates.

678.  Defendants Barlow and Barlow & Associates have continuously used the trade secrets of Plaintiff to solicit and retain further payments for services to themselves from the clients of Plaintiff Resort Advisory Group.

679.  To date, Defendants Barlow and Barlow & Associates have not remitted any of the unearned and illicitly gained payments, as referenced above, to Plaintiff Resort Advisory Group.

680.  Plaintiff alleges that the total of the payments had and received by Defendants Barlow and Barlow & Associates that rightfully belong to Resort Advisory Group is in excess of $75,000, in an exact amount to be determined at trial.

681.  Accordingly, Plaintiff Resort Advisory Group is entitled to general, special, consequential and incidental damages of not less than $75,000 from Defendants Barlow and Barlow & Associates, jointly and severally.

**THIRTY-THIRD CAUSE OF ACTION**

**INJUNCTIVE RELIEF**

(By All Plaintiffs Against All Defendants)

682.  Paragraphs 1-681 are alleged and incorporated herein by reference.

683.  The following claims of relief are on behalf of all Plaintiffs, individually and jointly, and allege claims against Barlow Defendants and/or Barlow 10 Defendants for injunctive relief related to the following common set of facts and allegations.

684.  Each of the Plaintiffs in the following injunctive relief claims have standing to bring their respective injunctive relief claims as a person(s) who have suffered damage, economic and non-economic, as a result of the illegal, fraudulent and tortious conduct alleged in the preceding claims for relief for these Plaintiffs in this Complaint.

685.  Upon information and belief, each of the Plaintiffs in the following injunctive relief claims allege that with regard to the illicit actions or transactions which are the subject of this Complaint, Defendants have intentionally and purposefully damaged, and continue to attempt to damage their personal and business reputations, in addition to any unfair competition and monetary damages suffered.

686.  The making of prior and future public claims of criminal fraud or other false allegations of untoward personal or business activity by Defendants against, Plaintiffs, including through use of filing false criminal complaints with law enforcement authorities and encouraging frivolous civil lawsuits to be filed for purposes of extortion, and the filing of false and malicious state bar claims against Attorney, have caused and will continue to cause irreparable harm and injury to each of these Plaintiffs and their individual reputations, credibility, and economic prospects.

687.  Each of the Plaintiffs alleging claims for injunctive relief against Defendants

in this Complaint and corresponding Temporary Restraining Order have no adequate legal remedy for such harm and irreparable injury.

688.  Plaintiffs thereby request this Court to enjoin Defendants, as alleged, based upon this summary of common factual elements set forth below.

689.  Barlow is a California-licensed attorney, owner of Barlow & Associates, a law firm, and, it is alleged, owns and controls, directly or through Barlow & Associates, Defendants Cooperative Dispute Resolution Society, Phoenix Investments Alliance, Case in Chief LLC and ATT Fund (collectively, "Barlow Defendants").

690.  Defendants Barlow and Barlow & Associates are former attorneys for Plaintiff Intermarketing Media, LLC, dba Resort Advisory Group ("ResortAG"), which provides timeshare resolution services to timeshare purchasers.

691.  In January 2017, Barlow and Barlow & Associates were retained by ResortAG to serve as counsel to ResortAG and to provide legal timeshare resolution services to timeshare purchasers qualified by ResortAG to receive such services and referred to it by ResortAG.  ResortAG charged consumers a fee for qualifying them to receive timeshare resolution services and referring them to an attorney to provide the legal component of those services, and compensated Barlow for the client referrals and provision of those services.  Under this arrangement, the client was not to pay Defendants Barlow, and Barlow & Associates for legal services as he was being compensated by ResortAG.

692.  Defendants Barlow and Barlow & Associates' were terminated by ResortAG for unsatisfactory performance and breach of contract in or about August-September 2018. The alleged unsatisfactory performance included failure to be responsive to clients and ResortAG and to provide the timeshare resolution services to clients for which he had been paid by ResortAG.

