**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles CA 90067
T: (310) 277-8481
F: (310) 288-8483
Email: bryan@altmanlawgroup.net

**LAW OFFICES OF WILLIAM I. ROTHBARD**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com


Attorneys for Plaintiffs
INTERMARKETING MEDIA LLC
dba RESORT ADVISORY GROUP,
LAW OFFICES OF DAVID ALAN KLEIN, and
DAVID ALAN KLEIN, ESQUIRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

1.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| | |
|---|---|
| 1 | INTERMARKETING MEDIA, LLC, a Wyoming limited liability |
| 2 | company dba RESORT ADVISORY GROUP, LAW OFFICES OF |
| 3 | DAVID ALAN KLEIN, P.C, a law firm, and DAVID ALAN KLEIN, |
| 4 | ESQUIRE, |
| 5 | Plaintiffs, |
| 6 | v. |
| 7 | BRENT DAVID BARLOW, an individual; BARLOW & |
| 8 | ASSOCIATES, a law firm; COOPERATIVE DISPUTE |
| 9 | RESOLUTION SOCIETY (unknown entity type/location); |
| 10 | PHOENIX INVESTMENTS ALLIANCE, LLC, a limited liability |
| 11 | company; ATTFUND (unknown entity type/location); CASE IN |
| 12 | CHIEF LLC, a California Limited Liability Company; and John |
| 13 | Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, |
| 14 | Virginia Hannah, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, |
| 15 | Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee |
| 16 | Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley, |
| 17 | and Connie Perley, each an individual, collectively ("Consumer |
| 18 | Defendants") and DOES 1-100. |
| 19 | Defendants |

No.  8:20-cv-00889

**AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**1.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C.  1961-1968)**

**2. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA) (18 U.S.C.  1030)**

**3. THREAT TO INJURE BUSINESS (18 U.S.C. 875(d))**

**4. VIOLATION OF DEFEND SECRETS ACT (18 U.S.C 1836(b))**

**(TRADE SECRET MISAPPROPRIATION)**

**5. VIOLATION OF 18 U.S.C. 1951 (HOBBS ACT)**

**6. VIOLATION OF 18 U.S.C. 1957**

**7. VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (PENAL CODE 502)**

**8. VIOLATION OF BUSINESS & PROFESSIONS CODE 17200**

**9. CONVERSION AND CONSPIRACY TO COMMIT CONVERSION**

**10. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**11. INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**12. FALSE LIGHT**

**13. DEFAMATION - LIBEL**

**14. BREACH OF CONTRACT**

**15. CONSTRUCTIVE FRAUD**

**16. QUANTUM MERUIT**

**17. MISAPPROPRIATION AND MISUSE OF CONFIDENTIAL INFORMATION**

**18. EXTORTION – WRONGFUL THREAT OF CRIMINAL AND CIVIL PROSECUTION**

**19. ABUSE OF PROCESS**

**20. FRAUD AND CONSPIRACY TO DEFRAUD**

**21. BREACH OF FIDUCIARY DUTY**

**22. LEGAL MALPRACTICE**

**23. LEGAL MALPRACTICE: ACTIVE CONCEALMENT /CONFLICT OF INTEREST**

**24. MONEY HAD AND RECEIVED**

**25. INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

1.    Plaintiff Intermarketing Media, LLC d/b/a Resort Advisory Group (hereafter, "Resort Advisory Group"), a BBB A+-rated provider of timeshare resolution services to consumers who have been victimized by unscrupulous timeshare developers, and Plaintiffs Law Offices of David Alan Klein, P.C. and David Alan Klein, Esquire, bring this action to halt the continuing extortionist and tortious illegal racketeering conduct of Defendants, including continuing and threatened actions by the mastermind and ringleader, attorney Defendant Brent David Barlow ("Barlow") and his firm, Barlow &Associates.

2.    As the former legal counsel of Resort Advisory Group (before being terminated for cause), with regulated access to its trade secrets, including its valuable confidential and proprietary client database and business knowhow, Barlow breached his contractual and fiduciary duties to steal the trade secrets, methodologies, and client database from Resort Advisory Group as part of his scheme to illegally and unfairly compete with it in the timeshare resolution business. Barlow then began contacting Resort Advisory Group's clients by mail and the internet to accuse Plaintiffs of fraud, and convincing them that his "methods" were superior to Resort Advisory Group's in order to charge its clients for the same timeshare resolution services for which he had already been paid by Resort Advisory Group and for which they had already paid the company. Barlow then set into action a plan to repeatedly send out unsolicited communications to Resort Advisory Group's clients, designed to both mislead and indoctrinate them and to cultivate a following of loyal and willing consumers to expand his illicit ambitions. Barlow then formed an illegal "enterprise" with these clients ("Barlow 10 Defendants") for the purpose of harassing, intimidating and extorting the

PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

business of Plaintiffs.[1]

3.     Through this enterprise ("Barlow Racketeering Enterprise"), Defendants, at Barlow's direction, guidance, and encouragement, filed knowingly frivolous state court claims against Plaintiff Resort Advisory Group in this District and lodged numerous false and baseless, but, nonetheless, intimidating criminal complaints against Resort Advisory Group and one of its attorneys, Plaintiff David Alan Klein, principal of Plaintiff Law Offices of David Alan Klein, P.C. ("Attorney"), with federal and state law enforcement agencies in Southern California and New Jersey and the Pennsylvania and New Jersey state bars as to Attorney.

4.     The intended purpose of these false allegations was to harass and harm the business, reputation and profitability of Resort Advisory Group to facilitate a planned extortion attempt on Plaintiffs, and to harass, intimidate and harm the business, reputation and profitability of Attorney. Moreover, through this enterprise, defendants, orchestrated by Barlow, have attempted, and are continuing to attempt, to extract over $800,000 from Plaintiffs as a condition of ceasing Barlow Racketeering Enterprise's lawsuits, criminal complaints, and bar complaints targeting Plaintiffs and the professional reputation and licensure of Attorney.  Further, Defendant Barlow, acting on behalf of the Barlow Racketeering Enterprise, has threatened Plaintiffs with further frivolous civil and criminal charges unless the extortion demand is paid, stating they would not stop until Plaintiffs were ruined and out of business. The imminence of these continuing threats, made within the last two months and renewed as recently as May 5, 2020, highlight the urgent need for judicial intervention.

---

[1] The Barlow 10 are Defendants and John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley and Connie Perley. A couple is counted as a single client.

## JURISDICTION AND VENUE

5.     The federal jurisdiction of this action is based upon alleged violations of 18 U.S.C. §§ 1961–1968, 18 U.S.C. §1341, 18 U.S.C. §1343, 18 U.S.C. §1030, 18 U.S.C. §1832, 18 U.S.C. §1951, 18 U.S.C. §1957, and 18 U.S.C. 875(d), and 18 U.S.C. 876(d).

6.     This Court has diversity jurisdiction over these actions pursuant to 28 U.S.C 1332(d)(2)(A) because Plaintiffs and Defendants are citizens of different states.

7.     This Court has subject matter jurisdiction over claims arising under 18 U.S.C. §§ 1961–1968, 18 U.S.C. §1341, 18 U.S.C. §1343, 18 U.S.C. §1030, 18 U.S.C. §1832, 18 U.S.C. §1951, 18 U.S.C. §1957, 18 U.S.C. 875(d), and 18 U.S.C. 876(d).

8.     Plaintiff Intermarketing Media LLC is a foreign limited liability company formed on October 23, 2011 under the laws of Wyoming, doing business in California as Resort Advisory Group ("Resort Advisory Group" or "ResortAG").

9.     Plaintiff, Law Offices of David Alan Klein, P.C. is a professional corporation with a business address of Ten Grove Street, Haddonfield, New Jersey.

10.   Plaintiff, David Alan Klein, Esquire, is an attorney licensed to practice law in the Commonwealth of Pennsylvania and State of New Jersey with a business address of Ten Grove Street, Haddonfield, New Jersey (collectively, Klein and his law offices are referred to herein as "Attorney").

11.   Defendant Brent David Barlow ("Barlow") is an individual domiciled in California.

12.   Defendant Barlow & Associates is a law firm operating in California, New York and Washington D.C., believed to be wholly owned by Defendant Barlow.

13.   Defendant Cooperative Dispute Resolution Society is believed to be a "private association" wholly owned and/or controlled by Defendant Barlow and working with Defendants Barlow and Barlow & Associates in their scheme to unfairly compete with, defame and extort Plaintiffs.

14. Defendant Phoenix Investments Alliance, LLC, is a limited liability company believed to be a designee of Defendant Cooperative Dispute Resolution Society, wholly owned and/or controlled by Defendant Barlow, and the purported assignee of all rights, title and interest to all claims of Defendants in this action collectively referred to as the "Barlow 10," as described in more detail below.

15. Defendant Case in Chief LLC is a California limited liability company engaged in litigation strategy and support to the public and is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

16. Defendant ATT Fund ("ATT Fund") is currently an unknown entity type believed to be doing business in California and other states for the purposes of funding individual trial litigation. ATT Fund is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

17. Defendants John Pressney and Pamela Pressney, husband and wife, are former clients of Plaintiff, residents of California, and plaintiffs in a civil action filed against Plaintiff in the Superior Court of Orange County, California.

18. Herman Abel and Debora Abel, husband and wife, are former clients of Plaintiff and residents of California.

19. Morris Hannah and Virginia Hannah, husband and wife, are former clients of Plaintiff and residents of Tennessee.

20. Lee Harris Turk is a former client of Plaintiff and a resident of Mississippi.

21. Bernardo and Carol Bettinelli, husband and wife, are former clients of Plaintiff and residents of Massachusetts.

22. Lari Castle is a former client of Plaintiff and a resident of California.

23. Gilbert and Eva Castro, husband and wife, are former clients of Plaintiff and residents of California.

24. Paul and Renee Martinez, husband and wife, are former clients of Plaintiff and residents of Colorado.

25. Robert and Mary Zimmerman, husband and wife, are former clients of

Plaintiff and residents of Wisconsin.

26.    Glenn Perley and Connie Perley, husband and wife, are former clients of Plaintiff and residents of Michigan.

27.  This Court has personal jurisdiction over Defendant Barlow because he is domiciled in Los Angeles County, California and practices law in this state as a California licensed attorney. Defendant Barlow & Associates is a law firm doing business in Los Angeles County at 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant Case in Chief LLC's registered address with the Secretary of State is 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant ATTFund, upon information and belief, is doing business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. Defendant Cooperative Dispute Resolution Society, upon information and belief, is doing business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant Phoenix Investments Alliance, LLC, upon information and belief, is doing business in Los Angeles County at the request and control of Defendants Barlow and Barlow & Associates at the address of 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.

28.  Defendants Barlow, Barlow & Associates, Case in Chief LLC and ATTFund, Cooperative Dispute Resolution Society, and Phoenix Investments Alliance, LLC, shall be referred to collectively herein as the "Barlow Defendants."

29.  This Court has personal jurisdiction over:

a.    Defendants **John and Pamela Pressney** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a civil lawsuit against plaintiff in

Orange County, which is located within this District, and a criminal complaint against Plaintiffs with the District Attorney for Orange County;

b.    **Herman and Debora Abel** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

c.    **Morris and Virginia Hannah** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

d.    **Lee Harris Turk** because he has done business with Plaintiff Resort Advisory Group which is domiciled in this District, is doing business with the Barlow Defendants, who are domiciled in this District, and is purposefully availing himself of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

e.    **Bernardo and Carol Bettinelli** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

f.    **Lari Castle** because she resides in California, has done business with Plaintiff Resort Advisory Group which is domiciled in this District, is doing business with the Barlow Defendants, who are domiciled in this District, and, on

information and belief, is purposefully availing herself of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

g.  **Bernardo and Carol Bettinelli** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed a criminal complaint against Plaintiffs with the District Attorney for Orange County;

h.  **Gilbert and Eva Castro** because they reside in California, have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed, or threatened to file, a criminal complaint against Plaintiffs with the District Attorney for Orange County or other law enforcement authority in this District;

i.  **Paul and Renee Martinez** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and, on information and belief, are purposefully availing themselves of the privileges and amenities of this District by having filed,  a criminal complaint against Plaintiffs with the District Attorney for Orange County;

j.  **Robert and Mary Zimmerman** because they have done business with Plaintiff Resort Advisory Group which is domiciled in this District, are doing business with the Barlow Defendants, who are domiciled in this District, and are, on information and belief, purposefully availing themselves of the privileges and amenities of this District by having filed, or threatened to file, a criminal complaint against Plaintiffs with the District Attorney for Orange County or other law

1   enforcement authority in this District.

2        k.     **Glen and Connie Perley** because they have done business with

3   Plaintiff Resort Advisory Group which is domiciled in this District, are doing

4   business with the Barlow Defendants, who are domiciled in this District, and are,

5   purposefully availing themselves of the privileges and amenities of this District by

6   having filed a criminal complaint against Plaintiffs with the District Attorney for

7   Orange County.

8        l.Defendants named in Paragraph 29 (a)-(k) shall be referred to collectively

9   herein as the "Barlow 10".

10                                  <u>**VENUE**</u>

11   30.   Venue is proper in this Court pursuant to 28 U.S.C Section 1391 because

12   Defendant Barlow's address registered with the California Bar Association is listed

13   as 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364. This address is

14   within the boundaries of Los Angeles County and within the geographical

15   jurisdiction of the U.S District Court for the Central District of California.

16   Defendant Barlow & Associates shares the same registered address. Defendant

17   Case in Chief LLC shares the same address registered with the California Secretary

18   of State website. Defendant ATT Fund, upon information and belief, shares the

19   same address. Defendant Cooperative Resolution Society, upon information and

20   belief, shares same address. Defendant Phoenix Investments Alliance, LLC,

21   upon information and belief, shares the same address. Venue is also proper because

22   Plaintiff's principal place of business is located in Mission Viejo, California, and

23   within this District.

24   31.   The Barlow Defendants have additionally purposefully availed themselves of

25   the privileges and amenities of this district by, including but not limited to,

26   operating a law practice known as Barlow & Associates within the venue, soliciting

27   customers and business from residents in the venue, and maintaining a website fully

28   available to customers in the district.

32.     The Barlow 10 Defendants have additionally purposefully availed themselves of the privileges and amenities of this district by doing business with Plaintiff Resort Advisory Group and the Barlow Defendants, many of whom are domiciled in this District, and by having filed, or threatened to file, civil and/or criminal complaints within the state judicial system within this District.

33.     Plaintiffs have sustained damages in excess of $75,000.

## TIMELINESS

34.   This action is timely filed within the applicable statutes of limitation, which is:

a.     Ten (10) years from the date of the most recent ancillary Racketeering Influenced and Corrupt Organization Act ("RICO") violation under 18 USC §§ 1961-67.

b.     Four (4) years for claims under Cal. Bus. Prof. Code 17200 and Breach of Contract, Breach of Fiduciary Duty and Loyalty in California.

c.     Three (3) years for claims under the Defend Secrets Act, 18 U.S.C. §1836(d) and 18 U.S.C. §1832, §1951, §1957, 875(d), 876(d), Cal. P.C. 502, Cal. P.C. 532, and acts of Conversion, Constructive Fraud, Fraud, Embezzlement, Misappropriation and Misuse of Confidential Information, and Conspiracy to Defraud in California.

d.     Two (2) years from the date of discovery of the unauthorized access of a protected computer under the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C §1030 *et. seq,,* claims of intentional interference with contractual relations and prospective economic relations,  abuse of process in California, abuse of civil Proceedings, Extortion – wrongful threat of criminal and civil prosecution, money had and received, and quantum meruit claims in California.

e.     One (1) year for claims of false light, defamation, and attorney malpractice.

## SUPPLEMENTAL JURISDICTION

35.     The Judicial District of the United States District Court of the Central District of California has supplemental jurisdiction over the state law claims as alleged in this complaint pursuant to 28 U.S.C §1367(a). The reason supplemental jurisdiction is proper in this action is because all the claims derived from federal law and those arising under state law, as herein, arose from a common nucleus of operative facts and arose out of the same transactions.

36.     The common nucleus of operative facts and the subject transactions includes, but is not limited to, incidents where the Barlow Defendants knowingly and purposefully devised a racketeering scheme to access Plaintiff Resort Advisory Group's proprietary trade secrets without authorization, further took dominion and control over this illegally accessed information. and then misappropriated Plaintiff Resort Advisory Group's proprietary trade secrets for Defendants' sole benefit, including circumventing and competing with Plaintiff Resort Advisory Group in violation of Barlow Defendants' contractual, fiduciary, and ethical duties to Plaintiff Resort Advisory Group.  Barlow Defendants also knowingly and purposefully engaged in a systematic course of conduct of defamation of Plaintiffs to the public and Plaintiff's Resort Advisory Group's clients , and in concert with the Barlow 10, engaged in a pattern of abuse of the civil and criminal justice systems, all for the purpose of attempting to extort a large sum of money from Plaintiffs, amongst other related claims, in violation of both federal and state laws.

37.     Based upon these allegations, the state law claims, as stated herein are so related to the federal action that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

## PARTIES

## I.     PLAINTIFFS

38.   Plaintiff **Resort Advisory Group** is a timeshare resolution company, with its principal place of business at 27201 Puerta Real #300, Mission Viejo, CA 92691. As a timeshare resolution company, it assists individuals who have been misled into entering timeshare contracts with timeshare developers and wish to cancel and withdraw from their contracts. Plaintiff provides timeshare resolution services both directly and indirectly, through attorneys retained by it and to whom it refers timeshare purchasers who have met its qualifications for assistance in cancelling and withdrawing from their timeshare contracts.  Those attorneys have included Defendants Brent David Barlow and Barlow and Associates.

39.   Plaintiff, **David Alan Klein, Esquire** ("Attorney"), is an attorney licensed to practice law in the Commonwealth of Pennsylvania and State of New Jersey with a business address of Ten Grove Street, Haddonfield, New Jersey, 08033, and the principal attorney in the Law Offices of David Alan Klein, P.C.  Although Attorney has advised Plaintiff Resort Advisory Group on various general legal matters, including, as it relates to this Complaint, the impropriety of Defendant Barlow's actions and conduct during Barlow's tenure as Plaintiff Resort Advisory Group's primary timeshare resolution attorney, unlike Defendant Barlow, neither Attorney David Alan Klein nor his law firm has ever provided timeshare resolution legal services or any other legal representation to any of Plaintiff Resort Advisory Group's current or former clients, including the Barlow 10.[2]

## II.   DEFENDANTS

40.   Defendant **Brent David Barlow** is an individual domiciled in California and an attorney licensed to practice law in California, Bar Number 168645.  From on or about January 17, 2017 to August-September of 2018, Defendant Barlow was retained by Plaintiff Resort Advisory Group as its "personal counsel" to provide

---

[2] Individual Defendants admit in their baseless claims against Attorney Klein that there was no representation of any of the defendants herein.

legal services to clients of Plaintiff Resort Advisory Group to assist them in cancelling and withdrawing from their timeshare contracts.  Defendant Barlow was terminated by Plaintiff Resort Advisory Group for cause in August-September 2018, including for breach of contract and fiduciary duty to Plaintiff Resort Advisory Group through his surreptitious solicitation of Resort Advisory Group's clients and competition with Plaintiff Resort Advisory Group in the provision of timeshare resolution services to those clients. Thereafter, he embarked upon, and is continuing to perpetrate, a pattern of racketeering and related offenses against Plaintiff Resort Advisory Group for the purpose of harming Plaintiffs' reputation, harming their business, and extorting Plaintiffs.

