**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
bryan@altmanlawgroup.net

**LAW OFFICES OF WILIAM I. ROTHBARD**
William I. Rothbard (SBN 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

INTERMARKETING MEDIA, LLC, a
Wyoming limited liability company dba
RESORT ADVISORY GROUP; LAW
OFFICES OF DAVID ALAN KLEIN,
P.C.; and DAVID ALAN KLEIN,
ESQUIRE,

               Plaintiffs,

           vs.

BRENT DAVID BARLOW, an
individual; BARLOW & ASSOCIATES,
a law firm; COOPERATIVE DISPUTE
RESOLUTION SOCIETY (unknown
entity type/location); PHOENIX
INVESTMENTS ALLIANCE, LLC, a
limited liability company; ATTFUND

)
)  CASE NO.: 8:20-cv-00889
)
)  PLAINTIFF'S *EX PARTE*
)  APPLICATION FOR TEMPORARY
)  RESTRAINING ORDER WITH
)  EXPEDITED DISCOVERY, OTHER
)  EQUITABLE RELIEF, AND ORDER
)  TO SHOW CAUSE WHY
)  PRELIMINARY INJUNCTION
)  SHOULD NOT BE ISSUED
)
)  [Proposed Order Filed Concurrently]
)
)
)
)
)
)
)

i
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

| | |
|---|---|
| 1 | (unknown entity type/location); CASE IN ) |
| 2 | CHIEF LLC, a California Limited ) Liability Company; JOHN PRESSNEY, ) |
| 3 | PAMELA PRESSNEY, HERMAN ) |
| 4 | ABEL, DEBORA ABEL, MORRIS ) HANNAH, VIRGINIA HANNAH, LEE ) |
| 5 | HARRIS TURK, BERNARDO ) |
| 6 | BETTINELLI, CAROL BETTINELLI, ) LARI CASTLE, GILBERT CASTRO, ) |
| 7 | EVA CASTRO, PAUL MARTNEZ, ) |
| 8 | RENEE MARTINEZ, ROBERT ) ZIMMERMANN, MARY ) |
| 9 | ZIMMERMAN, GLENN PERLEY AND ) |
| 10 | CONNIE PERLEY, each an individual, ) |
| 11 | Defendants. |

Plaintiff Intermarketing Media, LLC d/b/a Resort Advisory Group (hereafter, "ResortAG" ), a BBB A+-rated provider of timeshare resolution services to consumers who have been victimized by unscrupulous timeshare developer, and Plaintiffs Law Offices of David Alan Klein, P.C. and David Alan Klein, Esquire, hereby apply *ex parte* to the Court pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 for a Temporary Restraining Order ("TRO") to immediately halt the continuing extortionist and tortious illegal racketeering conduct of Defendants, including continuing and threatened actions by the mastermind and ringleader, attorney Defendant Brent David Barlow ("Barlow") and his firm, Barlow &Associates.  Unless restrained by this Court, Barlow and his fellow Defendant cohorts pose a continuing immediate and irreparable threat to the reputation and business and professional reputation of Plaintiffs.

As the former legal counsel of ResortAG (before being terminated for cause), with regulated access to its trade secrets, including its valuable confidential and proprietary client database, Barlow breached his contractual and fiduciary duties to

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

steal the trade secrets, methodologies, and client database from ResortAG as part of his scheme to illegally and unfairly compete in the timeshare resolution business with Plaintiff. Barlow then began contacting Plaintiff's clients by mail and the internet to accuse Plaintiffs of fraud, and convincing them that his "methods" were superior to ResortAG in order to charge ResortAG's clients for the same timeshare resolution services for which he had already been paid by ResortAG and for which they had already paid ResortAG. Barlow then set into action a plan to repeatedly send out unsolicited communications to ResortAG's clients, designed to both mislead and indoctrinate them, to cultivate a following of loyal and willing consumers to expand his illicit ambitions. Barlow then formed an illegal "enterprise" with these clients ("Barlow 10 Defendants") for the purpose of harassing, intimidating and extorting the business of Plaintiffs.[1]

Through this enterprise ("Barlow Racketeering Enterprise") Defendants, at Barlow's direction, guidance, and encouragement, filed knowingly frivolous state court claims against Plaintiff ResortAG in this District and lodged numerous false and baseless, but, nonetheless, serious intimidating criminal complaints against Plaintiffs Resort Advisory Group and one of its attorneys, Plaintiff David Alan Klein, principal of Plaintiff Law Offices of David Alan Klein, P.C. ("Attorney"), with federal and state law enforcement agencies in Southern California and New Jersey and the Pennsylvania and New Jersey state bars (against Attorney). The intended purpose of these false allegations was to harass and harm the business, reputation and profitability of ResortAG to facilitate a planned extortion attempt on Plaintiffs, and to harass, intimidate and harm the business, reputation and profitability of Attorney.

---

[1] The Barlow 10 are Defendants and John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley and Connie Perley. A couple is counted as a single client.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Moreover, through this enterprise, defendants, orchestrated by Barlow, have attempted, and are continuing to attempt, to extract over $800,000 from Plaintiffs as a condition of ceasing Barlow Racketeering Enterprise's lawsuits and criminal complaints targeting Plaintiffs and professional reputation and licensure of Attorney. Further, Defendant Barlow, acting on behalf of the Barlow Racketeering Enterprise, has threatened Plaintiffs with further frivolous civil and criminal charges unless the extortion demand is paid, stating they would not stop until Plaintiffs were ruined and out of business. The imminence of these continuing threats, made within the last two months and renewed as recently as May 5, highlight the urgent need for judicial intervention.

Accordingly, Plaintiffs hereby apply *ex parte* to the Court pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 for a Temporary Restraining Order to enjoin Barlow and the other defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the business and clients of Plaintiffs, from:

(1) Using any data or other information derived from access at any time to ResortAG's computers, including, without limitation, information about Plaintiff's clients contained therein;

(2) Providing timeshare resolution services to any present or former clients listed in ResortAG's confidential client database;

(3) Communicating with any clients or former clients of ResortAG listed in its confidential client database by any method, other than providing them with a copy of this Order;

(4) Using ResortAG's confidential client database for any sort of solicitation purposes for other legal services;

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

(5) Sharing or publishing, publicly or privately to any third parties, any portion of ResortAG's methodologies and trade secrets, including but not limited to, its confidential client database;

(6) Publicly or privately, whether as a legal representative or not, guiding, encouraging, directing, or orchestrating others to file civil lawsuits against Plaintiffs;

(7) Publicly or privately, whether as a legal representative or not, guiding, encouraging, directing, or orchestrating others to file criminal charges against Plaintiffs ResortAG and Attorney, or filing complaints about Attorney with any state bar or other legal or judicial supervisory or regulatory organization;

(8) Pursuing the action in *John Pressney et al.* v. *Intermarketing Media LLC dba Resort Advisory Group et al.,* Cal. Sup.Ct., Orange County, No. 30-2019-01093813-CU-BC-NJC (filed, August 28, 2019);

(9) Publicly or privately, whether as a legal representative or not, guiding, encouraging, directing, or orchestrating others to post knowingly or recklessly false information about ResortAG's and Attorney's businesses in any media format;

(10) Maintaining any existing postings about ResortAG and Attorney in any media, including social media, which postings shall be immediately de-published;

(11) Placing any liens on the property of Plaintiffs or their employees, agents or representatives, or maintaining any such liens that have been placed thereon, which liens shall be immediately removed; and

(12) Making any monetary demands or threats of any kind on Plaintiffs.

