Brent David Barlow, Esq. (CSB 168645)
20929 Ventura Boulevard #47
Woodland Hills, California 91364
(818) 369-4432
brent@barlowlegal.com
*Attorney for Brent David Barlow, Pro Per*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC dba RESORT ADVISORY GROUP, LAW OFFICES OF DAVID ALAN KLEIN, and DAVID ALAN KLEIN, ESQUIRE,<br><br>    Plaintiffs,<br><br>        *vs.*<br><br>BRENT DAVID BARLOW, et al,<br><br>    Defendants. | No. 8:20-cv-00889<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO DISMISS WITH PREJUDICE FOR  LACK OF STANDING** |

Defendant, Brent David Barlow (the "Defendant"), on behalf of all defendants, hereby moves the Court to deny plaintiffs' application for a temporary restraining order ("TRO") and dismiss the complaint with prejudice for plaintiffs' lack of standing.

Defendant individuals John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Robert Zimmermann, Mary Zimmermann, Glenn Perley, and Connie Perley are the target of an elaborate confidence game perpetrated first by various timeshare developers and subsequently compounded by plaintiff Intermarketing Media, LLC dba Resort Advisory Group, a so-called timeshare exit company, and David Alan Klein who, as general counsel, is responsible for the legality of all activities of Resort Advisory Group and its personnel.

Whereas, there is no evidence that any aforesaid defendant individual received a loan from any timeshare developer and to characterize said defendants as *consumers* is inaccurate, defendant individuals hereinafter are individually a "Timeshare Purchaser" and collectively "Timeshare Purchasers."

Disposition hereof hinges on one thing and one thing only: whether the respective promissory note signed by each Timeshare Purchaser in favor of a particular a timeshare developer is supported by consideration sufficient to constitute an enforceable contract that could be "canceled/terminated" by Resort Advisory Group.

In support of this Opposition and Motion to Dismiss, defendant would show the Court the attached Memorandum, made fully part hereof and included herein by reference as though set forth in full.

WHEREFORE, Defendant prays that the Court:

1. Deny plaintiffs' ex parte application for injunctive relief;

2. Dismiss the complaint with prejudice for plaintiffs' lack of standing;

3. Grant Defendant reasonable costs and expenses related to this response to plaintiffs' application for TRO and complaint;

4. Order such other and further relief that the Court may deem just and fair.


DATE:  May 20, 2020                     Respectfully submitted,


Brent David Barlow

MEMORANDUM

Defendant brings the instant opposition to plaintiffs' ex parte application for TRO and motion to dismiss for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure for the Court's lack of jurisdiction over the subject matter of the petition by reason of plaintiffs' failure to set forth evidence of material facts that demonstrate that plaintiffs have suffered an injury in fact arising from invasion of a legally protected interest.

Upon Defendant's discovery of the possibility that plaintiffs intended to file suit against Defendant et al, Defendant at 11:55 A.M. May 17, 2020, transmitted to counsel for plaintiffs by email a two-page notice as to the infirmity of any such action due to plaintiffs' lack of standing and notified counsel for plaintiff of their joint-and-several liability with plaintiffs should they bring such action absent such proof, a true and correct copy of which letter and proof of transmission and receipt of which by counsel for plaintiffs is attached hereto and incorporated herein by reference as, collectively, Exhibit A.

Resort Advisory Group marketed and sold its "timeshare cancellation" services to Timeshare Purchasers, each of whom purchased from a timeshare developer a so-called *timeshare membership* or *vacation interest* (collectively a "Membership") in connection with use and enjoyment of certain resort properties owned by the timeshare developer.

Plaintiffs allege that Timeshare Purchasers are "consumers," i.e., borrowers, and, by implication, that at the time each Timeshare Purchaser appeared to enter into contract with Resort Advisory Group at least one timeshare developer held enforceable contractual rights against the Timeshare Purchaser arising from a signed promissory note given by the Timeshare Purchaser as consideration for a loan from the timeshare developer; to wit:

> 88. Plaintiff Resort Advisory Group's offers its timeshare resolution services in interstate commerce to consumers who have entered into timeshare contracts which they wish to cancel and withdraw from. . . .

Resort Advisory Group's Services Agreement (the "Services Agreement") with Deborah and David Abel, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit B, the material terms and conditions of which are substantially identical to

the Services Agreement of every other Timeshare Purchaser, guarantees in paragraph 1a that *"RA-Group will terminate/transfer Your current Timeshare."*

TIMESHARE DEVELOPERS

The enforceability of any promissory note is determined by the simultaneous and reciprocal exchange of promises and consideration between borrower and lender.

Absent a loan from the timeshare developer to a Timeshare Purchaser, any signed promissory note associated with any apparent transaction between the two is void and unenforceable for failure of consideration.

Each Timeshare Purchaser could enjoy or did enjoy his or her Membership only after all fees related to the current month were paid in full.  The moment any Timeshare Purchaser missed any scheduled timeshare-related payment, however, Timeshare Purchaser was cut off from enjoyment of the Membership, losing all enforceable rights thereto and, if not cured within a certain number of days, forfeiting all sums previously given—i.e., <u>no Timeshare Purchaser ever had or received any credit with or from any timeshare developer at any time</u>.

TIMESHARE MEMBERSHIPS: <em>PAY-AS-YOU-GO</em>

When Timeshare Purchasers—*all of whom are former clients of Defendant referred to Defendant by Resort Advisory Group, and whom Defendant, in turn, referred to Cooperative Dispute Resolution Society*—missed a timeshare-related payment and were cut off from all use or enjoyment of their Membership and:

- discovered that they had no credit with the timeshare developer;
- determined that the only rights in the Membership that they ever had, used, or enjoyed were purchased with their own money; and
- ascertained that no aspect of the Membership was purchased with the timeshare developer's money,

they realized that they were the target of an elaborate confidence game to get them to pay and keep on paying for something (the Membership) that they could use or enjoy, but only if all periodic fees associated with the current month were paid in full—a *pay-as-you-go* arrangement

4

not dissimilar to that of Netflix's where, in order to access and enjoy the Netflix library of movies, all fees associated with the current month must be paid in full.

Whereupon, Timeshare Purchasers John and Pamela Pressney (collectively "Pressney"), Herman and Debora Abel (collectively "Abel"), Morris and Virginia Hannah (collectively "Hannah"), and Lee Harris Turk ("Turk") made written demand of timeshare developer Diamond Resorts International, Inc. ("DRII") for treble the sums mistakenly given.

> NOTE: For the convenience of the Court and economy of resources, Defendant would show the Court a complete package of documentation of one particular Timeshare Purchaser only, Abel, the substance of which is the same as that of other Timeshare Purchasers. The documentation of other Timeshare Purchasers is also available should the Court desire.

Wherefore, a true and correct copy of Abel's Demand, Notice, and Warning of Commercial Grace to DRII and proof of delivery thereof is attached hereto and incorporated herein by reference as, collectively, Exhibit C.

The aforesaid Demand, Notice, and Warning of Commercial Grace makes it clear that absent an admission of incompetence on the part of DRII and tender of the amount demanded, DRII's acts could be viewed in no other way but willful and intentional, i.e., criminal, and that DRII, among other things, would be the subject of an affidavit of information which would be lodged with the appropriate authority.

Upon DRII's failure to tender the respective amount as demanded, Pressney, Abel, Hannah, and Turk all lodged with various district attorneys and U.S. attorneys an affidavit of information sworn to as true, correct, and complete before an officer of the state authorized to administer oaths and documenting and making known any and all offenses under appropriate statutes, committed by DRII or accessories after the fact, a true and correct copy of one affidavit of information for one district attorney and one U.S. attorney is attached hereto and incorporated by reference as, respectively and collectively and *for Abel only*, Exhibit D and Exhibit E (collectively the "DRII Criminal Complaints").

///

///

RESORT ADVISORY GROUP

Plaintiffs knew or should have known that at the respective time that Resort Advisory Group appeared to enter into contract with each Timeshare Purchaser, no timeshare developer (a) had loaned any Timeshare Purchaser anything, or (b) held an enforceable promissory note which Resort Advisory Group could "cancel/terminate."

Whereas, an enforceable promissory note signed by a Timeshare Purchaser in favor of a timeshare developer is essential to any Services Agreement (*see* Exhibit A) with any Timeshare Purchaser, all such Resort Advisory Group "contracts" are void ab initio by reason of impossibility, i.e., <u>nothing in the subject matter</u> (*see* Exhibits D and E), and every Timeshare Purchaser is entitled to return of whatever sums he or she mistakenly gave to Resort Advisory Group.

Upon determination of the foregoing by each respective Timeshare Purchaser, Pressney, Abel, Hanna, Turk, Bernardo and Carol Bettinelli (collectively "Bettinelli"), Lari Castle ("Castle"), Gilbert and Eva Castro (collectively "Castro"), Paul and Renee Martinez (collectively "Martinez"), and Glenn and Connie Perley (collectively "Perley") made demand of Resort Advisory Group for treble the respective amount mistakenly given to Resort Advisory Group, a true and correct copy of which Demand, Notice, and Warning of Commercial Grace and proof of mailing and delivery thereof *for Abel only* is attached hereto and incorporated herein by reference as, collectively, Exhibit F (documentation for every other Timeshare Purchaser available upon request).

Upon Resort Advisory Group's failure to tender the respective amount as demanded, Pressney, Abel, Hannah, Turk, Bettinelli, Castle, Castro, Martinez, and Perley all lodged with various district attorneys and U.S. attorneys a total of 33 affidavits of information, sworn to as true, correct, and complete before an officer of the state authorized to administer oaths and documenting and making known any and all offenses committed by plaintiffs, a true and correct copy of one of which for one district attorney and one U.S. attorney *for Abel only* is attached hereto and incorporated herein by reference as, respectively, Exhibit G and Exhibit H

(collectively the "Resort Advisory Criminal Complaints") (documentation for every other Timeshare Purchaser available upon request).

STANDING

The Resort Advisory Criminal Complaints allege and present evidence of material fact sworn to as true, correct, and complete before an officer of the state authorized to administer oaths that (a) the only rights in any Membership that any Timeshare Purchaser ever had, used, or enjoyed were purchased with the respective Timeshare Purchaser's own money, and (b) when each Timeshare Purchaser ceased giving money to a timeshare developer the timeshare developer cut off all rights to reserve, use, or occupy any DRII accommodation or to exercise any other right, benefit, or privilege appurtenant to the Membership.

The Resort Advisory Criminal Complaints have not been contradicted and are evidence (a) of failure of consideration with respect to any alleged promissory note held by DRII, and (b) that Resort Advisory Group sold Timeshare Purchasers "services" which Timeshare Purchasers did not need and Resort Advisory Group could not deliver by reason of impossibility (nothing in the subject matter; *see* Exhibits D and E).

For plaintiffs to demonstrate standing, plaintiffs must set forth by affidavit sworn to with the same degree of liability (unlimited) as that of Timeshare Purchasers in the Resort Advisory Criminal Complaints, or other evidence of equivalent solemnity, <u>specific facts of (a) a loan from a timeshare developer that was used to purchase a Membership for a Timeshare Purchaser, and (b) injury in fact to a legally protected interest arising in the Services Agreement</u>; to wit:

> JUSTICE SCALIA delivered the opinion of the Court, except as to Part III-B, concluding that respondents lack standing to seek judicial review of the rule. Pp. 559-567,571-578.

> (a) As the parties invoking federal jurisdiction, respondents bear the burden of showing standing by establishing, inter alia, that they have suffered an injury in fact, i. e., a concrete and particularized, actual or imminent invasion of a legally protected interest. To survive a summary judgment motion, they must set forth by affidavit or other evidence specific facts to support their claim. . . . *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Unless and until plaintiffs set forth, in the manner described hereinabove, such evidence of material fact that contradicts and nullifies that which is averred to by Timeshare Purchasers in the Resort Advisory Criminal Complaints: <u>Plaintiffs have no legally protected interest in the Services Agreement and therefore have suffered no injury in fact and the complaint must be dismissed with prejudice for plaintiffs' lack of standing.</u>

EVIDENCE

All affidavits of information and affidavits of mailing referenced herein are sworn to as true, correct, and complete by an officer of the state authorized to administer oaths and Defendant hereby enters the original of all such affidavits into evidence by this reference.  A duplicate original or certified copy of an original of any affidavit of information or affidavit of mailing referenced herein is available at the Court's pleasure.

DATE:  May 20, 2020                              Respectfully submitted,


Brent David Barlow, Esq. (CSB 168645)
20929 Ventura Boulevard, Suite 47
Woodland Hills, California 91364-2334
Telephone: (818) 369-4432
Email: brent@barlowlegal.com

# Exhibit A

**BARLOW & ASSOCIATES**
A T T O R N E Y S   A T   L A W
20929 Ventura Blvd, Ste  47
Woodland Hills, CA 91364-2103
(818) 369-4432 Telephone

Our File Number

May 17, 2020

Mr. Bryan C. Altman, Esq.                       *SENT BY EMAIL ONLY TO:*
10250 Constellation Boulevard, Suite 2500       *bryan@altmanlawgroup.net*
Los Angeles, California 90067

Mr. William I. Rothbard, Esq.                   *bill@rothbardlaw.com*
2333 Canyonback Road
Los Angeles, California 90049

   *Regarding:  Resort Advisory Group*

Messrs. Altman and Rothbard:

It has come to my attention that you may be considering bringing suit against me and certain former clients of mine in behalf of Resort Advisory Group.

This letter is sent as a courtesy to inform you of the infirmity of any such action and notice as to your joint-and-several liability with Resort Advisory Group for pursuing such course *absent proof of standing to do so.*

Resort Advisory Group markets and sells its services on the presumption of the existence of certain contractual rights held by a timeshare developer against a prospective customer, nearly all of which supposedly arise from a signed promissory note held and enforced by the timeshare developer.

To survive summary disposition, Resort Advisory Group would have to set forth by affidavit (not declaration) or equivalent evidence, facts supporting their claim of invasion of a legally protected interest arising from a contract with a customer; specifically: fact of a loan from the timeshare developer to the customer.

As explained to your client:  The only rights in the timeshare membership / vacation interest that my former clients had, used, or enjoyed were purchased with my former clients' own money and no aspect thereof was purchased with the respective developer's money.

That no timeshare developer ever made a loan to any former client of mine means that (a) no related timeshare promissory note is supported by consideration, (b) all such notes are void and unenforceable for failure of consideration, and (c) Resort Advisory Group has never had an enforceable contract (nothing in the subject matter) with any former client of mine who appeared to sign a promissory note with a timeshare developer.

Page 2
May 17, 2020
Messrs. Altman and Rothbard

Possibly you are unaware that no timeshare developer ever pursues a customer to recover any of the millions in defaulted timeshare "loans." The reason is that they would have to allege and prove fact of a loan, something they cannot do–but which burden will fall upon you should you proceed against me.

Wherefore, you are hereby given notice that, with respect to any former client of mine, should you undertake, on behalf of Resort Advisory Group, any action against me that takes my time or attention to rectify, you and Resort Advisory Group shall be jointly and severally liable therefor and billed at the rate of $750.00 per hour or any portion of an hour for any and all such time required by me or any attorney hired by me to address such matter, due and payable in full within 15 days of the date any invoice therefor is sent.

