**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
bryan@altmanlawgroup.net

**LAW OFFICES OF WILIAM I. ROTHBARD**
William I. Rothbard (SBN 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP; LAW OFFICES OF DAVID ALAN KLEIN, P.C.; and DAVID ALAN KLEIN, ESQUIRE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BRENT DAVID BARLOW, an individual; BARLOW & ASSOCIATES, a law firm; COOPERATIVE DISPUTE RESOLUTION SOCIETY (unknown entity type/location); PHOENIX INVESTMENTS ALLIANCE, LLC, a limited liability company; ATTFUND (unknown entity type/location); CASE IN CHIEF LLC, a California Limited Liability Company; JOHN PRESSNEY, PAMELA PRESSNEY, HERMAN ABEL, DEBORA ABEL, MORRIS HANNAH, VIRGINIA HANNAH, LEE HARRIS TURK, BERNARDO BETTINELLI, CAROL BETTINELLI, LARI CASTLE, GILBERT CASTRO, EVA | CASE NO.: 8:20-cv-00889-JLS (DFMx)<br><br>PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS BRENT DAVID BARLOW, BARLOW & ASSOCIATES, CASE IN CHIEF LLC, COOPERATIVE DISPUTE RESOLUTION SOCIETY, ATT FUND and PHOENIX INVESTMENTS ALLIANCE LLC |

i

**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

CASTRO, PAUL MARTNEZ, RENEE            )
MARTINEZ, ROBERT ZIMMERMANN,           )
MARY ZIMMERMAN, GLENN PERLEY           )
AND CONNIE PERLEY, each an individual, )
                                       )
            Defendants.                )
                                       )
_____)

Plaintiffs Intermarketing Media LLC dba Resort Advisory Group ("ResortAG"), David Alan Klein, Esq., and the Law Offices of David Alan Klein (collectively, "Plaintiffs"), hereby apply *ex parte* to the Court pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 for entry of Temporary Restraining Order ("TRO") to immediately halt Defendant Brent David Barlow (and associated Barlow entity defendants Barlow & Associates, ATT Fund, Case in Chief LLC, Phoenix Investments Alliance, LLC, and Cooperative Dispute Resolution Society from his ***ceaseless*** and ***continuous*** illegal solicitation and harassment of ResortAG's customers by mail, email and phone, evidence of which is as recent as late May 2020, despite having actual notice of the underlying lawsuit and the previous TRO Application filed by Plaintiffs.

Defendant Barlow was notified of the TRO Application by email on July 1, 2020 and provided courtesy copy of such. Additionally, Defendant Barlow was informed that any opposition must be filed no later than 24 hours upon the filing of the TRO Application and the clerk of the Court shall be notified accordingly. (Alemi Decl. ¶ 10; Exh. 5)

Despite actual notice of the Complaint and previous TRO Application, Defendant Brent David Barlow and his law firm and other above-named associated entities (collectively, "Barlow Defendants)" have continued their illegal access to and use of ResortAG trade secrets, including in particular its proprietary client database, customer list and business knowhow, have continued publishing defamatory statements about ResortAG and Plaintiff Klein to ResortAG clients, and

**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

have continued to try to actively recruit ResortAG clients.

Plaintiffs previously filed an application for a temporary restraining order against all defendants (Doc 10) with this Court which was declined due to concerns of exigency and notice. (Doc 15) Defendants Barlow and Barlow & Associates have now been served in this matter with the Complaint, a copy of the previous application for a TRO and the standing order of the Court for new cases. (Docs 24-25) Plaintiffs are now seeking entry of a TRO *only* against Defendant Brent David Barlow and the other Barlow Defendants for his ***continuous***, ***persistent*** and still ***ongoing*** behavior of illegally soliciting and harassing ResortAG's – which he is able to do only by virtue of having stolen ResortAG's trade secrets - clients in hopes of stealing more customers to join his malicious vendetta against Plaintiffs. This continuous irreparable harm to Plaintiffs' reputations and goodwill is one that will not stop unless ordered by this Court to stop.

Accordingly, Plaintiffs hereby apply *ex parte* to the Court pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 for a Temporary Restraining Order against the Barlow Defendants, and each of them, and their officers, agents, employees, and attorneys who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the business and clients of Plaintiffs, prohibiting them from:

1) Accessing or utilizing the proprietary trade secrets of ResortAG;

2) Providing timeshare resolution services to any client, present or former, referred to Defendants Barlow and Barlow & Associates by ResortAG;

3) Communicating with any clients of ResortAG for any purpose other than providing a copy of this Order;

4) Using the trade secrets of ResortAG for purposes of solicitating legal services;

5) Publicly or privately disseminating the trade secrets of ResortAG;

6) maintaining any existing defamatory postings about Plaintiffs in any

medium, which posts shall be immediately depublished;

7)     Publishing any new defamatory statements about Plaintiffs in any medium;

8)     Directing or orchestrating others to do any of the above prohibited acts on their behalf;

FURTHER:

9)     Barlow Defendants, within forty eight (48) hours of service of this Order, shall distribute a copy of this Order to each client referred to Barlow and/or Barlow & Associates by Plaintiff ResortAG with whom they have had any contact since in or about August-September 2018, to Defendants Cooperative Dispute Resolution Society, Phoenix Investments Alliance, LLC, ATT Fund and Case In Chief LLC, and each member or other person associated therewith;

10)     Barlow Defendants, within forty-eight (48) hours of service of this Order, shall provide Plaintiffs" undersigned counsel with all contact information; registered offices; and registered agent(s) for Defendants Cooperative Dispute Resolution Society, Defendant Phoenix Investments Alliance, LLC, ATT Fund and CASE IN CHIEF LLC.

11)     Barlow Defendants shall file with this Court, within five (5) days of service of this Order, a sworn Acknowledgement of Distribution of this Order and Verification of Compliance with provisions 1 through 10 hereinabove.

12)     Barlow Defendants shall preserve, and take all reasonable and available measure to preserve, and to avoid loss, destruction, misplacement or spoliation of, all documents, in paper, electronic, digital or any other form, including, without limitation, memoranda, letters, reports, faxes, emails, text messages, voicemail, telephone or video communication (i.e., Zoom, WebEx) recordings and transcripts thereof, social media posts, advertising or marketing material, judicial

orders, rulings or decisions, invoices, accounting records, and contracts, and all drafts thereof, relating to: (1) the time share industry; (2) contracts between timeshare developers and operators and timeshare purchasers; (3) timeshare resolution (or "exit") services providers; (4) ResortAG; (5) Barlow's tenure and work as an attorney for ResortAG; (6) ResortAG clients, present and former; (7) communications with ResortAG clients, present or former, including, without limitation, the former clients of ResortAG who are defendants in this action; and (8) public statements about ResortAG in any medium, including, without limitation, the internet and social media;

13) Plaintiffs seek to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of the assets of Barlow Defendants; (2) the nature, location, and extent of the Barlow Defendants' timeshare-related actions, activities, transactions, operations, and communications, including, in particular, but without limitation, as they relate to ResortAG and ResortAG clients, present or former; (3) Documents reflecting the Barlow Defendants' timeshare-related actions activities, transactions, operations, and communications; including, in particular, but without limitation, as they relate to ResortAG and ResortAG clients, present or former; and (4) compliance with this Order;

This application is made on the grounds set forth in the accompanying Memorandum in Support and Declarations of Debra Joy Kizer and Diba Alemi Jason Kriek, Michael Krieck, and David Alan Klein, Diba Alemi and exhibits attached thereto; all other pleadings and papers filed by Plaintiffs in this action, including in particular the Memorandum of Support and Declarations of Jason Kriek (Doc. 10-1), Michael Krieck (Doc. 10-10), and David Alan Klein (Doc. 10-12) and exhibits attached thereto filed with Plaintiffs' prior TRO Application (Doc 10); the argument of counsel; and further evidence as the Court may consider at or

**PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

before a hearing regarding the Order to Show Cause and preliminary injunction requested herein.