693.  The alleged breach of contract included, amongst other claims, Defendants Barlow and Barlow & Associates' misappropriation of ResortAG's trade secrets,

specifically, its confidential and proprietary client database and customer list, for his own self-interested purposes, including an intent to compete with ResortAG in violation of his retainer agreement with ResortAG. Defendants Barlow and Barlow & Associates additionally secretly solicited and retained funds from clients of ResortAG for timeshare services already paid for by the clients, in breach of his contract.

694. Since their termination, Defendants Barlow and Barlow & Associates, individually and/or in concert with the other Barlow Defendants and other individual defendants, each a former client of Resort, has engaged in the following damaging actions and course of conduct:

a.      Defendants Barlow, and Barlow &Associates' following, and, it appears, even prior termination, accessed ResortAG's computer database, including confidential client information of ResortAG, without authorization, or in excess of authorization, and used that access to seek to independently represent clients referred to him by ResortAG, who were to be serviced by him only in his capacity as counsel for Resort;

b.      Defendants Barlow and Barlow & Associates have taken clients from ResortAG for the purpose of unfairly competing with, and has competed with, ResortAG, in the provision of timeshare resolution services.  Defendants Barlow and Barlow & Associates' have charged consumers for those services in addition to and despite having already been paid by ResortAG to provide those services and the clients having already paid ResortAG for the services. Barlow continues to unfairly compete with ResortAG through the current date;

c.      Defendants Barlow and Barlow & Associates have sent unsolicited communications to Plaintiffs clients to intentionally disparage the business and reputation of Resort Advisory Group and continues to send similar disparaging communications through the current date;

d.      Through disparagement of Plaintiffs and unethically leveraging a

reputation of "honesty" as an attorney, Defendants Barlow and Barlow & Associates have turned several former clients of Resort Advisory Group against it, including the other individual Defendants in this action;

e.     Through Defendants Barlow and Barlow & Associates' disparagement of Plaintiffs, and with his active encouragement and guidance, former-client defendants John and Pamela Pressney have filed a false civil lawsuit against Resort Advisory Group;

f.     Through Defendants Barlow and Barlow & Associates' disparagement of Plaintiffs, and with his active encouragement and guidance, the Pressneys and former client defendants Herman and Debora Abel, Morris and Virginia Hannah, Bernardo and Carol Bettenilli, Paul and Renee Martinez, Lari Castle and Lee Harris Turk have lodged criminal complaints against Plaintiffs, variously, with Southern California district attorneys and the United States Attorney for the Southern District of California, and with a New Jersey county district attorney, along with the false and baseless claims filed against Attorney with the Pennsylvania and New Jersey bars.   This was intentionally done as part of a pattern and practice of racketeering activity in order to damage the business and reputation of Plaintiffs in furtherance of a scheme to extort;

g.     Barlow has threatened, and continues to threaten Plaintiffs by mail, internet and by phone, that in addition to at least 33 criminal complaints already filed, other of its former clients, including, possibly, other of the former client-defendants in this action, have sworn criminal complaints ready to be filed against Plaintiffs, to be done upon Barlow's command;

h.     Barlow, directly and through defendant entities owned or controlled by Barlow, has published, and continues to publish, disparaging statements about Plaintiffs in social media and by email;

i.     Through disparagement of Plaintiffs to ResortAG's clients and in

social media; the Pressleys' civil lawsuit against ResortAG; the criminal complaints against Plaintiffs filed by ex-ResortAG clients, or threatened to be filed, at Barlow's urging; and through Barlow's alleged collaboration with a purported consumer advocacy organization by the name of the Cooperative Dispute Resolution Society, for which no record exists on the internet, Barlow, individually and in concert with the other defendants, and on each of their behalf, has attempted to extort, and is continuing to extort, Resort Advisory Group.  As a condition of ceasing their attacks on Plaintiffs, Defendants collectively have demanded, and are continuing to demand, payment of over $800,000 from Plaintiffs, an amount equal to three times the sum it has received collectively from the former-client defendants in this action;

j.      Plaintiffs believe that even if the illegal and unethical extortion demand is paid, the significant threats from Defendant Barlow will continue by way of the aforementioned conduct, or he will accelerate it further, in order to make future similar demands and/or continue the pattern of illicit racketeering activity until Plaintiffs are ruined and forced out of business.