41.    Defendant **Barlow & Associates** is a law firm operating in California, New York and Washington D.C., believed to be wholly owned by Defendant Barlow, with its principal office at 20929 Ventura Blvd., Suite 47, Woodland Hills, CA 91364.  Defendant Barlow has carried out his pattern of racketeering and related offenses against Plaintiffs through his firm, Barlow & Associates.

42.    Defendant **Case in Chief LLC** is a California limited liability company engaged in litigation strategy and support to the public and is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

43.    Defendant **ATT Fund** ("ATT Fund") is currently an unknown entity type believed to be doing business in California and other states for the purposes of funding individual trial litigation. ATT Fund is believed to be wholly or partially owned and controlled by Defendants Barlow and Barlow & Associates.

44.  Defendant **Cooperative Dispute Resolution Society** is believed to be a "private association" doing business in California and other states for the purpose of working with Defendants Barlow and Barlow & Associates and providing a front in their scheme to unfairly compete with, defame and extort Plaintiff, Resort Advisory Group and to defame Plaintiff Attorney David Klein and his law firm.

Cooperative Dispute Resolution Society is believed to be wholly or partially owned and/or controlled by Defendants Barlow and Barlow & Associates.

45.   Defendant **Phoenix Investments Alliance, LLC,** is believed to be a designee of Cooperative Dispute Resolution Society, doing business in California and other states for the purpose of working with the other Barlow Defendants and the Barlow 10 in a collective scheme to defame and extort and defame Plaintiff Resort Advisory Group and Plaintiff Attorney David Klein and his law firm.

46.   Defendants **John and Pamela Pressney** reside at 2224 Canyon View Road, Fallbrook, California 92028.  They were clients of Plaintiff Resort Advisory Group from on or about May 18, 2018, to  in, about, or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including frivolously suing Plaintiff Resort Advisory Group and filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

47.   Defendants **Herman and Debora Abel** reside at 64 Montego Key, Novato, California 94949.  They were clients of Plaintiff Resort Advisory Group from on or about July 3, 2018,  to in, about or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

48.   Defendants **Morris and Virginia Hannah** reside at 4356 Hannah Ford Road, Pegram, Tennessee 37143.  They were clients of Plaintiff Resort Advisory Group from on or about January 19, 2017, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

49.   Defendant **Lee Harris Turk** resides at 303 North Pearl Street, Natchez,

Mississippi 39120.  He was a client of Plaintiff Resort Advisory Group from on or about December 29, 2017, to about or some time on or after August-September 2018, at which time, at the inducement of Barlow, he became an active participant in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

50.    Defendants **Bernardo and Carol Bettinelli** reside at 78 Pratts Court, Stoughton, Massachusetts  02072.  They were clients of Plaintiff Resort Advisory Group from or about July 30, 2017 to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

51.    Defendant **Lari Castle** resides at 7559 Gibraltar Street, Unit 16, Carlsbad, California  92009.  She was a client of Plaintiff Resort Advisory Group from on or about March 7, 2018, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, she became an active participant in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

52.    Defendants **Gilbert and Eva Castro** reside at 2373 Mather Drive, Manteca, California  95337.  They were clients of Plaintiff, Resort Advisory Group from on or about August 29, 2016 to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

53.    Defendants **Paul and Renee Martinez** reside at 15 Queensbridge Drive, Pueblo, Colorado  81001.  They were clients of Plaintiff Resort Advisory Group

from on or about November 21, 2017, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

54.    Defendants **Robert and Mary Zimmerman** reside at 492 Windwood Circle, Edgerton, Wisconsin 53534.  They were clients of Plaintiff Resort Advisory Group from on or about March 24, 2016, to in, about or some time after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including, on information and belief, filing, or threatening to file, baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

55.    Defendants **Glenn and Connie Perley** reside at 5786 South Saddler Road, Chase, Michigan 49623. They were clients of Plaintiff Resort Advisory Group from on or about June 19, 2017, to in, about or sometime after August-September 2018, at which time, at the inducement of Barlow, they became active participants in his pattern of racketeering against Plaintiffs, including filing baseless criminal complaints against Plaintiffs with federal and state law enforcement authorities.

## CIVIL CONSPIRACY

56.    The elements of a civil conspiracy are (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from wrongful conduct.[3] A conspiracy does not stand as an independent claim, rather it is a legal doctrine to establish joint liability by the conspirators for the underlying tort. (See *Entm't Research Group v. Genesis Creative Group* (9th Cir. 1997) 122 F.3d 1211, 1228 (citing *Applied Equipment Corp*., 7 Cal. 4th at 511). Each member of the conspiracy must be able to commit the underlying tort,

---

[3] *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (Cal. 1994) 7 Cal. 4th 503, 511.

intend the success of the purpose of the conspiracy, and all the elements of that tort must be satisfied.

57.   Plaintiffs allege and believe that all Defendants, and each of them, had actual knowledge of and conspired with each other to achieve the goals of the racketeering scheme, described and alleged in further detail below, to extort Plaintiffs. Actual attempts to extort Plaintiffs, in furtherance of this conspiracy,  demanding a payment of $800,000 to cease current and future planned illegal activities targeting Plaintiffs, have been made by Defendant Barlow on behalf of all Defendants since at least late February, 2020, and are continuing. Each Defendant played a direct role in the acts leading up to the attempted extortion, including but not limited to, the intentional defamation of Plaintiffs, the intentional interference with the business and economic relations of Plaintiffs, filing knowingly false civil and criminal complaints against Plaintiffs; baseless state bar complaints against Attorney; and posting of knowingly false accusations on social media about Plaintiffs.

58.   Each Defendant agreed to participate in the unlawful conduct, consented to the unlawful conduct of each member, authorized and ratified the illegal conduct by conspiracy members, and acted with a common purpose in furtherance of the conspiracy to harm Plaintiffs.

59.   To date, Plaintiffs believe that no members of the conspiracy have been punished or held accountable for their illegal conduct.

//

## FACTUAL BACKGROUND APPLICABLE TO ALL CLAIMS

### Plaintiff Resort Advisory Group's Business

60.   Plaintiff Resort Advisory Group offers its timeshare resolution services in interstate commerce to consumers who have entered into timeshare contracts which they wish to cancel and withdraw from.  It accepts only consumers who have a

credible claim that they have been the victim of deception by a timeshare

developer, such as a false promise that the consumer will be able to rent the unit or

receive a buyback offer from the developer if there is a significant increase in the

value of the property.  Because abuse in the timeshare industry is unfortunately

common, there is demand for Plaintiff Resort Advisory Group's services, which

can provide an important and valuable benefit to timeshare purchasers who contact

it for help.

61.    Timeshare purchasers who credibly appear to have been victimized by a

timeshare developer and are qualified and accepted as a suitable client are referred

to an attorney on retainer with Plaintiff Resort Advisory Group who will then

provide legal representation to the client to help it attempt to cancel and withdraw

from the timeshare contract. For its service of qualifying the consumer and making

a legal referral, Plaintiff Resort Advisory Group charges the consumer a fee, one

that is considerably below that charged by some of Plaintiff Resort Advisory

Group's competitors.

62.    Plaintiff Resort Advisory Group has an A+ rating with the Better Business.

**Plaintiff Resort Advisory Group's Attorney-Client Relationship with Barlow**

63.    On or about January 17, 2017, Plaintiff Resort Advisory Group retained

Defendant Barlow to provide legal services to the company.  A true and correct

copy of the retainer agreement is attached as Exhibit 2.

64.    The retainer agreement ("Retainer") provided that Barlow was to:

> "serve as personal counsel for Client [ResortAG] with
> respect to any legal advice and services which may
> need to be rendered in relation to client's business,
> specifically; assistance with Clients customers in
> their efforts to withdraw from and/or cancel timeshare
> contracts with various developers and to assist those
> Clients customers in obtaining refunds if and when

> possible. Firm [Barlow] agrees to work exclusively with
> Resort Advisory Group, LLC on matters pertaining to
> timeshare cancellation services. Firm will ensure such
> Services are properly performed and in compliance
> with any and all applicable rules and regulations."

Exhibit 1, Section III.  Barlow has acknowledged this "preexisting attorney/client relationship" between him and Plaintiff Resort Advisory Group.

65.    In addition to his Retainer to serve as "personal counsel" to Plaintiff Resort Advisory Group, Barlow also had written representation agreements with clients referred to him from Plaintiff Resort Advisory Group.  A true and correct copy of a representative agreement between Barlow and referred clients is attached as Exhibit 2.

66.    Over the course of the attorney-client relationship between Plaintiff Resort Advisory Group and Barlow, Plaintiff referred approximately 235 clients to Barlow and paid him close to $300,000.00.

**Barlow's Access to Trade Secrets of Resort Advisory Group**

67.    The Retainer contained this confidentiality/non-circumvention/non-compete clause:

> All information disclosed by either party hereunder
> ("Confidential Information"), including any information
> concerning an Approved Prospect, shall always be treated
> as confidential by each party during the term of this
> Agreement and thereafter and shall not be disclosed to any
> third party without the prior written consent of both parties.
> Neither party shall use any of the Confidential Information
> except in the performance of its duties hereunder. All
> Confidential Information provided to either party shall be
> returned to the disclosing party immediately upon termination
> of this Agreement. The parties further agree that neither party
> shall use the Confidential Information disclosed by the other
> party to compete with the disclosing party or circumvent the

business of the disclosing party.

Exhibit 2, Section V.  Pursuant to this contractual promise by Barlow to protect the confidential and proprietary information of Plaintiff  Resort Advisory Group, and not to use it to circumvent or compete with its business, Plaintiff Resort Advisory Group gave Barlow, and Barlow had, authorized  access to the company's Customer Relationship Management ("CRM") software system (a computerized client data base), including proprietary data related to an assigned client's income, debt, credit rating, the amount paid and/or still owed to Plaintiff Resort Advisory Group Plaintiff Resort Advisory Group's agreements with the assigned clients, and client-timeshare developer agreements; in short, essentially an entire picture of clients' finances, contractual obligations, and relationship with Plaintiff.  He also necessarily had access to all confidential, proprietary and highly valuable aspects of ResortAG's business model, including, for example, its marketing, sales, and client case evaluation methodologies and pricing structures (collectively, "Business Knowhow").  As counsel to ResortAG, with access to its confidential information and proprietary internal business operations and strategies, Barlow was in a position to learn practically everything there is to know about how ResortAG conducts its timeshare resolution service.

68.     ResortAG's client database and the method of synthesizing its clients' circumstances surrounding their timeshare purchases are its most valuable assets.. Plaintiff Resort Advisory Group acquires customers through extensive advertising and marketing, into which it has invested millions of dollars. To identify and qualify such consumers, Plaintiff Resort Advisory Group invests heavily in a sales and client intake staff, who take the consumer through a thorough vetting process. Once those consumers have been approved to become clients, it relies on a customer service staff to provide ongoing timeshare resolution assistance to them, including monitoring of their cases with our attorneys and offering advice regarding

their interactions with their timeshare developer as they seek to cancel and withdraw from their contracts.  The investment Plaintiff Resort Advisory Group makes in the acquisition, growth, maintenance and servicing of its clients represents the lion's share of our budget.

69.    Plaintiff Resort Advisory Group vigilantly protects its client database and Business Knowhow.   Security measures include password protection, a login provided and needed from the program administrator, and access tracking.  In addition to client privacy, these measures are intended to protect Plaintiff Resort Advisory Group's client database from access by third parties who would stand to benefit economically from that access and use of the information, including would be competitors.  Since the attorneys who Plaintiff Resort Advisory Group hires to assist in providing timeshare resolution services  are, theoretically, potential competitors, , Plaintiff Resort Advisory Group includes confidentiality, non-circumvention and non-compete clauses in our attorney retainer agreements (like the one in Defendant Barlow's cited above), prohibiting an attorney from using access to the client database for any purpose other than in the performance of his duties as an attorney for Plaintiff Resort Advisory Group's clients.

**Plaintiff, Resort Advisory Group's Termination of Barlow**

70.    In or about August-September 2018, Plaintiff Resort Advisory Group terminated its attorney-client relationship with Barlow and his law firm for cause, and upon advice of Attorney, including failure to provide timeshare resolution services to clients, as required,  encouraging them to consider alternative means of timeshare resolution representation.

**Barlow's Post-Termination Ongoing Vendetta Against Plaintiffs**

71.    Since his termination, and continuing to this day, Barlow has been engaged in a ceaseless and unlawful campaign of unfair competition, interference with

Plaintiff Resort Advisory Group's business and clients, and disparagement, extortion and defamation of Plaintiffs, all in blatant violation of his contractual and fiduciary obligations as counsel to Plaintiff Resort Advisory Group and to Plaintiffs' great detriment.  His bitter and damaging vendetta against Plaintiffs includes the following:

**Unauthorized Access to and Use of Trade Secrets from Plaintiff's CRM**

72.   When he was terminated, Barlow's authorization to access and use data from the CRM was also terminated.  Nevertheless, after being terminated, and in contravention of his contractual and fiduciary duty to use Plaintiff Resort Advisory Group's confidential information only in [his] duties under the Retainer, and not to use it to "compete with…or circumvent the business" of Plaintiff Resort Advisory Group Barlow, without authorization,  took full advantage of the confidential client information he had been able to access prior to his termination.  In a brazen conflict of interest, he used that information to which he no longer had authorized access to go into competition with Plaintiff Resort Advisory Group in the timeshare resolution business.

**Barlow's Competition with Plaintiff Resort Advisory Group**

73.   Taking full advantage of this unauthorized access to confidential and proprietary client data in Plaintiff, Resort Advisory Group's CRM, and to its Business Knowhow, Barlow used these assets of Plaintiff Resort Advisory Group in violation of his contractual and fiduciary duties to Plaintiff Resort Advisory Group to target certain of its clients, and began independently to offer and provide timeshare resolution services to them, re-charging them for the same or similar services for which he had already been paid by Plaintiff Resort Advisory Group and for which they had already paid Plaintiff, Resort Advisory Group.  In unsolicited letters he sent to Plaintiff, Resort Advisory Group's clients, he was using his influence, which he had gained only in his capacity as counsel to Plaintiff Resort

Advisory Group to steer them away from Plaintiff Resort Advisory Group and toward an alternative means of timeshare resolution representation from a purported "consumer advocacy" organization - by the name of the Cooperative Dispute Resolution Society ("CDRS"), which he termed a "private association."  He claimed to Plaintiff, Resort Advisory Group's clients that CDRS will "singlehandedly destroy the timeshare industry" and that "CDRS guarantees the timeshare customers who they agree to work with will get back, **minimally**, every single cent they mistakenly gave the timeshare developer." (Emphasis in original.)  CDRS's impact on the timeshare companies, he wrote, is "absolutely devastating and eclipses any 'promise' made by a so-called 'exit' company," like Plaintiff, Resort Advisory Group.   are willing to assist.    True and correct copies of representative examples of these improper solicitations of Plaintiff's clients by Barlow is attached as Exhibit 3.   Barlow has admitted that he sent such solicitations to "select clients" of the company and referred at least 52 who responded to this purported organization.

74.    An Internet search of Cooperative Dispute Resolution Society" reveals no such organization, consistent with Barlow's representations to Plaintiff Resort Advisory Group that there are "no corporate filings or whatever" for this supposed entity.  On information and belief, Plaintiffs alleges that the so-called CDRS is a phantom organization, invented by Barlow to lure away and be able to re-charge clients of Plaintiff Resort Advisory Group for the timeshare resolution services for which he had already been paid by Plaintiff, Resort Advisory Group.

**Barlow's Defamatory Interference with Plaintiff Resort Advisory Group's Business and Clients**

75.    Using his unauthorized access to Plaintiff, Resort Advisory Group's confidential and proprietary client database and Business Knowhow, Barlow has sent, and is continuing to send, unsolicited letters to Plaintiff, Resort Advisory

Group's clients that contain disparaging falsehoods and misrepresentations about Plaintiffs. He also is disparaging Plaintiff, Resort Advisory Group in social media. True and correct copies of such false and disparaging posts about Plaintiff on Facebook and Yelp are attached as Exhibit 4 hereto.

**Barlow's Malicious Turning of Plaintiff, Resort Advisory Group's Clients Against Them**

76.     Barlow not only has used his unauthorized access to confidential and proprietary client information in the CRM to compete unfairly and disparage Plaintiffs to Resort Advisory Group's clients, he has actively and effectively worked to turn numerous clients against Plaintiff, Resort Advisory Group and to enlist them in his vendetta against Plaintiffs. These consumers include the Barlow 10 Defendants. With Barlow's active encouragement, two of these individuals, John and Pamela Pressney, have even gone so far as to sue Plaintiff, Resort Advisory Group - frivolously. Barlow used his position and authority as an attorney, and the reputation and expected honesty of his law firm, Barlow & Associates, to recruit and manipulate the Barlow 10 into becoming willing participants and co-conspirators in his illicit scheme.

**Barlow's and His Co-Conspirators' Criminal Complaints Re Plaintiffs**

77.     With Barlow's active encouragement, the Pressney Defendants and several other Barlow 10 Defendants (the Abels, Hannahs, Bettinellis, Martinez, Castle and Turk also have lodged criminal complaints against Plaintiffs with multiple law enforcement agencies, on the baseless ground that BBB A+ rated Plaintiff Resort Advisory Group and additional Plaintiffs defraud consumers in providing timeshare resolution services because it knows or should know that the timeshare contracts its clients entered into are inherently voidable and thus unenforceable. According to this circular logic, because the contracts are purportedly unenforceable and voidable, consumer victims need no help in voiding and cancelling them; the

contracts, and developers' efforts to.  And Barlow has continued to threaten more of them against Plaintiffs, as evidenced in attached Exhibit 5, which contains true and correct copies of emails from Barlow (in which he also provides a link to 33 already filed criminal complaints and in statements he made to Plaintiff Resort Advisory Group at a meeting on March 2, 2020.

78.    The emails also reference state bar complaints filed against one of its attorneys, Plaintiff David Klein, who does not even provide timeshare resolution legal services on behalf of Resort Advisory Group and whom individual defendants acknowledge in these baseless claims **never** represented them.

## Barlow's Infliction of Damage on Resort Advisory Group

79.    Plaintiff Resort Advisory Group has expended substantial time and valuable resources in "damage control" with its clients, correcting the falsehoods contained in Barlow's communications with them.  In addition to other damages, Plaintiff Resort Advisory Group has lost a significant number of clients due to these intentionally inflammatory and disparaging communications.