FURTHER:

(13) Defendant Barlow, within forty eight (48) hours of service of this Order, shall distribute a copy of the Order granting the TRO to each client of

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1   ResortAG Barlow has had any contact with since in or about August-

2   September 2018, to Defendant Cooperative Dispute Resolution Society, and

3   each member or other person associated therewith, assuming such

4   organization exists, and to Phoenix Investments Alliance, LLC;

5   (14)   Defendant Barlow, within forty-eight (48) hours of service of this Order,

6   shall provide Plaintiffs' undersigned counsel with all contact information;

7   registered offices; and registered agent(s) for Defendant Cooperative

8   Dispute Resolution Society and Defendant Phoenix Investments Alliance,

9   LLC.

10   (15)   Defendants John Pressney, Pamela Pressney, Herman Abel, Debora

11   Abel, Morris Hannah, Virginia Hannah, Lee Harris Turk, Bernardo

12   Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul

13   Martinez, Renee Martinez, Robert Zimmermann and Mary Zimmermann,

14   Glenn Perley and Connie Perley, within forty-eight (48) hours of service of

15   Order granting the TRO, shall distribute a copy of this Order to each law

16   enforcement agency to which any and each of them has made a complaint

17   about Plaintiffs, and to each state bar or other legal or judicial supervisory

18   or regulatory organization to which each and any of them has made a

19   complaint about Attorney;

20   (16)   Defendants shall file with this Court, within five (5) days of service of

21   this Order, a sworn Acknowledgement of Distribution of Order granting the

22   TRO, verifying their compliance.

23   Plaintiffs seek permission to conduct limited expedited discovery on, *inter alia*:

24   (1) the nature, location and extent of Defendants' communications with federal,

25   state or local law enforcement authorities concerning Plaintiffs, or either of them;

26   (2) the nature, location and extent of communications between and among

27   Defendants, or any of them, concerning communications with federal, state or local

vi
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

law enforcement authorities, or with clients of ResortAG, present or former, concerning Plaintiffs, or either of them;

(3) the nature, location and extent of any publications or communications by Defendants, or any of them, in any medium, concerning Plaintiffs, or either of them; the location and extent of ResortAG's trade secrets and other confidential information, including, without limitation, confidential and proprietary information about ResortAG's clients, present or former, and its Business Knowhow, in the Barlow Defendants' possession, custody or control; and

(4) assets, business transactions and finances of the Barlow Defendants as they relate to Plaintiffs' quantum meruit and damages claims.

District courts may depart from normal discovery procedures and fashion discovery by order to meet discovery needs in particular cases. Fed. R. Civ. P. 1, 26(d), 34(b). Here, prompt and full discovery on the aforementioned topics is necessary to inform Plaintiffs, and the Court, of the full extent of the Barlow Defendants' theft of trade secrets and Defendants' conspiracy to defame and harm Plaintiffs, so that such illegal activity can be expeditiously ascertained and brought within the prohibitions of the proposed TRO, and to identify and preserve the Barlow Defendants' assets and business records for quantum meruit and damages recovery.

Counsel for Plaintiffs advised or attempted to advise each Defendant directly by email and/or by phone, or, if known, through counsel, of the substance of this Application on or about May 18, 2020.  Counsel also served each Defendant by email on or about the same date and gave notice that any opposition must be filed not later than 24 hours after such service.  The following Defendants could not be reached orally: Morris Hannah and Virginia Hannah (the phone company recording stating phone number is disconnected, Paul Martinez and Renee Martinez (voicemail not set up), Robert Zimmerman and Mary Zimmerman (voicemail not set up) (Alemi Decl. ¶ 3). All other Defendants were notified of the Complaint and the TRO orally. (Alemi Decl. ¶ 3; Urner Decl. ¶3)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1  The TRO Application, the Complaint and the Initial Order Following Filing of
2  Complaint Assigned To Judge Selna were electronically provided to all Defendants.
3  (Alemi Decl. ¶ 4)
4  This application is made on the grounds set forth in the accompanying
5  Memorandum in Support; Declarations of Jason Kriek, Michael Krieck, and David
6  Alan Klein, and exhibits attached thereto; all pleadings and papers filed in this action;
7  the argument of counsel; and further evidence as the Court may consider at or before
8  a hearing regarding the Order to Show Cause and preliminary injunction requested
9  herein.

10  DATED: May 18, 2020              THE ALTMAN LAW GROUP

11

12                                  BY:___/s/ Bryan Altman_____
13                                  BRYAN C. ALTMAN

14

15  DATED: May18, 2020              LAW OFFICES OF WILLIAM I.
                                    ROTHBARD
16

17                                  BY: _/s/ William I. Rothbard_____
18                                  WILLIAM I. ROTHBARD
                                    Attorneys for Plaintiff Intermarketing Media, LLC
19                                  d/b/a Resort Advisory Group, Law Offices of David
                                    Alan Klein, and David Alan Klein, Esq.
20

21

22

23

24

25

26

27

viii
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
Christopher Urner (SBN 311532)
Diba Alemi (SBN 320986)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.net

**LAW OFFICES OF WILLIAM I. ROTHBARD**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP; LAW OFFICES OF DAVID ALAN KLEIN, and DAVID ALAN KLEIN, ESQUIRE, <br><br> Plaintiffs, <br><br> vs. <br><br> BRENT DAVID BARLOW, an individual; BARLOW & ASSOCIATES(unknown entity type/location; COOPERATIVE DISPUTE RESOLUTION SOCIETY (unknown entity type/location); PHOENIX INVESTMENTS ALLIANCE, LLC, a limited liability | CASE NO.: 8:20-cv-00889 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, ETC.** <br><br> **[Declarations of Jason Kriek, Michael Krieck and David Alan Klein filed herewith]** |

ix

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1  company; ATTFUND (unknown entity
2  type/location); CASE IN CHIEF LLC, a
   California Limited Liability Company;
3  JOHN PRESSNEY, PAMELA
4  PRESSNEY, HERMAN ABEL,
   DEBORA ABEL, MORRIS HANNAH,
5  VIRGINIA HANNAH, LEE HARRIS
   TURK, BERNARDO BETTINELLI,
6  CAROL BETTINELLI, LARI CASTLE,
7  GILBERT CASTRO, EVA CASTRO,
   PAUL MARTNEZ, RENEE
8  MARTINEZ, ROBERT
9  ZIMMERMANN, MARY
   ZIMMERMAN, GLENN PERLEY AND
10 CONNIE PERLEY, each an individual,
11
12          Defendants.
13 _____
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

1

# Table of Contents

2

Table of Contents.....................................................................................................xi

3

I.    INTRODUCTION ...........................................................................................1

4

II. FACTUAL BACKGROUND ...........................................................................3

5

A.    ResortAG's Business ...........................................................................3

6

B.    The ResortAG-Barlow Attorney-Client Relationship ........................3

7

C.    Barlow's Access to Confidential Client Information of ResortAG.................4

8

D.    Termination of Barlow by ResortAG...................................................5

9

E.    Barlow's Post-Termination Ongoing Vendetta Against Plaintiffs .................5

10

F.    The Barlow Defendants' and Barlow 10's Extortion of Plaintiffs ..................8

11

III.   THE COURT SHOULD GRANT THE REQUESTED RELIEF ...........................10

12

A.    The Evidence Presented Meets the Standard for Entry of a Temporary
Restraining Order and a Preliminary Injunction......................................10

13

B.    ResortAG's claims under Defense of Trade Secret Act and California
Uniform Trade Secrets Act Are Likely to Succeed on the Merits ...........11

14

C.    Barlow Misappropriated and Misused the Trade Secrets of ResortAG .........16

15

D.    ResortAG's Claim under the Racketeer Influenced and Corrupt Organizations
Act Under 18 U.S.C. Section 1962(c) is Likely to Succeed on the Merits ............17

16

E.    Plaintiffs' claim of Racketeer Influenced and Corrupt Organizations Act
Under 18 U.S.C. Section 1962(b) is Likely to Succeed on the Merits...................20

17

F.    Plaintiff Attorney Klein is Likely to Succeed on His Defamation Claims.....21

18

G.    The Public and Plaintiffs Are Likely to Suffer Immediate Irreparable Harm in
The Absence of Preliminary Relief ........................................................22

19

H.    Plaintiffs Face Continuing Irreparable Harm.................................22

xi

## PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

I.    The Balance of Equities Tips in Favor of Plaintiffs .......................................23

J.    Immediate Injunctive Relief Is in The Public Interest ....................................24

IV.   CONCLUSION .............................................................................................. 24

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

# **TABLE OF AUTHORITIES**

Cases

*Alderson v. United States* (2012) 718 F. Supp. 2d 1186, 1198 .................................12