You are further advised that the information in the proprietary systems of Resort Advisory Group to which I was given access was only that which was available to me directly from my clients.

In closing, be advised that the affidavits of information lodged against your client for criminal wrongdoing are sworn to as true, correct, and complete (the truth, nothing but the truth, and the whole truth, respectively) and have not been contradicted or disproved; something you would have to do in order to prevail in any action against me or any of my former clients.

This letter and proof of its transmission to you will be entered in evidence in any proceeding that may arise in connection with subject matter set forth herein.

Very truly yours,

BRENT D. BARLOW, ESQ.

BDB/ao
cc: client

 Gmail

**Brent Barlow** Confidential

## Resort Advisory Group

**Bill rothbard** <bill@rothbardlaw.com>                                    Mon, May 18, 2020 at 9:06 AM
To: "brent@barlowlegal.com" <brent@barlowlegal.com>

How in the hell did he hear about it?  Do you think he plans to sue us individually?

---

**From:** Brent Barlow <brent@barlowlegal.com>
**Sent:** Sunday, May 17, 2020 11:56 AM
**To:** bryan@altmanlawgroup.net; Bill rothbard <bill@rothbardlaw.com>
**Subject:** Resort Advisory Group

See attached correspondence.

_____

**BRENT D. BARLOW, ESQ.**

**BARLOW** *and* **ASSOCIATES**

*www.barlowlegal.com*

*844.488.0449 toll-free*

*818.369.4432 local*

*818.887.0528 fax*

*Striving to be environmentally conscious, we avoid printing and limit communication to email as much as possible.*

*This notice is sent pursuant to the California Rules of Professional Conduct.*

# Exhibit B



## RESORT ADVISORY

## Services Agreement

This Services Agreement (the "Agreement") is made and entered into as of _7/5_____, 20_18_ by and between Resort Advisory Group hereinafter ("RA-Group"), whose service address is 1800 Thibodo Road, Suite 100, Vista, CA., 92081 and _DAVID & DEBORAH ABEl_____(Individually and collectively "You or "Your") having an address at:

_64 Montego Key, Novato, CA  94949_____

## Recitals

Whereas prior to the execution of this Agreement, You entered into an agreement to purchase a Timeshare, Timeshare Unit, Vacation/Travel Club, and/or Club Points from a person or entity who developed, sold or otherwise brokered same to You ("Timeshare"); and Whereas You desire to obtain, but do not expect any refund of any of the monies paid by You in connection with the Timeshare, and understand that the services of RA-Group should not be construed as legal advice as such RA-Group is not a law firm and will endeavor to perform Your objective to end Your Timeshare ownership and all the associated financial obligations. However, certain of the termination related Services may require that you be represented by a referred attorney ("Attorney"). To that end, RA-Group will pay the legal expenses related to any such representation.

Therefore, in consideration of the mutual promises and consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, You and RA-Group agree as follows:

## 1. Services

a.  RA-Group will terminate/transfer Your current Timeshare. If Your Purchase Agreement is not terminated, transferred, or current contract not rolled back to a previous contract or agreed to be by the Developer (collectively "Terminate") within eighteen (18) months of RA-Group's receipt of the entire FEE and all information and documentation as indicated in Section 1d, You will then have the option to either keep Your Timeshare after signing a release terminating this Agreement and seek a REFUND under Section 5 of this Agreement (*Guarantee),* or to extend this Service Agreement for a period of six (6) months.  IF YOU FAIL TO ADVISE RA-GROUP THAT YOU WISH TO TERMINATE THIS AGREEMENT BY THE END OF THE EIGHTEEN (18) MONTH PERIOD AS DESCRIBED HEREIN, THIS AGREEMENT WILL AUTOMATICALLY RENEW FOR A PERIOD OF SIX (6) MONTHS.

b.  Except in the case where You obtained a developer offered mortgage, You understand that You are responsible to continue to make all payments on any financing used to pay for any part of the Timeshare, such as; Bill Me Later/Pay Pal Credit, Developer offered Credit Cards, or any other financial or credit instruments. You are still responsible for the mortgage until the termination/transfer is completed.

1

c.  Certain of these Services may require You to be represented by an Attorney, RA-Group is not a law firm and cannot perform such services. However, RA-Group agrees to pay the legal expenses related to any such representation of the referred attorney.

d.  You agree to provide RA-Group with copies of any and all documents, agreements, and any other written materials relating to Your Timeshare, and in connection therewith. You further understand that if all of the materials are not received by RA-Group within (30) days from the receipt of the FEE, each additional day thereafter will delay the start of eighteen (18) month Guarantee period.  If all of the materials have not been received by RA-Group within ninety (90) days following RA-Group's receipt of Your FEE, RA-Group reserves the right to cancel this Agreement without any further obligation to You as indicated in Section 5 Guarantee.

e.  You agree to follow and otherwise comply with all of RA-Group's instructions and procedures as a part of the RA-Group Services and not to deviate therefrom without the written consent of RA-Group and/or any of the Attorneys retained.

f.  RA-Group will not render any services that conflict with, or are otherwise prohibited by California, or Federal law. Furthermore RA-Group and/or any of the Attorneys retained will not: request, expect, direct, suggest or encourage You to engage in any unethical, un-truthful, deceptive or misleading activity(s).

g.  You understand that any use of Your Timeshare, Timeshare Unit, Vacation/Travel Club, and/or Club Points after the execution of this Agreement may prevent or otherwise interfere with RA-Group's ability to Terminate Your Timeshare, Timeshare Unit, Vacation/Travel Club, and/or Club Points. RA-Group reserves the right to cancel this Agreement without any further obligation to You if RA-Group determines that you are planning to or have used your Timeshare, Timeshare Unit, Vacation/Travel Club, and/or Club Points anytime after the execution of this Agreement. You understand and agree that should this occur, You will FORFIET any FEE paid to RA-Group and VOID Section 5, (*Guarantee*) of this  Agreement

Initial: _____

## 2. Term

Unless extended as indicated in Section 1,a, the term of this Agreement shall be eighteen (18) months and shall terminate upon the earlier of: (i) the termination/transfer, or current contract roll back of Your Timeshare, (ii) violation of any of the terms or conditions of this Agreement VOIDING SECTION 5, (*Guarantee)*, and any REFUND in connection therewith; (iii) Your retention of Your Timeshare(s); or (iv) the expiration of the eighteen (18) months, or the extension thereof.

Initial: _____

## 3. Timeshare/Clubs

Purchase Date & Location: _7/17/17 Hawaii Collection_ Mortgage Balance: $_169,255.56_

Purchase Date & Location: _____ Mortgage Balance: $_____

Purchase Date & Location: _____ Mortgage Balance: $_____

Purchase Date & Location: _____ Mortgage Balance: $_____

Contract #'s 17583190
17694421

Initial: _A DG._

## 4. Fee

a. You agree to pay to RA-Group the sum of _$55,854.53_ plus a processing fee of $549 for a combined total of $ _56,403.53_ (the "Fee"). The Fee will be paid as follows: $ _9,000.00_ Deposit, making the balance due to RA-Group $ _47,403.53_ to be paid in monthly installments of $ _3,500.00_ per month for _13.5_ Months, due on the _7th_ of every month ("Payment Date"). RA-Group reserves the right to discontinue all services contained within this Agreement and consider the Agreement satisfied in the event You become sixty (60) days or more in default of your monthly installment.

b. You agree to pay the Fee within seven (7) calendar days following the full execution of this Agreement (the "Payment Date"). The Fee becomes immediately non-refundable except as may be set forth herein regarding Section 5 Guarantee. In the event that RA-Group does not receive the entire Fee by the Payment Date, You will be considered in default, and in addition to all other rights and remedies RA-Group may have against You, nothing contained in this Agreement will prevent, negate, or otherwise diminish Your obligation to pay the entire Fee in a timely basis.

c. In the event that an Attorney is retained and the recovery of some or all of the monies paid by You in connection with the Timeshare is successful, the Attorney may elect to keep up to 33.33% of the refunded monies.

d. You understand there will be no additional Fees owed to RA-Group and/or any of the Attorneys retained. However, some resorts/clubs may require a cancellation fee or the like to end an ownership. These fees will be no greater than the amount of twelve (12) month's maintenance fees, except in the case where all past maintenance fees are also required. Should this be the case You will be required to pay the fee(s) to the Developer/Club for a successful termination/transfer.

Initial: _A DG._

## 5. Guarantee

Notwithstanding anything to the contrary contained herein, and provided that You have followed, complied with, and adhered to the terms and conditions of this Agreement, **and** Your Timeshare(s) was not terminated/transferred as set forth in this Agreement, **or** You did not opt to keep Your Timeshare, RA-Group will then refund Your FEE to You within thirty (30) business days after receipt of Your Refund election, said Notice of Refund ELECTION to be made within sixty (60) days following the expiration of the Term of this Agreement as set forth herein. This Guarantee is considered met even though You may not accept the terms of the Developers/Clubs; termination / transfer / current contract roll back agreement. You hereby acknowledge and agree that this Agreement does not provide for, and **RA-Group does not guarantee** that You will receive any reimbursement of any monies which You have already paid to the Developer in connection with the Timeshare. Furthermore You do not have any basis for cancellation of this Agreement, and are not entitled to receive a refund of the FEE in the event that you do not receive such reimbursement. You are guaranteed that your Timeshare will be terminated/transferred; that you will receive an offer from the Assignor of Your Timeshare; Your Timeshare will be placed back to a previous traded Timeshare; or that You can be relieved of Your entire ownership subject to your full compliance with the terms and conditions set forth in this Agreement.

Initial: _____

## 6.   Obligations to Developer

You understand and agree that RA-Group has not advised You to breach, in any way, Your contractual obligations to Your Timeshare, Vacation/Travel Club, and/or Club Points Developer.  RA-Group has advised and urged You to continue to honor any and all obligations that you may have with Your Timeshare(s), and, furthermore, You agree to comply with the terms and conditions of Your Timeshare(s) Vacation/Travel Club, and/or Club Points agreement(s) during the entire term of this Agreement, and any extension thereof.

Initial: _____

## 7. Confidentiality

a. You and RA-Group acknowledge and agree that each will be given access to certain Confidential Information belonging to the other in connection with the services offered and provided by RA-Group, and that said Confidential Information, which includes RA-Group's proprietary processes and procedures, is revealed by one party (the "Disclosing Party") to the other party (the "Receiving Party") in strict confidence solely for the purpose of facilitating the performance of this Agreement. The Disclosing and Receiving parties acknowledge and agree that without prior written consent of the other, neither party may use or disclose such Confidential Information in any manner at any time except as is reasonably necessary to further the purpose of this Agreement. Each party agrees and acknowledges that if a violation of this Section of this Agreement occurs, or is threatened,

4

such violations may cause irreparable harm to the affected party, and that the monetary damages for any such violation or threatened violation may be inadequate and that the affected party shall be entitled to seek appropriate legal **and** equitable relief, such remedies being cumulative and non-exclusive, including, without limitation, injunctive relief against breach of this Agreement.

b. For purposes of this Agreement, Confidential Information shall include, but not be limited to, RA-Group's processes and procedures and proprietary information that is marked or otherwise identified by the Disclosing Party as confidential and shall include, without limitation, information relating to each others clientele and competitors. Confidential Information shall not include information that the Receiving Party can document: (a) was in public domain at the time it was communicated to the Receiving Party by the Disclosing Party; (b) entered the public domain subsequent to the time it was communicated to the Receiving Party by the Disclosing Party; (c) was in the Receiving Party's possession, free of any obligation of confidence at the time it was communicated to the Receiving Party by the Disclosing Party; (d) was rightfully communicated to the Receiving Party by a third party free of any obligation of confidence subsequent to the time it was communicated to the Receiving Party by the Disclosing Party; or (e) was developed by employees or agents of the Receiving Party independently of any information communicated to the Receiving Party by the Disclosing Party. In addition, the Receiving Party may disclose the Disclosing Party's Confidential Information in response to a valid order by a court or other governmental body as otherwise required by law, or as necessary to establish the rights of either party under this Agreement; provided, however, that the Receiving Party shall provide the Disclosing Party with prior written notice of any such disclosure.

Initial: _____

## 8. Warranty and Representations

You warrant and represent that (i) You have the right, power, and authority to enter into this Agreement; (ii) all of the information and materials that You furnish or otherwise provide to RA-Group are true, accurate, and does not contain any false information to the best of Your knowledge; (iii) You have the right, power, and authority to engage RA-Group in connection with the RA Group Services; (iv) You agree to complete, follow and otherwise comply (without change, alteration, amendment) with each component, element and phase of RA-Group's directions, consultations, and instructions in a timely manner; and (v) RA-Group and You are independent contracting parties, and nothing contained in this Agreement shall be deemed to create a partnership, joint venture or agency relationship between You and RA-Group.

Initial: _____

## 9. Indemnification

You agree to defend, indemnify, and hold RA-Group and its officers, agents, employees, attorneys, directors, and shareholders harmless from and against any and all liability, claims, penalties, damages, injuries, costs, attorney fees of other expenses of any nature whatsoever paid or incurred in connection with claims by any person directly or indirectly arising from or relating to any breach of this Agreement by You or any of Your warranties and representations.

Initial: _____

## 10. Dispute Resolution and Waiver of Jury Trial

Other than as set forth in Section 7, *Confidentiality*, You and RA-Group hereby agree that any dispute, controversy, or claim between the parties arising out of or related to this Agreement, in whole or part, that cannot be otherwise resolved between the parties shall be solely and exclusively subject to and otherwise submitted for resolution by and through binding arbitration under the control, administration and auspices of the American Arbitration Association (hereinafter "AAA") and through no other person, entity or forum. You and RA-Group agree to be subject to the rules and conditions established by the AAA in connection with their binding arbitration procedures and each party shall bear their own respective costs in connection therewith. **YOU AND RA-GROUP HEREBY WAIVE ANY RIGHT TO BRING ANY ACTION AGAINST THE OTHER PARTY IN ANY COURT AND, FURTHER WAIVE ANY RIGHT TO REQUEST A TRIAL BY JURY IN CONNECTION WITH THIS AGREEMENT**. Notwithstanding anything to the contrary contained herein, any decision rendered in such AAA arbitration shall be final and binding on you and RA-Group and such decision may be entered (but not challenged or otherwise appealed) in a court of competent jurisdiction. The Parties' obligation to utilize the aforementioned binding AAA arbitration process as the sole and exclusive means of resolving any disputes shall be an independent covenant and be binding by and between the Parties in perpetuity. Notwithstanding the foregoing, neither Party shall be liable to the other Party for any special, punitive, incidental, indirect or consequential damages, losses, costs or expenses, including but not limited to, any loss or profits of business arising out of this Agreement, however caused, and whether based in contract, tort, negligence, products liability or any theory of liability regardless of whether the Party has been advised of the possibility of such damages, losses, costs or expenses. FURTHER, YOU HEREBY ACKNOWLEDGE AND AGREE THAT ANY AND ALL SUCH DISPUTES, CONTROVERSIES, OR CLAIMS BETWEEN THE PARTIES SHALL BE VENUED AND TAKE PLACE IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA.