DATED: July 1, 2020                    THE ALTMAN LAW GROUP


                                       BY: _/s/ Bryan Altman_____
                                       BRYAN C. ALTMAN


DATED: July 1, 2020                    LAW OFFICES OF WILLIAM I. ROTHBARD


                                       BY: _/s/ William I. Rothbard_____
                                       WILLIAM I. ROTHBARD

                                       Attorneys for Plaintiff Intermarketing Media, LLC
                                       d/b/a Resort Advisory Group, Law Offices of
                                       David Alan Klein, and David Alan Klein, Esq.

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
Christopher Urner (SBN 311532)
Diba Alemi (SBN 320986)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.net

**LAW OFFICES OF WILLIAM I. ROTHBARD**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com


Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP; LAW OFFICES OF DAVID ALAN KLEIN, and DAVID ALAN KLEIN, ESQUIRE,<br><br>            Plaintiffs,<br><br>          vs.<br><br>BRENT DAVID BARLOW, an individual; BARLOW & ASSOCIATES(unknown entity type/location; COOPERATIVE DISPUTE RESOLUTION SOCIETY (unknown entity type/location); PHOENIX INVESTMENTS ALLIANCE, LLC, a limited liability | CASE NO.: 8:20-cv-00889<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS BRENT DAVID BARLOW, BARLOW & ASSOCIATES, CASE IN CHIEF LLC, COOPERATIVE DISPUTE RESOLUTION SOCIETY, ATT FUND and PHOENIX INVESTMENTS ALLIANCE LLC**<br><br>**[Declarations of Debra Joy Kizer and Diba Alemi filed herewith; Declarations of Jason Krieck (Doc. 10-1), Michael Krieck (Doc. 10-10 and David Alan Klein previously filed, Doc 10-12]** |

i
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

company; ATTFUND (unknown entity type/location); CASE IN CHIEF LLC, a California Limited Liability Company; JOHN PRESSNEY, PAMELA PRESSNEY, HERMAN ABEL, DEBORA ABEL, MORRIS HANNAH, VIRGINIA HANNAH, LEE HARRIS TURK, BERNARDO BETTINELLI, CAROL BETTINELLI, LARI CASTLE, GILBERT CASTRO, EVA CASTRO, PAUL MARTNEZ, RENEE MARTINEZ, ROBERT ZIMMERMANN, MARY ZIMMERMAN, GLENN PERLEY AND CONNIE PERLEY, each an individual,

Defendants.

_____

ii
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

# Table of Contents

Table of Contents ..................................................................................................iii

I.    INTRODUCTION ....................................................................................... 1

II.    PROCEDURAL HISTORY ........................................................................ 3

III.    BARLOW DEFENDANTS HAVE BEEN  SERVED WITH THE
COMPLAINT AND PREVIOUS TRO....................................................... 4

IV.  PLAINTIFFS' CEASE AND DESIST LETTER TO BARLOW ........................ 4

V.    STATEMENT OF FACTS ........................................................................ 5

   A.    Barlow Has Illegally Abused His Prior Access to ResortAG's    Proprietary
Client List and Business Knowhow to Illegally Compete  and Harm ResortAG .... 5

   C.    Barlow CONTINUES to Abuse His Access to ResortAG's    Proprietary
Client List and Business Knowhow to Illegally Solicit   and Defame .................... 8

VI.  EXIGENCY WARRANTS EMERGENCY RELIEF......................................... 11

VII. LEGAL STANDARD ................................................................................ 11

VIII. THE COURT SHOULD GRANT THE REQUESTED RELIEF ...................... 13

   A.    Claims of Theft and Misappropriation of Trade Secrets ................................ 13

   B.    Claims of Defamation of Resort AG and Plaintiff Klein................................ 17

IX.  PLAINTIFFS FACE CONTINUING IRREPARABLE HARM ......................... 22

X.  THE BALANCE OF EQUITIES TIPS IN FAVOR OF PLAINTIFFS ............... 24

XI.  ALTERNATIVELY, PLAINTIFFS  REQUEST AN EARLIER
PRELIMINARY  INJUNCTION HEARING ................................................. 24

XII. CONCLUSION......................................................................................... 25

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

1

**Table of Authorities**

2

Cases

3   *Alderson v. United States* (2012) 718 F. Supp. 2d 1186, 1198 ...................................14

4   *Alliance for the Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127, 1132..........12

5   *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 546 n. 12, 107 S. Ct.

6      1396, 94 L. Ed. 2d 542 (1987)...............................................................................23

7   *Cole Asia Bus. Ctr., Inc. v. Manning* (C.D.Cal. June 18, 2013, No. CV 12-00956

8      DDP (CWx) ............................................................................................................14

9   *Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1488, fn. 11 ..................................14

10  *Extreme Reach, Inc. v. Spotgenie Partners, LLC* (C.D.Cal. Nov. 22, 2013, No. CV

11     13-07563-DMG (JCGx)........................................................................................24

12  *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,* 117

13     Cal.App.4th 1138, 1145 fn. 7, 12 ........................................................................17

14  *Futurecraft Corp. v. Clary Corp.* (1962) 205 Cal.App.2d 279, 288 ..........................13

15  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415

16     U.S. 423, 439 (1974)..............................................................................................12

17  *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 365 .............................20

18  *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2016 WL 3212457, at *3 (N.D.

19     Cal. June 10, 2016...................................................................................................16

20  *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc*. (9th Cir. 2013)  736 F.3d

21     1251, 1242 ..............................................................................................................23

22  *Jones v. H.S.B.C.* (USA), 844 F. Supp. 2d 1099, 1100 ..............................................11

23  *MAI Sys. Corp. v. Peak Computer, Inc*. (9th Cir. 1993) 991 F.2d 511, 521 .........14, 16

24  *Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1521-22 ..................................14

25  *Rigging Int'l Maintenance Co. v. Gwin* (1982) 128 Cal.App.3d 594, 598.................14

26  *Slaughter v. Friedman* (1982) 32 Cal. 3d 149...........................................................20

27  *Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F.3d 1109, 1127 .................................12

iv

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* (9th Cir. 2001) 240 F.3d 832, 841 ....23

*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.* (1961) 192 Cal.App.2d 398, 403 .....14

*Williams v. Taylor* (1982) 129 Cal. App. 3d 745, 749 .................................................20

*Winter v. Natural Res. Def. Council, Inc.* (2008) 555 U.S. 7, 129 S. Ct. 365, 374, 172
   L.Ed.2d 249.........................................................................................................12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed.
   2d 249 (2008).......................................................................................................22

*Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296 .........................................20

*Yow v. Nat'l Enquirer, Inc.* (E.D.Cal. 2008) 550 F.Supp.2d 1179, 1183 ...................17

Other Authorities

Restatement Third of Unfair Competition § 39 cmt. d (1995) ....................................14

Rules

Rule of Professional Conduct 1-400 .............................................................................8

California Civil Code

Cal. Civ. Code 45, 46...................................................................................................17

Statutes

18 U.S.C. § 1839(5) .....................................................................................................16

18 U.S.C. § 1839(5)(B)(ii)(II), (III)............................................................................17

18 U.S.C. §1836(b)(1) .................................................................................................13

18 U.S.C. §1839(6)......................................................................................................13

18 U.S.C. 1836.............................................................................................................12

Section 1836 (b)(3)(A)(i).............................................................................................13

Section 1836 (b)(3)(A)(ii)............................................................................................13

v

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

## I.    INTRODUCTION

Plaintiffs Intermarketing Media LLC dba Resort Advisory Group, David Alan Klein, Esq., and the Law Offices of David Alan Klein (collectively, "Plaintiffs") hereby move the Court, pursuant to Federal Rule of Civil Procedure 65 and Central District of California Local Rule 65-1, for entry of a temporary restraining order, with notice against Defendant Brent David Barlow ("Defendant Barlow") and the Defendant entities believed to be owned and controlled by Defendant Barlow: Barlow & Associates, ATT Fund, Case in Chief LLC, Phoenix Investments Alliance, and Cooperative Dispute Resolution Society (collectively, including Defendant Barlow, "Barlow Defendants").