695.  Defendants, individually or jointly, have engaged in, are engaging in, and are likely to continue to engage in, conduct that likely violates federal and California statutes, including but not limited to, the Defense of Trade Secrets Act (18 U.S.C 1836(b) ("DTSA") and the Racketeer Influence and Corrupt Organizations Act (18 U.S.C. 1961-1968) ("RICO"), and that constitutes likely violations of California state law, including breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, constructive fraud, unfair competition, tortious interference with business and prospective business relations, conversion, defamation, and abuse of process, over which this Court has supplemental jurisdiction.

696.  Plaintiffs are therefore likely to prevail on the merits of this action. As

demonstrated by the Declarations of Jason Krieck, Michael Krieck, and David Allan Klein and documentary evidence attached as exhibits thereto filed by Plaintiffs, Plaintiffs have established a likelihood of success in showing that:

a. Defendants Barlow and Barlow & Associates accessed and used trade secrets of ResortAG, including confidential and proprietary data from ResortAG's computer client database, without authorization, or in excess of authorization, in violation of the DTSA and their contractual and fiduciary duties to ResortAG;

b. Defendant Barlow, by diverting ResortAG's clients to his own practice for his own benefit, circumvented and unfairly competed with Resort in violation the California Unfair Competition Law (Business and Professions Code, Section 17200), and of his contractual and fiduciary duties to ResortAG;

c. Defendants Barlow and Barlow & Associates, by re-charging clients for whom they had already been paid by ResortAG, and who had already paid ResortAG, violated their fiduciary and ethical duties to ResortAG and its clients;

d. Defendants Barlow and CDRS, directly and through defendant entities owned or controlled by Barlow, sent unsolicited communications disparaging Plaintiffs to ResortAG's clients, thereby defaming Plaintiffs and intentionally and tortuously interfering with Resort Advisory Group's business relations;

e. Defendants Barlow and CDRS, through disparagement of Plaintiffs, induced and encouraged defendants John and Pamela Pressney to file a civil lawsuit against ResortAG in an abuse of process;

f. Defendants Barlow and CDRS, through disparagement of Plaintiffs, induced defendants John and Pamela Pressney, Herman and Debora

Abel, Morris and Virginia Hannah, Bernardo and Carol Bettineilli, Paul and Renee Martinez, Lari Castle and Lee Harris Turk, all former clients of Resort Advisory Group, to file criminal complaints against Plaintiffs with multiple state and federal criminal law enforcement authorities in multiple states in an abuse of process, along with false and baseless claims against Attorney to the Pennsylvania and New Jersey state bars;

g. Defendants Barlow and CDRS, directly and through defendant entities owned or controlled by Barlow, published disparaging statements against Resort Advisory Group in social media, thereby defaming it and intentionally interfering with its prospective business relations;

h. Defendant Barlow, through an enterprise and pattern of racketeering with the other defendants, has attempted to extort, and is continuing to attempt to extort, on each of their behalf, over $800,000 from Plaintiffs three times the amount the former-client defendants collectively paid Resort Advisory Group for its timeshare resolution services. This pattern of racketeering violates RICO, 18 U.S.C. §§ 1962 (b)-(d).

697.  There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing above-referenced likely violations of federal and California state law unless Defendants are immediately restrained and enjoined by order of this Court.

698.  Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a temporary restraining order, expedited discovery, and other equitable relief is in the public interest.