80.    The damage to Plaintiff Resort Advisory Group's business and reputation from Barlow's misappropriation and misuse of its confidential and proprietary client information, unfair competition, tortious interference with Plaintiff Resort Advisory Group's clients and business, inducement of clients to turn against Plaintiff Resort Advisory Group (even to the extent of suing it and lodging criminal complaints), and disparagement of Plaintiff Resort Advisory Group to its clients and to the world through social media, is  incalculable and irreparable.

## Barlow's Defamation of and Infliction of Damage on Attorney and Attorney's Law Firm

81.    As set forth above, Barlow and Barlow and Associates intentionally and purposefully, in furtherance of the conspiracy to damage Plaintiffs and Attorney, and extort monies therefrom, induced individual defendants to file false and

24

baseless criminal and bar complaints against said Plaintiffs.

82.    Notwithstanding the foregoing, and the fact that individual defendants acknowledge in these baseless claims that Attorney **never** represented them, these multiple complaints, nevertheless, have damaged and irreparably harmed said Plaintiffs and are threatening additional unlawful, false and defamatory claims if Defendants' extortion claims are not met.

**Barlow's and the Barlow 10's Attempted Extortion of Plaintiffs**

83.    Barlow is using his campaign of unfair competition, vexatious litigation, baseless criminal and state bar complaints, deception, disparagement, and association with a shadowy, and most likely illusory, "consumer advocacy" group - all in an astonishingly flagrant breach of his fiduciary duties to Plaintiff - to extort a payment of over $800,000 from Plaintiffs for himself and the Barlow 10 as the "price" for ending his and their vicious conspiratorial campaign. This amount represents approximately ***treble*** the compensation received by Plaintiff Resort Advisory Group from the Barlow 10 who were deceived and "turned" by Barlow and are now claiming to be victims of Plaintiffs.

84.    Barlow most recently communicated his extortionist demands in text exchanges with Plaintiff Resort Advisory Group between February 27-March 4, 2020, a true and correct copy of which is attached as Exhibit 5, at an in-person meeting with Plaintiff Resort Advisory Group and others at his office on March 2, 2020, and in emails dated April 3, 2020 and May 5, 2020 (Exhibit 6).

85.    Soon after this meeting, the Abel, Hannah and Turk Defendants filed their criminal complaints against Plaintiffs, as Barlow threatened they would do if Plaintiffs would not meet his and their shakedown demand for over $800,000, treble what was collected from them and the other Barlow 10 Defendants by Plaintiff Resort Advisory Group.

86.    Plaintiffs face continued threats from Defendants through their ongoing

campaign of illegal activities targeting Plaintiffs, and have suffered substantial damages as a result of the pattern and practice of racketeering activities and other lawless activity.

## FIRST CAUSE OF ACTION

**VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS PROVISIONS OF THE ORGANIZED CRIME CONTROL ACT ("RICO") 18 U.S.C. § 1961 *et seq.***

(By All Plaintiffs Against Barlow Defendants)

87.     Paragraphs 1-86 are alleged and incorporated herein by reference.

88.     As detailed above, Defendants Barlow, Barlow & Associates, ATT Fund, Case in Chief LLC, Cooperative Dispute Resolution Society and Phoenix Investment Alliance, LLC ("RICO Defendants") each conducted, conspired, or participated in the conduct of illegal activity through a pattern of racketeering activity in violation of 18 U.S.C. 1962(b) and 18 U.S.C. 1962(c) while being employed by, contracted by, and affiliated with Barlow & Associates.

89.     Barlow & Associates, as a law firm, and Cooperative Dispute Resolution Society provided the cover and credibility that RICO Defendants required in order to pursue and engage in their pattern and practice of racketeering activities.

90.     All six Barlow Defendants, by reason of their organization, structure, and activities, initially formed the "Barlow Racketeering Enterprise" which constitutes a RICO enterprise within the meaning of 18 U.S.C. 1961(4).

91.     The Barlow Racketeering Enterprise was initially comprised of one individual and five entities, all associated in fact as part of the Barlow Racketeering Enterprise, who then actively recruited, brought in, and incorporated other individuals into the Racketeering Enterprise, the Barlow 10, also associated in fact with the enterprise, in order to expand the reach, effectiveness, and illegal activities of the Barlow Racketeering Enterprise.

92.    As of the time of this Complaint, Plaintiff alleges that the Barlow Racketeering Enterprise consists of five entities and eleven individuals, each aiding and abetting each other, individually and jointly, in furtherance of the pattern of racketeering activities.

93.    The Barlow Racketeering Enterprise, through an agreement to commit two or more predicate acts, conspired to conduct or participate, and did conduct and participate, in the conduct of an illegal enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962(d).

94.    From in or about August-September 2018, and continuing through the current date, the Barlow Defendants,  the Barlow 10, and potentially other unknown individuals, being persons employed by, or associated into the Barlow Racketeering Enterprise by Defendant Barlow, Barlow & Associates, Cooperative Dispute Resolution Society, Phoenix Investments Alliance, LLC, Case in Chief LLC and/or ATT Fund, all of which are engaged in interstate commerce, unlawfully and knowingly conducted or participated in the affairs of the criminal enterprise through a pattern of racketeering activity, that is, through the commission of two or more separate but related racketeering acts within a 10-year period set forth herein.

95.    Plaintiffs seek to prohibit the Barlow Racketeering Enterprise from further utilizing and continuing the pattern of unlawful conduct in which they have repeatedly engaged within an open-ended scheme of racketeering which continues through the current date.

96.    Plaintiffs have been directly and substantially injured by the Barlow Racketeering Enterprise's acts of continuous racketeering activity.

**PREDICATE ACTS & THE PATTERN OF RACKETEERING ACTIVITY**

97.    Section 1961(1) of RICO provides that "racketeering activity" includes, but is not limited to, any act indictable under 18 U.S.C. § 1341 (relating to mail fraud), or 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, members of the Barlow Racketeering Enterprise engaged in conduct violating 18 U.S.C. §§ 1341

and 1343 to effectuate their unlawful scheme through their employment and association with Barlow & Associates.

98.   Section 1961(1) of RICO also provides that "racketeering activity" includes any act or threat involving extortion, violations of section 1832 relating to theft of trade secrets, violations of section 1836 relating to the misappropriation of trade secrets, violations of section 1951 by interfering with commerce by extortion[4], violations of section 1957 by engaging in monetary transactions derived from specified unlawful activity which includes computer fraud and abuse violations under section 1030. As set forth below, the Barlow Racketeering Enterprise also engaged in a pattern of racketeering conduct violating 18 U.S.C. §§ 1030, 1832, 1836, 1951, 1957, amongst others, to effectuate their unlawful scheme with the assistance and cover provided by the incorporation of Barlow & Associates into the Racketeering Enterprise.

99.   The Barlow Racketeering Enterprise's acts were not isolated, but rather formed a pattern of conduct and were committed with a common scheme in mind.

100.   The pattern and practice of racketeering activity occurred in several planned phases, and included the following goals: 1) access the protected computers of Plaintiff Resort Advisory Group to acquire the trade secrets of  Resort Advisory Group 2) begin to directly compete against Plaintiff Resort Advisory Group using the trade secrets, 3) use the trade secrets to identify potentially vulnerable or susceptible individuals to join in the Barlow Racketeering Enterprise, 4) use mail and interstate communications to intentionally harm the business of Plaintiffs, 5) extort a large sum of money from Plaintiffs in order to stop current and planned future illegal activities harming the business reputations and livelihood of Plaintiffs.

---

[4]"[I]n order for conduct to serve as a state law RICO extortion predicate act, it must (1) violate a state extortion statute and (2) satisfy the "generic" definition of extortion." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003). (*United States v. Kirsch* (2d Cir. 2018) 903 F.3d 213, 221, fn. 9.)

101.  As alleged herein, the Barlow Racketeering Enterprise participants, including Defendants and each of them, engaged and conspired to engage in acts in the United States to further the goals of their criminal enterprise, in violation of U.S. law.

102.  The pattern of the Barlow Racketeering Enterprise's illegal racketeering activity, as defined by 18 U.S.C. 1961(1) and (5) and 18 U.S.C. §§ 1341, 1343, 1832, 1836, 1951, and 1957 is based upon the following facts:

**PREDICATE ACT OF WIRE AND MAIL FRAUD:**

103.  Barlow Racketeering Enterprise has repeatedly violated 18 U.S.C. 1341 and 18 U.S.C. 1343 in the commission of multiple Predicate Acts in the commission of their pattern of racketeering activity.

104.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018 and continuing to the present day, to use the United States Postal Service in furtherance of the scheme to defraud Plaintiffs and Plaintiff Resort Advisory Groups' customers by utilizing illegally obtained trade secrets to contact current and former customers by mail to deceive them into payments of additional monies for legal services already fully paid for, to send and receive payments of bank checks, to send substantial number of letters to falsely accuse Plaintiffs of fraud as part of their efforts to recruit and expand the Enterprise and as part of the scheme to extort, to assist and direct individual Enterprise members to file false civiland criminal, and baseless state bar complaints in order to harm the business and reputation of Plaintiffs in violation of 18 U.S.C. 1341 and for the benefit of the Barlow Racketeering Enterprise.

105.  It was part of the Barlow Racketeering Enterprise's scheme starting in, around or just prior to August-September 2018, to use the internet to gain unauthorized access to the protected computer systems of Plaintiff Resort Advisory Group in breach of the fiduciary duties owed to  Resort Advisory Group by racketeers Barlow and Barlow & Associates, in violation of 18 U.S.C. 1343 and 18

U.S.C. 1030. The exact dates, times, and quantity of unauthorized access attempts is still being investigated by Plaintiff.

106.   The Barlow Racketeering Enterprise used and continues to use the internet to illegally access and use the trade secrets of Plaintiff Resort Advisory Group, to send and receive emails to clients identified within the trade secretsin furtherance of recruitment efforts of additional members, defamation of Plaintiffs,and, make knowingly and intentionally false posts about Plaintiff Resort Advisory Group's business practices on internet sites such as Facebook and Yelp, to assist and direct Enterprise members to file false civil andcriminal, and baseless state bar complaints, in order to harm the business and reputation of Plaintiffs in violation of 18 U.S.C. 1343 and for the benefit of the Barlow Racketeering Enterprise.

**PREDICATE ACT OF MISAPPROPRIATION OF TRADE SECRETS:**

107.   Barlow Racketeering Enterprise has repeatedly violated 18 U.S.C. 1836 in the commission of their pattern of racketeering activities.

108.   It was part of Barlow Racketeering Enterprise's scheme starting in, around or prior to August-September 2018, and continuing to the present day, to intentionally and purposefully misappropriate the private trade secrets of Plaintiff Resort Advisory Group.

109.   This was done in furtherance of the common Enterprise interests of purposely deceiving current and former clients of  Resort Advisory Group into making substantial unwarranted payments directly to Barlow Racketeering Enterprise for services already fully paid, to contact specific Resort Advisory Group clients and aiding and abetting them into making false claims of fraud by way of multiple fraudulent civil and criminal allegations, and engineering a plan for Enterprise members to file baseless state bar claims against Attorney.

110.   The efforts above, amongst many other similar illegal acts by Defendants, were done jointly and in concert with one another for the common racketeering goal of extorting a large sum of money from Plaintiffs.

111.  Barlow Racketeering Enterprise, led by Defendant Barlow, attempted to extort over $800,000 from Plaintiffs between February 27 and March 4, 2020, and continuing to the present,  in order to cease current and future misappropriation of Plaintiff Resort Advisory Group's trade secrets and intentionally harming the business  in violation of 18 U.S.C. 1836 and 18 U.S.C 1951.

**FURTHER PREDICATE ACTS**

112.  Barlow Racketeering Enterprise has committed multiple additional Predicate Acts in furtherance of the common goals of the Enterprise, some of which are illustrated below:

a.     Barlow Racketeering Enterprise members have additionally violated 18 U.S.C. 1957 through the theft and misappropriation of Resort Advisory Group trade secrets and the subsequent extortion attempt to monetize their criminally derived assets for more than $800,000.

b.     Barlow Racketeering Enterprise members have violated California Penal Code 518 by jointly conspiring, plotting, and attempting to extort more than $800,000 from Plaintiffs in order for Enterprise members to drop the false civil, criminal, and state bar claims and return the trade secrets of Plaintiff.

c.     Barlow Racketeering Enterprise members have violated California Civil Code 3426 by intentionally and knowingly misappropriating the trade secrets of Resort Advisory Group.

d.     Barlow Racketeering Enterprise members have violated 18 U.S.C. 1832 by stealing trade secrets used in interstate commerce from Resort Advisory Group.

**IDENTIFICATION OF RICO DEFENDANTS**

113.  Plaintiffs are informed and believe, with further investigations still ongoing, that the following identified individuals, jointly and severally, conspired, planned, and participated in the predicate acts and RICO schemes starting in, around or prior to August-September 2018, and continuing through the current date.

114.  Under California Penal Code Section 518 PC, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property, or using force or threats to compel a public official to perform or neglect an official act or duty.

115.  All Defendants shared the common racketeering goal to extort Plaintiffs in the sum of more than $800,000, and in furtherance of the goal, committed multiple predicate acts.

**RICO DEFENDANT BARLOW**

116.  RICO Defendant Barlow is a lawyer registered with the California State Bar (SBN 168645)  to practice law in California and is believed to be, upon information and belief, the primary owner and controlling principal attorney for Barlow & Associates, a law firm providing legal services and representation to citizens of California, New York, and Washington D.C.. Barlow & Associates, through its legal representation status across multiple states, and through the use of interstate communication lines to communicate and transmit information to offices and consumers located in other states, engages in and directly affects interstate commerce.

117.  As part of the continuous pattern of racketeering activity, RICO Defendant Barlow has purposefully and tactically caused and conspired with Barlow & Associates to engage in mail and wire fraud in violation of 18 U.S.C. 1341 and 1343 believed to have begun at or prior to August 2018 and continuing through the present.

118.  As part of the continuous pattern of racketeering activity, RICO Defendant Barlow has purposefully and tactically caused and conspired with Barlow Defendants to illegally access the protected computers of Resort Advisory Group without authorization to steal and misappropriate their trade secrets in violation of 18 U.S.C. 1030, 1832, and 1836.

119.  As part of the continuous pattern of racketeering activity, RICO Defendant

Barlow has purposefully and tactically caused and conspired with Barlow

Racketeering Enterprise members to fraudulently file multiple fraudulent civil,

criminal, and state bar claims by use of U.S. mail and the internet in violation of 18

U.S.C. 1341 and 1343 and additionally solicited substantial sums of money, in

excess of $10,000, from the misappropriation of the trade secrets of Plaintiff in

violation of 18 U.S.C. 1957.

120.  RICO Defendant Barlow, in furtherance of the joint unified illegal scheme of

Barlow Racketeering Enterprise, did conspire with and put into place on behalf of

Barlow Racketeering Enterprise members, a plan of action to attempt to use force

or threats to extort the sum of over $800,000 from Plaintiffs in order to cease use

of, and return the trade secrets of Plaintiff Resort Advisory Group and stop all

current and future illegal racketeering activities affecting Plaintiffs.

**RICO DEFENDANT BARLOW & ASSOCIATES**

121.  As part of the same scheme, Barlow Racketeering Enterprise utilized the

inherent public trust and cover that an operating and licensed law firm has with the

public, by utilizing Barlow & Associates as a key player in the furtherance of

racketeering activity. Upon information and belief, Barlow & Associates is owned

and controlled by RICO Defendant Barlow.

122.  RICO Defendant Barlow and Associates committed multiple predicate

offenses in furtherance of the pattern of racketeering activity and common goals of

the Enterprise, some of which are described below.

123.  As part of the continuous pattern of racketeering activity, RICO Defendant

Barlow & Associates has purposefully and tactically caused and conspired with

Barlow Racketeering Enterprise members to send by way of U.S. mail and by way

of the internet, intentionally false and defaming statements about Plaintiffs, and

guided, coached, and encouraged Enterprise members by U.S. mail and by internet,

to file intentionally false civil, criminal, and state bar complaints in violation of 18

U.S.C. 1341, 1343 and 1951.

124.  As part of the continuous pattern of racketeering activity, RICO Defendant Barlow & Associates has purposefully and tactically caused and conspired with Barlow Racketeering Enterprise members to attempt to extort the sum of more than $800,000 from Plaintiffs, in violation of California Penal Code 518.

125.  As part of the continuous pattern of racketeering activity, RICO Defendant Barlow & Associates has purposefully and tactically caused and conspired with Barlow Racketeering Enterprise members to use the trade secrets of Plaintiff to identify potentially susceptible or vulnerable clients through the U.S. mail to recruit additional Enterprise members to intentionally harm the business and reputations of Plaintiffs Enterprise in violation of 18 U.S.C. 1341 and 1836.

.

126.  Barlow & Associates is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise as a cover for, and as a source of, false credibility in their illicit pattern of racketeering activity.

**RICO DEFENDANT CASE IN CHIEF LLC**

127.  RICO Defendant Case in Chief LLC, upon information and belief, provides litigation strategy and support services in interstate commerce and is owned and/or controlled by RICO Defendant Barlow & Associates and Barlow.

128.  RICO Defendant Case in Chief LLC has committed multiple Predicate Acts in furtherance of the common goals of the Enterprise, some of which are detailed below.

129.  As part of the participation of the Barlow 10, Barlow Racketeering Enterprise members used Case in Chief LLC to provided legal strategy assistance to the new racketeering members by phone, internet, and by U.S. Mail to conduct further illegal activity for the benefit of Barlow Racketeering Enterprise. (18 U.S.C. 1341, 1343.) These new racketeering members have been previously identified as

34

Barlow 10.

130.   Barlow Racketeering Enterprise then supervised, directed, and encouraged the Barlow 10, with the substantial litigation strategy assistance and direction of Case In Chief LLC, to file multiple fraudulent civil lawsuits and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, as a pattern of significant harassment and threats designed to damage the reputation of Plaintiffs, to interfere with the ability of Plaintiffs to continue in business, and to extort the sum of over $800,000 (18 U.S.C. 1951.)

131.   Upon further information and belief, Plaintiffs allege that Case in Chief LLC was also utilized and directed by Barlow Racketeering Enterprise to encourage, facilitate, and assist various members of the Barlow 10 into filing false claims against Plaintiffs with law enforcement to further threaten the business of Plaintiffs. (18 U.S.C. 1951.)

132.   RICO Defendant Case in Chief conspired and planned, for the common goal of all Barlow Racketeering Enterprise Members, to attempt to extort Plaintiffs for more than $800,000 in violation of California Penal Code 518.Case in Chief LLC is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually engage in a pattern of racketeering activity.

**RICO DEFENDANT ATTFund**

133.   RICO Defendant ATT Fund, upon information and belief, provides pre-trial and trial funding for litigation in California and across the U.S. and is engaged in interstate commerce. ATT Fund is believed to be wholly owned and controlled by RICO Defendants Barlow & Associates and/or Barlow.