*BPI Sys., v. Leith* (W.D. Tex. 1981) 532 F. Supp. 208, 210......................................23

*Bryant v. Mattel*, 2010 U.S. Dist. LEXIS 103851, at 13 ...........................................19

*Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal. 4th 215, 221-22 ........16

*Campbell Soup Co. v. ConAgra, Inc.* (3d Cir. 1992) 977 F.2d 86, 92-93...................22

*Carpenter v. United States* (1987) 484 U.S. 19, 27....................................................19

*Carter v. United States* (2000) 530 U.S. 255, 261 .....................................................19

*Cole Asia Bus. Ctr., Inc. v. Manning, No. 12-00956*, 2013 U.S. Dist. LEXIS 85818, 2013 WL 3070913, at 2 (C.D. Cal. June 18, 2013)...........................................12, 14

*De Long v. Hennessey* (9th Cir. 1990), 912 F.2d 1144, 1148 ....................................22

*Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1488, fn. 11.................................12

*Ecolaire, Inc. v. Crissman* (E.D. Pa. 1982) 542 F. Supp. 196, 204-05 .....................23

*Elinor Shapiro v. Hasbro, Inc.*, 2016 U.S. Dist. LEXIS 194684, at 7 (C.D. Cal. Aug. 15, 2016) ...................................................................................................................11

*Enter. Leasing Co. v. Ehmke* (Ariz. App. 1999) 197 Ariz. 144, 3 P.3d 1064, 1069 ...12

*Fields v. QSP, Inc.*, No. 12-1238, 2012 U.S. Dist. LEXIS 78001, 2012 WL 2049528, at 13 (C.D. Cal. June 4, 2012) .....................................................................12, 14

*Futurecraft Corp.* v. *Clary Corp., supra*, 205 Cal.App.2d 279, 288 .........................13

*Kovesdy v. Kovesdy*, 2010 WL 3619826 (N.D. Cal.) at 6 ..........................................13

*Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268.....................................................17

*MAI Sys. Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 521 .........12, 13

*Miller v. Yokohama Tire Corp.* (9th Cir. 2004) 358 F.3d 616, 621 ...........................19

*Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1520-1522 ........................12, 13

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999).............................22

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

*Pac. Aerospace & Elecs., Inc. v. Taylor* (E.D. Wash. 2003) 295 F. Supp. 2d 1188, 1198..............................................................................................................22

*Reeves v. Hanlon* (2004) 33 Cal. 4th 1140, 1155 .....................................12, 13

*Rigging Int'l Maintenance Co. v. Gwin* (1982) 128 Cal.App.3d 594, 598..................13

*Salinas v. United States* (1997) 522 U.S. 52, 63-64 ....................................20

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* (9th Cir. 2001), 240 F.3d 832, 841 ...................................................................................................22

*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.* (1961) 192 Cal.App.2d 398, 403 .13

*United States v. Fernandez* (9th Cir. 2004) 388 F.3d 1199, 1230............................20

*United States v. Yannotti* (2d Cir. 2008) 541 F.3d 112, 122 ....................................20

*Vendavo, Inc.* v. *Price f(x) AG* 2018 U.S. Dist. LEXIS 48637at 3 .............................11

*Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 73843, at 7 (N.D. Cal. May 15, 2017..............................................................................................11

*Whyte v. Schlage Lock Company* (2002) 101 Cal.App.4th 1443, 1454 ....................16

United States Code

18 U.S.C. § 1343 ........................................................................................19

18 U.S.C. § 1344..........................................................................................19

18 U.S.C. § 1832 ........................................................................................19

18 U.S.C. § 1836.....................................................................................11, 17

18 U.S.C  § 1836(b) .................................................................................2, 10

18 U.S.C. § 1836(b)(1) ...............................................................................11

18 U.S.C § 1836 (b)(3)(A)(i) .......................................................................10

18 U.S.C  § 1836 (b)(3)(A)(ii) .....................................................................10

18 U.S.C § 1836(b)(3)(B)(5) ........................................................................11

18 U.S.C. § 1839.........................................................................................11

18 U.S.C. § 1951 ........................................................................................20

18 U.S.C. § 1961-1968 ...............................................................................10

xiv

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

18 U.S.C. § 1961(5) ....................................................................................... 19

18 U.S.C. § 1962(c) ............................................................................. 18, 19, 20

18 U.S.C. § 1962(d) ...................................................................................... 21

Statutes

Cal. Civ. Code § 44 ........................................................................................ 21

Cal. Civ. Code § 45 ........................................................................................ 21

Cal. Civ. Code § 46 ........................................................................................ 21

Cal. Civ. Code, §§ 3426 *et seq* ............................................................... 11, 17

Cal. Civ. Code § 3426.1 ....................................................................... 2, 10, 11

Cal. Civ. Code, §§ 3426.11 (d) ...................................................................... 12

Other Authorities

California Civil Jury Instructions 1700-1705 ............................................... 21

Cal. Rules of Professional Conduct Rule 3.3 ........................................... 2, 23

Cal. Rules of Professional Conduct Rule 5.5 ........................................... 2, 23

Cal. Rules of Professional Conduct Rule 7.1 ........................................... 2, 23

Cal. Rules of Professional Conduct Rule 7.2 ........................................... 2, 23

Restatement Third of Unfair Competition § 39 cmt. d (1995) .................... 12

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

## I.    INTRODUCTION

Plaintiffs Intermarketing Media, LLC d/b/a Resort Advisory Group (hereafter "ResortAG"), Law Offices of David Alan Klein, and David Alan Klein, Esq. (hereafter, "Attorney") (collectively, "Plaintiffs") seek an immediate halt to the trade secret-stealing, client-stealing, libelous, and extortionist practices of attorney Defendant Brent David Barlow, a former counsel to ResortAG, and his law firm, Barlow & Associates.[2] Defendant Barlow and Barlow & Associates, in flagrant breach of their fiduciary and ethical duties to Plaintiff, illegally accessed, stole, and then misappropriated the trade secrets of Plaintiff, including the confidential proprietary client files and business know of Resort AG. Defendant Barlow, through manipulation and deception, recruited former clients of ResortAG, defendants in this action, as participants in a conspiracy to extort Plaintiffs for over $800,000.[3]

As a former legal counsel of ResortAG, hired to provide legal timeshare resolution services to victims of unscrupulous timeshare developers, Barlow had been entrusted with authorization to access its trade secrets. He abused this trust to steal clients and business knowhow from ResortAG for the purpose of starting his own, competing timeshare resolution service.

Barlow used this misappropriated information to send unsolicited communications to ResortAG's clients disparaging ResortAG and Attorney, falsely

_____

[2] Defendants Cooperative Dispute Resolution Society, Phoenix Investments Alliance, LLC, Case in Chief LLC and ATT Fund are believed to be owned and controlled by Defendants Barlow and Barlow & Associates (collectively hereafter, "Barlow" or Barlow Defendants").

[3]   John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley and Connie Perley (collectively hereafter, the "Barlow 10"). A couple is considered one client.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

accusing them of fraud. His purpose was to harm the reputation and business prospects of Plaintiffs and to cultivate a loyal following of clients to join him in forming a racketeering enterprise ("Barlow Racketeering Enterprise") to continue and expand his campaign of intimidation, harassment, and planned extortion against Plaintiffs. Through this enterprise, Defendants filed frivolous litigation against ResortAG and lodged numerous baseless criminal complaints against Plaintiffs (and baseless state bar complaints against Attorney).

Through the Barlow Racketeering Enterprise, Barlow and Barlow 10 Defendants are attempting to extort over $800,000 from Plaintiffs, by telling ResortAG's clients, falsely, without *any* basis in fact, that it faces 'almost certain indictment and prosecution" unless it settles with the criminal complainants, including the Barlow 10.

Barlow has convinced at least ten ResortAG clients to join him in his racketeering activity and is threatening to convince others to join as well.  As a licensed attorney in California, he is grossly abusing the public trust conferred on lawyers. He represents an imminent and substantial risk to the public, and particularly to the clients of Resort AG.