Initial: _____

## 11. Complete Agreement

This Agreement contains the entire understanding and agreement between the Parties with respect to the subject matter addressed, and supersedes any and all prior understandings and agreements, whether written or oral, between and among the Parties relating to the subject matter of this Agreement. Each Party specifically acknowledges, represents and warrants that they have not been induced to sign this Agreement by any belief that the other will waive or modify provisions of this Agreement in the future. This Agreement may not be assigned or transferred. No change or modification of this Agreement will be valid unless in writing and signed by the Parties. The invalidity of unenforceability of any particular provision of this Agreement will not affect the other provisions hereof, and the Agreement will be construed in all respects as if such invalid or unenforceable provisions were omitted. Failure of either Party to enforce any provision of this Agreement shall not constitute a breach thereof and shall not constitute a waiver of either Parties right to enforce the other provisions hereof.

Initial: _____

## 12. Applicable Law Binding Effect and Counsel

The parties hereby acknowledge and agree that: this Agreement was made in the state of California; is and shall be governed and interpreted under the laws of the State of California; any and all claims  and will inure to the benefit of and be binding upon the Parties hereto and their heirs, personal representatives, successors and assigns. Each Party acknowledges that they either retained independent counsel to review this Agreement or that they elected to execute this Agreement without the advice of counsel. RA-Group asserts and You hereby acknowledge that RA-Group is not a law firm and any information provided is not a substitute for legal advice. RA-Group is not a law firm or an entity authorized to practice law in any of the United States of America and You acknowledge that RA-Group has not represented itself as such to You.

Initial: _____

## 13. Mailing Address

Any payments and correspondence that are not communicated to RA-Group through electronic methods such as email or wire transaction, shall be mailed to the following address:

**Resort Advisory Group**
**1800 Thibodo Road**
**Suite 100**
**Vista, CA. 92081**

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their dully authorized representatives as of the day and year first set forth above.

READ, AGREED TO AND ACCEPTED BY:

Resort Advisory Group                                    "You"

By: _____                    Sign: _____
An Authorized Signatory

Title: _CASE ADVISOR_____               Print: _David Abel_____

                                                        Date: _7/3/18_____

                                                        Sign: _Debora Abel_____

                                                        Print: _Debora Abel_____

                                                        Date: _7/3/18_____

## STATEMENT OF UNDERSTANDING

1. _ɅꞶꞬ_ The Fees paid by You to RA-Group are not for the payoff or settlement of any previous or existing loans or mortgages in connection with the Timeshare. Our services are designed to relieve You of Your current mortgage debt and ownership connected to that debt. You also understand that RA-Group does not engage in any negotiations with:
   _____ _DiAMOND_ _____.

2. _ꓘꞬꞬ_ This usually is not the case but You are aware that Your credit may be affected.

3. _Ʌ ꞬꞬ_ RA-Group does not represent any financial institutions.

4. _ꓮ ꞬꞬ_ RA-Group does not represent: _DiAMOND_ _____.

5. _Ʌ ꞬꞬ_ RA-Group does not guarantee that any money will be refunded from the Developer in the event Your Timeshare is terminated.

6. _Ʌ ꞬꞬ_ All existing and future reservations 30-60 days after the process begins may be cancelled by the Developer.

7. _Ʌ ꞬꞬ_ This is not typical, however, You may receive a 1099 form should the Developer terminate your Timeshare from this process. We would suggest consulting your tax professional.

8. _Ʌ ꞬꞬ_ Other than in the case where You obtained a Developer offered mortgage, You understand you are still responsible to make all payments on any financing used to pay for any part of the Purchase Agreement such as; Bill Me Later/Pay Pal Credit, Developer offered credit cards, or any other financial or credit instrument.

9

# Exhibit C

64 Montego Key.
Novato, California 94949.

January 10, 2020.

> **Be advised:** This Demand, Notice, and Warning of Commercial
> Grace is an important commercial instrument that could affect your
> property or rights to property or carry other serious consequences.

| | |
|---|---|
| John Joseph Suydam | 9114 9014 9645 0948 2525 31. |
| Robert Kenneth Kraft | 9114 9014 9645 0948 2525 48. |
| Apollo Global Management, LLC | 9114 9014 9645 0948 2525 55. |
|    9 West 57th Street, 43rd Floor | |
|    New York, NY 10019 | |

| | |
|---|---|
| Kenneth Steven Siegel | 9114 9014 9645 0948 2525 62. |
| Jason Frederic Cohen | 9114 9014 9645 0948 2525 79. |
| Diamond Resorts International, Inc. | 9114 9014 9645 0948 2525 86. |
|    10600 West Charleston Boulevard | |
|    Las Vegas, Nevada 89135 | |

| | |
|---|---|
| Gerald Greenspoon | 9114 9014 9645 0948 2525 93. |
| Michael Ellis Marder | 9114 9014 9645 0948 2526 09. |
| Victor Scott Kline | 9114 9014 9645 0948 2526 16. |
| Jeffrey Aaron Backman | 9114 9014 9645 0948 2526 23. |
| Mitchell Shane Levine | 9114 9014 9645 0948 2526 30. |
| Julia Stepanova | 9114 9014 9645 0948 2526 47. |
| Greenspoon Marder LLP | 9114 9014 9645 0948 2526 54. |
|    2255 Glades Road, Suite 400-E | |
|    Boca Raton, FL 33431 | |

| | |
|---|---|
| Richard Wayne Epstein | 9114 9014 9645 0948 2526 61. |
| Greenspoon Marder PA | 9114 9014 9645 0948 2526 78. |
|    200 East Broward Boulevard, Suite 1800 | |
|    Boca Raton, FL 33421 | |

Re:   Diamond Resorts former contract nos. 17009411, 17159350, 17204779, 17396537, 17634273, 17694421, and 17583190 (the "Former Contracts")

## Demand, Notice, and Warning of Commercial Grace.

This Demand, Notice, and Warning of Commercial Grace concerns the Former Contracts between, on the first part, John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, and Diamond Resorts International, Inc. (collectively "DIAMOND") and, on the second part, HERMAN DAVID ABEL and DEBORA SUSAN ABEL (collectively "ABEL").

*Whereas:* There being no evidence of a transaction between DIAMOND and ABEL in which:

- anything is purchased with DIAMOND's money;

- DIAMOND gives ABEL value;

- there is any purchase-money collateral;

- ABEL incurs any purchase-money obligation;

- a security interest in personal property is created in favor of DIAMOND;

- ABEL has an interest in collateral;

- ABEL is a consumer debtor to DIAMOND; or

- ABEL is a consumer obligor to DIAMOND; and

*Whereas:* Any writing associated with any of the Former Contracts whose existence is predicated, in any degree, on the existence of a Hawaii Revised Statutes ("HI Rev Stat") § 490:9-102 (2018) or California Code, Penal Code ("CCPC") 9102(a)(26) *consumer transaction* between DIAMOND and ABEL is false; and

*Whereas:* There being no evidence of a HI Rev Stat § 490:9-102 (2018) or CCPC 9102(a)(26) consumer transaction in the Former Contracts:

- Former DIAMOND RESORTS HAWAII COLLECTION contract nos. 17009411, 17159350, 17204779 (California), 17694421, and 17583190 (California) between DIAMOND and ABEL are express, bilateral contracts the tenor of each of which is one (1) month from lapse of ten (10) days after expiration of ABEL's seven- (7-) day right to cancel each respective purchase; and

- Former DIAMOND RESORTS U.S. COLLECTION contract nos. 17396537 (California) and 17634273 (California) between DIAMOND and ABEL are express, bilateral contracts the tenor of which is 54 and 73 days, respectively; and

*Whereas:* All respective legally enforceable contractual rights of DIAMOND or ABEL appertaining to the Former Contracts terminate naturally as of:

- February 22, 2014, with former contract no. 17009411;

- July 16, 2015, with former contract no. 17159350;

- October 11, 2015, with former contract no. 17204779;

- May 4, 2016, with former contract no. 17396537;

- December 22, 2016, with former contract no. 17634273;

- March 1, 2017, with former contract no. 17694421; and

- August 24, 2017, with former contract no. 17583190; and

*Whereas:* All respective transactions between DIAMOND and ABEL subsequent to the above dates are *sua sponte*, parol, bilateral, and month-to-month; and

*Whereas:* With respect to ABEL's enjoyment of the property that is the subject of the Former Contracts, i.e., *Membership in Diamond Resorts Hawaii Collection* or *Membership in Diamond Resorts U.S. Collection* (underline "Membership"), there is no evidence that ABEL enjoyed anything associated with Membership for which ABEL did not prepay in full; and

*Whereas:* Notwithstanding that the respective writings comprising the Former Contracts suggest that DIAMOND is making and made a loan to ABEL, no evidence of a loan can be found,

*Wherefore:* The respective alleged (a) *Purchase Money Note* associated with former contract nos. 17009411 and 17694421, and (b) *Promissory Note* associated with former contract nos. 17159350, 17204779, 17396537, 17634273, and 17583190 **are naked,[1] simulated contracts[2] and invalid, legally unenforceable, and void for failure of consideration**.

### Demand.

*Whereas:* The need to protect the interests of Herman David Abel and Debora Susan Abel (underline the "Undersigned") against DIAMOND by way of investigation and production of this Demand, Notice, and Warning of Commercial Grace, at great expense of time, effort, and money as a proximate consequence of various groundless acts and omissions of DIAMOND with respect to the Former Contracts; and

*Whereas:* The above-cited respective alleged Purchase Money Notes and Promissory Notes being void due to, among other things, ABEL's mistaken belief that ABEL was receiving and had received a loan of DIAMOND's money,[3]

*Wherefore:* The Undersigned hereby demand of DIAMOND, within twenty (20) days of date of DIAMOND's receipt hereof, the commercially reasonable sum of treble the amount of money mistakenly given to DIAMOND [4] with respect to the Former Contracts, i.e., 3 X $79,903.13 or **$239,709.39.**

---

[1] A naked contract is one made without consideration, and for that reason it is void. . . . John Bouvier, *Bouvier's Law Dictionary*, 3rd rev. (8th ed.), rev. by Francis Rawle (St. Paul, Minn.: West Publishing Co., 1914) (hereinafter "BOUVIER'S"), 2285, s.v. "Naked."

[2] *simulated contract. Civil law.* A contract that, although clothed in concrete form, has no existence in fact; a sham contract. ● A simulated contract can be declared a sham and avoided by an interested party, including a creditor of one of the parties to the contract. *Black's Law Dictionary*, 7th ed., Bryan A. Garner, ed. in chief (St. Paul, Minn.: West Group, 1999), 325, s.v. "Contract."

[3] Ignorantia facti excusat. Ignorance of fact excuses or is a ground of relief. . . . Acts done and contracts made under mistake or ignorance of a material fact are voidable and relievable in law and equity. Henry Campbell Black, *A Dictionary of Law* (St. Paul, Minn.: West Publishing Co. 1891) (hereinafter "BLACK'S 1ST"), 589-590.

[4] Cujus per errorem dati repetitio est, ejus consulto dati donatio est. He who gives a thing by mistake has a right to recover it back; but, if he gives designedly, it is a gift. *Id.* at 306.

**Notice and Warning to DIAMOND.**

Whereas, mistakes are forgivable, DIAMOND's failure to tender to ABEL, within the commercially reasonable period demanded above, the aforesaid commercially reasonable sum of $239,709.39, signifies that DIAMOND's charging of principal, interest, and fees on nonexistent loans in the Former Contracts can no longer be construed as *mistake*[5] but must be regarded as *intentional,*[6] i.e., that DIAMOND obtained from ABEL $79,903.13 by deception with intent to deprive ABEL of said sum; *whereupon,* a consensual lien[7] shall arise against the assets, land, and personal property of John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, and Diamond Resorts International, Inc. (collectively the "Lien Debtor"), in favor of Herman David Abel and Debora Susan Abel (collectively the "Lien Creditor"), in the amount of the respective aggregate maximum statutory monetary value of any and all criminal offenses committed by John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, or Diamond Resorts International, Inc. against ABEL; *whereupon,* Lien Creditor can pursue any and all commercial, civil, and criminal remedies provided by law against Lien Debtor at Lien Creditor's discretion without further notice, including, but not limited to:

a.  presentment to the New York County, New York, District Attorney; Clark County, Nevada, District Attorney; Norfolk County, Massachusetts, District Attorney; Honolulu County, Hawaii, District Attorney; Marin County, California, District Attorney; United States Attorney for the Southern District of New York[8]; United States Attorney for the District of Massachusetts; United States Attorney for the District of Hawaii; United States Attorney for the Northern District of California; U.S. Securities and Exchange Commission; Chief Attorney, First Judicial Department, Attorney Grievance Committee of the New York State Unified Court System; New York State Bar Association, and State Bar of Nevada Office of Bar Counsel of an affidavit of information (criminal complaint) sworn to as true, correct, and complete before an officer of the state authorized to administer oaths and documenting and making known any and all offenses under New York Penal Law ("NYPL"), Title 15 of Nevada Revised Statutes ("NRS"), Hawaii Penal Code ("HPC"), California, Code, Penal Code, or Title 18 of the United States Code ("U.S.C.") committed by the aforesaid individuals and organizations, including but not limited to NYPL §§ 100.05 and 105.10; NRS § 199.480(3)(d); HPC §§ 705-510, 705-520, 708-830.5(1)(a), 710-1018, 842-2(3),

---

[5] Ignorantia facti excusat.  Ignorance of fact excuses or is a ground of relief. . . . Acts done and contracts made under mistake or ignorance of a material fact are voidable and relievable in law and equity. BLACK'S 1ST, 589-590.

[6] *Actus non reum facit, nisi mens sit rea.* An act does not make a person guilty unless his intention be guilty also. This maxim applies only to criminal cases; in civil matters it is otherwise.  BOUVIER'S, 2124.

[7] *Ubicunque est injuria, ibi damnum sequitur.* Wherever there is a wrong, there damage follows.  *Id.* at 2166.
    *Nemo videtur fraudare eos qui sciunt, et consentiunt.* No one is considered as deceiving those who know and consent.  *Id.* at 2148.

[8] A certified copy of any Affidavit of Information lodged with any district attorney or United States attorney the subject of which is John Joseph Suydam, will be sent to The Legal Action Center, American Investment Council, and New York University School of Law.

and 842-3; CCPC §§ 182(a)(1) and (4) 186.11(a)(1) [*see* 186.2(a)(20)], 532(a) [*see* 487(a)], and 550(a)(5); and 18 U.S.C. §§ 1341, 1343, and 1348;

    b.    the invoicing of John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, and Diamond Resorts International, Inc. in the amount of the respective aggregate maximum statutory monetary value of any and all criminal offenses committed against Herman David Abel or Debora Susan Abel or Herman David Abel or Debora Susan Abel's interests, due and payable in full within twenty (20) days of the date of any such invoice therefor is sent; and

    c.    the filing in any one or more UCC filing offices or real estate recording offices of a UCC1 financing statement to secure the total respective amount of such indebtedness of John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, and Diamond Resorts International, Inc. to Lien Creditor.