Plaintiffs previously filed an application for a temporary restraining order (Doc 10) with this Court which was declined due to concerns of exigency and notice. (Doc 15.) Defendants Barlow and Barlow & Associates have now been served in this matter with the Complaint, a copy of the previous application for a TRO and the standing order of the Court for new cases. (Doc 24-25, Declaration of Diba Alemi ("Alemi Decl ¶ 3")[1] but have not returned the waiver to Plaintiffs as of the date of this filing. Plaintiffs are renewing their request for emergency relief because the Barlow Defendants' illegal and harmful behavior targeting ResortAG clients and ResortAG's reputation, as outlined in the Complaint and documented in the prior TRO application, has not stopped. **The Barlow Defendants were served with a copy of this Application on July 1, 2020, and were notified by email and certified mail of the hearing date.** (Alemi Decl. ¶ 4).

At the most basic level, this action seeks to stop a malicious vendetta by a disgruntled terminated attorney against a former client, Resort Advisory Group

---

[1] Defendants Barlow and Barlow & Associates were served by personal service. Defendants ATT Fund, Case in Chief LLC, and Phoenix Investment Alliance LLC were served pursuant to FRCP Rule 4d. Although not the subject of this TRO, all other named Defendants (Barlow 10) have been served pursuant to FRCP Rule 4d. (Alemi Decl. ¶ 5)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

("ResortAG"), a timeshare resolution company with an A+ rating from the Better Business Bureau – a vendetta that has involved trade secret theft, illegal competition, tortious interference with clients of ResortAG, defamation, and extortion, in violation of numerous federal and California statutes, including the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and Barlow's contractual and fiduciary duties to ResortAG.[2]  Plaintiffs are in possession of new evidence demonstrating that this vendetta, led by Barlow, is still very much alive, despite the filing of this lawsuit and prior TRO application.

Specifically, Defendant Barlow is continuing to harass ResortAG customers by mail, email and phone to try to lure them to become customers of Defendant Cooperative Dispute Resolution Society ("CDRS") (and, through disparagement, turn them against ResortAG), despite having actual notice of the underlying lawsuit and the previous TRO application. Evidence of this is as recent as the end of May 2020.[3]

Promptly upon discovery of this evidence of continuing client tampering, Plaintiffs attempted to remedy the situation by sending a Cease and Desist letter to Defendant Barlow on June 18, 2020. (Alemi Decl. ⁋ 6; Ex. 1) The letter requested he acknowledge he would stop the harmful behavior or Plaintiffs would be filing another TRO application.  Defendant Barlow never responded to the demands in the Cease and Desist letter itself, only sending a brief inquiry to try to learn the identity of the client, something ResortAG refused to provide at that time for fear of his retaliation against the client.

Based on Barlow's past pattern of tortious interference and disparagement of Resort AG, as laid out in Plaintiffs' prior TRO filing, this latest and very recent illegal contact is surely not an isolated incident and he is highly likely to be continuing to contact and harass other ResortAG clients as well.  Defendant Barlow is

---

[2] For a detailed description of the vendetta and the myriad ways it violates federal and California law, please see Plaintiffs' original TRO Application, including the Memorandum of Points and Authorities and Declarations filed therewith. (Doc 10)
[3]  See Declaration of Debra Joy Kizer, discussed in Section V.B., infra.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

incorrigible.  It is crystal clear now, if it was not before, that only an emergency intervention by this Court will stop him from flaunting the law, breaching his professional ethical obligations as an attorney, and irreparably harming Plaintiffs' businesses and reputations.

This Application is supported by Plaintiffs' Complaint on file with this Court (Doc 9), Plaintiffs' previous application for a TRO (Doc 10) and its supporting declarations and other documents filed therein with the Court, the proof of personal service of summons on Defendant Barlow and Defendant Barlow & Associates (Doc 21, 22, 24, 25), the new Declarations of Debra Joy Kizer and Diba Alemi, the following points and authorities, and any oral argument the Court may desire or allow.

## II.  PROCEDURAL HISTORY

On May 12, 2020, Plaintiffs filed their original Complaint. (Doc 1.) This case was originally assigned to Judge James Selna (Doc 3), who issued an order striking the Complaint pursuant to FRCP Rule 8. (Doc 6.) Plaintiffs filed an Amended Complaint on May 16, 2020, which was accepted by the Court. (Doc 9.) On May 18, 2020, Plaintiffs filed an *ex parte* TRO application against Defendant Barlow and all other Defendants. (Doc 10.) On May 19, 2020, the case was reassigned to Judge Josephine Staton. (Doc. 11.)  On May 21, 2020, Defendant Barlow, acting Pro Per and purporting to act on behalf of all Defendants, filed an opposition to the TRO application despite obvious conflicts of interest in doing so. (Doc 14.) On May 22, 2020, Plaintiffs' *ex parte TRO* application was declined by the Court due to concerns about notice to all Defendants and the exigency of the need for immediate emergency relief. (Doc 15.) On May 22, 2020, Plaintiffs filed a motion to seal portions of documents attached to the Complaint and Application for Temporary Restraining Order, (Doc 16) which was denied by the Court on May 28, 2020. (Doc 17.) On May 29, 2020, Plaintiffs filed a summons with the clerk for Defendants Brent Barlow and Barlow & Associates (Doc 19-20) which was signed by the clerk on June 1, 2020. Also, on May 29, 2020, pursuant to FRCP Rule 4d, Plaintiffs served the Complaint, the denied TRO, the Court's standing order for new cases, and a waiver of summons

3
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

by certified U.S. mail on all Defendants except Brent Barlow and Barlow & Associates. (Decl. Alemi ¶ 5) On June 3, 2020, Plaintiffs filed the RICO Case Statement ordered by Judge Selna prior to reassignment. (Doc 23.) Finally, on June 9, 2020, Defendants Barlow and Barlow & Associates were served by personal service with the Complaint, the denied TRO, and the Court's standing order for new cases, with proofs being filed with the Court on June 16, 2020. (Doc 24 and Doc 25.)  As of the current date, Plaintiffs have not received back any waiver of summons replies.

### III.     BARLOW DEFENDANTS HAVE BEEN SERVED WITH THE COMPLAINT AND PREVIOUS TRO

Previously, each of the named Barlow Defendants has been served with a copy of the Complaint in this matter and a copy of the previous *ex parte* Application for a Temporary Restraining Order as filed with this Court, previously denied. (Alemi Decl. ¶ 3). Defendant Barlow filed an opposition to the previous request for a temporary restraining order, indicating he had notice of the previous request for relief.  A letter received on May 17, 2020, from Barlow to Plaintiffs' counsel on Barlow & Associates letterhead also establishes his knowledge of the pending lawsuit and threatens to "invoice" Plaintiffs' attorneys for his time responding to the lawsuit, further indicating his knowledge of Plaintiffs complaints. (Alemi Decl. ¶ 7; Exh. 2).