699.  This Court has authority to issue this Order pursuant to Federal Rule of Civil Procedure 65, Local Rule 65-1 and the All Writs Act, 28 U.S.C. § 1651.

1
2
3
## **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiffs, and each of them, pray for judgment against

5  Defendants, and each and every one of them, jointly and severally as follows:

6  1. For compensatory damages, according to offer of proof at time of trial, arising

7     from contravention of RICO sections 1962(a), (b), (c) and (d) of Title 18 United

8     States Code 1962 et seq. ("RICO"), trebled pursuant to RICO section 1964(c);

9  2. For entry of judgment and appropriate orders for issuance of equitable relief

10    pursuant to RICO sections 1964(a)-(b) of Title 18 United States Code Section

11    1964 et seq.

12 3. For recovery of attorney's fees and costs arising from the contravention of

13    RICO, Title 18 United States Code 1962 et seq.

14 4. For prejudgment interest arising from contravention of Title 18 United States

15    Code Section 1962.

16 Plaintiffs, and each of them, further respectfully request that this Court enter an

17 order of judgement granting all relief requested in this Complaint and all allowed

18 in law or in equity, including:

19    a. Return or destroy all copies, in any known or unknown media format,

20       of the stolen trade secrets of Resort Advisory Group, including the

21       proprietary and confidential client database, by Defendants;

22    b. Restrain all Defendants from any current and future use and

23       misappropriation of the trade secrets of Plaintiff, as described herein;

24    c. Restrain Barlow Defendants from further libelous activities targeted to

25       harm the reputation or business practices of Plaintiffs;

26    d. Restrain Barlow Defendants from all further contact, or attempted

27       contact, with clients and former clients of Plaintiff Resort Advisory

28       Group, by any means;

e.  Restrain Defendant Barlow from knowingly and intentionally posting false and disparaging comments about Plaintiffs on social media;

f.  Restrain Barlow Defendants from drafting or assisting, encouraging, coaching, or guiding individuals to file false civil or criminal complaints against Plaintiffs based upon the same or similar set of operative facts laid out in the Complaint or corresponding Temporary Restraining Order;

g.  Restrain Barlow Defendants from further attempts to extort money or property from Plaintiffs;

h.  Require each named defendant to forward a filed copy of this Complaint to all local, state, and federal agencies / offices to which said defendants transmitted, by any means, complaints of any kind against plaintiffs and provide certified proof of transmission and receipt of same to plaintiffs' counsel within ten (10 days of the date hereof;

i.  Actual damages, according to proof, for the violation of the thirty-three counts in this Complaint against Defendants, jointly and severally;

j.  Treble or multiple damages and civil penalties, as allowed by statute, against all Defendants jointly and severally;

k.  Punitive damages, as allowed by statute or U.S. Code;

l.  Exemplary damages, as allowed by statute or U.S. Code;

m. Disgorgement of unjust enrichment by Barlow Defendants;

n.  Equitable and injunctive relief in the form of Court-enforced corrective actions, programs, and communications targeting the public;

o.  Forfeiture, disgorgement, restitution, and/or divestiture of proceeds and assets;

p.  Attorneys' fees;

q.  Costs and expenses of suit;

r.  Trial by jury;

s.  Pre and post-judgment interest; and

t.  Such further relief as this Court deems appropriate.

Dated:  May 11, 2020                                         Respectfully submitted,

Plaintiffs Intermarketing Media, LLC dba Resort Advisory Group, the Law Offices

of David Alan Klein, and David Alan Klein, Esq.

By Counsel:


    /s/ *Bryan S. Altman*
_____

Bryan C. Altman, Esq,

**The Altman Law Group**

Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA, 90064
(T) 310-277-8481
(F) 310-277-8483


By Counsel:


    /s/ *William I. Rothbard*
_____

William I. Rothbard, Esq.
**Law Offices of William I. Rothbard**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713