134.   RICO Defendant ATTFund has committed multiple Predicate Acts in furtherance of the common goals of the Enterprise, some of which are detailed below.

135.   Plaintiffs allege, upon information and belief, that ATT Fund participated in

the continual pattern of racketeering by providing litigation funding directly and indirectly to RICO Defendants to enable them to file false civil, criminal, and state bar claims in furtherance of the common goals of the Enterprise, in violation of 18 U.S.C. 1951.

136.  RICO Defendant ATT Fund conspired and planned, for the common goal of all Barlow Racketeering Enterprise Members, to attempt to extort more than $800,000 from Plaintiffs in violation of California Penal Code 518.

137.  Plaintiffs believe that without the substantial financial support of ATTFund, all or virtually all of the false criminal and civil lawsuits filed by Barlow Racketeering Enterprise members Barlow 10, nor false and baseless state bar complaints against Attorney would have been accomplished.

138.  ATTFund is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

**RICO DEFENDANT COOPERATIVE DISPUTE RESOLUTION SOCIETY**

139.  RICO Defendant Cooperative Dispute Resolution Society ("CDRS"), provides purported consumer advocacy services in interstate commerce and is owned and/or controlled by RICO Defendants Barlow & Associates and Barlow.

140.  RICO Defendant CDRS has committed multiple Predicate Acts in furtherance of the common goals of the Enterprise, some of which are detailed below.

141.

142.   As part of the participation of the Barlow 10, CDRS provided legal strategy assistance to the new racketeering members by phone, internet, and by U.S. Mail to conduct further illegal activity for the benefit of Barlow Racketeering Enterprise. (18 U.S.C. 1341, 1343.)

143.  These new racketeering members have been previously identified as Barlow

10. Barlow Racketeering Enterprise then supervised, directed, and encouraged the Barlow 10, with the substantial purported "consumer advocacy" assistance and direction of CDRS, to file multiple fraudulent civil, criminal, and state bar claims against Plaintiffs as a pattern of significant harassment and threats designed to damage the reputation of Plaintiffs, to interfere with the ability of Plaintiffs to continue in business, and to extort the sum of over $800,000 (18 U.S.C. 1951.)

144.  RICO Defendant CDRS conspired and planned, for the common goal of all Barlow Racketeering Enterprise Members, to attempt to extort more than $800,000 from Plaintiffs in violation of California Penal Code 518.

145.  CDRS is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually engage in a pattern of racketeering activity.

**RICO DEFENDANT PHOENIX INVESTMENTS ALLIANCE, LLC**

146.  RICO Defendant Phoenix Investments Alliance, LLC ('Phoenix") upon information and belief, is a designee of CDRS and the assignee of claims of the Barlow 10 Defendants with respect to Plaintiffs. Upon information and belief, Phoenix is engaged in interstate commerce. Phoenix is believed to be wholly owned and controlled by RICO Defendants Barlow & Associates and/or Barlow.

147.  RICO Defendant Phoenix has committed multiple Predicate Acts in furtherance of the common goals of the Enterprise, some of which are detailed below.

148.  Plaintiffs allege Phoenix knowingly accepted the assignment of said illicit claims and made demands upon Plaintiffs as to them to accomplish the joint racketeering goal of extorting Plaintiffs in order to directly threaten Plaintiffs' ability to conduct business. (18 U.S.C. 1951) This was also a key part of the overall racketeering plan to extort $800,000 from Plaintiff Resort Advisory Group, in violation of California Penal Code 518.

149.  RICO Defendant Phoenix conspired and planned, for the common goal of all

Barlow Racketeering Enterprise Members, to use the U.S. mail and internet to recruit, encourage, coach, and guide Barlow Racketeering Enterprise members and potential members into filing false civil, criminal, and state bar claims against Plaintiffs for the common goals of the Enterprise in violation of 18 U.S.C. 1341, 1343, and 1957.

150.  Defendant Phoenix is thereby inextricably intertwined with the pattern of racketeering activity alleged herein and is being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

**RICO DEFENDANTS BARLOW 10**

151.  Plaintiffs hereby incorporate the factual details about the Barlow 10 already represented previously as if specifically restated here. Rico Defendants Barlow 10, individually and jointly, participated in, and conspired to participate in, the illicit racketeering activities of Barlow Racketeering Enterprise. Each, individually and jointly, willingly joined in the illegal Enterprise for the illicit purposes of harming the business of Plaintiffs and extortion of Plaintiffs. Barlow 10 were willing co-conspirators in the intentional acts to harm the business and reputation of Plaintiffs and in all acts in furtherance of the extortion attempt on Plaintiffs.

152.  Plaintiffs allege all Barlow 10 members aided and abetted one another, individually and jointly, with some filing false civil and some filing false criminal charges against Plaintiffs, and false and baseless state bar complaints against Attorney, for the joint illicit goals of all Barlow Racketeering Enterprise members. All Barlow 10 members, through their purposeful association in Barlow Racketeering Enterprise, actively participated in an orchestrated and systematic scheme of illegal and illicit activities for the joint goal of extorting a substantial sum of money from Plaintiffs in order to cease future illegal activities.

153.  RICO Defendants Barlow 10 have each committed multiple Predicate Acts in furtherance of the common goals of the Enterprise, some of which are detailed

below.

154.  RICO Defendants Barlow 10 acted individually and jointly in furtherance of the common goals of Barlow Racketeering Enterprise.

155.  Barlow 10 members did intentionally use the mail and the internet to plan, and conspire to plan, with all other Barlow Racketeering Enterprise members, to file false civil claims against Plaintiffs in order to harm the reputation and business of Plaintiffs in violation of 18 U.S.C. 1341.

156.  Barlow 10 members did use interstate communications to plan, and conspire to plan, in concert with all other Barlow Racketeering Enterprise members, to file false civil charges against Plaintiffs in violation of 18 U.S.C. 1343.

157.  Barlow 10 members did each, intentionally and knowingly plan, and conspire to plan, and aid and abet, Barlow Racketeering Enterprise in the attempt to extort over $800,000 from Plaintiffs between February 27 and March 4, 2020 in violation of California Penal Code 518.

158.  Barlow 10 members did intentionally and knowingly plan, and conspire to plan, to file numerous frivolous civil and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, and threaten to file additional frivolous claims against Plaintiffs in order to harm Plaintiffs' business and to interfere with Plaintiffs' business as part of the racketeering scheme to extort over $800,000 from Plaintiffs in violation of 18 U.S.C. 1951.

159.  Barlow 10 Defendants are thereby inextricably intertwined with the pattern of racketeering activity alleged herein and are being used by Barlow Racketeering Enterprise to continually perpetuate the pattern of racketeering activity and plan future racketeering activity.

**RICO Section 1962(b) Violations**

160.  Section 1962(b) of RICO provides that "it shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or

indirectly, any interest or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

161.  As alleged with particularity above, RICO Defendant Barlow, by his pattern of racketeering activity and ownership interest in and control of Barlow & Associates, has violated 18 U.S.C. 1962(b).

162.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of Case in Chief LLC, has violated 18 U.S.C. 1962(b).

163.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of ATT Fund, has violated 18 U.S.C. 1962(b).

164.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of CDRS, has violated 18 U.S.C. 1962(b).

165.  As alleged with particularity above, RICO Defendant Barlow, and/or Barlow & Associates, by their pattern of racketeering activity and ownership interest in and control of Phoenix, has violated 18 U.S.C. 1962(b).

**RICO Section 1962(c) Violations**

166.  Section 1962(c) of RICO provides that "it shall be unlawful for any person employed by … any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct, participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…".

167.  As set forth above, the RICO Defendants are employed by, associated with, or affiliated with Barlow & Associates which engages in interstate commerce and, upon information and belief, foreign commerce. Further, RICO Defendants are part of Barlow Racketeering Enterprise which, as a method of conducting illegal activity, has purposefully and intentionally utilized the U.S. mail and interstate

communications, thereby engaging in interstate commerce. As set forth above, the members of Barlow Racketeering Enterprise, and/or affiliates of the Enterprise, used their positions with, and control of, Barlow and Associates to conduct, plan, and participate, both directly and indirectly, in the conduct of Barlow & Associates' affairs through a pattern of racketeering activity.

168.  Each Barlow Racketeering Enterprise member agreed to participate directly or indirectly in the conduct of the affairs of Barlow Racketeering Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud, extortion, theft and misappropriation of trade secrets, and to purposefully and knowingly harm the ability of Plaintiffs to conduct interstate commerce. Each Barlow Racketeering Enterprise member so participated in, and had knowledge of, multiple violations of 18 U.S.C. 1962(c).

169.  As set forth herein, the Barlow Racketeering Enterprise's pattern of racketeering activity is comprised of multiple predicate acts including mail fraud (18 U.S.C. 1341), wire fraud (18 U.S.C. 1343), violation of the Computer Fraud and Abuse Act (18 U.S.C. 1030), theft of trade secrets (18 U.S.C 1832), violation of the Defend Trade Secrets Act (18 U.S.C 1836), engaging in monetary transactions in property derived from illegal activity (18 U.S.C. 1957) and the use of extortion to purposefully interfere with the interstate commerce and ability to conduct commerce of Plaintiffs in violation of 18 U.S.C. 1951.

170.  As set forth above, the pattern of racketeering activity engaged in by Barlow Racketeering Enterprise was for the common purpose of concealing and benefitting from the use of the stolen trade secrets of Plaintiff, to manipulate and deceive current and previous clients into sending RICO Defendants substantial sums of unwarranted payments directly to Barlow & Associates for use by, and  direct benefit of, Barlow Racketeering Enterprise.

171.  Members of the Barlow Racketeering Enterprise, as part of the scheme to deceive the public into a false belief Plaintiffs have engaged in wrongdoing, had the

common purpose of putting into place a methodical pattern of defaming and purposefully harming Plaintiffs' business, both through the mail and by use of the internet and phones, with the goal of gaining leverage for extortion and to ultimately shut down the business completely and irreparably harm Attorney.

172. All Barlow Racketeering Enterprise members shared the common joint purpose of attempting to extort the sum of over $800,000 from Plaintiffs in order to stop the pattern of racketeering activity and to silence Plaintiffs from exposing their substantial illegal activity.

173. All Barlow Racketeering Enterprise members shared the common purpose of utilizing Barlow & Associates to attempt to conceal and avoid detection of the pattern of racketeering activity and to make the pattern of racketeering activity, including defrauding consumers and law enforcement, easier to accomplish.

174. All Barlow Racketeering Enterprise members shared the common purpose of the filing of false criminal and civil claims against Plaintiffs, and false and baseless state bar complaints against Attorney, in order to harm the reputation and business of Plaintiffs as a method to set up the extortion attempt on Plaintiffs.

**RICO Section 1962(d) Violations**

175. Section 1962(d) of RICO makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

176. In pursuit of the Barlow Racketeering Enterprise's continuing racketeering activity, the Enterprise members have jointly planned and conspired together to achieve the common goals by planning and conspiring to plan the above tortious acts.

177. All Barlow Racketeering Enterprise members have further conspired, and continue to conspire, to utilize Plaintiff Resort Advisory Group's trade secrets.

178. Barlow Racketeering Enterprise conspired together to orchestrate a plan to use Barlow & Associates as a cover to recruit former clients into the Enterprise in furtherance of the above predicate acts.

179.  Further, all Barlow Racketeering Enterprise members conspired, as part of the orchestrated plan of racketeering activity, to attempt to extort Plaintiffs.

180.  As set forth above, the pattern of racketeering activity engaged in by Barlow Racketeering Enterprise was for the common purpose of concealing and benefitting from the use of Plaintiff Resort Advisory Group's trade secrets, purposefully misrepresenting the business practices of Plaintiffs, defrauding consumers, to extort payment to cease current and future planned illegal actions, and to intentionally harm the business of Plaintiffs for the sole benefit of RICO Defendants in multiple violations of 18 U.S.C. 1962(d).

**RICO COUNT 1: VIOLATION OF RICO 18 U.S.C. 1962(b)**

181.  Plaintiffs reallege and incorporate by reference against the Barlow Racketeering Enterprise the allegations contained in paragraphs 1 – 183 above, as if fully set forth herein.

182.  Plaintiffs are unaware of any convictions or the status of any current law enforcement investigations of this allegation.

183.  As alleged with particularity above, the facts demonstrate that the RICO Defendants Barlow and Barlow & Associates, willingly and knowingly have ownership interests in, and control of, entities engaged in a systematic pattern of racketeering activity in violation of 18 U.S.C. 1962(b).

184.  As alleged with particularity above, as a direct and proximate result of RICO Defendants Barlow and Barlow & Associates' ownership interest in and control of these entities, Plaintiffs have suffered substantial financial harm and the business reputation has been irreparably damaged, substantially limiting the ability to provide employment and derive revenues going forward.

185.  The illicit actions of RICO Defendants Barlow and Barlow & Associates, in conjunction with Barlow Racketeering Enterprise, has cause substantial damages to Plaintiffs of at least $75,000, in an amount to be proven at trial.

186.  As alleged with particularity above, the RICO Defendants Barlow and

Barlow & Associates are jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

187.  To the extent permitted by law, Plaintiffs are entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

**RICO COUNT 2: VIOLATION OF RICO 18 U.S.C. 1962(c)**

188.  Plaintiffs reallege and incorporates by reference against Barlow Racketeering Enterprise contained in paragraphs 1 – 190 above, as if fully set forth herein.

189.  Plaintiffs are unaware of any convictions or the status of any current law enforcement investigations of this allegation.

190.  As alleged with particularity above, the facts demonstrate that each and every Barlow Racketeering Enterprise member willingly and knowingly conducted or participated directly or indirectly in the conduct of Barlow Racketeering Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

191.  As alleged with particularity above, as a direct and proximate result of Barlow Racketeering Enterprise's aforementioned RICO conduct, Plaintiffs have suffered substantial financial damages and the business reputation of Plaintiffs have been irreparably damaged, significantly limiting the ability to provide employment and derive revenues going forward.

192.  As alleged with particularity above, the Barlow Racketeering Enterprise members are each jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

193.  To the extent permitted by law, Plaintiffs are is entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

**RICO COUNT 3: VIOLATION OF RICO 18 U.S.C. 1962(d)**

194.  Plaintiffs reallege and incorporates by reference against Barlow Racketeering Enterprise the pleadings in paragraphs 1 – 196 above, as if fully set forth herein.

195.  Plaintiffs are unaware of any convictions or the status of any current law enforcement investigations of this allegation.

196.  As alleged with particularity above, the facts demonstrate that the Barlow Racketeering Enterprise members conspired to violate 18 U.S.C. 1962(d) by conspiring to conduct the affairs of Barlow Racketeering Enterprise through a pattern of racketeering activity and conspired with one another in the continuation of racketeering activity targeting Plaintiffs and the public, and included the use of a registered law firm as a key component in furtherance of, and to provide coverage for, their illicit pattern of racketeering activity.

197.  As alleged with particularity above, as a direct and proximate result of Barlow Racketeering Enterprise's aforementioned RICO conduct, Plaintiffs have suffered substantial financial damages and the business reputation of Plaintiffs have been irreparably damaged, significantly limiting the ability to provide employment and derive revenues going forward.

198.  As alleged with particularity above, the members of Barlow Racketeering Enterprise are jointly and severally liable to Plaintiffs for treble damages, together with all the costs of this action, plus reasonable attorney's fees provided for by 18 U.S.C. 1964.

199.  To the extent permitted by law, Plaintiffs are therefore entitled to an award of damages (including treble damages) plus court costs, attorney's fees, and pre and post judgement interest at the legally allowable limit.

## SECOND CAUSE OF ACTION

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")**

**(18 U.S.C 1030)**

(By Plaintiff Resort Advisory Group Against Barlow Defendants)

200.  Paragraphs 1-199 are alleged and incorporated herein by reference.

201.  On the basis of the misconduct detailed herein, Defendants Barlow and Barlow & Associates have violated the following sections of the CFAA: Theft of computer data (CFAA § 1030(a)(2)(C)); Unauthorized access with intent to defraud (1030(a)(4)); and Conspiring to illegally access a computer (1030(b).

### CFAA § 1030(a)(2)(C) Violations

202.  Section 1030(a)(2)(C) of the CFAA prohibits a person from intentionally accessing a protected computer without or in excess of authorization and obtaining information from a protected computer, "[w]however … [i]ntentionally access a computer without authorization or exceeds authorized access, and hereby obtains … information from any protected computer … shall be punished as provided for in subsection (c) of this section." (18 U.S.C. 1030(a)(2)(C).)

203.  A "protected computer" is a computer "which is used in or affecting interstate commerce or communication…" (18 U.S.C. 1030(e)(2)(B).) Any device that processes data and connects to the internet falls within the ambit of a "protected computer."[5]

204.  The term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter. (18 U.S.C. 1030 (e)(6).)

205.  The term "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity. (18 U.S.C. 1030 (e)(12).)

206.  The computer systems of Plaintiff Resort Advisory Group, including its proprietary customer database, are protected computers within the meaning of the

---

[5] *See United States v. Yucel, 97 F. Supp. 3d 413, 418 (S.D.N.Y. 2015)* ("The government contends that [the CFAA's] definition [of a protected computer] encompasses any computer with an interet connection, and a number of court's have so held.

CFAA because the computers are used in and affect interstate commerce. The information on the computers, including trade secrets, is not open to the public and has restricted access.

207. Defendants Barlow and Barlow & Associates, by way of an employment agreement, had broad, but not unlimited, authorized access to the computer systems of Plaintiff between on or around January 17, 2017 and in or about August-September 2018.

208. Defendant Barlow and Barlow & Associates access authorization included only client database information on clients assigned to Barlow for legal services by Plaintiff Resort Advisory Group while employed by Plaintiff.

209. Defendants Barlow and Barlow & Associates had no authorization to access protected computer areas such as vendor contracts, company financials, employee contracts, health records, bank accounts, and any private client information not assigned to Barlow and Barlow & Associates.

210. Defendant Barlow, on or around August or September 2018, did knowingly access the protected computer systems of Plaintiff on at least one occasion, without authorization, to access and steal the Trade Secrets of Plaintiff.

211. The Trade Secrets of Plaintiff Resort Advisory Group that Defendants Barlow and Barlow & Associates illegally accessed and stole have significant independent economic value and comprise the proprietary client lists, client database, and developed competitive methods and knowhow. Resort Advisory Group has spent enormous amounts of time, business efforts, and money to develop and protect its Trade Secrets.

212. Plaintiff Resort Advisory Group alleges that Defendants Barlow and Barlow & Associates illegally accessed and stole the trade secrets to intentionally harm the competitiveness of Resort Advisory Group, to extort money from Plaintiffs, and start a no-risk competitor to Resort Advisory Group.

213. Plaintiffs further allege that the illegal accessing of their Trade Secrets was

47

part of the overarching racketeering scheme to extort Plaintiffs by all Defendants.

## Standing to Bring Claim

214. Any person who suffers damage or loss by reason of a violation [thereof] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" so long as the violation "involves 1 of the factors set forth in subclauses (I), (II), (III), (IV) or (V) of subsection (c )(4)(A)(i). (18 U.S.C. 1030(g).)