ResortAG prides itself in its A+ rating with the Better Business Bureau, yet its hard-earned reputation and goodwill are now being tarnished and essentially destroyed by a judicial officer of the court. [4]

 Barlow's contemptible conduct violates the federal Defense of Trade Secrets Act[5], California Uniform Trade Secret Act[6],  the Racketeer Influenced and Corrupt Organizations Act[7] ("RICO"), among other federal and state statutory and common

---

[4] (Cal. Rules of Professional Conduct Rule 5.5, Rule 7.1, Rule 7.2, and Rule 3.3.)
[5] (18 U.S.C 1836(b)
[6] (Cal. Civ. Code § 3426.1)
[7] (18 U.S.C. 1961-1968)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

law violations, including breach of contract, breach of fiduciary duty, defamation and abuse of process. (See Complaint, Dkt. 9.)

The Barlow and Barlow 10 Defendants' racketeering behavior is causing ongoing and irreparable reputational and economic harm to Plaintiffs, and threatening Attorney's licensure and livelihood.

Plaintiffs therefore urgently request issuance of a Temporary Restraining Order stopping Barlow and the Barlow Ten's vendetta and extortionist campaign against Plaintiffs in its tracks.

## II. FACTUAL BACKGROUND
### A.   ResortAG's Business

ResortAG advertises its timeshare resolution services nationwide.  It agrees to accept as clients only individuals who have indicated, to its satisfaction, that they are a victim of timeshare deception.[8]

ResortAG refers clients to an attorney on retainer who will then provide the legal component of timeshare resolution services to the client. For its services, ResortAG charges the consumer a fee *Id.*, ¶ 4. Due to the quality of its services, ResortAG has earned an A+ rating from the Better Business Bureau. *Id.*, ¶ 5, Ex. 1.

### B.   The ResortAG-Barlow Attorney-Client Relationship

In January, 2017, ResortAG retained Barlow to provide legal services to ResortAG.  The retainer agreement ("Retainer") provided that he was to:

> "serve as personal counsel for Client [ResortAG] with respect to any legal advice and services which may need to be rendered in relation to client's business, specifically; assistance with Clients customers in their efforts to withdraw from and/or cancel timeshare contracts with various developers and to assist those Clients customers in obtaining refunds if and when possible. Firm [Barlow] agrees to work exclusively with Resort Advisory Group, LLC on matters pertaining to

---

[8] Declaration of Jason Krieck ¶ 3 ("Kriek, J. Decl.")

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

timeshare cancellation services. "

*Id.*, ¶¶ 6-7, Ex. 2.[9]  Barlow was paid by ResortAG, and not by the clients. ResortAG referred approximately 235 clients to Barlow and paid him approximately $300,000. *Id.*, ¶¶ 8-9.

**C.**   **Barlow's Access to Confidential Client Information of ResortAG**

The ResortAG-Barlow Retainer contained this confidentiality/non-circumvention/non-compete clause:

> All information disclosed by either party hereunder ("Confidential Information"), including any information concerning an Approved Prospect, shall always be treated as confidential by each party during the term of this Agreement and thereafter and shall not be disclosed to any third party without the prior written consent of both parties. Neither party shall use any of the Confidential Information except in the performance of its duties hereunder. All Confidential Information provided to either party shall be returned to the disclosing party immediately upon termination of this Agreement. The parties further agree that neither party shall use the Confidential Information disclosed by the other party to compete with the disclosing party or circumvent the business of the disclosing party.

*Id.*, ¶ 10, Ex. 2.  Pursuant to this contractual promise, ResortAG granted Barlow regulated access to its Customer Relationship Management ("CRM") software system, which contained essentially a client's entire financial picture. He also necessarily had access to all proprietary and highly valuable aspects of ResortAG's business model ("Business Knowhow").  As counsel to ResortAG, Barlow was in a position to learn everything there is to know about how ResortAG conducts its timeshare resolution service. *Id.*, ¶ 10.

---

[9] In addition to his Retainer to serve as "personal counsel" to ResortAG, Barlow also had written representation agreements with clients referred to him from ResortAG. *Id.*, ¶ 8, Ex. 3.

4

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

ResortAG's client database and the method of synthesizing its clients' circumstances surrounding their timeshare purchases is its most valuable asset. Resort AG acquires customers through extensive advertising and marketing, into which it has invested millions of dollars. It spends significant time and resources collecting and synthesizing ResortAG's clients' information to qualify and serve its clients. The investment ResortAG makes in the acquisition, growth, maintenance and servicing of their clients represents the lion's share of its budget. *Id.*, ¶ 11.

ResortAG vigilantly protects its proprietary client database and Business Knowhow.[10] In addition to client privacy, these measures are intended to protect its trade secrets from access by third parties who would stand to benefit economically from knowledge of its proprietary information, including potential competitors. Since the attorneys who ResortAG hires to assist in providing timeshare resolution services are, theoretically, potential competitors, it includes confidentiality, non-circumvention and non-compete clauses in its attorney retainer agreements (like the one in Barlow's cited above). *Id.*, ¶ 12.

## D.   Termination of Barlow by ResortAG

In or about August-September 2018, ResortAG terminated the relationship with Barlow for cause, including failing to provide clients with timeshare resolution services, as required, and encouraging them to consider alternative means of timeshare resolution representation. *Id.*, ¶ 13.

## E.   Barlow's Post-Termination Ongoing Vendetta Against Plaintiffs

Since his termination, and continuing to this day, Barlow has been engaged in a ceaseless and vindictive campaign of unfair competition, interference with ResortAG's business and clients, and disparagement of Plaintiffs - all in violation of

---

[10]Security measures include password protection, a login provided by and needed from the program administrator, and access tracking. Krieck Decl.,¶ 12.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

his contractual and fiduciary obligations as counsel to ResortAG, and to Plaintiffs' great detriment.  His vendetta includes the following:

### 1. Unauthorized Use of Confidential Client Information from ResortAG's CRM

When Barlow was terminated, ResortAG cut off his authorized access to the CRM. *Id.*, ¶ 14(a).  Nevertheless, Barlow, without authorization, took full advantage of the confidential client information and Business Knowhow he had been able to access prior to his termination.  In a brazen conflict of interest, he used that information to which he no longer had authorized access to go into competition with ResortAG in the timeshare resolution business.  *Id.*

### 2. Barlow's Competition with ResortAG

Barlow illicitly used the confidential client information and Business Knowhow of ResortAG to target its clients and began to independently offer and provide timeshare resolution services to them, re-charging them for the same or similar services for which he had already been paid by ResortAG and for which they had already paid ResortAG.

In unsolicited letters to ResortAG clients, he was using his influence, which he had gained *only* in his capacity as counsel to ResortAG, to steer them away from ResortAG and toward an alternative means of timeshare resolution representation from a purported "consumer advocacy" organization, the so-called (and shadowy) Cooperative Dispute Resolution Society ("CDRS").  He claimed to ResortAG clients that CDRS will "singlehandedly destroy the timeshare industry and that "CDRS guarantees the timeshare customers who they agree to work with will get back, *minimally*, every single cent they mistakenly gave the timeshare developer." (Emphasis in original.)  CDRS's impact on the timeshare companies, he wrote, is "absolutely devastating and eclipses any 'promise' made by a so-called 'exit' company," like Plaintiff.  Barlow sent such solicitations to "select clients" of ResortAG and referred at least 52 who responded to this purported organization. *Id.*, ¶

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

14(b), Ex. 4.[11] Indeed, at a meeting with Plaintiff, he admitted charging Barlow 10 defendants David and Debora Abel $5,000 for resolution services for which he had already been paid by ResortAG, and that he had similarly offered his services to other ResortAG clients who had been referred for an additional charge.[12]

### 3. Barlow's Defamatory Interference with ResortAG's Business and Clients

Using his unauthorized access to ResortAG's proprietary client database, Barlow has sent, and is continuing to send, unsolicited letters to ResortAG's customers that contain falsehoods about ResortAG and its business.  *Id.*, ¶ 14(b), Ex. 4, ¶ 14(e), Ex. 6.  He also is publishing defamatory posts about Resort AG in social media. J. Krieck Decl., ¶ 14 (e), Ex.7. Defendant Barlow is siphoning revenue properly belonging to ResortAG, which is also unnecessary and unwarranted, and intentionally harming the reputation of ResortAG in the process.