**Notice and Warning to legal agents of DIAMOND.**

Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA (underline "GREENSPOON MARDER") are hereby given Notice and warned that should GREENSPOON MARDER at any time following receipt of this Demand, Notice, and Warning of Commercial Grace undertake any measure against ABEL to enforce any aforementioned *Purchase Money Note* or *Promissory Note*—each of which alleged instruments is invalid, legally unenforceable, and void for failure of consideration—any such act is without contractual or lawful authority and *wrongful* and *intentional* and GREENSPOON MARDER is liable to the Undersigned relation-back to each individual or LLP or PA's respective initial date of participation in the scam[9]; ***whereupon,*** a consensual lien shall arise[10] against the assets, land, and personal property of Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA in favor of the Undersigned in the amount of the aggregate maximum statutory monetary value of the offenses committed by GREENSPOON MARDER against ABEL; ***whereupon,*** the Undersigned can pursue any and all commercial, civil, and criminal remedies provided by law against Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, or Greenspoon Marder PA at the Undersigned's discretion without further notice, including, but not limited to:

    a.    presentment to the Palm Beach County, Florida, District Attorney; United States Attorney for the Southern District of Florida, U.S. Securities and Exchange Commission, Attorney/Consumer Assistance Program of the Department of Lawyer Regulation of The Florida Bar; Chief Attorney, First Judicial Department,

---

[9] *Accessorius sequitur naturam sui principalis.* An accessory follows the nature of his principal. BOUVIER'S, 2124.

[10] *Consentientes et agentes pari pœna plectentur.* Those consenting and those perpetrating shall receive the same punishment. *Id.* at 2128.

Attorney Grievance Committee of the New York State Unified Court System; and New York State Bar Association of an affidavit of information (criminal complaint) sworn to as true, correct, and complete before an officer of the state authorized to administer oaths and documenting and making known any and all offenses under Title XLVI of The 2019 Florida Statutes ("FS") or Title 18 of the United States Code committed by Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova,[11] Greenspoon Marder LLP, Richard Wayne Epstein, or Greenspoon Marder PA, including but not limited to FS §§ 777.03(1)(c), 777.04(1), (2), and (3), 812.014(1)(b) and (2)(a)1 [*see* 775.0844(3)(a)2 and (c)], 812.0145(2)(a), and 895.03(3) and (4); and 18 U.S.C. §§ 1341, 1343, and 1348;

b.      the invoicing of Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA in the amount of the respective aggregate maximum statutory monetary value of any and all criminal offenses committed against Herman David Abel or Debora Susan Abel or Herman David Abel or Debora Susan Abel's interests, due and payable in full within twenty (20) days of the date of any such invoice therefor is sent; and

c.      the filing in any one or more UCC filing offices or real estate recording offices of a UCC1 financing statement to secure the total respective amount of indebtedness of Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA to the Undersigned.

### Liability for frivolous response.[12]

Beyond the effort required to effectuate the remedies described above under "Notice and Warning to DIAMOND" or "Notice and Warning to legal agents of DIAMOND," any action[13] or other form of frivolous opposition that requires the time, attention, or money of the Undersigned to address or rectify is the joint-and-several liability of John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, Diamond Resorts International, Inc., Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA and, upon dismissal or judgment, as the case may be, for the Undersigned, or resolution of such other form of opposition as may arise, in favor of the Undersigned: John Joseph Suydam, Robert Kenneth Kraft, Apollo Global Management, LLC; Kenneth Steven Siegel, Jason Frederic Cohen, Diamond Resorts International, Inc., Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder LLP, Richard Wayne Epstein, and Greenspoon Marder PA will be billed therefor at the rate of Seven Hundred Fifty

---

[11] *Ratihabitio mandato æquiparatur*. Ratification is equal to a command.  BOUVIER'S, 2160.

[12] *Peccatum peccato addit qui culpæ quam facit patrocinium defensionis adjungit*. He adds one offence to another, who, when he commits a crime, joins to it the protection of a defence.  *Id*. at 2153.

[13] *Frustra legis auxilium quærit qui in legem committit*. Vainly does he who offends against the law seek the help of the law.  *Id*. at 2135.

Dollars ($750.00) per hour or any portion of an hour for the aggregate amount of any and all such time invested by Herman David Abel or Debora Susan Abel or any legal agent retained by Herman David Abel or Debora Susan Abel to deal with such action or opposition, all of which sums are due and payable in full within fifteen (15) days of the date any bill therefor is sent.

## Conclusion.

The contents of this Demand, Notice, and Warning of Commercial Grace are binding on every principal and agent re the subject matter set forth herein.

This Demand, Notice, and Warning of Commercial Grace and enclosed Affidavit of Mailing shall be entered in evidence in any civil or criminal proceeding that may arise in connection with the subject matter set forth herein.

This commercial proceeding shall be governed by the common law[14] and the contractual agreement of the parties.

Please understand the extreme seriousness of this matter and be guided accordingly.

Very truly yours,


_____          _____
Herman David Abel                          Debora Susan Abel



Enclosure:
    Affidavit of Mailing

---

[14] The law merchant—which GREENSPOON MARDER, as agent of holder of void notes in this matter, DIAMOND, seeks to enforce, via a subset thereof, the negotiable instruments law, as codified in the Hawaii Uniform Commercial Code and California Code, Commercial Code—is part of the common law; to wit:

> By the end of the seventeenth century, the courts began to recognize explicitly that the law merchant was part of the common law. In the eighteenth century . . . during the tenure of Lord Mansfield . . . from 1756 to 1788, the process of incorporation was largely completed. James Steven Rogers, *The Early History of the Law of Bills and Notes: A Study of the Origins of Anglo-American Commercial Law* (Cambridge: Press Syndicate of the University of Cambridge, 1995), 2.

# USPS Tracking®

FAQs >

## Track Another Package +

### Track Packages
### Anytime, Anywhere

Get the free In ormed Delivery® feature to receive
automated nc tifications on your packages

**Learn More**

(https://reg.usps.com

/xsell?app=UspsTools&ref=ho nepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

**Tracking Number:** 9114901496450948252586

Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 12:53
pm on January 13, 2020 in LAS VEGAS, NV 89135.

## ⊘ Delivered

January 13, 2020 at 12:53 pm
Delivered, Front Desk/Reception/Mail Room
LAS VEGAS, NV 89135

**Get Updates** ∨

---

**Text & Email Updates**          ∨

---

**Tracking History**          ∨

---

**Product Information**          ∨

---

See Less ∧

# Exhibit D

# AFFIDAVIT OF INFORMATION
## CRIMINAL COMPLAINT
## FOR PUBLIC NOTICE FILING

Herman David Abel, and )  NO. _____
Debora Susan Abel, )
 )  AFFIDAVIT OF INFORMATION
  Complainant Affiants, )
 )  CONSPIRACY [8 COUNTS].
  v. )
 )
Michael Allen Flaskey, )
Kenneth Steven Siegel, )
Charles Alan Bentley, )
Brian Paul Garavuso, )
Lisa Marie Gann, )
David Francis Palmer, )
Stephen J. Cloobeck, )
Howard Samuel Lanznar, )
Jason Frederic Cohen, )
Corrine Leah Gaxiola, and )
Diamond Resorts International, Inc., )
 )
  Defendants. )
_____)

## Introduction.

 Complainant affiants Herman David Abel and Debora Susan Abel **(collectively**

**"Complainant Affiant")** hereby present this Affidavit of Information upon probable cause

pursuant to Nevada Revised Statutes **("NRS")** § 199.480(3)(d), in respect of which, evidence of

the above offense, committed by the above-named defendants, is provided herewith.

 Defendants Michael Allen Flaskey, Kenneth Steven Siegel, Charles Alan Bentley, Brian

Paul Garavuso, Lisa Marie Gann, David Francis Palmer, Stephen J. Cloobeck, Howard Samuel

Lanznar, Jason Frederic Cohen, Corrine Leah Gaxiola, and Diamond Resorts International, Inc.

**(collectively the "Defendant")** are charged with conspiracy beginning January 5, 2014, and

continuing to the present day, but only as perpetrated during each said defendant individual's

respective tenure of employment at Diamond Resorts International, Inc.[1]

Background.

Diamond Resorts International, Inc. **("DRII")** is a timeshare developer who in Kauai

County, Hawaii, and Marin County, California (and other places), sells timeshare interests,

called memberships, associated with certain DRII timeshare resort properties.

A common DRII practice is to upgrade a customer's membership by accepting a trade-in

of the previous timeshare contract, crediting sums given, and executing a new contract.

Complainant Affiant has (a) two (2) such transactions with DRII in Kauai County,

Hawaii, with DRII, January 5, 2014, and January 12, 2017, and (b) five (5) in Marin County,

California, May 30, 2015, August 24, 2015, March 11, 2016, October 10, 2016, and July 7, 2017.

On January 5, 2014, in Kauai County, Hawaii, DRII appears to sell HERMAN DAVID

ABEL and DEBORA SUSAN ABEL **(collectively "ABEL")** a timeshare interest in alleged

DRII timeshare contract no. 17009411T—a true and correct digital copy of which is available on

the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as Exhibit A—

where, in exchange for an alleged down payment, "financed" closing costs, and a signed

promissory note for the benefit of DRII, Defendant promises to give Complainant Affiant *"a*

---

[1]  Based on admissions of Diamond Resorts International, Inc. found online, it is Complainant Affiant's
belief that the following defendant-individuals were employed by Diamond Resorts International, Inc. during the
following respective periods:

| | | |
|---|---|---|
| • | Michael Allen Flaskey: | 2010 to the present day |
| • | Kenneth Steven Siegel: | January 2017 - January 2019 |
| • | Charles Alan Bentley: | April 2007 - December 2017 |
| • | Brian Paul Garavuso: | April 2008 - April 2019 |
| • | Lisa Marie Gann | April 2007 to the present day |
| • | David Francis Palmer: | 2010 through December 2018 |
| • | Stephen J. Cloobeck: | April 2007 - September 2016 |
| • | Howard Samuel Lanznar: | 2012 - 2016 |
| • | Jason Frederic Cohen: | June 2016 to the present day |
| • | Corrine Leah Gaxiola: | 2016 to the present day |

*loan from the seller"* to purchase from DRII certain intangible personal property, specifically *"Membership in the Diamond Resorts Hawaii Collection vacation plan"* (**the "Alleged Membership"**), requiring of ABEL fees and payments of alleged principal, interest, and various other related periodic sums to DRII.

ABEL on May 30, 2015, August 24, 2015, and March 11, 2016, in Marin County, California, appears to purchase / upgrade and enter into a new contract, alleged DRII timeshare contract nos. 17159350, 17204479, and 17396537, respectively—a true and correct digital copy of each of which is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as, respectively, Exhibit B, Exhibit C, and Exhibit D—each time appearing to trade in the original alleged DRII timeshare contract, receiving credit for sums given thereunder, and appearing to execute another.

At the time of the above four (4) alleged DRII timeshare contracts, DRII is a publicly traded company on the New York Stock Exchange.

In or about September 2016, Apollo Global Management, LLC purchases DRII and takes DRII private.

ABEL on October 10, 2016, in Marin County, California, appears to upgrade and enter into alleged DRII timeshare contract no. 17634273—a true and correct digital copy of which is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as Exhibit E.

On January 12, 2017, in Kauai County, Hawaii, ABEL appears to enter into alleged DRII timeshare contract no. 17694421 and upgrade ABEL's Alleged Membership—a true and correct digital copy of which is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as Exhibit F.

ABEL on July 7, 2017, in Marin County, California, appears to upgrade and enter into alleged DRII timeshare contract no. 17583190— a true and correct digital copy of which is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as Exhibit G.

In or about June 2018, ABEL ceases giving money to Defendant and appears to default under terms of the last alleged DRII timeshare contract (i.e., Exhibit G), whereupon Defendant cuts off all of ABEL's rights to reserve, use, or occupy any DRII accommodation or to exercise any other right, benefit, or privilege appurtenant to the Alleged Membership.

No later than November 1, 2018, APOLLO conspires with DRII, who conspires with Greenspoon Marder LLP, who appears to commence against ABEL, American Arbitration Association Case Number: 01-18-0004-0924[2] **(the "Alleged Arbitration")**—a true and correct digital copy of which proceeding is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as, Exhibit H—for alleged default under the alleged promissory note associated with alleged DRII timeshare contract no. 17583190 (*see* Exhibit G).

<u>Preamble.</u>

With intent to defraud ABEL of property and deprive ABEL of ABEL's money, defendants Michael Allen Flaskey, Kenneth Steven Siegel, C. Alan Bentley, Brian Paul Garavuso, Lisa Marie Gann, David Francis Palmer, Stephen J. Cloobeck, Howard Samuel Lanznar, Jason Frederic Cohen, and Diamond Resorts International, Inc. on seven (7) occasions conspired with certain other Diamond Resorts International, Inc. employees (identified *infra*) to employ and employed an artifice which operated as a deceit upon ABEL by means of a (a) false representation of a loan of DRII's money that Defendant knew to be false and upon which

---

[2] Defendant will never sue ABEL or any other timeshare "customer" in a court of law for an unpaid balance on an alleged DRII purchase-money loan because DIAMOND cannot prove that anything was purchased with DRII's money (i.e., that DRII gave value).

Defendant intended ABEL to rely and upon which ABEL relied, and (b) material misrepresentation of fees, principal, interest, and other periodic related sums due and owing with respect to a nonexistent loan, and wherein co-conspirators in Kauai County, Hawaii, and Marin County, California, under the control of Defendant, obtained ABEL's signature to numerous documents and instruments and obtained ABEL's property (money) by material misrepresentation with intent to deprive ABEL of said property, ultimately resulting in multiple felonies under both the Hawaii Penal Code **("HPC")** and California Code, Penal Code **("CCPC")**; specifically:

- HPC felonies of *Criminal solicitation* (HPC § 705-510), *Criminal conspiracy* (HPC § 705-520), *Theft in the first degree* (HPC § 708-830.5), and *Ownership or operation of business by certain persons prohibited* (HPC § 708-842-2); and

- CCPC felonies of *Conspiracy* (182(a)(4)) and *Grand theft* (487(a)).

### Affidavit.

Wherefore, Complainant Affiant hereby solemnly swears, declares, and deposes as follows:

1.  Complainant Affiant is competent to state the matters set forth herein.

2.  Complainant Affiant has knowledge of the facts stated herein.

3.  All the facts stated herein are true, correct, and complete in accordance with Complainant Affiant's personal knowledge, and if called upon as a witness Complainant Affiant shall so testify.

### Plain statement of facts.

### Alleged DRII timeshare contract no. 17009411T (January 5, 2014, Exhibit A).

### Kauai County, Hawaii.

4.      With the intent to facilitate commission of the crime of theft and obtain ABEL's property by deception with intent to deprive ABEL of ABEL's property, Defendant no later than January 5, 2014, conspires criminally with Diamond Resorts International, Inc. employees Colin Jackson, Kerry Rath, David Jones, and Brandi Lynn-Hiranaka and, with fraudulent intent not to perform any such promise, command said employees to promise in behalf of DRII to give ABEL a purchase-money loan of DRII's money for ABEL to use to purchase the Alleged Membership and cause said employees to obtain from ABEL (a) ABEL's signature or initials to the alleged *"CREDIT SALE CONTRACT Diamond Resorts Hawaii Collection Purchase And Security Agreement"* (**"Alleged Purchase Agreement 17009411T"**), *"CREDIT SALE CONTRACT PURCHASE MONEY NOTE $41,803.00,"* and other documents of alleged DRII timeshare contract no. 17009411T (Exhibit A), and (b) an *"initial deposit"* of $5,747.00.