### IV.  PLAINTIFFS' CEASE AND DESIST LETTER TO BARLOW

On June 18, 2020, upon learning that Barlow was continuing illegally to contact, solicit and harass ResortAG clients, Plaintiffs served a Cease and Desist letter on Barlow by electronic and certified mail (Alemi Decl. ¶ 6; Exh. 1), demanding that he immediately cease such behavior. The electronic copy of the letter was served to an email address from which Barlow had previously communicated with ResortAG counsel and which Barlow had confirmed was his email address. (*Id*.) The original of the Cease and Desist letter was served by certified mail to the address of Barlow's law firm, Defendant Barlow & Associates, to which the Complaint had

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

been successfully served. (*Id.*) Defendant Barlow acknowledged receipt of the letter on June 19, 2020 by sending an email reply to the Altman Law Group. (*Id.*)

The Cease and Desist letter provided Barlow until close of business on June 22, 2020 to respond in writing that he accepted its demands and would cease the violative conduct. It further provided notice that if he did not respond in such manner by that deadline, Plaintiffs would refile for a TRO. Plaintiffs received no such response by or after that deadline, other than a transparently disingenuous self-serving attempt to learn the identity of the ResortAG client in question, which was nothing more than a stalling tactic. (Alemi Decl. ¶ 8; Exh. 3) Barlow's failure to comply with the Cease and Desist letter, and defiant continuance of his racketeering and tortious conduct against Plaintiffs, necessitates this instant Application against him and the other Barlow Defendants.

## V.    STATEMENT OF FACTS[4]
### A.    Barlow Has Illegally Abused His Prior Access to ResortAG's Proprietary Client List and Business Knowhow to Illegally Compete and Harm ResortAG

ResortAG advertises its timeshare resolution services nationwide. It agrees to accept as clients only individuals who have demonstrated they are a victim of timeshare deception.[5] ResortAG refers clients to an attorney on retainer who will then provide the legal component of timeshare resolution services to the client. Due to the quality of its services, ResortAG has earned an A+ rating from the Better Business Bureau. (Declaration of Jason Krieck (Doc. 10-1 "Decl. J. Krieck") ¶ 5; Doc. 10-2)

In January, 2017, ResortAG retained Defendant Barlow to provide legal services to ResortAG. The retainer agreement ("Retainer") provided that he was to:

---

[4] Except for repeating the factual predicate of Defendant Barlow's and his law firm's contractual, fiduciary and legal obligations to Plaintiffs, this statement of facts is limited to new evidence of Barlow Defendants' continuing illegal behavior uncovered since the prior TRO application, which adds new urgency to the need for a TRO. See Doc 10 for the full factual background.

[5] (Doc 10-1, Decl. J. Krieck ¶ 3).

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

> "serve as personal counsel for Client [ResortAG] with respect to any legal advice and services which may need to be rendered in relation to client's business, specifically; assistance with Clients customers in their efforts to withdraw from and/or cancel timeshare contracts with various developers and to assist those Clients customers in obtaining refunds if and when possible. Firm [Barlow] agrees to work exclusively with Resort Advisory Group, LLC on matters pertaining to timeshare cancellation services."

(*Id.* ¶¶ 6-7; Ex. 2.)  Barlow was paid by ResortAG, and not by the clients. ResortAG referred approximately 235 clients to Barlow and paid him approximately $300,000. (*Id.* ¶¶ 8-9.) The ResortAG-Barlow Retainer contained this confidentiality/non-circumvention/non-compete clause:

> All information disclosed by either party hereunder ("Confidential Information"), including any information concerning an Approved Prospect, shall always be treated as confidential by each party during the term of this Agreement and thereafter and shall not be disclosed to any third party without the prior written consent of both parties. **Neither party shall use any of the Confidential Information except in the performance of its duties hereunder.** All Confidential Information provided to either party shall be returned to the disclosing party immediately upon termination of this Agreement. The parties further agree that **neither party shall use the Confidential Information disclosed by the other party to compete with the disclosing party or circumvent the business of the disclosing party**.

(*Id.* ¶ 10; Ex. 2.) (Emphasis added.)  Pursuant to this contractual promise, ResortAG granted Barlow regulated access to its client database, which contained essentially a client's entire financial picture and case evaluation notes. He also necessarily had access to all proprietary and highly valuable aspects of ResortAG's business model ("Business Knowhow").  As counsel to ResortAG, Barlow was in a position to learn everything there is to know about the Business Knowhow of ResortAG. (*Id.*)

ResortAG's client database and Business Knowhow are its most valuable assets.  Resort AG acquires customers through extensive advertising and marketing, into which it has invested millions of dollars.  It spends significant time and resources collecting and synthesizing ResortAG's clients' information to qualify and serve its

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

clients. The investment ResortAG makes in the acquisition, growth, maintenance and servicing of their clients represents the lion's share of its budget. (*Id.* ¶ 11.)

ResortAG vigilantly protects its proprietary client database and Business Knowhow.[6]  In addition to client privacy, these measures are intended to protect its trade secrets from access by third parties who would stand to benefit economically from knowledge of its proprietary information, including potential competitors. Since the attorneys who ResortAG hires to assist in providing timeshare resolution services are, theoretically, potential competitors, it includes confidentiality, non-circumvention and non-compete clauses in its attorney retainer agreements (like the one in Barlow's cited above). (*Id.* ¶ 12.)

In or about August-September 2018, ResortAG terminated the relationship with Barlow for cause, including by failing to provide clients with timeshare resolution services, as required, and by encouraging them to consider alternative means of timeshare resolution representation. (*Id.* ¶ 13.)

## B.   Defendant Barlow's History of Illegal Use of ResortAG Trade Secrets

Since his termination, and continuing to this day, Barlow has been engaged in a vindictive campaign of unfair competition, interference with ResortAG's business and clients, and disparagement of Plaintiffs - all in violation of his contractual and fiduciary obligations as counsel to ResortAG, and to Plaintiffs' great detriment. When Barlow was terminated, ResortAG cut off his authorized access to the CRM. (*Id.*, ¶ 14(a).)  Nevertheless, Barlow, in a brazen conflict of interest, illegally accessed and continued to use that information to which he no longer had authorized access to go into competition with ResortAG in the timeshare resolution business.  (*Id.*)

Barlow illicitly used the confidential client information and Business Knowhow of ResortAG to target its clients and began to independently offer and provide timeshare resolution services to them, re-charging them for the same or

---

[6] Password protection, administrator-controlled login, and access tracking. *Id.*, ¶ 12.)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

similar services for which he had already been paid by ResortAG and for which they had already paid ResortAG. (*Id.*, ¶ 14(a).)

In unsolicited letters to ResortAG clients, he was using his influence, which he had gained ***only*** in his capacity as counsel to ResortAG, to steer them away from ResortAG and toward an alternative means of timeshare resolution representation from a purported "consumer advocacy" organization, CDRS.  He claimed to ResortAG clients that CDRS will "singlehandedly destroy the timeshare industry and that "CDRS guarantees the timeshare customers who they agree to work with will get back, ***minimally***, every single cent they mistakenly gave the timeshare developer."[7] (Emphasis in original.)  CDRS's impact on the timeshare companies, he wrote, is "absolutely devastating and eclipses any 'promise' made by a so-called 'exit' company," like Plaintiff.  Barlow sent such solicitations to "select clients" of ResortAG and referred at least 52 who responded to this purported organization. (*Id.*, ¶ 14(b)*;* Ex. 4.) Indeed, he admitted charging Barlow 10 defendants David and Debora Abel $5,000 for resolution services for which he had already been paid by ResortAG, and that he had similarly offered his services to other ResortAG clients who had been referred for an additional charge. (Doc 10, Declaration of Michael Krieck, ¶ 3 (Doc. 10-10 "Krieck M. Decl.") Using his unauthorized access to ResortAG's proprietary client database, Barlow has sent, and is continuing to send, unsolicited letters to ResortAG's customers that contain falsehoods about ResortAG and its business.  (Doc. 10-1 Decl. J. Krieck ¶ 14(b), Doc. 10-5, ¶ 14(e), Doc. 10-7.)