215. Plaintiffs allege that the damages from the illegal access of its' protected computers is well in excess of $5,000.

216. By attempting to extort Plaintiffs to pay over $800,000 for return of the protected trade secrets and the cessation of other illegal acts against Plaintiffs, Defendants, by their own actions and words, jointly and severally have admitted and agreed that the damages incurred by Plaintiffs due to the unauthorized access of Plaintiff's protected computers are well in excess of $5,000, and likely well in excess of $100,000.

217. Plaintiffs further allege that the cost of the investigation, remediation, and lost revenue caused by the unauthorized access of Plaintiffs' computers by Barlow Defendants has cost Plaintiff far in excess of $5,000 within the last year.

218. By virtue of the aforementioned conduct, Defendants Barlow and Barlow & Associates violated, and have conspired with others to violate, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing the protected computer systems and databases of Plaintiff Resort Advisory Group without authorization.

219. Plaintiffs are is entitled to damages for Barlow and Barlow & Associates violation of Section 1030(a)(2)(C) in an amount to be determined at trial but believed to be at least $75,000.

220. Plaintiffs further seek damages for the investigation of and lost revenues from the damage caused by Barlow Defendants illegal computer access and

subsequent misappropriation of trade secrets against all Defendants.

221.  Due to the oppressive, malicious, and fraudulent nature of the illegal actions of Barlow Defendants, Plaintiffs are entitled to punitive damages.

<b>CFAA § 1030(b) Violations</b>

222.  Section 1030(b) of the CFAA prohibits a person from conspiring to violation any other subsection of the CFAA.

223.  Barlow has violated the CFAA by conspiring with other Barlow Racketeering Enterprise members to commit the 18 U.S.C. § 1030(a) offenses listed above.

224.  Upon information and belief, Defendants Barlow and Barlow & Associates conspired to access the protected computer systems on behalf of all Defendants without authorization in order to access and steal the full confidential client database and trade secrets of Plaintiff Resort Advisory Group for use by the Barlow Racketeering Enterprise on, around, or after August – September 2018.

225.  Upon information and belief, Plaintiffs allege Defendants illegal access was intertwined with other, substantially illegal behavior.

226.  Plaintiffs are entitled to damages for Barlow Defendants violation of Section 1030(b) in an amount to be determined at trial but believed to be at least $75,000.

227.  Plaintiffs further seek damages and consequential damages for the lost revenues from the damage caused by Barlow Defendants conspiracy to gain illegal access and subsequent misappropriation of trade secrets occurring within the last year, believed to be in excess of $75,000.

228.  Plaintiffs further seek damages for losses related to the investigation of the computer access and subsequent required legal actions against Barlow Defendants.

229.  Due to the oppressive, malicious, and fraudulent nature of the illegal actions of Barlow Defendants, Plaintiffs are is entitled to punitive damages.

<b><u>THIRD CAUSE OF ACTION</u></b>

(By All Plaintiffs Against All Defendants)

**THREAT TO INJURE BUSINESS (18 U.S.C. 875(d))**

230.  Paragraphs 1-229 are alleged and incorporated herein by reference.

231.   On the basis of the misconduct detailed herein, Defendants Barlow and Barlow & Associates have purposefully, intentionally, and repeatedly violated, and conspired to do the same, 18 U.S.C. 875 section (d) by intentionally threatening to harm the businesses of Plaintiffs for purposes of extortion.

**Factual Basis for Third Cause of Action 18 U.S.C. 875(d)**

232.  Upon information and belief, Plaintiffs allege  that starting in or around August-September 2018 and continuing on to the present date, Defendants Barlow and Barlow & Associates, in conjunction with Barlow Racketeering Enterprise, knowingly and intentionally devised a plan to purposefully harm the business prospects and reputations of Plaintiffs in order to extort money from Plaintiffs in order to stop harming and harassing Plaintiffs and their the businesses.

233.  This plan involved and required the active recruitment of willing additional Barlow Racketeering Enterprise members.

234.  Plaintiffs allege Defendants continued this course of action for more than a year before putting the next phase of the plan into action.  Between February 27 and March 4, 2020, and thereafter, continuing to the present, Defendant Barlow and Barlow & Associates admitted to the filing of at least 33 criminal complaints against Plaintiffs at Defendants Barlow and Barlow & Associates direction by Barlow 10 racketeering members and demanded the sum of over 800,000 be paid to an account controlled by Barlow and Barlow & Associates to make them go away.

235.  Defendants Barlow and Barlow & Associates threatened to continue to instruct and guide the Barlow 10 and others, by mail and other means, to continue to file false claims until Plaintiffs were out of business and Attorney was no longer licensed to practice law.

**VIOLATION OF 18 U.S.C. 875 (d)**

50

236.  18 U.S.C. 875(d) makes it illegal to knowingly and intentionally use interstate communications to wrongfully threaten to accuse of a crime, wrongfully threaten to injure the property, or wrongly threaten the reputation of a party with an intent to extort.[6]

237.  The intent to extort has been defined in the Hobbs Act, 18 U.S.C. 1951 et. seq., as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right" which has been interpreted under section (d) as "the use of a wrongful threat to procure something of value." (*Id*.)

238.  18 U.S.C. 875 does not require the threat to be directly communicated to its target; it prohibits communication containing any threat regardless of whether it reaches its target.[7]

239.  Defendants Barlow and Barlow & Associates did themselves, and conspired, aided and abetted the Barlow 10 to use interstate communications to threaten the business of Plaintiffs and Attorney's ability to practice law.

240.  The threatening communications were sent in furtherance of extorting money from Plaintiffs.

241.  The threatening communications were sent in furtherance of harming the reputations of Plaintiffs.

242.  Defendants threatening communications have violated 18 U.S.C. 875(d).

243.  The Barlow 10 did knowingly and intentionally cause to be filed and published, by way of interstate commerce, false civil and criminal charges against Plaintiffs in order to threaten the business of Plaintiffs and Attorney's ability to practice law.

---

[6] (See *United States v. Coss* (6th Cir. 2012) 677 F.3d 278, 280.)

[7] (*United States v. Jeffries* (6th Cir. 2012)  692 F.3d 473, 2012 FED App. 0286P, reh'g denied, reh'g, en banc, denied, 2012 U.S. App. LEXIS 24057 (6th Cir. Oct. 31, 2012), cert. denied, 571 U.S. 817, 134 S. Ct. 59, 187 L. Ed. 2d 25 (2013).)

244.  Additionally, Plaintiffs allege alleges that Defendants, individually and jointly, additionally transmitted, by way of interstate commerce, multiple communications specifically to threaten criminal charges, by way of assisting, instructing, and funding third parties to report false crimes to law enforcement against Plaintiffs as part of the overarching scheme to extort money from Plaintiffs in violation of 18 U.S.C. 875(d).

245.  Plaintiff is operating a limited liability company, dba Resort Advisory Group which is considered a corporation or, alternatively, a firm or association as defined under 18 U.S.C. 875(d).

246.  Plaintiff Klein law firm is a firm or association as defined under 18 U.S.C. 875(d).

247.  Barlow Defendants further conspired, and continue to conspire, with other Defendants to accomplish the illicit goals, and future illicit goals, of repeated violations of 18 U.S.C. 875(d).

248.  As a result of Defendants actions to violate 18 U.S.C. 875(d), the public reputation of Plaintiffs has been substantially and irreparably harmed and the business of Plaintiffs has been substantially and irreparably harmed.

249.  Further, Plaintiffs have sustained substantial damages from the violation of 18 U.S.C. 875(d) by the Plaintiffs in an amount to be determined at trial, but at least $75,000.00.

250.  Plaintiffs additionally seek to enjoin Defendants from further threatened continual violations of 18 U.S.C. 875(d).

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C 1836(b))**

(By Plaintiff Resort Advisory Group Against All Defendants)

251.  Paragraphs 1-250 are alleged and incorporated herein by reference.

252.  Plaintiff Resort Advisory Group offers timeshare resolution service to the

public and has developed and maintained trade secrets.

253.  Plaintiff Resort Advisory Group has trade secrets which include, without limitation, proprietary sales, marketing and client case evaluation methodologies, pricing structures, specific methods of attack on various types of timeshare contracts, proprietary analysis and valuation techniques, company balance sheets, private contractual details with third parties, bank account balances (collectively, "Business Knowhow") and a private proprietary client database which includes substantial personal, accounting, and work product details for each client and potential client. The trade secrets are not available to the public by any means.

254.  Resort Advisory Group takes substantial efforts to maintain the secrecy and security of its' trade secrets.

255.  Plaintiff Resort Advisory Group regularly takes reasonable steps to ensure the integrity of the protected computer system, including password protection, login access controlled by the program administrator, and access tracking.

256.  The information contained in Plaintiff Resort Advisory Group's trade secrets has substantial and significant independent value as both trade secret intellectual property (methods and means of conducting business) and monetary value (private client list of pending, current, and past clients) such that in the possession of a potential competitor who endeavored to enter this business, they would likely have an absolute, immediate, and irrefutable competitive advantage.

257.  Plaintiff Resort Advisory Group has expended substantial amounts of money, time, and business efforts over multiple years to develop the proprietary trade secret information contained on their protected computer systems.

258.  A competitor who gained access to these trade secrets would have an immediate competitive advantage to the substantial detriment of Resort Advisory Group.

259.  Whether Barlow Defendants believed they were stealing actual trade secrets

is irrelevant.[8]

260.  Plaintiff alleges that Barlow Defendants conspired to illegally access and steal the trade secrets belonging exclusively to Resort Advisory Group and did in fact steal and misappropriate the trade secrets of Plaintiff on or around August-September 2018.

261.  The theft and misappropriation were in furtherance of other substantial illegal activity by Defendants, including leverage for extortion.

262.  Barlow Defendants had no authorization or license to access, take, or use the trade secrets of Resort Advisory Group and have no ownership interest in the trade secrets.

263.  Defendants did actually use the stolen and misappropriated trade secrets of Plaintiff in their attempt to extort Plaintiffs on or around March 2 ,2020.

264.  Defendant Barlow has illegally misappropriated the stolen trade secrets of Plaintiff to generate substantial revenues for the benefit of Barlow Defendants and Barlow 10.

265.  Defendants threatened to continue to misappropriate the stolen trade secrets of Plaintiff if the extortion demands were not met.

266.  Plaintiff Resort Advisory Group has been substantially harmed by the misappropriation of trade secrets by Barlow and Barlow & Associates in an amount to be determined at trial but believed to be well in excess of $75,000.

267.  Plaintiff Resort Advisory Group further seeks punitive damages against the Barlow Defendants for willfully and maliciously misappropriating the trade secrets of Resort Advisory Group.

268.  Plaintiff Resort Advisory Group alleges that Defendants continue to misappropriate the trade secrets of Plaintiff for their own financial benefit and will continue to do so in the future unless enjoined by the Court to immediately cease all

---

[8] (*United States v. Hsu* (3d Cir. 1998) 155 F.3d 189, 47 U.S.P.Q 2d (BNA) 1784)

use and access.  Plaintiffs therefore requests the Court to enjoin Defendants from any further access and use of the trade secrets of Plaintiff Resort Advisory Group.

269.  Plaintiffs further seeks attorney's fees and costs pursuant to the provisions of the Defend Trade Secrets Act;

270.  Plaintiff also seeks to enjoin Barlow Defendants from further willful and malicious misappropriation of the trade secrets of Plaintiff.

## FIFTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. 1951 (Hobbs Act)

(By All Plaintiffs Against Barlow and Barlow 10)

271.  Paragraphs 1-270 are alleged and incorporated herein by reference.

272.  18 U.S.C. 1951 is also known as the Hobbs Act. That Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."[9]

273.  Plaintiffs have standing to bring this claim under the Hobbs Act as the Supreme Court has indicated "the Hobbs Act expand[s] the scope of common-law extortion to include private individuals. (*Id*.) Defendant Barlow is an individual, as are all members of the Barlow 10, as is Plaintiff Klein.

274.  "Extortion requires that one obtains the property of another using threat as the method employed to deprive the victim of his property. This "obtaining" is further explained as bringing about a transfer or purported transfer of a legal interest in the property, whether to the obtainer or another." (*Id*.)

275.  Defendant Barlow, conspiring with the Barlow 10, put into place a patten and practice of racketeering activity to intentionally harm the business of Plaintiffs for the purposes of extortion.

276.  Barlow and Barlow & Associates, on behalf of all Barlow Racketeering Enterprise members, stole the trade secrets of Plaintiff Resort Advisory Group.

---

[9] (*Scheidler v. NOW, Inc.* (2003) 537 U.S. 393, 397) (18 U.S.C. § 1951(b)(2).)

277.  Defendants used the stolen trade secrets to intentionally threaten the business of Resort Advisory Group and the law firm of Attorney Klein by recruiting unwitting individuals to file false civil and criminal allegations against Resort Advisory Group and Attorney Klein, and to file false claims to the state bar against Attorney Klein.

278.  The goal was to substantially or entirely disrupt the business of Plaintiffs in furtherance of the racketeering objective to extort money.

279.  Plaintiffs believe these actions were planned over the course of 2019 by Barlow Racketeering Enterprise Members.

280.  On information and belief, Defendants have also placed illegal and unwarranted liens on the property of Plaintiffs in furtherance of the scheme to harm the businesses and property of Plaintiffs in furtherance of the scheme to extort.

281.  Defendants have threatened continuing harm and an expansion of the efforts to harm the businesses of Plaintiffs until they are ruined and their reputations destroyed unless the extortion demands are met.

282.  By intentionally interfering with the business of Plaintiffs and then attempting to extort the sum of over $800,000 belonging to Plaintiffs in order to stop current and future planned false civil and criminal charges against Plaintiffs, Defendants Barlow and Barlow 10 each, individually and jointly have violated the Hobbs Act, 18 U.S.C. 1951.

283.  The intentional interference with the business of Plaintiffs, and subsequent extortion, occurred through the use of mail, internet, phone, as well as in-person threats.

284.  As a direct and proximate result of Defendant's illegal actions to violate 18 U.S.C. 1951, Plaintiffs have has suffered substantial damages in the amount of at least $75,000, in an exact amount to be proven at trial.

285.  Additionally, Plaintiffs' reputations have been harmed, and continue to be threatened by, Defendants actions in violation of 18 U.S.C. 1951 in an

immeasurable amount, given that Plaintiffs' businesses largely relie on trust and reputation by public customers.

286. Plaintiffs therefore request the Court to enjoin all current and future violations of 18 U.S.C. 1951 by Defendants in the filing of false civil and criminal lawsuits and baseless state bar complaints in order to intentionally harm the businesses of Plaintiffs for purposes of extortion and intentional harm to the reputation and viability of Plaintiffs.

## SIXTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. 1957

(By All Plaintiffs Against All Defendants)

287. Paragraphs 1-286 are alleged and incorporated herein by reference.

288. 18 U.S.C. 1957 prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified illegal activity.[10] Specified "illegal activity" has been defined, in part, by the list of unlawful activity under 18 U.S.C. 1956(a) which in turn relies or refers to the list of specified unlawful activity under 18 U.S.C. 1961(1)(A.)[11]

289. Each individual transaction of money in furtherance of, or as a result of, specified illegal activity gives rise to a separate violation of 18 U.S.C. 1957.[12]

290. Contained in this list of specified unlawful activity is extortion, economic espionage and theft of trade secrets (18 U.S.C. 1832), and interference with

---

[10] (*Flores v. Emerich & Fike* (E.D.Cal. Mar. 31, 2009, No. 1: 05 - CV - 0291 AWI DLB) 2009 U.S.Dist.LEXIS 26965, at *26.)

[11] The "specified unlawful activity" at issue in a Section 1956(a) violation can be an activity constituting an offense listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7)(A). Section 1961(1)(A) lists specific crimes that can constitute predicate acts of "racketeering activity"

[12] *See, e.g.*, *United States v. Prescott*, 42 F.3d 1165 (8th Cir. 1994); *United States v. Conley*, 826 F. Supp. 1536 (W.D. Pa. 1993)

commerce by robbery or extortion. (18 U.S.C. 1951)

291.  Defendants knowingly stole and misappropriated the trade secrets of Plaintiff, which they then used in an extortion attempt to gain more than $800,000 for the benefit of Barlow Racketeering Enterprise Members.

292.  The theft of trade secrets and attempt to extort more than $800,000 for their return by all Defendants is an attempt to engage in a monetary transaction in excess of $10,000 from criminally derived property in violation of 18 U.S.C. 1957.

293.  The criminally derived trade secrets were also utilized by Defendants in an illicit campaign to intentionally harm the businesses of Plaintiffs as part of the scheme to extort.

294.  Defendants Barlow and Barlow & Associates have also utilized the stolen and misappropriated trade secrets of Plaintiff to unfairly compete directly with Plaintiff in the timeshare resolution business. Upon information and belief, Plaintiff alleges that Defendants Barlow and Barlow & Associates have engaged in multiple monetary transactions in excess of $10,000 through use of the stolen trade secrets of Plaintiff in violation of 18 U.S.C. 1957.

295.  As a direct and proximate result of Defendants violation of 18 U.S.C. 1957, Plaintiffs have sustained damages in an amount of at least $75,000, with an exact amount to be proven at trial.

296.  Plaintiffs further seek the court to enjoin Defendants from further violations of 18 U.S.C 1957 by way of the stolen trade secrets of Plaintiff Resort Advisory Group.

## SEVENTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (PENAL CODE 502)**

(By Plaintiff Resort Advisory Group Against All Defendants)

297.  Paragraphs 1-296 are alleged and incorporated herein by reference.

298.  California Penal Code 502 is a general computer crimes statute enacted by the Legislature of California.

299.  Plaintiffs have standing to bring this cause of action because Penal Code 502(e) expressly states that the owner of the computer or computer system damaged by acts in violation of this section can bring a civil action.

**Penal Code Section 502(c)(1)**

300.  Penal Code Section 502(c)(1) prohibits "knowingly access[ing] and without permission alter[ing] ... or otherwise using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."

301.  Plaintiff alleges Barlow Defendants, on more than one occasion, knowingly accessed, without permission, the computer systems of Plaintiff to access and steal the trade secrets of Plaintiff.

302.  Plaintiffs allege that at least one illicit access of the computer systems of Resort Advisory Group occurred on or around August-September 2018.

303.  Plaintiffs allege the illegal computer access and theft of trade secrets was part of Defendants scheme to defraud and extort money from Plaintiffs.

304.  Plaintiffs allege the illegal computer access and theft of trade secrets was part of Barlow Defendants fraudulent scheme to unfairly compete with Plaintiffs.

305.  Plaintiffs allege the illegal computer access was accomplished by Barlow Defendants to wrongfully control the trade secrets of Plaintiff for purposes of extortion and unfair competition.

306.  Plaintiffs allege that the above actions were taken by Barlow Defendants acting on behalf of, and in furtherance of, Barlow Racketeering Enterprise goals.