### 4. Barlow's and His Co-Conspirators' False Criminal Complaints Re: Plaintiffs and Bar Complaints Against Attorney

With Barlow's active guidance, Barlow 10 members (the Pressneys, Abels, Hannahs, Bettinellis, Perleys Martinez, Castle and Turk)  have lodged fraudulent criminal complaints against ResortAG and Attorney Klein with multiple law enforcement agencies, on the baseless ground that Plaintiffs defraud consumers in providing timeshare resolution services because it knows or should know that the timeshare contracts its clients entered into are "inherently voidable" and thus

---

[11] An Internet search of "Cooperative Dispute Resolution Society" reveals no such organization.  Barlow himself has told ResortAG that there are "no corporate filings or whatever" for this supposed entity. *Id.*  It is Plaintiffs' belief that the so-called "CDRS" is a phantom organization, invented by Barlow to lure away and be able to re-charge clients of ResortAG for the services for which he had already been paid.
[12] Declaration of Michael Krieck, ¶ 3 ("Krieck, M. Decl.").

7

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

unenforceable. *Id.*, ¶ 14(e), Exs. 5-6.[13] According to this circular logic, because the contracts are "voidable," victims need no help in voiding them; the contracts, and developers' efforts to enforce them, are magically "self-voiding" and "self-cancelling." Yet at the same time, Defendant Barlow is charging these same clients for his "services" to resolve these supposedly "void" timeshare contracts.

Members of the Barlow 10 also have filed baseless state bar complaints against Attorney, even though Attorney Klein has never provided timeshare resolution services as an attorney for ResortAG, or in any other capacity, and has never represented any of the Barlow 10. Declaration of David Alan Klein, ¶¶ 4-7, Exs. 1-2.

### 5. Barlow's Infliction of Damage on ResortAG and Its Clients

ResortAG has expended substantial time and resources in "damage control" with its clients, correcting the falsehoods contained in Barlow's communications. The damage to ResortAG's business and reputation from Barlow's illegal actions, is incalculable and irreparable. Krieck, J. Decl., ¶14(e). The damage to Attorney's business and reputation from the Barlow 10's defamation of him in criminal complaints, state bar complaints, and correspondence is also incalculable and irreparable. Klein Decl., ¶ 7.

### F. The Barlow Defendants' and Barlow 10's Extortion of Plaintiffs

Barlow, in concert with the Barlow 10, is using a campaign of unfair competition, vexatious litigation, baseless criminal complaints, baseless state bar complaints, defamation, and association with a shadowy, and most likely illusory, "consumer advocacy" group, to extract a payment of over $800,000 from Plaintiffs as the price for ending their vicious campaign. This amount represents approximately

---

[13] The Pressneys also have civilly sued ResortAG. *Id.*, ¶ 14(d). See *John Pressney et al. v. Intermarketing Media LLC dba Resort Advisory Group et al.,* Cal. Sup.Ct., Orange County, No. 30-2019-01093813-CU-BC-NJC (filed, August 28, 2019)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

*treble* the compensation received by ResortAG from the Barlow 10, former clients "turned" by Barlow and now claiming to be victims of Plaintiffs.[14]

### 1. The Threats to Plaintiffs Are Imminent and Continuing

Barlow most recently communicated his and his Barlow Defendants' and Barlow 10 co-conspirators' extortionist demands to Plaintiff ResortAG in text exchanges between February 27-March 4, 2020, at an in-person meeting between Barlow and colleagues of ResortAG management at Barlow's office on March 2, 2020, in an email to ResortAG on April 3, 2020, and via emails sent from him under the guise of "CDRS" to clients of ResortAG as recently as May 5.  Krieck, M. Decl., *Id.*¶ 4, Ex. 1; Krieck, J. Decl., ¶ 16, Ex.6.

These latest emails reveal that the number of filed criminal complaints against Plaintiffs orchestrated by Barlow is now 33.  Without any basis in fact, the emails tell ResortAG's clients that Plaintiffs face "almost certain indictment and prosecution" unless it settles with the criminal complainants, i.e., caves to Barlow's and the Barlow 10's extortionist demands. Krieck, J. Decl., ¶ 14(e), Ex.6.[15]

The extortionist demands made to Plaintiffs by Barlow at the March 2 meeting, made on his and the Barlow 10 Defendants' behalf, were not subtle. The specific statements and threats communicating those demands are laid out in detail in the declaration of Jason Krieck, ResortAG's Manager. *Id.*, ¶16.

It is clear from Barlow's continuing inflammatory disparagement of ResortAG (and Attorney) in direct communications with its clients and on social

---

[14] As part of this extortion racket, Barlow gave Plaintiff ResortAG in his own handwriting, a sheet of paper stating how much ResortAG "owed" each one. *Id.*, ¶ 15, Ex. 8.

[15]  The emails also say that when ResortAG failed to meet the monetary demands of the criminal complaints, including the Barlow 10, a lien in the "amount of…hundreds of millions… against the personal home of the top three [ResortAG] executives, even David Alan Klein, their general counsel," was placed. *Id.*

9

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

media, and from the ongoing efforts to extort, that he and the Barlow 10 Defendants are not going anywhere and their numbers almost certainly will be increasing.  Only an immediate order from this Court, restraining Defendants, can finally bring the vendetta and extortion to a halt.

The Barlow Defendants' vendetta against Plaintiffs is in violation, *inter alia*, of Defend Trade Secrets Act[16] ("DTSA") and California Uniform Trade Secret Act[17] ("CUTSA"). The Barlow and Barlow 10 Defendants are in violation of the Racketeer Influenced and Corrupt Organization Act. ("RICO")[18]

## III.   THE COURT SHOULD GRANT THE REQUESTED RELIEF

### A. The Evidence Presented Meets the Standard for Entry of a Temporary Restraining Order and a Preliminary Injunction

TROs "preserve the status quo pending a hearing."[19]  To grant a TRO or preliminary injunction, a court to make four findings as to the movant: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest."[20]  Additionally, the Court has the authority to provide injunctive relief under Section 1836 (b)(3)(A)(i) and Section 1836 (b)(3)(A)(ii) of DTSA to prevent any actual or threatened misappropriation on terms "the court deems reasonable" and as long as the injunctive relief order does not conflict with any applicable state laws. The abundant evidence provided supports misappropriation

---

[16] (18 U.S.C 1836(b))

[17] (Cal. Civ. Code § 3426.1)

[18] (18 U.S.C.  1961-1968)

[19] (*Hoffman* v. *Int'l Longshoremen's & Warehousemen's Union* (1975) 492 F.2d 929, 933, *aff'd Muniz* v. *Hoffman*, 422 U.S. 454.)

[20] (*Pom Wonderful LLC* v. *Hubbard* (9th Cir. 2014) 775 F.3d 1118, 1124 (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)); Federal Rule of Civil Procedure 65.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1  of ResortAG's trade secrets under CUTSA and DTSA and a pattern of racketeering

2  under RICO which entitles Plaintiffs to injunctive relief.

**B.    ResortAG's claims under Defense of Trade Secret Act and California Uniform Trade Secrets Act Are Likely to Succeed on the Merits**

The DTSA, 18 U.S.C. § 1836(b)(1), permits a civil action for misappropriation of a trade secret if the "trade secret is related to a product or service used in, or intended for use in, foreign or interstate commerce". Under the DTSA, at Section 1836(b)(3)(B)(5), "misappropriation" is defined much like it is under the UTSA and means: (a) acquisition by a person who knows (or has reason to know) the trade secret was acquired by improper means; or (b) disclosure or use of the trade secret by a person who used "improper means" to acquire the trade secret or had certain knowledge.