5.      The documents comprising Exhibit A make scores of references to an alleged loan, e.g., "purchase loan amount," "a loan," "Lender," "Amount Financed," "loan from the seller," "Borrower," "unpaid Principal," "unpaid Interest," etc.

6.      Alleged Purchase Agreement 17009411T (*see* Exhibit A) at subparagraph (a) of paragraph 10 "Default" provides in pertinent part:

> You [ABEL] will be in *default* under this Agreement if (a) you do not pay, or (b) you do not pay on time, or (c) you do not keep any other promise in this Agreement, or (d) you do not perform all of your obligations under this Agreement, your Note, and/or the Collection Instruments . . . . If you default then you cannot reserve, use, or occupy a Collection Accommodation and you cannot use any other rights, benefits, or privileges of your Alleged Membership.

7.      Beginning in or about early 2019 and ending in or about late 2019 Complainant Affiant examines all of Complainant Affiant's personal records and every record provided by Defendant with respect to alleged DRII timeshare contract no. 17009411T and determines that during the tenor of alleged DRII timeshare contract no. 17009411T:

- **The only rights in the Alleged Membership which ABEL had, used, or enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's money**.[3]

Alleged DRII timeshare contract no. 17159350 (May 30, 2015; Exhibit B).

Marin County, California.

8.      With intent that certain co-conspirators promise to make a loan to ABEL for ABEL to use to purchase from DRII the Alleged Membership, but with fraudulent intent not to perform that promise, Defendant on May 30, 2015, conspires with DRII employees Binni Thomas, Kyle Ziegler, and Quan Nguyen to obtain / collect (a) ABEL's signature to the alleged *"DIAMOND RESORTS HAWAII COLLECTION PURCHASE AND SECURITY AGREEMENT (California)"* (**"Alleged Purchase Agreement 17159350"**), *"PROMISSORY NOTE Note No. 23528542,"* and various other documents of alleged DRII timeshare contract no. 17159350 (Exhibit A), and (b) and *"Wrap Fee(s)"* $75.00 and a *"Down Payment"* of $425.00.

9.      The documents comprising Exhibit A make several hundred references to the "loan, "finance," "finance charge," "Amount Financed," or the like or inferences thereto.

10.     Alleged Purchase Agreement 17159350 (*see* Exhibit A) at subparagraph (a) of paragraph 14 "DEFAULT" provides:

> Subject to any notice and right to cure provided below[4], Purchaser [ABEL] shall be in default under this Agreement if Purchaser fails to pay on time, keep any

---

[3 Whereas, there is no evidence that DRII gave value to ABEL: The alleged *"CREDIT SALE CONTRACT PURCHASE MONEY NOTE $41,803.00"* associated with alleged DRII timeshare contract no. 17009411T is void for failure of consideration (Hawaii Code, Uniform Commercial Code § 104.3303(2)).]

[4 *"Dolus circuitu non purgator.* Fraud is not purged by circuity." John Bouvier, *Bouvier's Law Dictionary,* 3rd rev. (8th ed.), rev. by Francis Rawle (St. Paul, Minn.: West Publishing Co., 1914), 2131.]

[The subject of the referenced *"right to cure provided below"* is found in subparagraph 14(e), but does not prevent enforcement of the measures set forth in subparagraph 14(a). Rather, said provision raises another issue: *"enforce[ment] of the Seller Security Interest against the Collateral."* Because Abel received no value from DRII

promise, or fulfill any agreement or obligation contained in the Note, this Agreement or any of the Collection Instruments.  In the event of a default by Purchaser, Purchaser shall not be entitled to reserve, use, or occupy any Collection Accommodation, or to exercise any other rights, benefits, or privileges appurtenant to his or her Alleged Membership.

11.     Beginning in or about early 2019 and ending in or about late 2019 Complainant Affiant examines all of Complainant Affiant's personal records and every record provided by Defendant with respect to alleged DRII timeshare contract no. 17159350 and determines that:

- **The only rights in the Alleged Membership which ABEL had, used, or enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's money**.[5]

Alleged DRII timeshare contract nos. 17204479 (August 24, 2015; Exhibit C), 17396537 (March 11, 2016; Exhibit D), and 17634273 (October 10, 2016; Exhibit E).

Marin County, California.

12.     With intent that co-conspirators promise to make a loan to ABEL for ABEL to use to purchase the Alleged Membership, but with fraudulent intent not to perform that promise, Defendant on:

a.     August 24, 2015, conspires with DRII employees Binni Thomas, Kyle Ziegler, and Quan Nguyen to obtain / collect, in Novato, Marin County, California, (a) ABEL's signature to the alleged *"DIAMOND RESORTS HAWAII COLLECTION PURCHASE AND SECURITY AGREEMENT (California)"* (**"Alleged Purchase Agreement 17204479"**), *"PROMISSORY NOTE Note No. 23778663,"* and various other

---

(*see* paragraph 11), there can be no security interest, and therefore no collateral (California Code, Commercial Code 9203(b)), and said reference to that which is found subparagraph 14(e) is misleading.]

[5 Whereas, there is no evidence that there is no evidence that DRII gave value to ABEL: Alleged Note No. 23528542 is void for failure of consideration (California Code, Commercial Code 3303(b)).]

documents of alleged DRII timeshare contract no. 17204479 (Exhibit C), and (b) *"Wrap Fee(s)"* of $75.00 and a *"Total Down Payment"* of $1,500;

      b.    March 11, 2016, conspires with DRII employees PAUL HOOKS, Kyle Ziegler, and ROBERT NELSON to obtain / collect, in Novato, Marin County, California, (a) ABEL's signature to the alleged *"DIAMOND RESORTS HAWAII COLLECTION PURCHASE AND SECURITY AGREEMENT (California)"* (**"Alleged Purchase Agreement 17396537"**), *"PROMISSORY NOTE Note No. 24866155,"* and various other documents of alleged DRII timeshare contract no. 17396537 (Exhibit D), and (b) *"NPIF Fee(s)"* of $225.00, a down payment of $2,358.00, and *"Ascribed Equity Value of Timeshare Interest(s)"* of $16,188.79; and

      c.    October 10, 2016, conspires with DRII employees Binni Thomas, Tiffany Silva, and Quan Nguyen to obtain / collect, in Novato, Marin County, California, ABEL's signature to the alleged (a) *"DIAMOND RESORTS U.S. COLLECTION PURCHASE AND SECURITY AGREEMENT (California)"* (**"Alleged Purchase Agreement 17634273"**), *"PROMISSORY NOTE Note No. 26073911,"* and various other documents of alleged DRII timeshare contract no. 17634273 (Exhibit E), and (b) *"Wrap Fee(s)"* of $75.00 and a *"Down Payment"* of $2,125.00.

13.    The documents comprising Exhibits C, D, and E make several hundred references to a "loan" or "finance" or "finance charge" or "Amount Financed" or the like or inferences thereto.

14.    The language of each respective subparagraph 14(a) of Alleged Purchase Agreements 17204479, 17396537, and 17634273 is identical to that found in subparagraph 14(a) of Alleged Purchase Agreement 17159350 (*see* paragraph 10, *supra*, pp. 7-8).

15.     Beginning in or about early 2019 and ending in or about late 2019 Complainant
Affiant examines all of Complainant Affiant's personal records and every record provided by
Defendant with respect to alleged DRII timeshare contract nos. 17204479, 17396537, and
17634273 and determines that:

- **The only rights in the Alleged Membership which ABEL had, used, or
  enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's
  money**.[6]

Alleged DRII timeshare contract no. 17694421 (January 12, 2017, Exhibit F).

Kauai County, Hawaii.

16.     With the intent to facilitate commission of the crime of theft and obtain ABEL's
property by deception with intent to deprive ABEL of ABEL's property, Defendant no later than
January 12, 2017, conspires criminally and agrees and, with fraudulent intent not to perform any
such promise, commands DRII employees DOUGLAS BOWERS, MICHAEL HATTON,
JEFFREY HEALEY, ASHLEY ESPIRITU, and Nora Miranda to promise in behalf of
Defendant to give ABEL a purchase-money loan of DRII's money for ABEL to use to purchase
the Alleged Membership and cause said employees to obtain from ABEL (a) ABEL's signature
or initials to the alleged *"CREDIT SALE CONTRACT Diamond Resorts Hawaii Collection
Purchase And Security Agreement"* **("Alleged Purchase Agreement 17694421")**, *"CREDIT
SALE CONTRACT PURCHASE MONEY NOTE $55,298.55,"* and other documents of alleged
DRII timeshare contract no. 17694421 (Exhibit F), and (b) *"NPIF Fee(s)"* of $150.00, a *"Down
Payment"* of $11,022.00, and *"Ascribed Equity Value of Timeshare Interest(s)"* of $23,136.30.

---

[6 Whereas, there is no evidence that DRII gave value to ABEL: Alleged Note Nos. 23778663, 24866155,
and 26073911 are void for failure of consideration (California Code, Commercial Code 3303(b)).]

9.     The documents comprising Exhibit F make numerous references to an alleged loan, e.g., "purchase loan amount," "a loan," "Lender," "Amount Financed," "loan from the seller," "Borrower," "unpaid Principal," "unpaid Interest," etc.

14.     The language of subparagraph 10(a) of Alleged Purchase Agreement 17694421 is identical to that found in subparagraph 10(a) of Alleged Purchase Agreement 17009411T (*see* paragraph 10, *supra*, pp. 7-8).

15.     Beginning in or about early 2019 and ending in or about late 2019 Complainant Affiant examines all of Complainant Affiant's personal records and every record provided by Defendant with respect to alleged DRII timeshare contract no. 17694421 and determines that:

- **The only rights in the Alleged Membership which ABEL had, used, or enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's money**.[7]

Alleged DRII timeshare contract no.17583190 (July 7, 2017; Exhibit G).

(Marin County, California).

14.     With intent that co-conspirators promise to make a loan to ABEL for ABEL to use to purchase from DRII the Alleged Membership, but with fraudulent intent not to perform that promise, Defendant criminally solicits and conspires with DRII employees Binni Thomas, Tiffany Silva, and Mark Tinder to obtain / collect, in Novato, Marin County, California, (a) ABEL's signature to the alleged *"DIAMOND RESORTS U.S. COLLECTION PURCHASE AND SECURITY AGREEMENT (California)"* (**"Alleged Purchase Agreement 17583190"**),

---

[7 Whereas, there is no evidence that DRII gave value to ABEL: Alleged Note Nos. 23778663, 24866155, and 26073911 are void for failure of consideration (Hawaii Code, Uniform Commercial Code § 104.3303(2)).]

"*PROMISSORY NOTE Note No. 25833148,*" and various other documents of alleged DRII

timeshare contract no. 17583190 (Exhibit G).

15.     The documents comprising Exhibit G make several hundred references to a

"loan" or "finance" or "finance charge" or "Amount Financed" or the like or inferences thereto.

16.     The language of subparagraph 14(a) of Alleged Purchase Agreement 17583190 is

identical to that found in subparagraph 14(a) of Alleged Purchase Agreement 17159350 (*see*

paragraph 10, *supra*, pp. 7-8).

17.     Beginning in or about early 2019 and ending in or about late 2019 Complainant

Affiant examines all of Complainant Affiant's personal records and every record provided by

Defendant with respect to alleged DRII timeshare contract no. 17583190 and determines that:

- **The only rights in the Alleged Membership which ABEL had, used, or enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's money**.[8]

### Greenspoon Marder LLP.

19.     With intent to obtain money from ABEL under false pretenses of principal,

interest, and other sums related thereto due and owing on a nonexistent loan associated with

alleged note no. 25833148 of alleged DRII timeshare contract no. 17583190 (*see* Exhibit G)—

Defendant no later than November 1, 2018, conspires with Gerald Greenspoon, Michael Ellis

Marder, Victor Scott Kline, Richard Wayne Epstein, Jeffrey Aaron Backman, Mitchell Shane

Levine, Julia Stepanova, Greenspoon Marder PA, and Greenspoon Marder LLP, who commence

---

[8 Whereas, there is no evidence that DRII gave value to ABEL: Alleged Note Nos. 17634273 and 25833148 are void for failure of consideration (California Code, Commercial Code 3303(b))).]

against ABEL the Alleged Arbitration (Exhibit H) and appear to win the arbitrator's award February 7, 2020.

### Accounting of theft.

19.     With intent to obtain money by false promises of a loan, with fraudulent intent not to perform those promises, and false pretenses of principal, interest, and other periodic sums related thereto as due and owing on seven (7) alleged DRII timeshare contracts and "loans," Defendant conspired with certain other employees of DRII and through the aforesaid material misrepresentation with intent to deprive ABEL of ABEL's property, and obtained from ABEL the following sums—a true and correct digital copy of proof of DIAMOND's admission of which is available on the Internet at **https://gofile.io/?c=DbD45h** and hereby made fully part hereof as, collectively, Exhibit I, with respect to "payment" terms of the following alleged DRII timeshare contracts:

| Alleged DRII Contract No. | Date | Kauai County, Hawaii | Marin County, California |
|---|---|---|---|
| 17009411T | 01/05/2014 | $21,239.72 | |
| 17159350 | 05/30/2015 | | $7,219.50 |
| 17204479 | 08/24/2015 | | 7,755.09 |
| 17396537 | 03/11/2016 | | 14,500.71 |
| 17634273 | 10/10/2016 | | 10,332.68 |
| 17694421 | 01/12/2017 | 55,298.55 | |
| 17583190 | 07/07/2017 | | 32,704.60 |
| | Totals | $76,538.27 | $72,512.58 |
| | | Grand Total | $148,051.45 |

### IV.     Verification.

Herman David Abel and Debora Susan Abel hereby aver as to the correctness, truth, and authenticity of the contents hereof, and solemnly swear, declare, and state that Complainant Affiant executes this Affidavit on Complainant Affiant's unlimited liability, that Complainant

Affiant is competent to state the matters set forth herein, and that the facts stated herein are true,

correct, and complete in accordance with Complainant Affiant's personal knowledge.

Further Complainant Affiant sayeth naught.

Date:   Subscribed and sworn to this twentieth day of the second month in the year of our Lord
two thousand twenty [February 20, A.D. 2020], at Novato, California.

_____          _____
Herman David Abel                  Debora Susan Abel

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not
> the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF MARIN

## Jurat

Subscribed and sworn to,(or affirmed) before me this 20th day of February , 20 20 , by

Herman David Abel and Debora Susan Abel , proved to me

on the basis of satisfactory evidence to be the persons who appeared before me.