**C.**      **Barlow CONTINUES to Abuse His Access to ResortAG's Proprietary Client List and Business Knowhow to Illegally Solicit and Defame**

Plaintiffs have new direct evidence of Barlow's continuing unsolicited contacts and illegal solicitation of ResortAG clients and defamation of Resort AG. Debra Joy

---

[7] Defendant Barlow appears to be repeatedly violating Rule of Professional Conduct 1-400, amongst others, which prohibits an attorney from sending solicitations that are "a communication which contains guarantees, warranties, or predictions regarding the result of the representation."

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1    Kizer is a current client of ResortAG, having enrolled in April 2018 when Defendant

2    Barlow was still serving as a timeshare resolution attorney for ResortAG.  As set

3    forth in her declaration, in the remaining months that he was still with Resort AG

4    before being terminated in August-September 2018, Barlow, in her words, "did

5    nothing" to help her get out of her unfair timeshare contract and "would not even

6    return my calls."  (Declaration of Debra Joy ("Kizer Decl.") ¶¶ 2-3.) This

7    incompetence and indifference, along with the fact that ResortAG had discovered that

8    Barlow was soliciting ResortAG clients in a secret plan to go into competition with

9    ResortAG in violation of his retainer agreement and fiduciary duty to ResortAG, is

10   the very reason that he was terminated. (Doc. 10-1, J. Krieck Decl. ¶ 13.) Kizer was

11   very pleased when she learned that Barlow had been dumped and she was assigned to

12   a new attorney who actually showed an interest in her case, made effort to resolve it,

13   and was responsive to her calls and inquiries. (Kizer Decl. ¶ 3.)  She has been

14   satisfied with ResortAG ever since. (*Id*.)

15        After Barlow was fired, Kizer thought she was done with him.  Unfortunately,

16   she did not know the man as Plaintiffs have come to know him, and was sadly

17   mistaken.  ***Three times*** since she thought he was out of her life, he and/or one of his

18   shadowy entities, CDRS, have made unsolicited, high pressure contacts with her for

19   the purpose of promoting themselves as a timeshare exit alternative to ResortAG, and

20   badmouthed ResortAG in the process.  The first was in an email she received from

21   Barlow on August 28, 2019. (*Id*. ¶ 4, Ex. 1.)[8]  The second was in an email she

22   received from CDRS on May 5, 2020, less than two months ago, which she read as an

23   "all-out attack" on ResortAG. (*Id*. ¶ 5, Ex. 2.[9])

24   _____

25   8  "CDRS guarantees…timeshare customers…will get back, *minimally*, every single

26   cent they mistakenly gave the timeshare developer… [CDRS] eclipses any 'promise'
     made by a so-called timeshare 'exit' company".

27   9  The email claims ResortAG's client contracts are "fraudulent," and that as a result
     of the "crimes" committed by ResortAG against CDRS members (former ResortAG

9

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

The third illegal contact was a call from Barlow himself to Kizer in the ***last week of May, 2020***, only a month ago or so. (*Id.*, ¶¶ 6-9.)  Plaintiffs' management and counsel learned about this call and Barlow's and CDRS's prior unsolicited emails to Kizer in or about mid-June after she reported them to ResortAG's customer service department.

Employing an "extremely aggressive and intense" manner and voice, Barlow said the purpose of the call to Kizer was to follow up on the email CDRS had sent her on May 5, 2020. (*Id.* ¶ 7.)  He made clear he and CDRS were "antagonistic" toward ResortAG, said that Kizer was a "victim" of ResortAG, and disparaged ResortAG when she told him she was pleased with ResortAG. (*Id.*)  He made her feel "great pressure" to leave Resort AG and sign with him and CDRS "***immediately***." (*Id.* ¶ 8) It made her feel "very uncomfortable… He was trying to make me question my relationship with ResortAG…I resented it. (*Id.*)

Resort AG does not believe the situation with Ms. Kizer to be an isolated "one off," and believes Defendant Barlow has very recently contacted far more clients than just Ms. Kizer. Plaintiffs believe that Defendant Barlow has not stopped or slowed down at all and is simply operating the same scheme as he used to recruit the Barlow 10 by sending emails from "CDRS" rather than himself (and using an anonymous email provider)[10] and then following up by phone personally to continue the harassment and improper solicitation of ResortAG's clients. His use of CDRS and anonymous emails is an ill-fated attempt to insulate himself from any paper trail.

---

clients) since December, 2019, "a total of 33 criminal complaints have been lodged …against RAG and six of RAG's executives and employees," and state bar complaints lodged against Plaintiff David Alan Klein. It also states "unless ResortAG offers to settle soon with the criminal complainants, they face almost certain indictment and prosecution."

[10] Doc 10-1, J. Krieck Decl. ¶ 14(e).

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

## VI.   EXIGENCY WARRANTS EMERGENCY RELIEF

Defendant Barlow could not have had access to the contact information for Ms. Kizer without having first acquired her information by the theft and misappropriation of the trade secrets of ResortAG, through the exploitation of his former position as counsel to ResortAG, and breach of his contractual and fiduciary duties of confidentiality, non-circumvention, and non-competition. Plaintiffs do not believe Ms. Kizer is unique, and dozens more have likely been contacted by Barlow. Plaintiffs believe that Barlow's disparagement of Resort AG to Ms. Kizer is likely the same script being used with every ResortAG client Defendant Barlow has contacted after misappropriating its customer list and Business Knowhow, thereby causing continual damage to ResortAG's business, its reputation, and its ability to gather new clients by way of referrals. Plaintiffs urgently request the assistance of the Court to enjoin Defendant Barlow from continuing to tortuously interfere with its client relations and to defame ResortAG to its clients.

Defendant Barlow will not stop his illegal and harmful behavior without a direct order of this Court. He has not stopped due to the pendency of this litigation and he refused to acknowledge he would stop after receiving a Cease and Desist letter. Resort AG believes that Defendant Barlow may try to accelerate his efforts, including potentially recruiting still more ResortAG clients into the Barlow Racketeering Enterprise to defame ResortAG and file further bogus criminal complaints with law enforcement in the hopes of extorting hundreds of thousands if not millions of dollars and potentially putting it out of business. Plaintiffs have no option but to again request the assistance of the Court to enjoin Defendant Barlow, his law firm, CDRS, and the other named Barlow-controlled entities from contacting ResortAG clients to recruit them and disparage ResortAG.

## VII.   LEGAL STANDARD

"The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held." (*Jones v. H.S.B.C.* (USA), 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose*

11

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

*Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). To prevail on an application for a TRO, a moving party must demonstrate that "he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in his favor; and, that an injunction is in the public interest." (*Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F.3d 1109, 1127 (quoting *Winter v. Natural Res. Def. Council, Inc*. (2008) 555 U.S. 7, 129 S. Ct. 365, 374, 172 L.Ed.2d 249).) The Ninth Circuit has also held that "serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." (*Alliance for the Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127, 1132.)

Relevant to this Application, Plaintiffs Complaint (Doc 9) alleges causes of action for theft and misappropriation of trade secrets against Defendant Barlow under the Defend Trade Secrets Act of 2016 (18 U.S.C. 1836 Count 4), California common law causes of action for defamation (Count 13), conversion (Count 9), and interference with existing and prospective contractual and economic relations (Counts 10 and 11)

Plaintiffs are seeking emergency injunctive relief to: (a) stop further defamation of ResortAG by Defendant Barlow and others under his control or influence, (b) enjoin the Barlow Defendants from any further access to or use of the trade secrets of ResortAG, (c ) stop Defendant Barlow from contacting by any means the clients of ResortAG for any purpose, and (d) require the Barlow Defendants to preserve all relevant evidence in their possession, custody, or control, including but not limited to, all emails (including archived and web-based email applications), email logs, email and phone scripts, letters and drafts of letters sent to try to recruit ResortAG clients, present or former, to his timeshare resolution law practice or CDRS.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

## VIII.   THE COURT SHOULD GRANT THE REQUESTED RELIEF
### A.   Claims of Theft and Misappropriation of Trade Secrets
#### 1.   The Court has the Power to Enjoin to Protect Trade Secrets

The Court has the authority to provide injunctive relief under Section 1836 (b)(3)(A)(i) and Section 1836 (b)(3)(A)(ii) of DTSA to prevent any actual or threatened misappropriation on terms "the court deems reasonable" and as long as the injunctive relief order does not conflict with any applicable state laws.