307.  Based upon the above actions, Defendants have violated Penal Code 502(c)(1).

**Penal Code Section 502(c)(2)**

308.  Penal Code Section 502(c )(2) prohibits anyone who "[k]nowingly accesses and without permission takes, copies or makes use of any data from a computer, computer system, or computer network, or takes or copies supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

309.  Plaintiffs allege that Barlow Defendants knowingly took, made use of, and copied the data from Resort Advisory Group computers without authorization, agreement, license, or right.

310.  Plaintiffs allege that at least one illegal access occurred on or around August-September 2018.

311.  Plaintiffs allege that the above actions were done by Barlow Defendants on behalf of, and in furtherance of, the goals of Barlow Racketeering Enterprise, which include extortion of Plaintiffs.

312.  By accomplishing the above illegal acts, Defendants have violated Penal Code 502(c)(2).

313.  As a result of Defendants violations of Penal Code Section 502(1) and (2) as described herein, Plaintiffs have suffered damages of at least $75,000, in an amount to be proven at trial.

314.  Plaintiffs seek attorney's fees as provided for by Section 502(e)(2).

315.  Plaintiffs are seeking exemplary and punitive damages for the despicable, malicious, deceitful and fraudulent acts of Defendants.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW § 17200
### (UNLAWFUL, UNFAIR, OR FRAUDULENT ACTS OR PRACTICES)

*(By Plaintiff Resort Advisory Group Against Barlow Defendants)*

316.  Paragraphs 1-315 are alleged and incorporated herein by reference.

317.  To assert a California Unfair Competition Act (UCL) claim, a private plaintiff needs to have suffered injury in fact and lost money or property as a result of the unfair competition. A plaintiff's "personal information" does not constitute property under the UCL.[13]

318.  A violation of any other law, used as a method of conducting or competing in business is a violation of B.P.C. 17200[14]

319.  "[T]o state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law.[15]

320.  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable." (*Id.*) The UCL establishes three varieties of unfair competition - acts or practices which are (1) unlawful, or (2) unfair, or (3) fraudulent.[16]

**Unlawful Business Activity**

321.  An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law.[17] "A business practice is 'unlawful' if it is 'forbidden by law.'"[18]

**Unfair Business Practice**

322.  A business practice is "unfair" when it "offends an established public policy

---

[13] (*In re Facebook Privacy Litig.* (N.D.Cal. 2011) 791 F.Supp.2d 705, 708.)
[14] *Rubio v.Capital One Bank* (572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010)),
[15] (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180)
[16] (*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157.)
[17] (*Blank*, 39 Cal.3d at 329, 216 (citing *People v. McKale* (1979) 25 Cal.3d 626, 631-632).)
[18] *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169, 121 (quoting *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.)

or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[19]

**Fraudulent Business Practice**

323. The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest[20], or to allege that "members of the public are likely to be deceived."[21]

**Court Has the Power to Enjoin Unfair Competition**

324. Additionally, "any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.[22]

325. Defendant Barlow, in conjunction with Barlow & Associates and Barlow Defendants, did purposefully and intentionally plan and conspire to commit multiple unfair business practices which directly harmed Plaintiff Resort Advisory Group's business, provided substantial monetary benefits to all Defendants, and substantially deceived the public.

326. Defendants Barlow and Barlow & Associates received substantial upfront payments for legal services from Resort Advisory Group for which no actual legal work was performed for the assigned client.

327. Plaintiff alleges, upon information and belief, that Defendants Barlow and Barlow and Associates, between January 2017 and approximately August-

---

[19] (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.)

[20] ," (*Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D. Ca. 2001) 178 F.Supp.2d 1099, 1121)

[21] (*Schnall v. Hertz Corp.*(2000) 78 Cal.App.4th 1144, 1167; *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 U.S. Dist. LEXIS 41411, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

[22] (*Flores v. EMC Mortg. Co.* (E.D.Cal. 2014) 997 F.Supp.2d 1088, 1117.)

September 2018, intentionally concealed and funneled these payments for benefit of Barlow Defendant's efforts to illegally and unfairly compete with Resort Advisory Group. The exact amounts are still under investigation but are believed to be well in excess of $10,000.

328.  Defendant Barlow's employment was terminated by Plaintiffs upon discovery that he had been intentionally not performing required job duties he had already received payment for.

329.  Plaintiffs believe that Barlow Defendants, as of the time of termination of Barlow, had already hatched the illegal scheme to steal and misappropriate the trade secrets of Plaintiff for purposes of unfair competition.

330.  Plaintiffs allege that Barlow Defendants, acting on behalf of Barlow Racketeering Enterprise, then illegally accessed the protected computer systems of Plaintiff, on or around August-September 2018, to steal and misappropriate the trade secrets of Plaintiff Resort Advisory Group.

331.  Barlow Defendants used the trade secrets of Plaintiff to fraudulently solicit and manipulate Resort Advisory Group clients to become willing members of Barlow Racketeering Enterprise, who were then directed and guided by Barlow Defendants to harm the business and reputation of Plaintiffs as a method of unfair competition and for purposes of extortion.

332.  Plaintiffs allege that Barlow Defendants have intentionally worked in concert with Barlow 10 to harm the business and business reputations of Plaintiffs by way of intentionally false civil, criminal, and state bar allegations, as a method of unfair competition.

333.  Plaintiffs allege that Barlow Defendants have intentionally utilized the U.S. mail, internet, and phone lines to threaten the business and business reputations of Plaintiffs as a method of unfair competition.

334.  Plaintiffs allege that Defendants have knowingly and intentionally set out to defame Plaintiffs with false allegations of fraud on social media in order to harm

the businesses and reputations of Plaintiffs as a method of unfair competition.

335.  Plaintiffs allege that Barlow Defendants, acting on behalf of Barlow Racketeering Enterprise, have attempted to extort more than $800,000 from Plaintiffs as a method of unfair competition.

336.  Plaintiffs allege that Barlow Defendants, acting on behalf of Barlow Racketeering Enterprise, have converted the assets of Resort Advisory group, both money and intellectual property, for their own use, without license, permission, or agreement as a method of unfair competition.

337.  Plaintiffs allege, as part of the unfair, deceptive, or fraudulent business practices of Barlow Defendants, that they have violated 18 U.S.C. 875(d), 1030, 1832, 1836, 1341, 1343, 1951, 1957, 1960 et seq. California Penal Code 502 and 518, amongst others.

338.  Plaintiffs have been substantially damaged by the pervasive and repeated violations of California Business and Professions Code 17200 by Barlow Defendants and Barlow 10 Defendants of at least $75,000, with the exact amount to be proven at trial.

339.  Plaintiffs further request that the intentional, pervasive and repeated violations of B.P.C. 17200 by Defendants, acting with oppression, fraud, and malice, entitle Plaintiffs to an award of punitive damages per California Civil Code Section 3294.

340.  Plaintiffs request the Court to enjoin the activity of Defendants to stop the repeated and intentional harm to Plaintiffs business from the continual illegal use of Plaintiff Resort Advisory Group's trade secrets to compete against Plaintiff. Barlow Defendants also continue to intentionally deceive and defraud the public by encouraging, and threatening to encourage, other as yet unknown clients, to pay Barlow Defendants unwarranted additional payments and further to file false civil and criminal charges.

341.  Plaintiffs also request that the Court enjoin Barlow Defendants to cease all

activities to compete, directly or indirectly, with Plaintiff Resort Advisory Group's timeshare resolution business.

342.  Plaintiffs believe that if not enjoined, Barlow Defendants will continue to harm Plaintiff Resort Advisory Group's business through unethical and unfair competitive behavior.

## NINTH CAUSE OF ACTION

**CONVERSION AND CONSPIRACY TO COMMIT CONVERSION**

(By Plaintiff Resort Advisory Group Against Defendants Barlow and Barlow & Associates)

343.  Paragraphs 1-342 are alleged and incorporated herein by reference.

344.  "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."[23] It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." . . .' "[24]

345.  "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [25]

---

[23] (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.)

[24] (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)

[25] (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.)

346.  Defendants Barlow and Barlow & Associates, and each of them, have wrongfully converted, aided and abetted, and caused to be converted, to their own use, and that of their friends, families, associates, and accomplices, money, funds, and property belonging to Plaintiff Resort Advisory Group. Such conversions have been for the benefit of the Defendants and their friends, families, associates, and accomplices, and to the detriment of the true owners of the property, Plaintiff Resort Advisory Group.

347.  Defendants conversion of property includes the proprietary client list and Business Knowhow of Resort Advisory Group that they had no right or ownership interest in.

348.  Defendants conversion of property includes monies collected and retained by Barlow Defendants from clients of Resort Advisory Group that they had no right or ownership interest in.

349.  Defendants conversion of property includes using deception and fraud to convert exclusive clients of Resort Advisory Group into clients of Barlow Associates, for monetary purposes and purposes of extortion.

350.  Defendants Barlow and Barlow & Associates unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together, with each other, and with others to convert money, funds, and property belonging to Resort Advisory Group and its clients to their own use, and that of their friends, families, associates, and accomplices. In furtherance of the conspiracy and to affect the objects thereof, Defendants committed the overt acts, among others, referenced above.

351.  As a direct and proximate result of these acts of conversion by Defendants Barlow and Barlow & Associates, Plaintiffs have suffered damages in an amount to be determined at trial, and presently estimated to be not less than $75,000.

352.  In committing the acts and perpetrating the schemes alleged herein, Defendants intended to injure Plaintiffs and acted with malice and oppression and

with a willful and conscious disregard for the rights of Resort Advisory Group and its clients.

353. In so doing, Defendants acted toward Plaintiff and its clients in such manner as to warrant disgorgement of any revenue derived from their illicit uses of the proprietary trade secrets of Resort Advisory Group, disgorgement of any monies derived from the deception of Plaintiff's clients to pay monies directly to Barlow, Barlow & Associates or any other entity or account controlled by Barlow Racketeering Enterprise, together with an award of punitive and exemplary damages in an amount no less than $ 75,000, to be proven at trial.

## TENTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

(By Plaintiff Resort Advisory Group Against All Defendants)

354. Paragraphs 1-353 are alleged and incorporated herein by reference.

355. "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."[26]

356. Plaintiff Resort Advisory Group has signed valid contracts with each of its clients, including the Barlow 10, for representation of their legal interests to remove or eliminate their timeshare contract obligations. .

357. Defendants Barlow and Barlow & Associates, by way of their own employment relationship with Plaintiff Resort Advisory Group and working directly with clients assigned to them, knew of these valid existing contracts

---

[26] (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126)

between the clients and Resort Advisory Group.

358.  Defendants Barlow and Barlow & Associates intended to disrupt the performance of the contracts between Plaintiff Resort Advisory Group and its' clients and took direct actions to induce or entice breaches of contract by Plaintiff's clients.

359.  Barlow Defendants also actively encouraged Resort Advisory Group clients to breach their contracts with Resort Advisory Group.

360.  As a direct and proximate result of the actions of Barlow and Barlow & Associates to interfere in the contractual relations of Plaintiffs, Plaintiffs have suffered substantial harm and economic damages. Plaintiff Resort Advisory Group has suffered, and continues to suffer from, losses in earnings from current and future contractual clients and a substantial harm to the reputation of the business.

361.  As a direct and proximate result of the actions of the Barlow 10 to interfere in the contractual relations of Resort Advisory Group, Plaintiff has suffered substantial harm and economic damages. Resort Advisory Group has suffered, and continues to suffer from, losses in earnings from current and future contractual clients and a substantial harm to the reputation of the business.

362.  Plaintiff has been harmed by Defendants tortious actions in an amount of at least $75,000, in an exact amount to be proven at trial.

363.  Defendants, individually and jointly, have acted with intentional and purposeful malice, oppression, and fraud toward Plaintiff Resort Advisory Group for the benefit of their own illicit goals. Plaintiffs are therefore seeking an award of punitive and exemplary damages in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
(By All Plaintiffs Against All Defendants)

364. Paragraphs 1-363 are alleged and incorporated herein by reference.

365. Plaintiff Resort Advisory Group currently has business relationships with hundreds of existing customers. Plaintiff holds prospective economic relations with their clients and other prospective clients in the ordinary course of business, including the sale of timeshare resolution services with which Defendants are intentionally interfering.

366. Plaintiff Attorney currently has business relationships with hundreds of existing clients., including Resort Advisory Group, and Attorney holds prospective economic relations with clients and prospective clients in the ordinary course of business, including providing general legal services in several states.

367. Defendants intentionally and wrongfully interfered with these relationships by, *inter alia*, intentionally utilizing confidential and trade secret information misappropriated from Plaintiff Resort Advisory Group and engaging in the intentional dissemination of false information and accusations of fraud against Plaintiffs that has substantially negatively affected Plaintiffs' prospective economic relations.

368. Defendants Barlow and Barlow & Associates additionally intentionally and wrongfully entered into direct competition with Plaintiff Resort Advisory Group utilizing the stolen and misappropriated trade secrets of Plaintiff in substantial breach of contractual, fiduciary, and ethical duties owed to Resort Advisory Group that has substantially negatively affected Plaintiffs' prospective economic relations.

369. The Barlow 10, acting at the encouragement and direction of the Barlow Defendants, have also knowingly and intentionally filed, as part of their pattern and practice of racketeering activity, multiple false civil and criminal claims against Plaintiffs, and false and baseless state bar complaints against Attorney, in order to purposely harm the business and business relationships of Plaintiffs.

370. These actions by Barlow 10, Barlow, and Barlow & Associates have substantially negatively affected Plaintiffs prospective economic relations. The

intent of these actions by Defendants was to cause colleagues, partners, investors, clients, and prospective clients to distrust Plaintiffs and cease current and future planned economic activity with Plaintiffs, which has actually occurred.

371.  As a direct and proximate result of the aforementioned conduct, Plaintiffs' relationship with their customers and potential customers and other third parties have been, and are being disrupted, and the intentional disruption has caused damages in amount of at least $75,000, in an exact amount to be proven at trial.

372.  Defendants' conduct consisted of intentional misrepresentations, deceit, racketeering, and concealment of material facts known to the Plaintiffs with the intention of depriving Plaintiffs of property or legal rights or otherwise causing injury.

373.  Further, Defendants' conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## TWELFTH CAUSE OF ACTION
### FALSE LIGHT

(By All Plaintiffs Against All Defendants)

374.  Paragraphs 1-373 are alleged and incorporated herein by reference.

375.  California law has generally followed Prosser's classification of privacy interests as embodied in the Restatement:[27] "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[28]

---

[27] (*Hill v. National CollegiateAthletic Assn.* (1994) 7 Cal.4th 1, 24)
[28] Restatement of Torts, section 652E

376. "In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well."[29]

377. Barlow Defendants, on multiple occasions starting on or after August-September 2018, knowingly and intentionally made false allegations of fraud against Plaintiffs, published in writing to Resort Advisory Group clients and in social media.

378. The intentional false statements were made in furtherance of unfair competition by Barlow Defendants and in furtherance of the scheme to extort over $800,000 from Plaintiffs.

379. At the time these statements were published, Defendants, and each of them, knew they were false and baseless.

380. Defendants went even further and published knowingly false statements about Attorney Klein to the state bar as part of the scheme to extort money from Plaintiffs.

381. These false statements included accusing Plaintiffs of fraud and then stating statements such as: "The impact of [the CDRS] approach on the timeshare companies is absolutely devastating and **eclipses any 'promise' made by a so-called timeshare 'exit' company.**" (Emphasis added.) Barlow also boasted to Resort Advisory Group's clients that CDRS will "singlehandedly destroy the timeshare industry" and "guarantees the timeshare customers who they agree to work with will get back, *minimally*, every single cent they mistakenly gave the timeshare developer….They are certain that, due to their efforts, the timeshare industry will be no more in the near future." (Emphasis in original.) (Exhibit 3 hereto.)

_____

[29] (*Fellows v. National Enquirer* (1986) 42 Cal.3d 234, 238–239)

71

382.  Social media false posts include telling the world, including clients and prospective clients of Plaintiffs, that "You really need to do your homework before working with these guys! [and] more of these [criminal] complaints are being filed [against Plaintiff]." (Exhibit 4 hereto.)

383.  The false statements about Plaintiff Attorney, made in correspondence, criminal complaints, and complaints to the state bars of Pennsylvania and New Jersey, appear in Exhibits 7-8 hereto. (Exhibit 8 contains true and correct copies of bar complaints by the Abel Defendants against Attorney that are representative of Pennsylvania and New Jersey bar complaints also filed against Attorney by the Bettinelli, Martinez, Perley, Castle and Turk defendants.)

384.  Plaintiffs allege, upon information and belief, that the repeated false statements made by Defendants Barlow and Barlow & Associates accusing Plaintiffs of fraud were made intentionally, with actual malice, and were intended to cause others, including current, former, and potential clients of Plaintiffs, investors in Plaintiffs and colleagues of Plaintiffs, to cease dealing with Plaintiffs or to stop trusting Plaintiffs.

385.  Further, Defendants Barlow and Barlow & Associates, in conjunction with the Barlow 10, intentionally and purposefully caused or aided and abetted the filing and publication of false civil claims against Plaintiff Resort Advisory Group in a California court.

386.  The civil complaint filed by the Defendants John and Pamela Pressney, at the direction, guidance, and instruction of Barlow and Barlow & Associates, is based upon the same orchestrated and false claims of fraud.

387.  All the statements made by Defendants were knowingly false and fraudulent or made with reckless disregard for the truth, and intended to create a false public impression of Plaintiffs.

388.  The repeated publications by Defendants accusing Plaintiffs of fraud and fraudulent business practices would be highly offensive to a reasonable person in

Plaintiffs' position.

389.  Alternatively, Defendants were negligent in determining the truth of the information or whether a false impression would be created by its publication.

390.  As a direct and proximate cause of Defendants actions to create a false light, Plaintiffs have been substantially harmed in an amount of at least $75,000, with the exact amount to be proven at trial.

391.  The conduct of the Defendants in causing the false light of the Plaintiffs was a substantial factor in causing Plaintiffs harm.

392.  Plaintiffs are entitled to, and are asking for, injunctive relief.

393.  The aforementioned conduct of Defendants was a pattern and practice of intentional misrepresentation, deceit, or concealment of material facts known to Defendants, with the intention of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury to Plaintiffs.

394.  This conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in substantial disregard for Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## THIRTEENTH CAUSE OF ACTION

### DEFAMATION - LIBEL

(By All Plaintiffs Against All Defendants)

395.  Paragraphs 1-394 are alleged and incorporated herein by reference.

396.  Libel "is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."[30]

397.  To determine whether a representation may be libelous, "we look to what is explicitly stated as well as what insinuation and implication can be reasonably

---

[30] (*Alszeh v. Home Box Office* (1998) 67 Cal.App.4th 1456, 1460-1461)

73

drawn from the communication. [Citation.] . . . In this connection the expression used as well as the 'whole scope and apparent object of the writer' must be considered. [Citation.]"[31]

398.  The key measure of libel is whether the published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact by an average reader that the libelous material is targeted at.[32]

399.  California permits defamation liability so long as it is consistent with the requirements of the United States Constitution.[33]

400.  Defendants have engaged in a repeated, methodical, and intentional course of conduct to publish knowingly false statements about Plaintiffs. Defendants libelous activity continues to the current date.