District courts in the Ninth Circuit recognize that the definitions of "trade secret" and misappropriation are virtually the same in both the federal DTSA, 18 U.S.C. § 1839, and the CUTSA, Cal. Civ. Code § 3426.1. (*See Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 73843, at 7 (N.D. Cal. May 15, 2017); *Elinor Shapiro v. Hasbro, Inc.*, 2016 U.S. Dist. LEXIS 194684, at 7 (C.D. Cal. Aug. 15, 2016)). Federal district courts in California have applied California's trade secret case law to causes of action brought under the federal DTSA. (*See Vendavo*, *Inc.* v. *Price f(x) AG* 2018 U.S. Dist. LEXIS 48637at 3.)

Accordingly, Plaintiff ResortAG applies California trade secret case law below to causes of action brought under the federal DTSA. The Court may order injunctive relief under DTSA and CUTSA if Plaintiff demonstrates that its client database/customer list and Business Knowhow are trade secrets, and two, that Barlow used or misappropriated them. (Cal. Civ. Code, §§ 3426 *et seq*.)

**1.  Defining What is a Trade Secret**

California defines trade secret as follows: "[t]rade secret means information, including a formula, pattern, compilation, program, device, method, technique, or

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

process that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[21] A trade secret includes a business' proprietary methods of operation and profitability, where the elements, although not publicly unknown if disclosed independently, are integrated in a unique and proprietary way that gives a measurable competitive advantage.[22] Additionally, a proprietary client list qualifies as a trade secret if it meets the provisions above,[23] as does a confidential customer database.[24]

### 2. Business Knowhow and Proprietary Methods of Competition are Trade Secrets

A business' unique method of successful operation and competition is a recognized trade secret. "The words 'method [and] technique '[as used in the Uniform Trade Secret Act's definition of trade secret' are intended to include the concept of "know-how."'"[25] Proprietary marketing strategies and plans also constitute trade secret under California law.[26] Unique business knowhow, including proprietary methods of competing and confidential information giving one a business advantage, is a trade secret. A trade secret is "information which is used in one's

---

[21] (Cal. Civ. Code, §§ 3426.11 (d).)

[22] *See Enter. Leasing Co. v. Ehmke* (Ariz. App. 1999) 197 Ariz. 144, 3 P.3d 1064, 1069.

[23] See *Reeves v. Hanlon* (2004) 33 Cal. 4th 1140, 1155; *Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1520-1522; *Cole Asia Bus. Ctr., Inc. v. Manning, No. 12-00956*, 2013 U.S. Dist. LEXIS 85818, 2013 WL 3070913, at 2 (C.D. Cal. June 18, 2013); *Fields v. QSP, Inc.*, No. 12-1238, 2012 U.S. Dist. LEXIS 78001, 2012 WL 2049528, at 13 (C.D. Cal. June 4, 2012).

[24] see *MAI Sys. Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 521

[25] (*Alderson v. United States* (2012) 718 F. Supp. 2d 1186, 1198). Restatement Third of Unfair Competition § 39 cmt. d (1995) (describing "know-how" as a type of "trade secret").

[26] (*Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1488, fn. 11).

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. (*Rigging Int'l Maintenance Co. v. Gwin* (1982) 128 Cal.App.3d 594, 598.)

Unique business ideas and methods of operation, including knowledge of such acquired by employees, are considered trade secrets: a "basis for the protection of trade secrets is that the recipient obtains through a confidential relationship something he did not previously know." (*Futurecraft Corp.* v. *Clary Corp., supra*, 205 Cal.App.2d 279, 288.)  An employee is said to have acquired information amounting to a trade secret from his employer if the information is acquired during the course of his employment. (*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.* (1961) 192 Cal.App.2d 398, 403.)

### 3.  Proprietary Customer Lists are Trade Secrets

Customer lists are also protected as a "trade secret." The information must derive independent economic value from not being generally known to those who can obtain economic value from its disclosure and whether the former employer made substantial efforts to procure the customer list. (See *MAI Sys. Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 521.)[27]   Substantial efforts of the employer to gather and create the proprietary client list and database may include circumstances evidencing that the former employer has spent a lot of time, expense, or resources in establishing the customer list.[28] Substantial efforts to develop and protect a client list has also been found to create a trade secret in many other cases.[29]

---

[27] "The Customer Database has potential economic value because it allows a competitor . . . to direct its sales efforts to those potential customers that are already using the [plaintiff's] computer system.").)

[28] (*Kovesdy v. Kovesdy*, 2010 WL 3619826 (N.D. Cal.) at 6).

[29] See, for example, *Reeves v. Hanlon* (2004) 33 Cal. 4th 1140, 1155; *Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1520-1522; *Cole Asia Bus. Ctr., Inc. v. Manning, No. 12-00956*, 2013 U.S. Dist. LEXIS 85818, 2013 WL 3070913, at 2

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### 4.   ResortAG's Database/Customer List and Business  Knowhow Have Tremendous Independent Economic Value and It Has Invested Heavily in Development

ResortAG has spent millions to acquire and maintain its clientele through advertising, marketing, client vetting, client customer service, and proprietary methods to analyze and successfully attack various timeshare contracts.  Its client roster and the client information it collects, uses and maintains in its client database to provide timeshare resolution services are proprietary and, along with its Business Knowhow, represent its most valuable asset.  The vast bulk of its budget is devoted to acquiring, serving and maintaining its clientele.  Krieck, J. Decl., ¶ 11. The unique proprietary business methods in which it has invested so heavily, and allows it to successfully service its clients, is what gives ResortAG a distinct competitive advantage in the marketplace.

Pursuant to contractual promises of confidentiality, non-circumvention and non-competition, ResortAG entrusted Barlow with authorized regulated access to its client data base, which includes essentially a client's entire financial picture.  *Id.*, ¶ 10.  It also entrusted its Business Knowhow to Barlow, essentially the guts of its proprietary business model. *Id.*, ¶ 10.

ResortAG's database/customer list and Business Knowhow derive independent economic value from not being generally known to its competitors.  ResortAG's Business Knowhow basically provides a detailed roadmap to how to conduct a timeshare resolution business. The information in its client database - client income, debt, credit rating, and the like - also holds economic value especially because it is not readily available to the public and can only be obtained by authorization provided by the client. *Id.*, ¶ 10.

---

(C.D. Cal. June 18, 2013); *Fields v. QSP, Inc.*, No. 12-1238, 2012 U.S. Dist. LEXIS 78001, 2012 WL 2049528, at 13 (C.D. Cal. June 4, 2012).

14

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

It almost goes without saying that the proprietary information contained in ResortAG's client database and its Business Knowhow, if obtained by a competitor, would be of immense immediate value because of the nature of the information and the substantial time and resources saved by identifying and directly targeting the most desirable ResortAG clients, using ResortAG developed and tested resolution strategies.

Barlow clearly saw the economic advantage of this data to himself from his insider perch as counsel to ResortAG, and the devious opportunity to seize it. He shamelessly took and misappropriated it to become a competitor of ResortAG by stealing clients and charging them for the same timeshare resolution services for which he had already been paid by ResortAG and for which they had already paid ResortAG.  Using ResortAG's proprietary client information and Business Knowhow, he sent unsolicited disparaging communications to ResortAG clients, turned several clients, including the Barlow 10, against ResortAG, and formed the Barlow Racketeering Enterprise with them for the purpose of harassing, intimidating and extorting the business. Through the Enterprise, they initiated frivolous civil litigation against ResortAG and lodged frivolous but intimidating criminal complaints against it and Attorney (and baseless bar complaints against Attorney), and attempted, and are continuing to attempt, to extract over $ 800,000,00 from Plaintiffs as a condition of ceasing their unrelenting campaign to destroy the business of ResortAG. *Id.*, ¶¶ 14-16.

ResortAG made its confidential client information and Business Knowhow – its **expertise** - available to Barlow, in his **sole** capacity as **counsel to Resort**, to perform his duties in that sole capacity, and in return he deviously and illegally used this very valuable proprietary information to create a competitive business against ResortAG. Without access to ResortAG's proprietary methodologies and client database, Barlow would not have been – could not have become - an actual competitor of ResortAG.