_____
Notary Public

> MARISELA BECERRA
> Notary Public - California
> Marin County
> Commission # 2274168
> My Comm. Expires Jan 3, 2023

ALL EXHIBITS REFERENCED IN THE FOREGOING PAGES CAN BE VIEWED AT:

# https://tinyurl.com/yc5wammm

# Exhibit E

# AFFIDAVIT OF INFORMATION
## CRIMINAL COMPLAINT
## FOR PUBLIC NOTICE FILING

RECEIVED

2020 FEB 24  AM 10: 01

U.S. ATTORNEY'S OFFICE
LAS VEGAS, NV

| | | |
|---|---|---|
| Herman David Abel, and | ) | NO. _____ |
| Debora Susan Abel, | ) | |
| | ) | AFFIDAVIT OF INFORMATION |
| Complainant Affiants, | ) | |
| | ) | STATEMENTS OR ENTRIES |
| v. | ) | GENERALLY [19,243 COUNTS]; |
| | ) | FRAUD BY WIRE, RADIO, OR |
| Leon David Black, | ) | TELEVISION [99 COUNTS]; |
| Joshua Harris, | ) | |
| Marc Jeffrey Rowan, | ) | |
| Scott Martin Kleinman, | ) | |
| James Charles Zelter, | ) | |
| John Joseph Suydam, | ) | |
| Robert Kenneth Kraft, | ) | |
| Martin Bernard Kelly, | ) | |
| Anthony M. Civale, | ) | |
| Cindy Zee Michel, | ) | |
| Apollo Global Management, LLC, | ) | |
| Michael Allen Flaskey, | ) | |
| Kenneth Steven Siegel, | ) | |
| Charles Alan Bentley, | ) | |
| Brian Paul Garavuso, | ) | |
| Lisa Marie Gann, | ) | |
| David Francis Palmer, | ) | |
| Stephen J. Cloobeck, | ) | |
| Howard Samuel Lanznar, | ) | |
| Jason Frederic Cohen, | ) | |
| Corrine Leah Gaxiola | ) | |
| Diamond Resorts International, Inc., | ) | |
| Gerald Greenspoon, | ) | |
| Michael Ellis Marder, | ) | |
| Victor Scott Kline, | ) | |
| Richard Wayne Epstein, | ) | |
| Jeffrey Aaron Backman, | ) | |
| Mitchell Shane Levine, | ) | |
| Julia Stepanova, | ) | |
| Greenspoon Marder PA, and | ) | |
| Greenspoon Marder LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | 18 U.S.C. § 4 |

Introduction.

Complainant affiants Herman David Abel and Debora Susan Abel (**collectively**

**"Complainant Affiant"**) hereby present this Affidavit of Information upon probable cause

pursuant to Title 18 U.S.C. §§ 4, 1001, and 1343, with respect to which, evidence of the above-

enumerated offense, committed by the above-named defendants, is provided herewith.

Leon David Black, Joshua Harris, Marc Jeffrey Rowan, Scott Martin Kleinman, James

Charles Zelter, John Joseph Suydam, Robert Kenneth Kraft, Martin Bernard Kelly, Anthony M.

Civale, Cindy Zee Michel, and Apollo Global Management, LLC (**collectively "APOLLO"**) are

charged with all above-enumerated offenses beginning October 10, 2016, and continuing to the

present day.

Michael Allen Flaskey, Kenneth Steven Siegel, Charles Alan Bentley, Brian Paul

Garavuso, Lisa Marie Gann, David Francis Palmer, Stephen J. Cloobeck, Howard Samuel

Lanznar, Jason Frederic Cohen, Corrine Leah Gaxiola, and Diamond Resorts International, Inc.

(**collectively "DIAMOND"**) are charged with all above-enumerated offenses beginning January

5, 2014, and continuing to the present day, but only those offenses perpetrated during each

defendant individual's respective tenure of employment at Diamond Resorts International, Inc.[1]

---

[1] Based on admissions of Diamond Resorts International, Inc. found online, it is Complainant Affiant's belief that the following defendant-individuals were employed by Diamond Resorts International, Inc. during the following respective periods:

- Michael Allen Flaskey:     2010 to the present day
- Kenneth Steven Siegel:     January 2017 - January 2019
- Charles Alan Bentley:      April 2007 - December 2017
- Brian Paul Garavuso:       April 2008 - April 2019
- Lisa Marie Gann:           April 2007 to the present day
- David Francis Palmer:      2010 through December 2018
- Stephen J. Cloobeck:       April 2007 - September 2016
- Howard Samuel Lanznar:     2012 - 2016
- Jason Frederic Cohen:      June 2016 to the present day
- Corrine Leah Gaxiola:      2016 to the present day

Gerald Greenspoon, Michael Ellis Marder, Victor Scott Kline, Richard Wayne Epstein, Jeffrey Aaron Backman, Mitchell Shane Levine, Julia Stepanova, Greenspoon Marder PA, and Greenspoon Marder LLP **(collectively "GREENSPOON")** are charged with all above-enumerated offenses beginning November 1, 2018, and continuing to the present day.

Background.

Diamond Resorts International, Inc. **("DRII")** is a timeshare developer headquartered in Las Vegas, Nevada, but who in Kauai County, Hawaii, and Marin County, California (and other places), appears to sell timeshare interests, called memberships, associated with certain DRII timeshare resort properties.

A common DIAMOND practice is to appear to upgrade a customer's membership by accepting a trade-in of the current timeshare contract, crediting sums given therein, and executing a new contract.

There are a total of seven (7) such transactions, i.e., alleged DRII timeshare contract no.:

- 17009411T, January 5, 2014, in Kauai County, Hawaii;;

- 17159350, May 30, 2015, in Marin County, California;

- 17204479, August 24, 2015, in Marin County, California;

- 17396537, March 11, 2016, in Marin County, California;

- 17634273, October 10, 2016, in Marin County, California;

- 17694421, January 12, 2017, in Kauai County, Hawaii; and

- 17583190, July 7, 2017, in Marin County, California,

a true and correct digital copy of which is available on the Internet at

**https://gofile.io/?c=SokvMk** and hereby made fully part hereof as, respectively, Exhibit A, B, C, D, E, F, and G.

In each of the above alleged DRII timeshare contracts, DIAMOND appears to sell HERMAN DAVID ABEL and DEBORA SUSAN ABEL **(collectively "ABEL")** a timeshare interest and ABEL appears to purchase / upgrade and enter into a new contract where, in exchange for an alleged down payment, assorted fees, closing costs, and a signed promissory note for the benefit of DRII, DIAMOND promises to give Complainant Affiant *"a loan from the seller"* or a *"purchase money loan"* to purchase from DRII certain intangible personal property, i.e., *"Membership in the Diamond Resorts Hawaii Collection vacation plan"* or *"Membership in the Diamond Resorts U.S. Collection"* **(collectively the "Alleged Membership")**, requiring of ABEL each time, payments of alleged principal, interest, and various other related periodic fees and sums to DRII.

At the time of the first four (4) alleged DRII timeshare contracts (Exhibits A through D), defendant DRII is a publicly traded company on the New York Stock Exchange.

In or about September 2016, APOLLO purchases DRII and takes DRII private.

In or about June 2018, Complainant Affiant ceases giving money to DRII and appears to default under terms of the last alleged DRII timeshare contract (i.e., Exhibit G), whereupon DIAMOND cuts off all of ABEL's rights to reserve, use, or occupy any DRII accommodation or to exercise any other right, benefit, or privilege appurtenant to the Alleged Membership.

No later than November 1, 2018, APOLLO and DIAMOND conspire with GREENSPOON, who appears to commence American Arbitration Association Case Number: 01-18-0004-0924[2] **(the "Alleged Arbitration")** against ABEL for alleged default under the alleged promissory note associated with alleged DRII timeshare contract no. 17583190 (*see* Exhibit G).

---

[2] DIAMOND will never sue ABEL or any other timeshare "customer" in a court of law for an unpaid balance on an alleged DRII purchase-money loan because DIAMOND cannot prove that anything was purchased with DRII's money (i.e., that DRII gave value). DIAMOND never having loaned ABEL anything, there is no basis for the reporting of any notice on any alleged consumer or real estate transaction to any credit reporting agency.

Affidavit.

Complainant Affiant hereby solemnly swears, declares, and deposes as follows:

1.      Complainant Affiant is competent to state the matters set forth herein.

2.      Complainant Affiant has knowledge of the facts stated herein.

3.      All the facts stated herein are true, correct, and complete in accordance with

Complainant Affiant's personal knowledge, and if called upon as a witness Complainant Affiant

shall so testify.

Plain statement of facts.

4.      Beginning in or about early 2019 and ending in or about late 2019 Complainant

Affiant examines all of Complainant Affiant's personal records and every record provided by

Defendant with respect to the seven (7) above alleged DRII timeshare contracts and determines

that during the respective tenor of each said alleged DRII timeshare contract:

- **The only rights in the Alleged Membership which ABEL had, used, or
  enjoyed were purchased with ABEL's money**; and

- **No aspect of the Alleged Membership was purchased with DRII's
  money**.[3]

5.      Having devised an artifice for obtaining ABEL's money by means of false

promises of a loan and fraudulent pretenses and representations of principal, interest, and other

related fees and sums due and owing through the aforesaid seven (7) alleged DRII timeshare

contracts (Exhibits A through G), for the purpose of executing said artifice:

- DIAMOND, beginning no later than January 2014, begins transmitting to

  Experian PLC credit bureau by means of wire communication in interstate

---

[3 Whereas, there is no evidence that DRII gave value to ABEL: The alleged respective promissory note associated with each of the above seven (7) alleged DRII timeshare contracts is void for failure of consideration (Hawaii Code, Uniform Commercial Code § 490:3-3303(b), California Code, Commercial Code 3303(b)).]

commerce, certain notices and signs regarding ABEL, a true and correct digital

copy of proof of which is available on the Internet at **https://gofile.io/?c=SokvMk**

and hereby made fully part hereof as Exhibit H;

- DIAMOND, beginning in or about July 2016, begins transmitting to ABEL by
  means of wire communication in interstate commerce certain notices, advertising,
  and pictures, a true and correct digital copy of which is available on the Internet at
  **https://gofile.io/?c=SokvMk** and hereby made fully part hereof as Exhibit I;

- APOLLO, beginning no later than October 2016, for the purpose of executing
  said artifice, conspires with DIAMOND and causes DIAMOND to begin
  transmitting to Experian PLC credit bureau by means of wire communication in
  interstate commerce, certain notices regarding ABEL (see Exhibit H); and

- APOLLO and DIAMOND, beginning no later than November 1, 2018, for the
  purpose of executing said artifice, conspire with GREENSPOON and cause
  GREENSPOON to begin transmitting to ABEL by means of wire communication
  in interstate commerce, certain notices regarding ABEL, a true and correct digital
  copy of which is available on the Internet at **https://gofile.io/?c=SokvMk** and
  hereby made fully part hereof as Exhibit J.

<u>Accounting of DIAMOND's theft.</u>

19.    Beginning January 5, 2014, and concluding June 9, 2017, DIAMOND obtains

from ABEL $148,051.45 of ABEL's money as shown *infra*—a true and correct digital copy of

proof of DIAMOND's admission of which is available on the Internet at

**https://gofile.io/?c=SokvMk** and hereby made fully part hereof as, collectively, Exhibit K, with

respect to "payment" terms of the following alleged DRII timeshare contracts:

| Alleged DRII Contract No. | Date | Kauai County, Hawaii | Marin County, California |
|---|---|---|---|
| 17009411T | 01/05/2014 | $21,239.72 | |
| 17159350 | 05/30/2015 | | $7,219.50 |
| 17204479 | 08/24/2015 | | 7,755.09 |
| 17396537 | 03/11/2016 | | 14,500.71 |
| 17634273 | 10/10/2016 | | 10,332.68 |
| 17694421 | 01/12/2017 | 55,298.55 | |
| 17583190 | 07/07/2017 | | 32,704.60 |
| | Totals | $76,538.27 | $72,512.58 |
| | | Grand Total | $148,051.45 |

<u>Verification.</u>

    Herman David Abel and Debora Susan Abel hereby aver as to the correctness, truth, and authenticity of the contents hereof, and solemnly swear, declare, and state that Complainant Affiant executes this Affidavit on Complainant Affiant's unlimited liability, that Complainant Affiant is competent to state the matters set forth herein, and that the facts stated herein are true, correct, and complete in accordance with Complainant Affiant's personal knowledge.

Further Complainant Affiant sayeth naught.

Date:   Subscribed and sworn to this twentieth day of the second month in the year of our Lord two thousand twenty [February 20, A.D. 2020], at Novato, California.

_____
Herman David Abel

_____
Debora Susan Abel

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF MARIN

## Jurat

Subscribed and sworn to (or affirmed) before me this _20th_ day of _February_, 20 _20_, by _Herman David Abel and Debora Susan Abel_, proved to me on the basis of satisfactory evidence to be the persons who appeared before me.

MARISELA BECERRA
Notary Public - California
Marin County
Commission # 2274168
My Comm. Expires Jan 3, 2023

_____
Notary Public

ALL EXHIBITS REFERENCED IN THE FOREGOING PAGES CAN BE VIEWED AT:

# https://tinyurl.com/yc5wammm

# Exhibit F

64 Montego Key.
Novato, California 94949.

January 22, 2020.

> **Be advised:** This Demand, Notice, and Warning of Commercial
> Grace is an important commercial instrument that could affect your
> property or rights to property or carry other serious consequences.

| | |
|---|---|
| Intermarketing Media, LLC, doing business as | 9114 9014 9645 0948 4960 89. |
|    Resort Advisory Group | |
| Jason A. Krieck | 9114 9014 9645 0948 4960 96. |
| Thomas Hunt McCarty | 9114 9014 9645 0948 4961 02. |
| Eric George Kittler | 9114 9014 9645 0948 4961 19. |
| Michael Krieck | 9114 9014 9645 0948 4961 26. |
| Bo Wilson | 9114 9014 9645 0948 4961 33. |

     27201 Puerta Real, Suite 300
     Mission Viejo, California 92691

David Alan Klein                                 9114 9014 9645 0948 4961 40.
Ten Grove Street
Haddonfield, NJ 08033

Re:    Your alleged July 3, 2018, contract with us.

## Demand, Notice, and Warning of Commercial Grace.

The subject of your alleged contract with us regarding the Diamond Hawaii Collection ( "Your Alleged Contract") is alleged Diamond Resorts International, Inc. ("DIAMOND") contract nos. 17694421 and 17583190 (collectively the "Alleged Diamond Contracts").

At great expense of time, energy, and money, we recently completed analysis of the transactions associated with the Alleged Diamond Contracts and determined that there is no evidence:

- that anything was purchased with DIAMOND's money;
- of a loan from DIAMOND;
- that DIAMOND gave us value;
- of any purchase-money collateral;
- of any security interest in personal property;
- that we ever held any interest in any collateral;
- that we are a consumer debtor to DIAMOND;
- that we are a consumer obligor to DIAMOND; or
- of a consumer transaction.

Whereas, we entered into the Alleged Diamond Contracts believing that we were receiving loans of DIAMOND's money and DIAMOND promised to give us such loans, but omitted to give us a loan and charged us principal, interest, and fees on nonexistent loans: The alleged promissory

notes associated with the Alleged Diamond Contracts are naked,[1] simulated contracts[2] and invalid, legally unenforceable, and void *ab initio* for failure of consideration.

At the time we appeared to enter into contract with Resort Advisory Group July 3, 2018, DIAMOND had no enforceable contractual right[3] against us.