To succeed on a cause of action under the Defend Trade Secrets Act ("DTSA"), a plaintiff must prove: (1) ownership of a trade secret; (2) related to a product or service used in or intended for use in interstate commerce; and (3) misappropriation of the trade secret. For "information" to qualify as a trade secret, the owner must have "taken *reasonable measures* to keep [the] information secret *and* the information must have "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." (18 U.S.C. §1836(b)(1).)

Misappropriation under the DTSA requires that the trade secret be acquired by "improper means," which can include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." (18 U.S.C. §1839(6).) An employee or former employee who acquires a trade secret by "theft" or "breach … of a duty to maintain secrecy" likely has acquired it by "improper means." (Id.)

#### 2.   Unique Business Methods, Customer Lists and Client Databases are Trade Secrets

A business' unique method of successful operation and competition is a recognized trade secret.[11] "The words 'method [and] technique '[as used in the Uniform Trade Secret Act's definition of trade secret' are intended to include the

---

[11] "A basis for the protection of trade secrets is that the recipient obtains through a confidential relationship something he did not previously know." (*Futurecraft Corp. v. Clary Corp.* (1962) 205 Cal.App.2d 279, 288.)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

concept of "know-how.'"[12]  Unique business knowhow, including proprietary methods of competing and confidential information giving one a business advantage, is a trade secret.[13] Proprietary marketing strategies and plans also constitute trade secret under California law.[14] An employee is said to have acquired information amounting to a trade secret from his employer if the information is acquired during the course of his employment. (*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.* (1961) 192 Cal.App.2d 398, 403.)

Where a company puts significant efforts into creating and maintaining a proprietary client list, including identifying customers with particular needs or characteristics, it is protectible as a trade secret. (*Cole Asia Bus. Ctr., Inc. v. Manning* (C.D.Cal. June 18, 2013, No. CV 12-00956 DDP (CWx)) 2013 U.S.Dist.LEXIS 85818, at \*8; See also *Morlife, Inc. v. Perry* (1997) 56 Cal. App. 4th 1514, 1521-22.) Likewise, a customer database is protected as a trade secret because it "has potential economic value because it allows a competitor … to direct its sales efforts to those potential customers that are already using the [plaintiff's services.]" (*MAI Sys. Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 521.)

Plaintiff ResortAG has spent millions of marketing dollars and years of time developing its proprietary customer lists, customer database, and unique Business Knowhow. They are never shared with outside parties and are protected at all times by ResortAG. They have substantial independent value such that if one were to simply "hand them over" to a competitor they would have a business-in-a-box model to start profitably operating right away.

---

12 (*Alderson v. United States* (2012) 718 F. Supp. 2d 1186, 1198). Rest. Third of Unfair Competition § 39 cmt. d (1995) (describing "know-how" as a type of "trade secret").

13 A trade secret is "information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. (*Rigging Int'l Maintenance Co. v. Gwin* (1982) 128 Cal.App.3d 594, 598.)

14 (*Duncan v. Stuetzle* (9th Cir. 1996) 76 F.3d 1480, 1488, fn. 11).

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

### 3.  Resort AG has Taken Reasonable Measures to Keep Information Secret

Plaintiff Resort AG maintains password protected computer systems at all times and vigilantly protects the information contained in their computer systems. Defendant Barlow, during his brief tenure as an employee of Resort AG, did have regulated access to the computer systems of Resort AG.  Defendant Barlow knew at all times that the data in in ResortAG's client files solely belonged to ResortAG, it was confidential, his access was limited and regulated, and the clients were not his to keep or take. (See Doc 10-1, J. Krieck Decl. ¶¶ 6-7, 10, Doc. 10-3)

ResortAG also goes to great lengths to keep its unique Business Knowhow secret as that is one of the key pillars of its business. It does not publish this information anywhere and requires employees who have specific access to maintain confidentiality of this information. By virtue of working for ResortAG, Defendant Barlow necessarily learned of and understood many of the key aspects of this unique Business Knowhow.

### 4.  The Information Has Independent Economic Value

Resort AG has spent millions of dollars marketing and advertising across the United States to get clients. It has also extensively invested substantial amounts of time and money in its Business Knowhow to try to "formulate" the ideal strategies and methods to achieve success for its clients and operate a successful business. This highly proprietary information and ResortAG's client information are not generally known and cannot be easily replicated without similar substantial business and monetary efforts over years of time, including accepting the actual risk of business failure and resulting losses if one is not adept at business.

### 5.  The Trade Secrets of Resort AG Have Been Acquired by Improper Means

Defendant Barlow has accessed and misappropriated the entire proprietary client database of Resort AG, along with its Business Knowhow, its most prized and valuable assets.  Evidence of this is his admission that he solicited dozens if not hundreds of ResortAG clients (Doc 10-1, J. Krieck Decl. ¶ 14(b)), his ability, through

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

deception and manipulation, to "recruit" the Barlow 10 by targeted emails, phone calls, and written communication, and his ongoing attempts to recruit other clients of ResortAG, such as Ms. Kizer. Other than by the direct access he had to the protected confidential information of Resort AG in his fiduciary capacity as counsel to ResortAG, Defendant Barlow would not have any way to know the Barlow 10 or other ResortAG client "marks" he has solicited and is still soliciting to recruit away from ResortAG.

It is undisputed that Defendant Barlow gained access to the specific identities, addresses, financial situations, specific contractual obligations to timeshare developers, payment history, and detailed client analysis of each of the Barlow 10. (Doc 10-1, J. Krieck Decl. ¶ 10.) He gained access to their individual contractual details with Resort AG and specific customer needs. He also had complete access to the custom developed business steps taken by Resort AG to remove them from their timeshare obligation. This information unquestionably constitutes financial, business, or economic information within the meaning of the statute. Indeed, "[c]ustomer information such as sales history and customer needs and preferences constitute trade secrets." (*Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2016 WL 3212457, at *3 (N.D. Cal. June 10, 2016) (analyzing an application for a TRO under the Defend Trade Secret Act and citing *MAI Sys. Corp. v. Peak Computer, Inc*. (9th Cir. 1993) 991 F.2d 511, 521.)

### 6.  Defendant Barlow has Illegally Used Resort AG's Trade Secrets

Under the DTSA, "misappropriation" is defined as the acquisition of a trade secret of another by a person who knows it was acquired by improper means or the disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret. (18 U.S.C. § 1839(5)) Misappropriation also occurs where an individual acquired knowledge of the trade secret under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. (*Id*.)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Defendant Barlow misappropriated Plaintiff Resort AG's trade secrets. Acting in full concert and participation with the other Barlow Defendants,  Barlow stole Resort AG's trade secrets and the Barlow Defendants have used and are using this information, without ResortAG's consent, to identify and send emails to ResortAG's clients containing defamatory information about Resort AG in an effort to interfere with its business and contractual client relations. Defendant Barlow's recent contacts to Ms. Kizer are **new direct evidence** of this.