401.  Defendants intentionally mailed written letters to Resort Advisory Group clients accusing Plaintiffs of fraud and encouraging them to breach their contract with Resort Advisory Group and join the Barlow Racketeering Enterprise.

402.  Defendants Barlow and Barlow & Associates intentionally utilized his law degree and law firm to gain false trust and overcome skepticism from Resort Advisory Group clients, in furtherance of the scheme to post libelous claims against Plaintiffs.

403.  The fraud claims by Barlow Defendants are knowingly false because the heart of their argument is the preposterous notion that every single timeshare contract is automatically void by law and requires no legal services whatsoever to exit; thereby any company offering timeshare resolution services is automatically fraudulent.

404.  Barlow knew at the time of publishing these letters by U.S. mail and by

---

[31] (*Forsher v. Bugliosi* (1980) 26 Cal. 3d 792, 803, quoting *MacLeod v. Tribune Publishing Co*. (1959) 52 Cal. 2d 536, 546.)

[32] *Couch v. San Juan Unified School Dist.* (1995) 33 Cal. App. 4th 1491,1500)

[33] *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 740-42. (stating a private person need prove only negligence rather than malice to recover for defamation.)

internet email that the statements made about Plaintiffs businesses were false.

405.  These statements were made for the express intentional purpose of harming the business of Plaintiffs for the sole benefit of Barlow, Barlow & Associates and for the Barlow 10.

406.  Examples of the libelous statements are contained in Exhibit 3-4, 6.

407.  The false statements about Plaintiff Attorney, made by the Barlow and Barlow 10 Defendants in correspondence, criminal complaints, and complaints to the state bars of Pennsylvania and New Jersey, appear in Exhibits 7-8 hereto. (Exhibit 8 contains true and correct copies of bar complaints by the Abel Defendants against Attorney that are representative of Pennsylvania and New Jersey bar complaints also filed against Attorney by the Bettinelli, Martinez, Perley, Castle and Turk defendants.)  Defendants knew at the time of publishing these statements about Attorney by U.S. mail and by internet email that they were false as Defendants admit and acknowledge that Attorney **never** represented any of them.

408.  Defendants Barlow and Barlow & Associates, by way of being employed for nearly two years by Resort Advisory Group and deploying their proprietary resolution methods for over 200 clients had actual knowledge that the business was not fraudulent. As a trained and licensed attorney, it is reasonable to assume that Defendant Barlow would have been able to determine that the business or business methods were fraudulent, if true, within a short period of time of joining Resort Advisory Group.

409.  Plaintiffs allege the libelous statements published in letters, civil and criminal claims, and online against Plaintiffs were for purposes of unfair competition, extortion, and revenge.

410.  Defendants Barlow and Barlow & Associates further had the common goal, after planning and conspiring with the Barlow 10, to purposefully and intentionally use these false fraud claims as a basis to file false civil and criminal charges against

Plaintiffs, and false and baseless state bar complaints against Attorney, for the joint goal of extortion.

411.  Defendants Barlow and Barlow & Associates' defamatory statements tend to directly injure Plaintiffs in regard to their office, profession, trade or business, either by imputing to Plaintiffs general disqualifications in those respects by which the office or other occupation peculiarly requires, or by imputation of something with reference to the office, profession, trade, or business that has a natural tendency to lessen its profits.

412.  Defendants Barlow and Barlow & Associates did not have any privilege which covered the defamatory statements and otherwise did not have any public purpose to be served by their false defamatory statements against Plaintiffs.

413.  Each of the Barlow 10 knew at the time they made these false claims of fraud through civil complaints and additionally by criminal complaints that the claims were false and made in furtherance of extortion.

414.  The Barlow 10 Defendants who made these defamatory statements did not have any privilege which covered them and otherwise did not have any public purpose to be served by their false defamatory statements against Plaintiffs.

415.  As a direct and proximate result of Defendants' tortious defamation of Plaintiffs for their own illicit benefit and financial gains, Plaintiffs have suffered substantial damages in excess of $75,000, in an amount to be proven at trial.

416.  Plaintiffs assert that the conspiratorial activities of Defendants, each of whom aided and abetted one another, were utterly willful, and done with malice and intent to injure the Plaintiffs.

417.  These actions by Defendants to intentionally defame Plaintiffs were done with a conscious disregard of the rights of Plaintiffs and with the intent to cause Plaintiffs substantial harm and damage.  Defendants were, at all times herein, clearly aware of the probable consequences of their conduct but, nevertheless, willfully and deliberately failed to avoid the conduct that caused the consequences

to Plaintiffs. This conduct thus constitutes acting with malice, oppression, fraud, and is despicable conduct.

418.  Plaintiffs are therefore entitled to recover punitive damages jointly and severally against Defendants in an amount to be proven at trial and in an amount sufficient to punish and deter others from engaging in similar tortious conduct.

419.  Plaintiffs are also entitled to injunctive relief.

## FOURTEENTH CAUSE OF ACTION

## BREACH OF CONTRACT

(By Plaintiff Resort Advisory Group Against Defendants Barlow and Barlow & Associates)

420.  Paragraphs 1-419 are alleged and incorporated herein by reference.

421.  Under California law, to state a cause of action for breach of contract a plaintiff must plead: the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to Plaintiff therefrom. California law requires a showing of "appreciable and actual damage" to assert a breach of contract claim. Nominal damages and speculative harm do not suffice to show legally cognizable damage under California contract law.[34]

422.  Plaintiff Resort Advisory Group had a valid employment contract with Defendant Barlow, a California licensed attorney.

423.  Defendant Barlow, through his firm Barlow & Associates, was to provide required legal services to Resort Advisory Group clients for a successful resolution of their timeshare contract.

424.  Defendant Barlow, by way of his contract, agreed to valid non-circumvention and non-compete clauses with Resort Advisory Group.

425.  Defendant Barlow, by way of his contract, agreed to keep the trade secrets of Plaintiff confidential and agreed that the trade secrets exclusively belong to Resort

---

[34] (*In re Facebook Privacy Litig.* (N.D.Cal. 2011) 791 F.Supp.2d 705, 708.)

Advisory Group.

426.  Defendant Barlow, by way of his contract, agreed to up-front payments for the legal work to be performed for each client. Upon acceptance of the payment from Resort Advisory Group, Defendant Barlow was obligated to perform the required legal services at the appropriate time.

427.  Upon information and belief, sometime between January 2017 and August-September 2018, Defendant Barlow breached his contract multiple times by receiving and retaining payment for legal services he never intended to provide.

428.  Plaintiff alleges that Defendant Barlow never performed many of the legal services he accepted and kept payment for.

429.  Plaintiff alleges that Defendant Barlow breached his contract by knowingly competing with Resort Advisory Group, starting sometime in, around and after August-September 2018.

430.  Plaintiff alleges that Defendant Barlow breached his contract by concealing that he was soliciting Resort Advisory Group clients for additional payments and then steering those payments directly for the benefit of Barlow Defendants.

431.  Plaintiff alleges that Defendant Barlow breached his contract by illegally stealing and then using the trade secrets of Plaintiff to compete with Plaintiff Resort Advisory Group.

432.  Attached hereto as Exhibit 1 and incorporated herein by reference as though set forth in full, is a true and correct copy of the contract between Barlow and Barlow & Associates and Plaintiff Resort Advisory Group.

433.  At all times Defendant Barlow breached the contract with Resort Advisory Group, he did so knowingly and intentionally.

434.  As a direct and proximate result of Defendant Barlow's breach of his obligations under the contract, Resort Advisory Group's business reputation has been substantially damaged and Plaintiff has had substantial revenue belonging to Plaintiff diverted by Barlow for his own purposes. Plaintiff has also lost substantial

current and future potential earnings as a result of Defendant Barlow's intentional breach of contract.

435.  The total damages sustained by Resort Advisory Group as a direct and proximate result of Defendant Barlow's breach of contract is at least $75,000, in an exact amount to be proven at trial.

## FFIFTEENTH CAUSE OF ACTION
## CONSTRUCTIVE FRAUD

(By Plaintiff Resort Advisory Group Against Defendants Barlow & Barlow & Associates)

436.  Paragraphs 1-435 are alleged and incorporated herein by reference.

437.  "Constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another, even though the conduct is not otherwise fraudulent."[35]  If a fiduciary relationship exists, any concealment of material fact is fraud.[36] Unlike actual fraud, constructive fraud does not require an intentional deception, an "intent to deceive" being implied from the failure to disclose.[37]

438.  Reasonable reliance is presumed upon a nondisclosure of the fiduciary, absent direct evidence of lack of reliance.[38]  "The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud."[39]

---

[35] (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562; 2 Miller & Starr, Cal. Real Estate (2d ed. 1989), §3:20, p. 120-121; Civ. Code §1573(1).)
[36] . *(Byrum v. Brand* (1990) 219 Cal.App.3d 926, 937-938; *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1997) 67 Cal.App.3d 19, 32.)
[37] (*Mary Pickford Co. v. Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 525.)
[38] (*Estate of Gump* (1991) 1 Cal.App.4th 582, 601.)
[39] (*Salahutdin v. Valley of California, Inc. (1994) 24 Cal.App.4th 555.*)

439.  If an agent is in a fiduciary relationship, most acts by the agent in breach of their fiduciary duties constitute constructive fraud.[40]

440.  Defendant Barlow is an attorney licensed to practice law in the state of California. It is fundamental that all attorneys owe fiduciary duties to their clients, meaning they must put the interests of their clients ahead of their own.

441.  Defendant Barlow was hired by Resort Advisory Group as an attorney to represent its' interests and the interests of its' clients.

442.  Defendant Barlow and Barlow & Associates were paid by an up-front fixed rate for legal services to be performed.

443.  At all times, Defendant Barlow had a fiduciary and ethical duty to act in the best interests of Resort Advisory Group and its' clients.

444.  Plaintiff alleges Defendants Barlow and Barlow & Associates breached their fiduciary, contractual, and ethical duties owed to Resort Advisory Group and Resort Advisory Group's clients and engaged in a pattern and practice of constructive fraud:

a)   Defendant Barlow encouraged Resort Advisory Group clients to breach their contract and instead join his "competing" firm for timeshare resolution services.

b)   Defendant Barlow knowingly accepted multiple up-front payments for legal work he knew he had no intention of performing and never did perform.

c)   Defendant Barlow intentionally started a competing business with Resort Advisory Group in breach of his contract and while still employed by Resort Advisory Group.

d)   Defendant Barlow actively solicited Resort Advisory Group clients and accused Plaintiffs of fraud against them, knowing that these claims were false and baseless.

e)   Defendant Barlow stole the trade secrets of Resort Advisory Group in order

---

[40] *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415

to unfairly compete and extort Plaintiffs.

f) At some point, in or around or prior to August-September 2018, and continuing thereafter, Defendants Barlow and Barlow & Associates concealed they had solicited and received multiple unwarranted additional payments from Resort Advisory Group's clients for timeshare work paid directly to accounts controlled by Barlow and Barlow & Associates;

g) The Barlow Defendants, including Barlow, planned and conspired to plan with members of the Barlow 10 to intentionally file false civil claims against Resort Advisory Group as a form of illegal business practice and as part of a scheme to harm the reputation and business prospects of Resort Advisory Group in order to extort money from Plaintiffs.

h) Defendant Barlow, acting in furtherance of Barlow Racketeering Enterprise, attempted to extort more than $800,000 from Plaintiffs in exchange for halting their illegal behavior targeting Plaintiffs.

445. Plaintiffs have suffered significant damages as a result of the constructive fraud of Defendants Barlow & Barlow & Associates of at least $75,000, in an exact amount to be proven at trial.

446. Plaintiff Resort Advisory Group has suffered, and continues to suffer, from the repeated and continual breaches of fiduciary duty by Barlow & Barlow & Associates through the illegal control and use of the trade secrets of Plaintiff.

447. Plaintiff Resort Advisory Group requests the Court to further enjoin Barlow Defendants from further access, use, or control of any trade secrets of Plaintiff pending the outcome of the trial in this matter.

## SIXTEENTH CAUSE OF ACTION

## QUANTUM MERUIT

(By Plaintiff Resort Advisory Group Against All Defendants)

448. Paragraphs 1-447 are alleged and incorporated herein by reference.

449.  Plaintiff conferred a benefit upon Defendants of a substantial amount of money, believed to be in excess of $10,000.

450.  Plaintiffs allege, as previously stated herein, that Defendants Barlow and Barlow & Associates have unjustly received and kept, including but not limited to, payments from Plaintiff Resort Advisory Group while Defendant Barlow was in an employment relationship with Plaintiff, but for which Barlow intentionally did not perform any legal services, the trade secrets, such as Plaintiff's client database, of Plaintiff Resort Advisory Group, illegally acquired by Defendant Barlow and Barlow & Associates without permission, authorization, or license, used by Barlow to illicitly compete.

451.  Plaintiff did not receive value in return for conferring these benefits to Defendants.

452.  Allowing Defendants to gain from that conferred benefit without paying Plaintiffs the value of those services lost would be unjust.

453.  Plaintiffs are entitled to the fair value of the services provided which conferred the subject benefit to Defendants, in an amount to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION

## MISAPPROPRIATION AND MISUSE OF CONFIDENTIAL INFORMATION

(By Plaintiff Resort Advisory Group Against All Defendants)

454.  Paragraphs 1- 453 are alleged and incorporated herein by reference.

455.  As part of the exclusive methods and processes developed, tested, and refined by Plaintiff Resort Advisory Group for timeshare resolution services over its years in business, Plaintiff acquires, develops, maintains, and retains proprietary and confidential information which includes, but is not limited to, detailed and consolidated confidential information on its clients and its Business Knowhow. Together, these are herein referred to as "Confidential Information."

456.  Maintaining the secrecy of this Confidential Information is critical to the

success of Resort Advisory Group's business as a timeshare resolution company. The Confidential Information is not generally known to the public or to Resort Advisory Group's competitors and is subject to reasonable efforts by Plaintiff to maintain its secrecy on Plaintiff's protected computer systems and offices.

457.  Resort Advisory Group has expended substantial amounts of money, business efforts, and time to develop and maintain the Confidential Information. It has independent economic value which extends beyond Resort Advisory Group, including to any potential competitor who does not lawfully have a license or right to possess all or part of this Confidential Information.

458.  Further, the Confidential Information relating to customers financial information is protected from disclosure to third parties by state and federal laws prohibiting such disclosure, including but not limited to, the Financial Services Modernization Act of 1999, 15 U.S.C. 6801 *et. seq*., the California Information Privacy Act, Cal Civ. Code 4050 *et seq*., the California Consumer Privacy Act[41], and California Civil Code sections 1798.80 through 84.

459.  Defendant Barlow, by way of his retainer agreement, was entrusted with the confidential information belonging to Resort Advisory Group, including its trade secrets. Defendant Barlow had only limited authorized access during his employment with Plaintiff.

460.  Defendant Barlow agreed to keep knowledge of such confidential information private and secret.

461.  Defendant Barlow intentionally breached his fiduciary duties to misuse and conspire to misuse the confidential information of Resort Advisory Group for his own illicit purposes.

462.  Defendant Barlow had no authorization, license, or ownership interest in the illegally misused information.

---

[41] TITLE 1.81.5. California Consumer Privacy Act of 2018 [1798.100 - 1798.199] *(Title 1.81.5 added by Stats. 2018, Ch. 55, Sec. 3)*

463.  As a result of Barlow and Barlow & Associates conspiracy with other Defendants to engage in such wrongful conduct, Resort Advisory Group has suffered and continues to suffer substantial economic loss and other general and specific damages including, but not limited to, damage to business reputation, lost profits, lost revenue, and lost business opportunities, in an amount of at least $75,000, with exact amounts to be proven at trial.

464.  Resort Advisory Group further requests injunctive relief to prevent further misappropriation of the Confidential Information of Plaintiff, which is additionally, upon information and belief, being used to further deceive and harm the public for the benefit of Barlow and other co-conspirators.

465.  The Defendants committed the wrongful acts alleged herein maliciously, oppressively, and with intent to defraud. Resort Advisory Group is entitled to punitive and exemplary damages from Defendants, jointly and severally, in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

## EIGHTEENTH CAUSE OF ACTION

## EXTORTION- WRONGFUL THREAT OF CRIMINAL AND CIVIL PROSECUTION

### (By All Plaintiffs Against All Defendants)

466.  Paragraphs 1-465 are alleged and incorporated herein by reference.

467.  Plaintiffs allege that Barlow Defendants, acting in furtherance of the goals of Barlow Racketeering Enterprise, purposefully and knowingly guided and encouraged Resort Advisory Group clients to file false civil, criminal, and state bar charges as part of a conspiracy to extort Plaintiffs. Defendants who filed these actions did so only in furtherance of the overarching racketeering scheme to extort and not on the honest belief the underlying claims have merit.

468.  Defendant Barlow has continued to threaten further false civil and criminal charges to be filed unless Plaintiffs agree to pay the extortion demand.

469.  Defendants are intentionally and purposefully using the wrongful threat of criminal and civil prosecution as leverage in their illegal scheme to extort.

470.  Defendants did actually attempt to extort more than $800,000 on or around March 2, 2020 in exchange for dismissal of false civil and criminal claims.

471.  As a direct and proximate result of all of Defendants' wrongful conduct, Plaintiffs have been substantially damaged in an amount of at least $75,000, with an exact amount to be proven at trial.

<u>**NINETEENTH CAUSE OF ACTION**</u>

**ABUSE OF PROCESS**

(By All Plaintiffs Against All Defendants)

472.  Paragraphs 1-471 are alleged and incorporated herein by reference.

473.  Defendants have maliciously and purposely initiated a series of false civil and criminal complaints against Plaintiffs Resort Advisory Group and Attorney Klein, and false and baseless state bar complaints against Attorney.

474.  Defendants, acting individually and jointly, intentionally used this legal procedure to vex, annoy, harass, and intentionally harm Plaintiffs' good will and reputation in hopes of recovering "easy money" in sum of $800,000.

475.  The underlying motive to file the civil, criminal, and bar complaints was for purposes of extortion and unfair competition, using fabricated causes of action.

476.  As a direct and proximate result of Defendant's actions, Plaintiffs' reputation and good will have been harmed.

477.  As a direct and proximate result of Defendant's actions, Plaintiffs are forced to incur attorney's fees in the amount greater than $100,000 to defend themselves against these series of false civil and criminal complaints against Plaintiffs Resort Advisory Group and Attorney Klein, and false and baseless state bar complaints against Attorney.

478.  As a direct and proximate result of Defendant's actions, Plaintiffs have sustained damages in an amount of at least $75,000, to be proven at trial.

479.  Defendants acted with substantial and purposeful oppression, fraud, and malice as defined in Civil Code Section 3294 and Plaintiffs are is therefore entitled to punitive damages for this cause of action.