15

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### 5. ResortAG Has Exerted Great Effort to Maintain the Secrecy of Its Client Database/Customer List and Business Knowhow

Resort also satisfies the other element of trade secret protection for a customer list and business knowhow: reasonable efforts to maintain their secrecy. In California, reasonable efforts to maintain secrecy are found when the employer has its employees sign a confidentiality agreement that states that the customer list is confidential, and when the employer utilizes security measures to protect the list.[30] In *Whyte*, the court found that adequate efforts to maintain secrecy existed where the former employer had in place a "password protection system," and had its employees sign a confidentiality agreement. *Id*.

In accordance with *Whyte*, ResortAG's client database/customer list is password protected and the password is only known by individuals who have exclusive authorization from ResortAG to access it. Krieck Decl., ¶ 12. The ResortAG-Barlow Retainer Agreement contained confidentiality, non-circumvention and non-compete clauses for the very purpose of protecting its proprietary information, including its database/customer list and Business Knowhow, limiting its use strictly to performance of Barlow's duties under the agreement.  ResortAG granted Barlow access to its client database and Business Knowhow under these express restrictions. *Id.*, ¶¶ 10, 14(a). In egregious breach of his contractual and fiduciary duties, Barlow elected to steal Resort AG's trade secrets to unfairly and illegally compete against ResortAG and to put into action an extortion plan.

### C. Barlow Misappropriated and Misused the Trade Secrets of ResortAG

Misappropriation is defined as "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who has authority.[31] Improper means" is defined to

---

[30] (*Whyte v. Schlage Lock Company* (2002) 101 Cal.App.4th 1443, 1454.)
[31] (*Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal. 4th 215, 221-22)

16
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

"include[] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* at 222. Misuse of trade secrets includes "solicitation of an employer's customers when confidential information is employed."[32]

Here, Barlow exceeded his authority, and in fact had no authority at all, to use ResortAG's client database/customer list and Business Knowhow in violation of DTSA, CUTSA and his contractual obligation to protect ResortAG's confidential information and use it ***only*** in his limited capacity as counsel to ResortAG. Defendant Barlow hatched his plan to illegally compete with Plaintiff during his contractual tenure. *Id.*, ¶¶ 13-14(a)-(b). Without authorization, he stole and utilized Resort AG's trade secrets for illegal competitive use and to further his illicit goals of retaliation and extortion.  Using this unauthorized access, he lured in at least ten (10) confidential clients of Plaintiff to assist him in his illegal activities, and, by his own admission, he has contacted and gained, or attempted to gain, the false confidence of dozens more. *Id.*, ¶ 14(b).

## D.   ResortAG's Claim under the Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. Section 1962(c) is Likely to Succeed on the Merits

The enactment of DTSA made the theft of trade secrets a predicate act sufficient to show racketeering activity under RICO.[33] Section 1962(c) of RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

---

[32] (*Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268; Cal. Civ. Code, §§ 3426 et seq.)

[33] (*See* 18 U.S.C. § 1836.)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

### 1. Barlow Racketeering Enterprise

Through his theft of ResortAG's trade secrets, Barlow turned several clients of ResortAG, the Barlow 10, against ResortAG, forming an "enterprise" with them for the unified and joint purpose of harassing, intimidating and extorting Plaintiffs. Defendants Barlow, Barlow & Associates, CDRS, Phoenix Investments Alliance, ATT Fund, Case in Chief and Barlow 10 (the "Barlow Racketeering Enterprise") each conducted, conspired, aided and abetted, or participated in illegal conduct through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c) while being employed by, contracted by, and affiliated with the Barlow Defendants and as participants and co-conspirators with the Barlow Defendants in the Barlow Racketeering Enterprise.

### 2. Engagement of Interstate Commerce

The Barlow Defendants engage in interstate commerce.[34]  The Barlow 10 includes defendants residing in different states, communicating with Barlow & Associates, a multi-state law firm and other Barlow-controlled entities, filing criminal complaints against Plaintiffs in multiple states (California and New Jersey) and state bar complaints against Attorney in New Jersey and Pennsylvania, and using interstate communication lines in such interstate activity.  As such, the activity of the Barlow 10, relevant to this action, affects interstate commerce. Plaintiff ResortAG advertises and services clients across the United States. Plaintiff Attorney Klein, and his law firm, operate in interstate commerce. All parties to this action are engaged in interstate commerce.

### 3. Barlow Racketeering Enterprise's Pattern of Racketeering Activity

---

[34] Barlow is the controlling principal attorney of Barlow & Associates, which provides legal services in multiple states and jurisdictions, including California, New York, and Washington D.C., and does so through the use of interstate communication lines. On information and belief, the other Barlow-controlled defendants - CDRS, Phoenix Investments Alliance, ATTFund, and Case in Chief – also use interstate communication lines and thus are engaged in interstate commerce.

**PLAINTIFFS'** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

A RICO plaintiff must establish that the alleged "person" conducted or participated in the conduct of the alleged enterprise's affairs "through a pattern of racketeering activity."[35] A "'pattern of racketeering activity' requires at least two predicate acts of racketeering activity." (18 U.S.C. § 1961(5)) "Racketeering activity," includes any act indictable under 18 U.S.C. §§ 1343 (wire fraud), 1344 (mail fraud), and 1832 (theft of trade secrets). Mail fraud and wire fraud share elements and are therefore evaluated under the same framework.[36]

An employer may disclose trade secret materials to an employee pursuant to the employee's promise to keep that information confidential and the employee may commit mail fraud or wire fraud by betraying that trust through the use of the mails or wires. (*Miller v. Yokohama Tire Corp.* (9th Cir. 2004) 358 F.3d 616, 621-22; *Carpenter v. United States* (1987) 484 U.S. 19, 25)

The pattern of racketeering activity engaged in by the Barlow Racketeering Enterprise included the predicate acts of mail fraud and wire fraud, for the common purpose of concealing and benefitting from the use of the stolen trade secrets of Plaintiff, and to manipulate and deceive clients of Plaintiff into sending the Barlow Defendants substantial sums of unwarranted payments directly to Barlow & Associates for use by, and  direct benefit of, Barlow Racketeering Enterprise.

Utilizing the stolen trade secrets, the Barlow Racketeering Enterprise, as part of the scheme to deceive the public (and law enforcement) into a false belief that

---

[35] (18 U.S.C. § 1962(c); *Bryant v. Mattel*, 2010 U.S. Dist. LEXIS 103851, at 13)

[36] (*Miller v. Yokohama Tire Corp.* (9th Cir. 2004) 358 F.3d 616, 621). A claim for mail fraud or wire fraud must allege that the defendant: "(1) devised [] or intend[ed] to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use[d] the mail [or wires] for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Carter v. United States* (2000) 530 U.S. 255, 261. The statutes encompass "any scheme to deprive another of money or property by means of false or fraudulent pretenses." *Carpenter v. United States* (1987) 484 U.S. 19, 27.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff has engaged in wrongdoing, had the common purpose of putting into place a methodical pattern of defaming and purposefully harming Plaintiff's business, both through the mail and by use of the internet and phones, with the goal of gaining leverage for extortion and to destroy the business.  The pattern of racketeering also included the predicate act of extortion, (18 U.S.C. 1951), in which Defendants, as members of the racketeering enterprise, shared the common joint purpose of attempting to extort over $800,000 from ResortAG. *Id.*, ¶¶ 14 (e),15-16.

All Barlow Racketeering Enterprise members shared the common purpose of utilizing Barlow & Associates to attempt to conceal detection of the pattern of racketeering and to make the pattern of racketeering, including defrauding consumers and misleading law enforcement, easier to accomplish. All Barlow Racketeering Enterprise members shared the common purpose of filing false criminal and state bar complaints against Plaintiffs in order to harm their reputations and businesses and as a method to set up the extortion attempt on Plaintiffs.

**E.    Plaintiffs' claim of Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. Section 1962(b) is Likely to Succeed on the Merits**

"[A] defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that she 'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'"[37] [38]

---

[37] (*United States v. Fernandez* (9th Cir. 2004) 388 F.3d 1199, 1230). "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.