What the foregoing means is that:

- Resort Advisory Group sold us "services" which we did not need and which could not be delivered by Resort Advisory Group by reason of impossibility;

- Every single word uttered by Resort Advisory Group, whether in writing or verbally in person or electronically or over the phone in interstate commerce, with respect to Your Alleged Contract,[4] is false and fraudulent[5] and evidence of either (a) gross negligence,[6] or (b) criminal wrongdoing; and

- All funds given to Resort Advisory Group by us were given by mistake.[7]

## Demand.

Wherefore: Demand is hereby made for return, within twenty (20) days of date of delivery of this Demand, Notice, and Warning of Commercial Grace, the commercially reasonable sum of treble the total amount of money we mistakenly gave Resort Advisory Group in respect of Your Alleged Contract, i.e., 3 X $19,500, or **$58,500.00**.

## Notice and Warning.

Whereas, mistakes are forgivable in law and it is possible that your acts and omissions against and with respect to us were committed or ignored by you due strictly to incompetence, your failure / refusal to give us, in the commercially reasonable manner demanded hereinabove, the aforesaid commercially reasonable sum of $58,500.00, signifies that your aforementioned alleged contract is not a result of *mistake* on your part but rather deception with intent to deprive us of our money and *intentional*[8]; ***whereupon,*** any failure / refusal to honor the above demand, a consensual lien shall arise against the assets, land, and personal property of Intermarketing

---

[1] A naked contract is one made without consideration, and for that reason it is void. . . . John Bouvier, *Bouvier's Law Dictionary*, 3rd rev. (8th ed.), rev. by Francis Rawle (St. Paul, Minn.: West Publishing Co., 1914) (hereinafter "Bouvier's"), 2285, s.v. "Naked."

[2] *simulated contract. Civil law*. A contract that, although clothed in concrete form, has no existence in fact; a sham contract. ● A simulated contract can be declared a sham and avoided by an interested party, including a creditor of one of the parties to the contract. *Black's Law Dictionary*, 7th ed., Bryan A. Garner, ed. in chief (St. Paul, Minn.: West Group, 1999), 325, s.v. "Contract."

[3] *Jus ex injuria non oritur*. A right cannot arise from a wrong. Bouvier's, 2141.

[4] *Dolus circuitu non purgator*. Fraud is not purged by circuity. *Id*. at 2131.

[5] *Fraus est celare fraudem*. It is a fraud to conceal a fraud. *Id*. AT 2135.

[6] *Lata culpa dolo æquiparatur*. Gross negligence is equal to fraud. *Id*. at 2142.

[7] Cujus per errorem dati repetitio est, ejus consulto dati donatio est. He who gives a thing by mistake has a right to recover it back ; but, if he gives designedly, it is a gift. Henry Campbell Black, *A Dictionary of Law* (St. Paul, Minn.: West Publishing Co. 1891), 306.

[8] Once a fraud, always a fraud. Bouvier's, 2152.

Media, LLC, Jason A. Krieck, Thomas Hunt McCarty, Eric George Kittler, Michael Krieck, Bo Wilson, and David Alan Klein (collectively the "Lien Debtors," individually a "Lien Debtor") in favor of Herman David Abel and Debora Susan Abel (collectively the "Lien Creditor"), in the amount of the aggregate maximum statutory monetary value of the respective criminal offenses committed against Lien Creditor since and including July 3, 2018; *__whereupon,__* Lien Creditor can pursue any and all commercial, civil, or criminal remedies provided by law against Lien Debtors at Lien Creditor's discretion without further notice, including, but not limited to:

- presentment to the San Diego and Orange County, California, and Camden County, New Jersey, District Attorneys; United States Attorneys for the Southern and Central Districts of California and District of New Jersey, Office of Attorney Ethics of the Supreme Court of New Jersey, New Jersey State Bar Association, and the Pennsylvania Bar Association Disciplinary Board of an affidavit of information (criminal complaint) sworn to as true, correct, and complete and documenting and making known any and all offenses under California Code, Penal Code ("CCPC"), the New Jersey Code of Criminal Justice ("NJCCJ"), or Title 18 of the United States Code ("U.S.C.") committed by any Lien Debtor, including, but not limited to, CCPC §§ 182(a)(4), 487(a), and 532(a); NJCCJ §§ 2C:5-2; and 18 U.S.C. §§ 1001 and 1343;

- the invoicing of Lien Debtors in the amount of the respective aggregate maximum statutory monetary value of any and all criminal offenses committed against Lien Creditor or Lien Creditor's interests, due and payable in full within twenty (20) days of the date any such invoice therefor is sent; and

- the filing in any one or more UCC filing offices or real estate recording offices of a UCC1 financing statement to secure the total respective amount of indebtedness of any Lien Debtor to Lien Creditor.

The contents of this Demand, Notice, and Warning of Commercial Grace are binding on every principal and agent re the subject matter set forth herein.

This letter and enclosure shall be entered in evidence in any civil or criminal proceeding that may arise in connection with the subject matter set forth herein.

Please understand the extreme seriousness of this matter and be guided accordingly.

Very truly yours,


_____          _____
Herman David Abel                                 Debora Susan Abel


Enclosure:
    Affidavit of Mailing

Form DNWCG-012220-RAG                3

# Affidavit of Mailing

I am over 18 years of age and not a party to the within action.  My business address is:

> Gretchen Gabriel Babineaux
> 180 Montura Way
> Novato, CA 94949

On the 22nd day of January 2020, I mailed one (1) original of the following:

- **Demand, Notice, and Warning of Commercial Grace, Form DNWCG-012220-RAG**, dated January 22, 2020, signed by Herman David Abel and Debora Susan Abel, three (3) pages in length,

a total of three (3) pages mailed herewith, including all attachment pages (not including this Affidavit of Mailing) by, as shown below, United States Postal Service Priority Mail, in a sealed envelope with postage pre-paid, properly addressed as follows to the following parties:

| | |
|---|---|
| Intermarketing Media, LLC | 9114 9014 9645 0948 4960 89. |
| Jason A. Krieck | 9114 9014 9645 0948 4960 96. |
| Thomas Hunt McCarty | 9114 9014 9645 0948 4961 02. |
| Eric George Kittler | 9114 9014 9645 0948 4961 19. |
| Michael Krieck | 9114 9014 9645 0948 4961 26. |
| Bo Wilson | 9114 9014 9645 0948 4961 33. |
|     27201 Puerta Real, Suite 300 | |
|     Mission Viejo, California 92691 | |
| | |
| David Alan Klein | 9114 9014 9645 0948 4961 40. |
| Ten Grove Street | |
| Haddonfield, NJ 08033 | |

I hereby declare upon penalty of perjury under the laws of the State of California, that the above is true, correct, and complete and that this Affidavit of Mailing is executed January 22, 2020, at Novato, California.

_____
Gretchen Gabriel Babineaux

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF MARIN

# Jurat

Subscribed and sworn to (or affirmed) before me this _____ day of _____ 20____,

by _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public

# USPS Tracking®

FAQs >

## Track Another Package +

### Track Packages
### Anytime, Anywhere

Get the free In ormed Delivery® feature to receive automated nc tifications on your packages

**Learn More**

**(https://reg.usps.com**

**/xsell?app=UspsTools&ref=ho nepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)**

**Tracking Number:** 9114901496450948496140

Remove ✕

Your item was delivered in or at the mailbox at 10:55 am on January 24, 2020 in HADDONFIELD, NJ 08033.

## ⊘ Delivered

January 24, 2020 at 10:55 am
Delivered, In/At Mailbox
HADDONFIELD, NJ 08033

### Get Updates ∨

| | |
|---|---|
| **Text & Email Updates** | ∨ |
| **Tracking History** | ∨ |
| **Product Information** | ∨ |

See Less ∧

# Exhibit G

DISTRICT ATTORNEY
RECEIVED

# AFFIDAVIT OF INFORMATION
## CRIMINAL COMPLAINT 2020 MAR -4  AM 8: 06
### FOR PUBLIC NOTICE FILING

|  |  |
|---|---|
| Herman David Abel, and | ) CASE NO. 2020CS0014 |
| Debora Susan Abel, | ) |
|  | ) AFFIDAVIT OF INFORMATION |
| Complainant Affiants, | ) |
|  | ) CONSPIRACY; CRIMINAL |
| v. | ) PROFITEERING; GRAND THEFT; |
|  | ) FRAUD. |
| Intermarketing Media, LLC, doing business as | ) |
| Resort Advisory Group, | ) |
| Jason Krieck, | ) |
| Thomas Hunt McCarty, | ) |
| Eric George Kittler, | ) |
| Michael Krieck, | ) |
| David Alan Klein, and | ) |
| Bo Wilson, | ) |
|  | ) |
| Defendants. | ) |

## Introduction.

Complainant affiants Herman David Abel and Debora Susan Abel hereby present this

Affidavit of Information upon probable cause pursuant to California Code, Penal Code

(**"CCPC"**) §§ 182(a)(4), 186.2(a)(16), 487(a), and 532, with respect to which, evidence of the

above-enumerated offenses, committed by the above-named defendants, through planning and

coordination of individual efforts, with intent to defraud Herman David Abel and Debora Susan

Abel (**collectively "Complainant Affiant"**) of money through false representations and

promises with fraudulent intent not to perform those promises, Intermarketing Media, LLC,

doing business as Resort Advisory Group; Jason Krieck, Thomas Hunt McCarty, Eric George

Kittler, Michael Krieck, David Alan Klein, and Bo Wilson,[1] (**collectively the "Defendant"**),

---

[1] Bo Wilson is charged with violations of CCPC §§ 182(a)(4) and 532 only as committed by Bo Wilson in
Bo Wilson's capacity as principal executive of Resort Advisory Group beginning July 1, 2019.

conspired to employ and knowingly and designedly employed a scheme predicated on false promises of delivery of *"[timeshare contract] termination related Services"* which would provide Complainant Affiant with relief from enforcement, by timeshare-developer Diamond Resorts International, Inc. **("DRII")** of certain contractual rights allegedly held by DRII, a situation which Defendant knew to be nonexistent and upon which promises Defendant intended Complainant Affiant to rely and upon which Complainant Affiant relied to Complainant Affiant's detriment, resulting in loss of money by Complainant Affiant in an amount constituting grand theft.

<u>Affidavit.</u>

Complainant Affiant hereby solemnly swears, declares, and deposes as follows:

1.     Complainant Affiant is competent to state the matters set forth herein.

2.     Complainant Affiant has knowledge of the facts stated herein.

3.     All the facts stated herein are true, correct, and complete in accordance with Complainant Affiant's personal knowledge, and if called upon as a witness Complainant Affiant shall so testify.

<u>Plain statement of facts.</u>

<u>Background.</u>

4.     DRII is a timeshare developer who in Kauai County, Hawaii, and Marin County, California (and other places), sells alleged timeshare interests, called memberships, associated with certain DRII timeshare resort properties.

5.     A common DRII practice is to upgrade a customer's alleged membership by accepting a trade-in of the previous alleged timeshare contract, crediting sums given, and executing a new contract.

6.      On January 12, 2017, in Kauai County, Hawaii, Complainant Affiant upgrades Complainant Affiant's alleged membership with DRII **(the "Alleged DRII Membership")** and enters into a new contract, alleged DRII timeshare contract no. 17694421, trading in the original contract and receiving credit for sums given thereunder.

7.      On July 7, 2017, in Marin County, California, Complainant Affiant again upgrades the Alleged DRII Membership and enters into alleged DRII timeshare contract no. 17583190, trading in alleged DRII timeshare contract no. 17694421 (*supra*) and receiving credit for sums given thereunder.

8.      In or about June 2018, Complainant Affiant ceases giving money to DRII.

9.      On or about 11:25 A.M. December 27, 2019, John Arthur Pressney and Pamela Morgon Pressney lodge with the Office of the San Diego County District Attorney Consumer Protection Unit an Affidavit of Information the subject of which is Defendant, alleging three (3) incidents each of conspiracy, grand theft, and fraud and providing evidence thereof, the original of which is available in the record of this case (Case No. 2020CS0014), a true and correct of which is attached hereto or available digitally at **https://gofile.io/?c=iRKiAQ** and hereby made fully part hereof as Exhibit A.

<u>Relations with Defendant.</u>

10.     On July 3, 2018, Complainant Affiant appears to enter into contract with Defendant by executing Defendant's alleged "Services Agreement" and "STATEMENT OF UNDERSTANDING" **(collectively the "Alleged Contract")**— a true and correct of which is attached hereto or available digitally at **https://gofile.io/?c=iRKiAQ** and hereby made fully part hereof as, collectively, Exhibit B.

11.     The subject of the Alleged Contract is what Defendant describes as

*"termination/transfer"* of Complainant Affiant's alleged timeshare contract with DRII.

12.     Defendant makes, among others, the following express material representations

and promises in the alleged Services Agreement (*see* Exhibit B):

- RA Group will terminate/transfer Your current Timeshare. If your Purchase Agreement is not terminated, transferred, or current contract is not rolled back to a previous contract or agreed to be by the developer . . . within eighteen (18) months of RA-Group's receipt of the entire FEE . . . (paragraph 1a, p. 1)

- Except in the case where You obtained a developer offered mortgage, You understand that You are responsible to continue to make all payments on any financing used to pay for any part of the Timeshare. . . . You are still responsible for the mortgage until the termination/transfer is completed. . (paragraph 1b, p. 1)

- [T]he term of this Agreement shall be eighteen (18) months and shall terminate upon the earlier of: (i) the termination/transfer, or current contract roll back of Your Timeshare . . . . (paragraph 2, p. 2)

- [S]ome resorts/clubs may require a cancellation fee or the like to end an ownership. These fees will be no greater than the amount of twelve (12) month's maintenance fees, except in the case where all past maintenance fees are also required. Should this be the case You will be required to pay the fee(s) to the Developer/Club for a successful termination/transfer. (paragraph 4d, p. 3)

- You are guaranteed that your Timeshare will be terminated/transferred; that you [*sic*] will receive an offer from the Assignor of Your Timeshare; Your Timeshare will be placed back to a previous [*sic*] traded Timeshare; or that You can be relieved of Your entire ownership subject to your full compliance with the terms and conditions set forth in this Agreement. (paragraph 5, p. 4)

13.     Receiving no joy from Resort Advisory Group's alleged services, Complainant

Affiant, in self-defense against DRII, beginning in or about early 2019 and ending in or about

late 2019, examines all of Complainant Affiant's personal records and every record provided by

DRII with respect to alleged DRII timeshare contract nos. 17694421 and 17583190 and

determines that:

- The only rights in the Alleged DRII Membership which Complainant Affiant had, used, or enjoyed were purchased with Complainant Affiant's money;

- No aspect of the Alleged DRII Membership was purchased with DRII's money[2]; and

- At the time Complainant Affiant appears to enter into contract with Resort Advisory Group July 3, 2018, (a) DRII has no enforceable contractual right against Complainant Affiant, and (b) Resort Advisory Group's "services" are a ruse.