As a previous attorney for ResortAG, Defendant Barlow had actual knowledge that the trade secrets he stole belong solely to Resort AG, and any non-permissive use by outside parties is illegal. Barlow Defendants have also used and are using this information to intentionally disparage and attack the reputation of Plaintiff Klein with false and defamatory information sent by email to ResortAG customers. (Doc. 10-1, J. Krieck Decl. ⁋ 14(e), Doc. 10-7) When the defamatory emails were sent, Barlow Defendants knew the trade secrets were acquired under circumstances giving rise to a contractual, fiduciary and legal duty to maintain the secrecy of the trade secrets and to prohibit their use outside of employment, or were derived by illegal means. (18 U.S.C. § 1839(5)(B)(ii)(II), (III).)

Accordingly, Barlow Defendants have misappropriated Plaintiff ResortAG's trade secrets and should be enjoined by this Court from further access or use.

**B.    Claims of Defamation of Resort AG and Plaintiff Klein**

There are two types of defamation recognized in California, libel and slander. (Cal. Civ. Code 45, 46.) **Defamation per se** occurs when a statement is defamatory on its face that is untrue. (*Yow v. Nat'l Enquirer, Inc.* (E.D.Cal. 2008) 550 F.Supp.2d 1179, 1183.) An allegation the plaintiff is guilty of a crime is libelous on its face as are statements which falsely impute the commission of a crime. (*Id. at* 1180. See also *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,* 117 Cal.App.4th 1138, 1145 fn. 7, 12.)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way."[15] (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1042)

California law provides that a plaintiff bringing a defamation claim must show four elements: "that defendants published the statements; that the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity." (*Todd v. Lovecruft* (N.D.Cal. Jan. 6, 2020, No. 19-cv-01751-DMR) 2020 U.S.Dist.LEXIS 2309, at *47., quoting *Hecimovich v. Encinal Sch. Parent Teacher Org.*, (2012) 203 Cal. App. 4th 450, 470.)

### 1. Defendant Barlow has Committed Defamation Per Se

On multiple occasions, starting at least as early as 2019, Barlow Defendants, acting through Defendant Barlow, have repeatedly made criminal accusations against Resort AG and its executives to members of the public that they know are false and untrue. Barlow Defendants have also repeatedly made criminal accusations against Plaintiff Klein and his law firm to members of the public they know are false and untrue. These false accusations were sent by email to ResortAG clients, they were posted online to sites such as Facebook and Yelp, (Doc. 10- 1Decl. J. Krieck ⫲ 14(e); Doc. 10-8), and they were done verbally by phone during high pressure "recruitment" phone calls to Resort AG clients such as the recent one to Ms. Kizer. Upon recent inquiry to various prosecuting offices where Barlow states crimes have been committed, Plaintiffs attorneys received a reply back stating there are no "investigations" as Barlow claims.[16]

The oral and written criminal accusations state things such as "all RAG contracts are fraudulent," "RAG's contractual promises ... were intended to deceive and defraud," Resort AG executives have "knowledge of how the timeshare scam

---

[15] In the present case, Defendant Barlow specifically refers to Resort Advisory Group by name at all times when making the defamatory comments, meeting the "of and concerning" requirement.

[16] Decl. Alemi, ⫲ 9, Response letter from Camden County Prosecutors Office.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

works," and "unless RAG sometime soon offers to settle with the criminal compainants … they face almost certain indictment and prosecution." (Doc. 10-1 Decl. J. Krieck ⸿ 14(e)) Defendant Barlow, acting through CDRS, also states that "33 criminal complaints have been lodged with three different district attorneys and two United States attorneys against RAG and six of RAG's executives and employees" without stating that he personally is responsible for orchestrating and directing Barlow Racketeering Enterprise members to file those claims on his behalf. (*Id*.)

ResortAG has successfully assisted a multitude of consumers in exiting their illegal timeshare contracts. If it does not think it can help the individual, it does not take them on as a client.  ResortAG has been employing the same legal methods to assist consumers for years and continues to do so today. As a result of the value of its legal methods and the high quality of service it provides to its clients, it enjoys an A+ rating from the Better Business Bureau. These are the exact same methods Defendant Barlow had access to and did or could utilize when he was a timeshare resolution attorney for ResortAG. They were not fraudulent then, and they are not fraudulent now, other than in the fabricated reality in which Defendant Barlow dwells.

Defendant Barlow is a licensed attorney in California and has no excuse for what he has intentionally done and continues to do. His assertions are laughable on their face and have no basis in law (or even in logic) whatsoever. There is no such thing as a "self-voiding" contract. Whether he personally believes timeshare contracts are all invalid (or void) does not "transform" the honest work of ResortAG and other similar companies into acts of fraud. His manipulative recruitment letter to Ms. Kizer and others includes statements that his "work is in commerce; this is a commercial handling. We do not do this work; this is not legal work … this is how merchants in ancient times conducted their own affairs and resolved their own disputes internally. They did not need or use the local legal system (and neither does CDRS)." (Kizer Decl, ⸿ 4; Exh.1.) This is legal rubbish and is part of his fabricated reality used to recruit unwitting individuals to assist him in revenge and extortion.

## 2. Defendant Barlow Has Intentionally Published a False Statement of Fact

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

On at least dozens, and likely hundreds, of occasions, Defendant Barlow elected to send out emails, letters by U.S. mail, and made phone calls to customers identified and targeted from ResortAG's proprietary client database. Virtually similar to the defamatory claims about Plaintiffs made to Ms. Kizer, Defendant Barlow has repeated these same allegations of fraud, deceit, and criminality time and time again. These were not mistakenly published and the false statement of fact – that ResortAG has committed massive fraud – is wholly fabricated by Defendant Barlow and has no factual basis whatsoever.  Defendant Barlow has seemingly convinced himself that ALL companies that assist customers in exiting their timeshare contracts, absent CDRS, of course, are *de facto* fraudulent no matter what legitimate efforts they put forth to assist their customers and no matter the results achieved.

In Ms. Kizer's case, Defendant Barlow published the false facts on or around May 5, 2020 by email and then repeated and added further defaming claims in his phone call to her during the last week of May, 2020. The published false facts are virtually identical to the ones posted to the Barlow 10 and the ones Barlow has posted on social media sites within the last year.

### 3.  The Statements are Not Privileged

Individual statements made to an investigative agency are generally privileged and cannot give rise to a defamation claim, as are statements or complaints made in an effort to inform or prompt an investigative agency to take action. (*Williams v. Taylor* (1982) 129 Cal. App. 3d 745, 749; *Wise v. Thrifty Payless, Inc*. (2000) 83 Cal.App.4th 1296, 1303; *5 Witkin, Summary of Cal. Law* (9th ed. 1988) Torts, §§ 502–511.) However, communications between private parties concerning a private entity that are not directed at preparing for or eliciting governmental actions are not privileged. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 365 citing *Slaughter v. Friedman* (1982) 32 Cal. 3d 149.)

Barlow Defendants' statements, made repeatedly by email, orally, and by phone, that Resort AG commits fraud on its customers, are not privileged. The statements were made by Defendant Barlow, a private citizen, to Resort AG clients,

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

also private citizens.  Although Defendant Barlow may have orchestrated and directed the Barlow 10 to file baseless and frivolous criminal charges against Resort AG executives to law enforcement, this does not give him carte blanche to then repeat the same false charges again and again and again to individual citizens as part of a campaign of revenge, retribution, and extortion. To hold otherwise would allow a substantial loophole for abuse that has no actual remedy.

Even if one were to consider the statements by Barlow Defendants to have qualified privilege, which they do not, the statements were made with malice in that Defendant Barlow has admitted that his goal is to continue making these defaming statements until ResortAG is out of business or they pay the demanded ransom amount. (Doc 10-1, J. Krieck Decl. ¶¶ 15-16; Doc 10-10 Krieck, M. Decl., ¶ 4, Doc 10-11) There is no overarching "public purpose" in Barlow's disparaging statements to the public for revenge, for recruitment into the Barlow Racketeering Enterprise, for Barlow's personal economic benefit, and to gain further leverage to extort Resort AG.