## TWENTIETH CAUSE OF ACTION
## FRAUD AND CONSPIRACY TO DEFRAUD

(By Plaintiff Resort Advisory Group Against Barlow Defendants)

480.  Paragraphs 1-479 are alleged and incorporated herein by reference.

481.  In the course and conduct of participating in the Barlow Racketeering Enterprise, Defendants Barlow and Barlow & Associates made representations to Plaintiff Resort Advisory Group and others, which representations were false and necessary to implement the unlawful scheme to steal trade secrets; unfairly, fraudulently, and illegally compete against Plaintiff Resort Advisory Group; deceive public customers into sending Barlow Racketeering Enterprise substantial additional, unnecessary, and unjustified payments; and to ultimately attempt to extort over $800,000 from Plaintiffs in order for Barlow Racketeering Enterprise to stop all illicit activities targeting Plaintiffs, as previously described.

482.  As set forth above, Barlow and Barlow & Associates, each who owed a fiduciary duty to Plaintiff and Plaintiff's clients, intentionally failed to disclose and otherwise concealed facts from Plaintiff Resort Advisory Group Plaintiff Resort Advisory Group's clients and others, the disclosure of which was necessary to make the representations by Barlow and Barlow & Associates not materially misleading. Both Barlow and Barlow & Associates knew the said facts were not being disclosed and that the facts were material, and he intended concealment of these facts to facilitate the continuation of his unlawful activities against Plaintiff and in furtherance of the illicit goals of Barlow Racketeering Enterprise.

483.  Plaintiff Resort Advisory Group relied to its' detriment on the representations of integrity by Barlow and Barlow & Associates. Both Barlow and Barlow &

Associates flagrantly breached the trust and confidence of Plaintiff Resort Advisory Group by committing numerous acts of fraud, deceit, conversion, and racketeering alleged herein, through which they substantially damaged the reputation of Plaintiffs and plundered the assets of Plaintiff Resort Advisory Group for their own illicit gains.

484.  In the course of developing their elaborate scheme to defraud, Barlow and Barlow & Associates, who with the assistance of associates and accomplices, willfully and knowingly did combine, conspire, confederate, and agree together, with each other and with others to facilitate, aid and abet, and conceal the scheme and artifice to defraud, and to obtain money and trade secrets by false representations and promises, thereby enabling the massive diversions and concealment of the plan to substantially harm the business of Plaintiffs in order to extort, as previously stated in this Complaint.

485.  As a direct and proximate result of the foregoing fraudulent conduct and conspiracy to defraud, Plaintiff has suffered damages in an amount to be determined at trial, but of at least $75,000.00.

486.  In committing the acts and perpetrating the schemes alleged herein, Barlow and Barlow & Associates intended to injure Plaintiff, and acted with malice and oppression and with a willful and conscious disregard for the rights of Plaintiff and its' clients.

487.  In so doing, Defendants Barlow and Barlow & Associates acted toward Plaintiff and its' clients in such a manner as to warrant disgorgement of any and all revenues derived from the illicit and illegal use of the trade secrets of Plaintiff together with an award of punitive and exemplary damages in an amount to be determined at trial.

## TWENTY-FIRST CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

(By Plaintiff Resort Advisory Group Against Defendant Barlow)

488.  Paragraphs 1-487 are alleged and incorporated herein by reference.

489.  Defendant Barlow entered into an Employment Agreement with Plaintiffs Resort Advisory Group as a California licensed attorney to provide necessary legal services to Plaintiff's clients, pursuant to which he owed Resort Advisory Group broad fiduciary obligations as set forth in the Agreement and as expected and required of a licensed attorney.

490.  Plaintiff was harmed by Defendant Barlow for Placing his own personal interests ahead of those of Plaintiff and its' clients.

491.   Defendant Barlow's violation of fiduciary act includes but not limited to the following: intentionally usurping the business and business opportunities of Plaintiff, for which Plaintiff expended substantial amounts of time, business efforts, and money to develop and grow, by purposefully taking the proprietary business operational knowledge of Plaintiff and using it to unfairly compete with Plaintiff; intentionally stealing and misappropriating Plaintiff's proprietary client information and Business Knowhow for his own competitive use; intentionally diverting and/or dissuading clients of Plaintiff from fulfilling their contractual obligations with Plaintiff and diverting client payments to himself; intentionally putting forth substantial fraudulent efforts to turn Plaintiff's clients against Plaintiff for purposes of revenge, personal greed, and extortion; intentionally putting forth substantial efforts to encourage Plaintiff's clients and former clients to file false criminal charges against Plaintiff for purposes of illegal competition and extortion; by knowingly and intentionally diverting client payments belonging to Plaintiff for his own use and in furtherance of his pattern of racketeering activity; taking substantial efforts to conceal his scheme from Plaintiff Resort Advisory Group while still under the Agreement with Plaintiff, and by taking substantial efforts to recruit additional co-conspirators by accusing Plaintiff of fraud through the intentional solicitation of Plaintiff's proprietary client list by mail and the internet.

492.  Defendant Barlow's conduct described above was a substantial factor in causing Plaintiff's harm, including but not limited to good will, reputation and financial harm.

493.  Plaintiff has suffered damages as a direct and proximate result of Defendant Barlow's actions in an amount of at least $75,000, to be proven at trial.

### TWENTY-SECOND CAUSE OF ACTION

### LEGAL MALPRACTICE

(Plaintiff Resort Advisory Group Against Defendant Barlow and Barlow & Associates)

494.  Paragraphs 1-493 are alleged and incorporated herein by reference.

495.  Defendant Barlow and Barlow & Associates as an attorney owed Plaintiff a legal duty to provide legal services to protect the interest of Resort Advisory Group as they relate to the legal rights of Plaintiff that may arise through the ordinary course of business in operating timeshare resolution services to the public.

496.  Defendants Barlow, and Barlow & Associates' breach of fiduciary duties toward Resort Advisory Group include, but are not limited to: the theft of Plaintiff's confidential and proprietary information, including its client database and Business Knowhow, which Plaintiff has expended substantial research, time, money, and business efforts to develop, maintain and use in building and conducting its timeshare resolution service.

497.  In breaching their respective fiduciary duties to Resort Advisory Group, as more fully set forth above, and below, Defendants Barlow and Barlow & Associates failed to exercise reasonable care, skill, diligence, knowledge ordinarily possessed by other attorneys similarly situated.

498.  Additionally, by breaching their respective fiduciary duties to Resort Advisory Group, Defendants Barlow and Barlow and Associates' actions fell below the standard of care incumbent upon similarly situated attorneys and law firms in these circumstances.

499.  As a result of the foregoing conduct, Resort Advisory Group has suffered actual damages in excess of $75,000, in an amount to be proven at trial.

500.  Defendant Barlow engaged in the conduct described above willfully, fraudulently, maliciously, and oppressively, in direct and intentional breach of his fiduciary duties and other obligations to Resort Advisory Group and its clients, thus giving rise to punitive damages in an amount to be proven at trial.

### TWENTY-THIRD CAUSE OF ACTION

**MALPRACTICE – ACTIVE CONCEALMENT/CONFLICT OF INTEREST**

(By Plaintiff Resort Advisory Group against Defendants Barlow and Barlow & Associates)

501.  Paragraphs 1-500 are alleged and incorporated herein by reference.

502.  Pursuant to a written retainer with Plaintiff Resort Advisory Group, Defendants Barlow and Barlow & Associates promised to perform all legal services which were required of him and to represent and protect Plaintiff's interests in all matters relating to timeshare resolution services offered to the public, including but not limited to, legal timeshare resolution services performed by him on behalf of Plaintiff's clients.

503.  By agreeing to act as Resort Advisory Group's attorney, and accepting substantial amounts of up-front payments from Plaintiff Resort Advisory Group for the performance of legal services, Defendants Barlow and Barlow & Associates, and each of them, obligated themselves to a fiduciary duty of utmost care, integrity, honesty, and loyalty and good faith to Plaintiff.

504.  These fiduciary duties included, but were not limited to, a duty to not disclose all facts known materially affecting the status of all client transactions and potentially, actual and adverse actions by timeshare adversaries and/or Resort Advisory Group's clients, former clients, or potential clients, which would harm Resort Advisory Group.

505.  Due to purposeful concealment by Defendant Barlow, much of his illicit

pattern of racketeering activity and breaches of duty were not readily detectible by Resort Advisory Group until a substantial amount of time had passed from the termination of Barlow by Plaintiff Resort Advisory Group. The full extent of Defendants Barlow and Barlow & Associates' theft of clients, theft of trade secrets, and illicit and unfair competition was not known by Plaintiffs until the latter part of 2019.

506.  As a result of the foregoing conduct, Resort Advisory Group has suffered actual damages in an amount to be determined at trial but believed to be in excess of $75,000.

507.  Defendants Barlow and Barlow & Associates engaged in the conduct described above willfully, fraudulently, maliciously, and oppressively, in direct and intentional breach of his fiduciary and other obligations to Resort Advisory Group, thus giving rise to punitive damages in an amount to be proven at trial.

**TWENTY-FOURTH CAUSE OF ACTION**

**MONEY HAD AND RECEIVED**

(By Plaintiff Resort Advisory Group against Defendants Barlow and Barlow & Associates)

508.  Paragraphs 1-507 are alleged and incorporated herein by reference.

509.  Plaintiff Resort Advisory Group contracted with Defendant Barlow and Barlow & Associates to provide required legal services to its' timeshare resolution clients.

510.  Defendants Barlow and Barlow & Associates received multiple up-front payments from Plaintiff Resort Advisory Group for future legal work.

511.  Defendants Barlow and Barlow & Associates knowingly accepted a substantial amount of payments while concealing they had no intention of performing the associated work.

512.  Defendants Barlow and Barlow & Associates did not earn the money and have never returned the unearned money to Resort Advisory Group.

513.  Plaintiff did not know and had no reason to know, due to active concealment by Barlow, that Barlow had in fact already substantially breached his contract but continued to solicit and accept payments from Resort Advisory Group for work he had no intention of performing.

514.  Plaintiff believes that Defendants Barlow and Barlow & Associates received a substantial amount of monetary payments from Resort Advisory Group for legal services that were never rendered to its' clients.

515.  Plaintiff Resort Advisory Group did not discover the extent of illegal money accepted by Defendants Barlow and Barlow & Associates until sometime in 2019.

516.  Plaintiff alleges that the total of the payments had and received by Defendants Barlow and Barlow & Associates that rightfully belong to Resort Advisory Group is in excess of $75,000, in an exact amount to be determined at trial.

517.  Accordingly, Plaintiff Resort Advisory Group is entitled to general, special, consequential and incidental damages of not less than $75,000 from Defendants Barlow and Barlow & Associates, jointly and severally.

## TWENTY-FIFTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
(By All Plaintiffs Against All Defendants)

518.  Paragraphs 1-517 are alleged and incorporated herein by reference.

519.  The following claims of relief are on behalf of all Plaintiffs, individually and jointly, and allege claims against Barlow Defendants and/or Barlow 10 Defendants for injunctive relief related to the following common set of facts and allegations.

520.  Each of the Plaintiffs in the following injunctive relief claims have standing to bring their respective injunctive relief claims as a person(s) who has suffered damage, economic and non-economic, as a result of the illegal, fraudulent and tortious conduct alleged in the preceding claims for relief for these Plaintiffs in this

Complaint.

521.   Upon information and belief, each of the Plaintiffs in the following injunctive relief claims allege that with regard to the illicit actions or transactions which are the subject of this Complaint, Defendants have intentionally and purposefully damaged, and continue to attempt to damage their personal and business reputations, in addition to any unfair competition and monetary damages suffered.

522.   The making of prior and future public claims of criminal fraud or other false allegations of untoward personal or business activity by Defendants against Plaintiffs, including through use of filing false criminal complaints with law enforcement authorities and encouraging frivolous civil lawsuits to be filed for purposes of extortion, and the filing of false and malicious state bar claims against Attorney, have caused and will continue to cause irreparable harm and injury to each of these Plaintiffs and their individual reputations, credibility, and economic prospects.

523.   Each of the Plaintiffs alleging claims for injunctive relief against Defendants in this Complaint and corresponding Temporary Restraining Order has no adequate legal remedy for such harm and irreparable injury.

524.   Plaintiffs thereby request this Court to enjoin Defendants, as alleged, based upon the above pled summary of common factual elements and common factual elements pled in Plaintiffs' request for a Temporary Restraining Order, to be subsequently filed with this Court in conjunction with this Complaint.

525.   Defendants Barlow and Barlow & Associates, individually and/or in concert with the other Barlow Defendants and other individual defendants, each a former client of Resort, has engaged, and is continuing to engage, in the following examples of substantially damaging actions and courses of conduct targeting Plaintiffs:

a.   Illegal and unauthorized access of the computers of Resort Advisory Group to steal its trade secrets;

b.    Misappropriating the trade secrets of Resort Advisory Group to unfairly compete with Resort Advisory Group;

c.    Misappropriating the trade secrets of Resort Advisory Group to derive substantial profits by soliciting clients identified in their trade secrets for the benefit of Barlow Racketeering Enterprise members;

d.    Intentionally charging clients of Resort Advisory Group additional, unwarranted fees for services already paid for in full, redirected for the benefit of Barlow and Barlow & Associates;

e.    Sending disparaging letters to the clients of Resort Advisory Group accusing it of fraud;

f.    Mailing threatening emails and letters;

g.    Actively seeking to turn Resort Advisory Group clients against it, for purposes of revenge, profits, and extortion;

h.    Guiding, encouraging, and assisting clients and former clients, including Barlow 10, to file knowingly false civil, criminal, and state bar complaints against Plaintiffs;

i.    Attempting to extort Plaintiffs for more than $800,000;

j.    Continuing to threaten Plaintiffs with further illegitimate civil, criminal, and state bar claims;

k.    Publishing disparaging and false statements about Plaintiff in social media and by email;

l.    Asserting to Plaintiffs that the illegal activities will not end until they pay the extortion demand or are put out of business;

m.    Threatening the owners and executives of Resort Advisory Group and Law Offices of David Alan Klein P.C. that once Barlow Racketeering Enterprise succeeds in forcing them out of business, they will then target each of them individually with the same sort of illegal activities;

526.  Defendants, individually or jointly, have engaged in, are engaging in, and are

likely to continue to engage in, conduct that likely violates federal and California statutes, including but not limited to, Mail Fraud (18 U.S.C. 1341), Wire Fraud (18 U.S.C. 1343), the Defense of Trade Secrets Act (18 U.S.C 1836(b) ("DTSA") and the Racketeer Influence and Corrupt Organizations Act (18 U.S.C. 1961-1968) ("RICO"), and additionally violations of California state law, including breach of contract, , breach of fiduciary duty, constructive fraud, unfair competition, tortious interference with business and prospective business relations, conversion, defamation, and abuse of process, over which this Court has supplemental jurisdiction.

527.  Plaintiffs are therefore likely to prevail on the merits of this action. As demonstrated by the Declarations of Jason Krieck, Michael Krieck, and David Alan Klein, the documentary evidence attached as exhibits thereto filed by Plaintiffs, and the facts and circumstances contained in the separate filing with this Court for a Temporary Restraining Order, Plaintiffs have established a likelihood of success in showing that Defendants have committed, intended to commit, and intend to continue to commit multiple tortious offenses targeting Plaintiffs for purposes of profit and revenge.

528.  There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing above-referenced likely violations of federal and California state law unless Defendants are immediately restrained and enjoined by order of this Court.

529.  Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a temporary restraining order, expedited discovery, and other equitable relief is in the public interest.

530.  This Court has authority to issue this Order pursuant to Federal Rule of Civil Procedure 65, Local Rule 65-1 and the All Writs Act, 28 U.S.C. § 1651.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, and each and every one of them, jointly and severally as follows:

1.  For compensatory damages, according to offer of proof at time of trial, arising from contravention of RICO sections 1962(a), (b), (c) and (d) of Title 18 United States Code 1962 et seq. ("RICO"), trebled pursuant to RICO section 1964(c);

2.  For entry of judgment and appropriate orders for issuance of equitable relief pursuant to RICO sections 1964(a)-(b) of Title 18 United States Code Section 1964 et seq.

3.  For recovery of attorney's fees and costs arising from the contravention of RICO, Title 18 United States Code 1962 et seq.

4.  For prejudgment interest arising from contravention of Title 18 United States Code Section 1962.

Plaintiffs, and each of them, further respectfully request that this Court enter an order of judgement granting all relief requested in this Complaint and all allowed in law or in equity, including:

  a.  Return or destroy all copies, in any known or unknown media format, of the stolen trade secrets of Resort Advisory Group, including the proprietary and confidential client database, by Defendants;

  b.  Restrain all Defendants from any current and future use and misappropriation of the trade secrets of Plaintiff, as described herein;

  c.  Restrain Barlow Defendants from further libelous activities targeted to harm the reputation or business practices of Plaintiffs;

  d.  Restrain Barlow Defendants from all further contact, or attempted contact, with clients and former clients of Plaintiff Resort Advisory Group, by any means;

  e.  Restrain Defendant Barlow from knowingly and intentionally posting false and disparaging comments about Plaintiffs on social media;

f.  Restrain Barlow Defendants from drafting or assisting, encouraging, coaching, or guiding individuals to file false civil or criminal complaints against Plaintiffs based upon the same or similar set of operative facts laid out in the Complaint or corresponding Temporary Restraining Order;

g.  Restrain Barlow Defendants from further attempts to extort money or property from Plaintiffs;

h.  Require each named defendant to forward a filed copy of this Complaint to all local, state, and federal agencies / offices to which said defendants transmitted, by any means, complaints of any kind against plaintiffs and provide certified proof of transmission and receipt of same to plaintiffs' counsel within ten (10 days of the date hereof;

i.  Actual damages, according to proof, for the violation of the thirty-three counts in this Complaint against Defendants, jointly and severally;

j.  Treble or multiple damages and civil penalties, as allowed by statute, against all Defendants jointly and severally;

k.  Punitive damages, as allowed by statute or U.S. Code;

l.  Exemplary damages, as allowed by statute or U.S. Code;

m. Disgorgement of unjust enrichment by Barlow Defendants;

n.  Equitable and injunctive relief in the form of Court-enforced corrective actions, programs, and communications targeting the public;

o.  Forfeiture, disgorgement, restitution, and/or divestiture of proceeds and assets;

p.  Attorneys' fees;

q.  Costs and expenses of suit;

r.  Trial by jury;

s.  Pre and post-judgment interest; and

t.  Such further relief as this Court deems appropriate.

Dated:  May 15, 2020                         Respectfully submitted,

Plaintiffs Intermarketing Media, LLC dba Resort Advisory Group, the Law Offices

of David Alan Klein, and David Alan Klein, Esq.

By Counsel:

_____/s/ Bryan C. Altman_____

Bryan C. Altman, Esq,

**The Altman Law Group**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA, 90064
(T) 310-277-8481
(F) 310-277-8483

By Counsel:

_____/s/ William I Rothbard_____

William I. Rothbard, Esq.
**Law Offices of William I. Rothbard**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713