[38] *Salinas v. United States* (1997) 522 U.S. 52, 63-64. A conspirator need not have "specific knowledge of or participation in each predicate act conducted by other members of the conspiracy….[I]t suffices that he adopt[ed] the goal of furthering or facilitating the criminal endeavor." *United States v. Yannotti* (2d Cir. 2008) 541 F.3d 112, 122.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

The agreement amongst Defendants, as members of the Barlow Racketeering Enterprise, became apparent upon the filing of frivolous civil and criminal complaints against Plaintiffs, and became crystal clear upon their demand of over $800,000 from Plaintiffs as the price for ending their vicious campaign of defamation and extortion. All members of the Barlow Racketeering Enterprise shared in the common plan and goal to harm the business reputation and prospects of Plaintiffs in order to ultimately extort a large sum of money. *Id.*, ¶ 14(e), Ex. 6.

The conspiracy carrying out the pattern of racketeering activity engaged in by Barlow Racketeering Enterprise was for the common purpose of concealing and benefitting from the use of ResortAG's trade secrets, purposefully misrepresenting the business practices of Plaintiffs, defrauding consumers, extorting payment to cease current and future planned illegal actions, and intentionally harming the business of Plaintiffs for the sole benefit of Defendants in violation of 18 U.S.C. 1962(d).

**F.    Plaintiff Attorney Klein is Likely to Succeed on His Defamation Claims**

"Defamation has two forms -- libel and slander. Cal. Civ. Code § 44. Each is statutorily defined as a false and unprivileged publication. Cal. Civ. Code § 45, libel, and Cal. Civ. Code § 46, slander. In California, a plaintiff must generally prove five elements to establish a defamation claim: (1) an intentional publication of a statement of fact;(2) that is false;(3) that is unprivileged;(4) that has a natural tendency to injure or which causes "special damage;" and, (5) the defendant's fault in publishing the statement amounted to at least negligence.[39]

Plaintiff Attorney Klein represented the legal interests of ResortAG only, and only on general business matters. He has no claimed expertise in timeshare resolution and does not perform any legal timeshare resolution services for ResortAG or any other clients. Attorney Klein has never represented any clients of ResortAG or performed legal services on their behalf. Klein Decl., ¶¶ 3-4.

---

[39] (See CACI 1700-1705)

21

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Any and all false statements made by Barlow or the Barlow 10 about Attorney Klein are unprivileged and were done maliciously for the purposes of harming his and ResortAG's reputation, and in furtherance of their extortion scheme.[40] Attorney Klein and his law firm are highly likely to win on the merits of their claims.

**G.    The Public and Plaintiffs Are Likely to Suffer Immediate Irreparable Harm in The Absence of Preliminary Relief**

Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.[41] Defendants continue to participate in ongoing fraudulent and criminal conduct to extort Plaintiffs. Defendants' filing of frivolous claims is a waste of judicial resources and a mockery of our judicial system. Barlow, a California licensed attorney and judicial officer of the court, is actively engaging in fraudulent behavior by directing and encouraging the filing of frivolous claims against ResortAG and Attorney in hopes of recovering easy money.

**H.    Plaintiffs Face Continuing Irreparable Harm**

"[A]n intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always . . . show irreparable harm."[42] "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."[43] Irreparable harm will flow from the loss of investment, loss of customer goodwill, and loss of employee goodwill, and

---

[40] This includes, without limitation, baseless statements made about Attorney in criminal and bar complaints filed by members of the Barlow 10. *Id.*, ¶ 5, Ex. 2; Krieck Decl., Exs.5-6.

[41] (*See De Long v. Hennessey* (9th Cir. 1990), 912 F.2d 1144, 1148)

[42] (*Pac. Aerospace & Elecs., Inc. v. Taylor* (E.D. Wash. 2003) 295 F. Supp. 2d 1188, 1198 (quoting *Campbell Soup Co. v. ConAgra, Inc.* (3d Cir. 1992) 977 F.2d 86, 92-93); and citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999)).

[43] (*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* (9th Cir. 2001), 240 F.3d 832, 841).

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

loss of reputation, in the absence of a preliminary injunction prohibiting misappropriation and use of a business's trade secrets. [44]

Using the theft of ResortAG's trade secrets, Barlow has misappropriated at least ten clients from ResortAG. This number will only grow with Barlow's ongoing interference with ResortAG's business and clients and defamation of ResortAG. . *Id.*, ¶ 14(b)-(e), Exs. 4, 6.

ResortAG prides itself in its A+ rating with the Better Business Bureau. *Id.*, ¶ 5, Ex. 1. Its good name and goodwill (and Attorney's) are now jeopardized by a judicial officer of the court who under the law and professional ethical rules has the duty to avoid unauthorized practice of law, false or misleading advertisements, improper solicitation of clients, a duty of fairness, and a duty of candor to this Court.[45] The extent of Barlow's ability to harm ResortAG (and Attorney)  is immeasurable. Accordingly, the overwhelming evidence supports a finding of irreparable harm to Plaintiffs due to loss of clients, prospective customers, substantial reputational harm, and goodwill, and issuance of a TRO.

## I.    The Balance of Equities Tips in Favor of Plaintiffs

The equities in this case overwhelmingly warrant immediate injunctive relief. The proposed TRO would prohibit the Barlow Defendants from engaging in illegal and racketeering behavior in using stolen trade secrets to conduct their business, working with and aiding their co-conspirators, the Barlow 10, in maligning ResortAG's and Attorney's good name through frivolous criminal complaints, and attempting to extort them. The proposed conduct prohibitions would work no hardship on Defendants, as they have no right to steal trade secrets and engage in a pattern of racketeering.

---

[44] (*Ecolaire, Inc. v. Crissman* (E.D. Pa. 1982) 542 F. Supp. 196, 204-05; *see also BPI Sys., v. Leith* (W.D. Tex. 1981) 532 F. Supp. 208, 210.

[45] Cal. Rules of Professional Conduct Rule 5.5, Rule 7.1, Rule 7.2, and Rule 3.3.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

ResortAG is likely to succeed in proving Defendants' violations of DTSA, CUTSA, RICO, and Attorney, having had no part in ResortAG's agreements with the members of the Barlow 10 or Barlow, is likely to succeed in showing that there is no justification whatsoever for Defendants' defamation of him. Together, Plaintiffs are likely to succeed in proving that Defendants overall have engaged in a pattern of pernicious, conspiratorial, unlawful, reprehensible, and irreparably harmful conduct. As such, the balance of equities strongly favors Plaintiffs and entry of a TRO.

**J.   Immediate Injunctive Relief Is in The Public Interest**

Defendants' frivolous complaints against ResortAG and Attorney harm the public interest because they preempt the use of judicial and law enforcement resources that properly could be used to consider the meritorious claims of other litigants. Moreover, vulnerable timeshare consumers will continue to be exploited by Barlow's self-interested scheming. The public interest in ensuring the enforcement of consumer protection laws against meritorious targets – not a BBB A+ rated company, nor respected attorney - is strong. Without the requested relief, the public will suffer irreparable harm from the continuation of Defendants' unfair and unlawful conduct. Further, Defendant Barlow is a danger to the public by his intentional abuse of public trust as an Attorney to continue to recruit unwitting individuals to join him in committing crimes and pay him money (as legal fees) to do so.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request entry of  the requested TRO and order Defendants to show cause why a preliminary injunction should not issue.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1   DATED: May 18, 2020         THE ALTMAN LAW GROUP

2

3
                                BY:___/s/ Bryan Altman_____
4

5                               BRYAN C. ALTMAN

6

7

8

9
    DATED: May18, 2020          LAW OFFICES OF WILLIAM I.
10                              ROTHBARD

11

12

13                              BY: _/s/ William I. Rothbard_____

14
                                WILLIAM I. ROTHBARD
15

16                              Attorneys for Plaintiff Intermarketing Media, LLC
                                d/b/a Resort Advisory Group, Law Offices of David
17                              Alan Klein, and David Alan Klein, Esq.

18

19

20

21

22

23

24

25

26

27

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**