14. Beginning no later than July 3, 2018, and continuing to the present day: Through planning and coordination of individual efforts and with intent that others defraud Complainant Affiant of money in Novato, Marin County, California, Defendant agrees with Jason Krieck, Thomas Hunt McCarty, Eric George Kittler, and Michael Krieck that one or more of them will make false promises and representations to Complainant Affiant that he or they will *"terminate/transfer"* a nonexistent contract with DRII, with fraudulent intent not to perform those promises by reason of impossibility (nothing in the subject matter) and thereafter knowingly and designedly, under false pretenses, obtain from Complainant Affiant money an amount constituting grand theft (*infra*).

15. With respect to the Alleged Contract, Complainant Affiant on the following dates mistakenly gives Defendant the following amounts—a true and correct of proof of which is attached hereto or available digitally at **https://gofile.io/?c=iRKiAQ** and hereby made fully part hereof as Exhibit C:

---

[2 Whereas, there is no evidence that DRII gave value to Complainant Affiant: The alleged promissory notes associated with alleged DRII timeshare contract nos. 17694421 (Hawaii) and 17583190 (California) are void for failure of consideration (Hawaii Code, Uniform Commercial Code § 490:3-303(b); California Code, Commercial Code 3303(b)).]

| Date | Amount |
|------|--------|
| 07/06/2018 | $9,000 |
| 08/08/2018 | 3,500 |
| 09/07/2018 | 3,500 |
| 10/06/2018 | 3,500 |
| **Total** | $19,500 |

16.     In respect of the modus operandi of DRII, Complainant Affiant in or about early 2020 begins documenting the criminal offenses committed by DRII principals and agents against Complainant Affiant and on February 20, 2020, executes an affidavit of information (criminal complaint), sworn to as true, correct, and complete before an officer of the state authorized to administer oaths, making known all such offenses committed under the laws of Hawaii, California, New York, Nevada, and New York and Title 18 of the United States Code, to be lodged with the:

a.     district attorney of Clark County, Nevada; Kauai County, Hawaii; Marin County, California; New York County, New York; and Broward County, Florida— a certified copy of which is either attached hereto or available digitally at **https://gofile.io/?c=iRKiAQ** and hereby made fully part hereof as, respectively, Exhibit D, E, F, G, and H; and

b.     United States attorney for the districts of Nevada, Hawaii, Northern California, Southern New York, and Southern Florida— a certified copy of which is either attached hereto or available digitally at **https://gofile.io/?c=iRKiAQ** and hereby made fully part hereof as Exhibit I; and

17.     Complainant Affiant on February 24, 2020, lodges with the Office of the District Attorney, Clark County, Nevada, and Office of the United States Attorney for the District of Nevada against certain principals and agents of DRII, an affidavit of information, averring as to

commission of the offenses described in, respectively, Nevada Revised Statutes § 199.480(3)(d)

(*see* Exhibit D) and 18 U.S.C. §§ 1001 and 1343 (*see* Exhibit I).

### Verification.

Herman David Abel and Debora Susan Abel hereby aver as to the correctness, truth, and

authenticity of the contents hereof, and solemnly swear, declare, and state that Complainant

Affiant executes this Affidavit on Complainant Affiant's unlimited liability, that Complainant

Affiant is competent to state the matters set forth herein, and that the facts stated herein are true,

correct, and complete in accordance with Complainant Affiant's personal knowledge.

Further Complainant Affiant sayeth naught.

Date: Subscribed and sworn to this second day of the third month in the year of our Lord two
thousand twenty [March 2, A.D. 2020], at, respectively, Novato and Eureka, California.

_____

Herman David Abel

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF MARIN

**Jurat**

Subscribed and sworn to (or affirmed) before me this ___2___ day of ___March___, 20_20_, by

___Herman David Abel___, proved to me on the basis of satisfactory evidence to be

the person who appeared before me.

DEBRA J. FOX
Notary Public - California
Marin County
Commission # 2239656
My Comm. Expires May 21, 2022

_____
Notary Public

*(continued on next page)*

Debora Susan Abel

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF HUMBOLDT

# Jurat

Subscribed and sworn to (or affirmed) before me this _2nd_ day of _March_ , 20_20_ , by
_Debora Susan Abel_ , proved to me on the basis of satisfactory evidence to be

the person who appeared before me.

D. R. HOFFMAN
Notary Public - California
Humboldt County
Commission # 2313009
My Comm. Expires Dec 17, 2023

Notary Public

# Exhibit H

# AFFIDAVIT OF INFORMATION
## CRIMINAL COMPLAINT
### FOR PUBLIC NOTICE FILING

RECEIVED

MAR 0 4 2020

U.S. Attorney's Office
San Diego, CA 92101

Herman David Abel, and
Debora Susan Abel,

    Complaint Affiants,

        v.

Intermarketing Media, LLC, doing business as
      Resort Advisory Group,
Jason Krieck,
Thomas Hunt McCarty,
Eric George Kittler,
Michael Krieck,
David Alan Klein, and
Bo Wilson,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. _____

AFFIDAVIT OF INFORMATION

FALSE STATEMENTS [1,053 COUNTS];
MAIL FRAUD [4 COUNTS]; WIRE
FRAUD [27 COUNTS].

18 U.S.C. § 4

## Introduction.

Complainant affiants Herman David Abel and Debora Susan Abel hereby present this

Affidavit of Information upon probable cause pursuant to Title 18 United States Code **("U.S.C.")**

§§ 4, 1001, 1341, and 1343, in respect of which, evidence of the above-enumerated offenses,

committed by the above-named defendants, having devised an artifice to obtain money from

Herman David Abel and Debora Susan Abel **(collectively "Complainant Affiant")** predicated

on false representations and false promises of *"[timeshare contract] termination related*

*Services"* with respect to nonexistent contracts that Complainant Affiant allegedly had with

timeshare developer Diamond Resorts International, Inc. **("DRII")**, Intermarketing Media, LLC,

doing business as Resort Advisory Group; Jason Krieck, Thomas Hunt McCarty, Eric George

Kittler, Michael Krieck, Bo Wilson,[1] and David Alan Klein (**collectively the "Defendant"**), used false writings knowing the same to contain materially fictitious statements and, for the purpose of executing said artifice and obtaining money from Complainant Affiant thereby, transmitted false writings to Complainant Affiant by means of wire in interstate commerce.

## Affidavit.

Complainant Affiant hereby solemnly swears, declares, and deposes as follows:

1.      Complainant Affiant is competent to state the matters set forth herein.

2.      Complainant Affiant has knowledge of the facts stated herein.

3.      All the facts stated herein are true, correct, and complete in accordance with Complainant Affiant's personal knowledge, and if called upon as a witness Complainant Affiant shall so testify.

## Plain statement of facts.

## Background.

4.      DRII is a timeshare developer who in Kauai County, Hawaii, and Marin County, California (and other places), sells alleged timeshare interests, called memberships, associated with certain DRII timeshare resort properties.

5.      A common DRII practice is to upgrade a customer's alleged membership by accepting a trade-in of the previous alleged timeshare contract, crediting sums given, and executing a new contract.

6.      On January 12, 2017, in Kauai County, Hawaii, Complainant Affiant upgrades Complainant Affiant's alleged membership with DRII (**the "Alleged DRII Membership"**) and

---

[1] Bo Wilson is charged with violations of CCPC §§ 182(a)(4) and 532 only as committed by Bo Wilson in Bo Wilson's capacity as principal executive of Resort Advisory Group beginning July 1, 2019.

enters into a new contract, alleged DRII timeshare contract no. 17694421, trading in the original contract and receiving credit for sums given thereunder.

7.      On July 7, 2017, in Marin County, California, Complainant Affiant again upgrades the Alleged DRII Membership and enters into alleged DRII timeshare contract no. 17583190, trading in alleged DRII timeshare contract no. 17694421 (*supra*) and receiving credit for sums given thereunder.

8.      In or about June 2018, Complainant Affiant ceases giving money to DRII.

<u>Relations with Defendant.</u>

9.      On July 3, 2018, Complainant Affiant appears to enter into contract with Defendant by executing Defendant's alleged "Services Agreement" and attached "STATEMENT OF UNDERSTANDING" **(collectively the "Alleged Contract")**—a true and correct copy of which is attached hereto or available digitally at **https://gofile.io/?c=mGFiAe** and hereby made fully part hereof as, collectively, Exhibit A.

10.     The subject of the Alleged Contract is what Defendant describes as *"termination/transfer"* of Complainant Affiant's alleged timeshare contract with DRII.

11.     Defendant makes, among others, the following express material representations and promises in the alleged Services Agreement (*see* Exhibit A):

- RA Group will terminate/transfer Your current Timeshare.  If your Purchase Agreement is not terminated, transferred, or current contract is not rolled back to a previous contract or agreed to be by the developer . . . within eighteen (18) months of RA-Group's receipt of the entire FEE . . . (paragraph 1a, p. 1)

- Except in the case where You obtained a developer offered mortgage, You understand that You are responsible to continue to make all payments on any financing used to pay for any part of the Timeshare. . . . You are still responsible for the mortgage until the termination/transfer is completed. . (paragraph 1b, p. 1)

- [T]he term of this Agreement shall be eighteen (18) months and shall terminate upon the earlier of: (i) the termination/transfer, or current contract roll back of Your Timeshare . . . . (paragraph 2, p. 2)

- [S]ome resorts/clubs may require a cancellation fee or the like to end an ownership. These fees will be no greater than the amount of twelve (12) month's maintenance fees, except in the case where all past maintenance fees are also required. Should this be the case You will be required to pay the fee(s) to the Developer/Club for a successful termination/transfer. (paragraph 4d, p. 3)

- You are guaranteed that your Timeshare will be terminated/transferred; that you [sic] will receive an offer from the Assignor of Your Timeshare; Your Timeshare will be placed back to a previous [sic] traded Timeshare; or that You can be relieved of Your entire ownership subject to your full compliance with the terms and conditions set forth in this Agreement. (paragraph 5, p. 4)

12.     Receiving no joy from Resort Advisory Group's alleged services, Complainant Affiant, in self-defense against DRII, beginning in or about early 2019 and ending in or about late 2019, examines all of Complainant Affiant's personal records and every record provided by DRII with respect to alleged DRII timeshare contract nos. 17694421 and 17583190 and determines that:

- The only rights in the Alleged DRII Membership which Complainant Affiant had, used, or enjoyed were purchased with Complainant Affiant's money;

- No aspect of the Alleged DRII Membership was purchased with DRII's money[2]; and

- At the time Complainant Affiant appears to enter into contract with Resort Advisory Group July 3, 2018, (a) DRII has no enforceable contractual right against Complainant Affiant, and (b) Resort Advisory Group's "services" are a ruse.

---

[2 Whereas, there is no evidence that DRII gave value to Complainant Affiant: The alleged promissory notes associated with alleged DRII timeshare contract nos. 17694421 (Hawaii) and 17583190 (California) are void for failure of consideration (Hawaii Code, Uniform Commercial Code § 490:3-303(b); California Code, Commercial Code 3303(b)).]

13.     Beginning July 3, 2018, and continuing to October 6, 2018, Jason Krieck, Thomas Hunt McCarty, Eric George Kittler, Michael Krieck, and David Alan Klein conspire to obtain and knowingly and designedly obtain money from Complainant Affiant by false promises and representations to *"terminate/transfer"* a nonexistent contract with DRII, with fraudulent intent not to perform those representations by reason of impossibility (nothing in the subject matter), and obtain from Complainant Affiant money in an amount constituting grand theft.

14.     With respect to the Alleged Contract, Complainant Affiant on the following dates mistakenly gives DRII the following amounts of money—a true and correct copy of proof of which is attached hereto or available digitally at **https://gofile.io/?c=mGFiAe** and hereby made fully part hereof as Exhibit B:

| Date | Amount |
|------|--------|
| 07/06/2018 | $9,000 |
| 08/08/2018 | 3,500 |
| 09/07/2018 | 3,500 |
| 10/06/2018 | 3,500 |
| **Total** | $19,500 |

15.     In respect of the modus operandi of DRII, Complainant Affiant in or about early 2020 begins documenting the criminal offenses committed by DRII principals and agents against Complainant Affiant and on February 20, 2020, executes an affidavit of information (criminal complaint), sworn to as true, correct, and complete before an officer of the state authorized to administer oaths, making known all such offenses committed under the laws of Hawaii, California, New York, Nevada, and New York and Title 18 of the United States Code, to be lodged with the:

a.      district attorney of Clark County, Nevada; Kauai County, Hawaii; Marin County, California; New York County, New York; and Broward County,

Florida—a certified copy of which is attached hereto or available digitally at **https://gofile.io/?c=mGFiAe** and hereby made fully part hereof as, respectively, Exhibit C, D, E, F, and G; and

  b.   United States attorney for the districts of Nevada, Hawaii, Northern California, Southern New York, and Southern Florida—a certified copy of which is either attached hereto or available digitally at **https://gofile.io/?c=mGFiAe** and hereby made fully part hereof as Exhibit H.

16.   Complainant Affiant on February 24, 2020, lodges with the Office of the District Attorney, Clark County, Nevada, and Office of the United States Attorney for the District of Nevada against Defendant and certain other principals and agents of DRII, an affidavit of information as to commission of the offenses described in, respectively, Nevada Revised Statutes § 199.480(3)(d) (*see* Exhibit C) and 18 U.S.C. §§ 1001 and 1343 (*see* Exhibit H).

17.   For the purpose of executing the above-described artifice (obtaining Complainant Affiant's money by means of false representations and promises to *"terminate/transfer"* a nonexistent contract, with fraudulent intent not to perform those representations by reason of impossibility), Defendant between July 5, 2018, and February 3, 2020, (a) transmits to Complainant Affiant by means of wire communication in interstate commerce certain writings, and (b) knowingly causes to be delivered to Complainant Affiant by mail certain written correspondence—a true and correct copy of which is either attached hereto or available digitally at **https://gofile.io/?c=mGFiAe** and hereby made fully part hereof as, respectively, Exhibit I.

Verification.

Herman David Abel and Debora Susan Abel hereby aver as to the correctness, truth, and authenticity of the contents hereof, and solemnly swear, declare, and state that Complainant Affiant executes this Affidavit on Complainant Affiant's unlimited liability, that Complainant Affiant is competent to state the matters set forth herein, and that the facts stated herein are true, correct, and complete in accordance with Complainant Affiant's personal knowledge.

Further Complainant Affiant sayeth naught.

Date: Subscribed and sworn to this second day of the third month in the year of our Lord two thousand twenty [March 2, A.D. 2020], at, respectively, Novato and Eureka, California.

_____
Herman David Abel

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF MARIN

**Jurat**

Subscribed and sworn to (or affirmed) before me this ___ day of _____, 20___, by
_____, proved to me on the basis of satisfactory evidence to be

the person who appeared before me.

_____
Notary Public

DEBRA J. FOX
Notary Public - California
Marin County
Commission # 2239656
My Comm. Expires May 21, 2022

*(continued on next page)*

Affidavit of Information / Criminal Complaint for Public Notice Filing
Page 7 of 8

Debora Susan Abel

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF HUMBOLDT

# Jurat

Subscribed and sworn to (or affirmed) before me this __2nd__ day of __MARCH__ , 20__20__ , by
__Debora Susan Abel__ , proved to me on the basis of satisfactory evidence to be

the person who appeared before me.

D. R. HOFFMAN
Notary Public - California
Humboldt County
Commission # 2313009
My Comm. Expires Dec 17, 2023

Notary Public