**4. The Statements Have a Natural Tendency to Injure**

By the nature of the statements made, i.e., "all RAG contracts are fraudulent," "RAG's contractual promises ... were intended to deceive and defraud," ResortAG executives have "knowledge of how the timeshare scam works," and "unless RAG sometime soon offers to settle with the criminal complainants … they face almost certain indictment and prosecution," the Barlow Defendants are accusing ResortAG of committing crimes against its clients.  This by definition is injurious to ResortAG.

**5. Defendant Barlow's Reckless Disregard for the Truth**

Defendant Barlow, acting on behalf of Barlow Defendants, has used claims of fraud to turn clients against Resort AG, with the "fraud" being something that he himself made up out of whole cloth. He has no legal precedent to support his baseless contention that all timeshare contracts are inherently void and non-binding on a timeshare purchaser.  This flies in the face of established contract law, real estate law, and logic.  He is using his position as an attorney, his law firm, and several entities he has created to make this illusory argument convincing to the public, particularly when he provides such ridiculous and professionally unethical guarantees as a promise that

21
**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

working with CDRS, timeshare customers "will get back, *minimally*, every single cent they mistakenly gave the timeshare developer" as a further "lure" to get ResortAG clients to join him and CDRS. (Doc 10-1, J. Krieck Decl. ¶¶ 14(b), Doc. 10-5.) Defendant Barlow knows his statements are false, he knows that the underpinnings of his recruitment of ResortAG clients into Barlow Racketeering Enterprise are false, and he makes the statements in furtherance of the goal to extort money from ResortAG.  And if he doesn't actually know, but has deluded himself into believing the statements are true, then he has still made them with a blatant and reckless disregard for the truth.

### 6.  Plaintiff Attorney Klein is Likely to Succeed on His Defamation Claims

Plaintiff Attorney Klein represented the legal interests of ResortAG only, and only on general business matters. He has no claimed expertise in timeshare resolution and does not perform any legal timeshare resolution services for ResortAG or any other clients. Attorney Klein has never represented any clients of ResortAG or performed legal services on their behalf. (Doc. 10-12 Klein Decl., ¶¶ 3-4.)

Any and all false statements of criminality made by Barlow or the Barlow 10 about Attorney Klein are unprivileged and were done maliciously for the purposes of harming his and ResortAG's reputations, and in furtherance of their extortion scheme.[17] Attorney Klein and his law firm are highly likely to win on the merits of their claims.

## IX.   PLAINTIFFS FACE CONTINUING IRREPARABLE HARM

A plaintiff seeking injunctive relief from the court must present evidence that irreparable harm is likely in the absence of an injunction. (*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (holding plaintiff seeking preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction") (emphasis in original); (*Herb Reed*

---

[17] This includes, without limitation, baseless statements made about Attorney in criminal and bar complaints filed by members of the Barlow 10. (Doc 10-1; J. Krieck ¶ 14(e), Docs 10-6 and 10-7; Doc 10-12 Klein Decl. ¶ 5, Doc 10-14)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

*Enterprises, LLC v. Florida Entm't Mgmt., Inc.* (9th Cir. 2013) 736 F.3d 1251, 1242, ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm.").) (emphasis added.) Thus, a plaintiff need not establish that actual irreparable harm has already occurred in order to obtain a preliminary injunction, just that irreparable harm is likely to occur in the absence of a preliminary injunction. (*Id.* at 1249, (citing *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 546 n. 12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987).) "[E]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." (*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* (9th Cir. 2001) 240 F.3d 832, 841.) (citation omitted.)

Barlow Defendants are continuing to solicit the clients of ResortAG in order to intentionally disparage Resort AG in their efforts to recruit them as customers of CDRS. While ResortAG only has actual evidence of one contact in very recent days, Ms. Kizer, it is unlikely she is a one-off randomly chosen by Barlow Defendants, who have likely made dozens of such attempts with other ResortAG clients. Each contact with a ResortAG client is intentionally designed to plant a seed of doubt in the client's mind that they have been scammed, thereby intentionally harming the good reputation of ResortAG and Plaintiff Klein. This is the stated intent of Defendant Barlow, where he claims he will continue to disparage Resort AG wherever and whenever he can until they agree to either pay the extortion demand or go out of business.

ResortAG counts on its good reputation with its customers as a source of future revenue and referrals and has spent a substantial amount of time, money and business effort to capture and retain its customers. Every single day that Barlow Defendants are able to continue to disseminate knowingly false claims of fraud to ResortAG clients to the public about Plaintiffs results in further irreparable brand image damage, irreparable harm to ResortA G's ability to market, and recruit new customers, and irreparable harm to the well-earned reputation of Attorney Klein.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Further, given that Defendant Barlow has intentionally used ResortAG's trade secrets to identify the persons to whom he sends the defamatory emails, phone calls, and letters, Plaintiffs have suffered irreparable harm. (*Extreme Reach, Inc. v. Spotgenie Partners, LLC* (C.D.Cal. Nov. 22, 2013, No. CV 13-07563-DMG (JCGx)) 2013 U.S.Dist.LEXIS 201300, at *17. (Use of a former employer's customer list may be enjoined because they no longer have any rights to the list.).) Unless enjoined, there is nothing stopping Barlow Defendants from simply continuing the illegal actions. Under these circumstances, there can be little question that Plaintiffs have suffered and are likely to continue to suffer irreparable harm in the absence of a TRO.

## X.  THE BALANCE OF EQUITIES TIPS IN FAVOR OF PLAINTIFFS

The equities in this case overwhelmingly warrant immediate injunctive relief. The proposed TRO would prohibit the Barlow Defendants from further use of the trade secrets of ResortAG, prevent them from further contacting the clients of Resort AG, and prevent them from further defamation of Plaintiffs. In other words, the requested injunction is narrowly tailored to simply prevent Barlow Defendants from any interaction with ResortAG's clients and attempting falsely and maliciously to poison their minds about ResortAG. Barlow Defendants will not be harmed in any way, other than having to build their own timeshare resolution business *legitimately*, through *honest*, *independent* effort, not by ripping off ResortAG's client list and Business Knowhow. Plaintiffs are unaware of any harm to Barlow Defendants by an injunction precluding them from making further defamatory statements about ResortAG and Klein to ResortAG's clients and to the public at large. As such, the balance of equities strongly favors Plaintiffs and entry of a TRO.

## XI.   ALTERNATIVELY, PLAINTIFFS REQUEST AN EARLIER PRELIMINARY  INJUNCTION HEARING

Should this Application for a TRO be denied, Plaintiffs respectfully request a hearing date on the pending preliminary motion as far in advance of the currently scheduled date of August 21, 2020 as possible.  Given the conclusive proof presented herein of the Barlow Defendants' continuing illegal solicitation of ResortAG's clients

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

and defamation of ResortAG, and the  near certainty this is occurring and will continue to occur on a scale far greater than just the contacts with Ms. Kizer, justice, including prevention of continuing irreparable harm to Plaintiffs, demands that this matter be heard and decided at the earliest possible time before August 21.

## XII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of the requested TRO and order Defendants to show cause why a preliminary injunction should not issue.

DATED: July 1, 2020                 THE ALTMAN LAW GROUP

BY:___*/s/ Bryan Altman*_____
BRYAN C. ALTMAN

DATED: July 1, 2020                 LAW OFFICES OF WILLIAM I. ROTHBARD

BY: _*/s/ William I. Rothbard*_____
WILLIAM I. ROTHBARD
Attorneys for Plaintiff Intermarketing Media, LLC d/b/a Resort Advisory Group, Law Offices of David Alan Klein, and David Alan Klein, Esq.

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**