**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
bryan@altmanlawgroup.net

**LAW OFFICES OF WILIAM I. ROTHBARD**
William I. Rothbard (SBN 72447)
2333 Canyonback Rd.
Los Angeles, CA 90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP; LAW OFFICES OF DAVID ALAN KLEIN, P.C.; and DAVID ALAN KLEIN, ESQUIRE,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>BRENT DAVID BARLOW, an individual et al.,<br><br>　　　　　Defendants. | CASE NO.: 8:20-cv-00889-JLS (DFMx)<br><br>PLAINTIFFS' REPLY TO DEFENDANT BRENT DAVID BARLOW'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION<br><br>Hearing Date: August 21, 2020<br>Time: 10:30 a.m.<br>Dept: 10A |

**PLAINTIFFS' OPPOSITION TO DEFENDANT BARLOW'S OPPOSITION TO PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendant Brent Barlow's opposition to Plaintiffs' Motion for Preliminary Injunction ("Motion"), made not only on his behalf but seemingly on behalf as well of the Barlow 10 Defendants even though he is not representing them[1], is little more than his usual rant about a nonsensical fraud theory directed at Plaintiff Resort Advisory Group ("ResortAG"). While it serves his purposes of distraction from addressing his actual violations of law, it utterly fails to address, much less dispute or even attempt to refute, the factual and legal bases undergirding the Motion.

Even if there were any logic to his diversionary fraud theory, Defendant Barlow lacks standing to assert it as a defense because he is neither a timeshare owner nor a ResortAG client. He has suffered no injury from the claimed "fraud" that would confer standing.

Back to reality, Defendant Barlow does not deny, much less even address, the evidentiary and legal grounds presented by Plaintiffs in their Motion. He does not deny his: (a) theft of ResortAG trade secrets, including confidential and proprietary customer information[2]; (b) misappropriation of that hard-earned and valuable information in tortiously soliciting ResortAG clients through means of deceit and defamation (without ever receiving a conflict waiver from ResortAG), falsely representing to the public that ResortAG faces "almost certain criminal indictment and prosecution" for fraud; (c) his direction and involvement in a racketeering conspiracy with the Barlow 10 to use the continued threat of, and actual baseless criminal complaints, to extort ResortAG of over $800,000; or (d) even evidence of his own exact words in making those illegal extortion demands to ResortAG

---

[1] *Sessions v. Morales-Santana* (2017) 137 S. Ct. 1678, 1689 ("Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties."). (alterations, internal quotation marks, and citations omitted)

[2] In his Motion to Dismiss filed on the same day as his opposition to the Motion, Barlow admits to theft and misappropriation of trade secrets and 18 U.S.C. 1030 violations while working for ResortAG, Doc. 72, p.6: 4-20: "By happenstance some two years ago … Barlow joined CDRS and began the process of introducing every Defendant to CDRS …"; Defendant Barlow was employed by RAG from Jan. 2017 - Aug 2018. (Doc. 10-1, pp. 2, 5)

representatives in person and in writing. Further, Defendant Barlow's illegal conduct and related speech was made in explicit furtherance of criminal conduct and is therefore not protected by any privilege, First Amendment or otherwise.

Plaintiffs have met the standard for a preliminary injunction. They are likely to prevail on the merits, the equities for shutting down Barlow's illegal client tampering and extortion schemes are overwhelmingly in their favor, and they have suffered significant and irreparable harm which can be further prevented only by entry of the requested preliminary injunction.

## I. ARGUMENT
### A. DEFENDANT BARLOW PROVIDES NO OPPOSITION TO ANY ASSERTED GROUNDS FOR THE MOTION AND THEREBY WAIVES OPPOSITION AND CONSENTS TO ITS' GRANTING

Defendant Barlow has had two opportunities to file a proper opposition to Plaintiffs' request for preliminary injunctive relief and has failed to do so on both occasions. Any assertive claim in a motion that is not addressed in an opposition is considered a waived argument. *Shakur v. Schriro* (9th Cir. 2008) 514 F.3d 878, 892) ("opposing party waives arguments by not raising them in an opposition.") Similarly, in the Central District a failure to oppose the merits of a preliminary injunction motion is deemed as consent to granting the motion. *Santa Barbara Patients' Collective Health Coop. v. City of Santa Barbara* (C.D. Cal. Nov. 24, 2010), No. CV 10-06534 DDP (RCx)) 2010 U.S.Dist.LEXIS 151033, at *11. ("Under the local rules, failure to oppose a motion is deemed consent to granting the motion. C.D. Cal. L.R. 7-9".)[3]

Defendant Barlow does not deny or offer any real defenses to the grounds for the Motion. (Doc. 10) The only conceivably cognizable defense asserted by Mr. Barlow is a bizarre argument that his entire retainer contract with ResortAG is

---

[3] Accord: *Safe Auto Ins. Co. v. Rising Intuition, Inc.* (S.D. Cal. Sept. 16, 2011, No. 11CV1797-LAB (WVG)) 2011 U.S.Dist.LEXIS 104914, at *1.); Likewise, any defense not raised in an opposition to a preliminary injunction is deemed waived for purposes of ruling on the preliminary injunction. *Chazan Med. Devices, Inc. v. Sulzer Intermedics, Inc.* (9th Cir. Oct. 29, 1999), No. 99-56142, No. 99-56514 1999 U.S. App. LEXIS 28436, at *1.

invalid[4], but then he utterly fails to demonstrate how that is related in any way to Plaintiffs' request for a preliminary injunction. By not meaningfully opposing the grounds for the Motion, Defendant Barlow has consented to the granting of the proposed preliminary injunction.

To the extent the Court elects to consider Mr. Barlow's various claims in his opposition, Plaintiffs address them here prior to directly addressing the merits of their request for a preliminary injunction.

**CLAIM 1: Unclean Hands**

"A plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation." *Pom Wonderful LLC v. Welch Foods, Inc*. (C.D. Cal. 2010) 737 F.Supp.2d 1105, 1107. The unclean hands defense can be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. *Id*. In the context of a preliminary injunction, the unclean hands doctrine requires that a [plaintiff] have dirtied his hands in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y* (9th Cir. 2013) 725 F.3d 940, 942.

Barlow's Unclean Hands defense should be rejected by the Court as ResortAG is asserting rights it has always fully and legally owned, and simply seeks to operate its business (as does Attorney Klein) free from illegal harassment and malicious interference by Defendant Barlow. Barlow's unclean hands claim amounts to this: Because all timeshare contracts are inherently "void *ab initio*" by decree of Defendant Barlow, anyone accepting money to provide services to assist the client to exit the contract is fraudulent. ResortAG's hands are further dirtied, Barlow claims, because it did not bow down to his extortive money demands based

---

[4] It should be noted that Mr. Barlow does not allege the compensation of $300,000 he received and accepted as wages from ResortAG under the terms of his retainer contract is invalid or fraudulent, nor has he offered to return the money at any point due to a "void" retainer contract which he now alleges. (Doc. 10-1, p. 3)

3
**PLAINTIFF'S REPLY TO DEFENDANT BARLOW'S OPPOSITION TO A REQUEST FOR PRELIMINARY INJUNCTION**

upon the fictional "sovereign citizen" legal authority of his "Demand, Notice, and Warning of Commercial Grace" notice. (See Urner Decl. filed concurrently.)

This unclean hands defense is absurd on its face. Defendant Barlow has invented a legal fiction as a cause of "harm" to third parties, concocted an extortive legal demand for treble damages for the purported harm, and then used these tactics as the basis for fraudulent liens and baseless civil and criminal charges against ResortAG as part of an overarching scheme to extort more than $800,000 from ResortAG. By simply refusing to play along with Barlow's schemes, ResortAG, in Barlow's fantasy world, has unclean hands. This claim is easy to reject as nonsense.

### CLAIM 2: Barlow's Speech Is Protected

To the extent Defendant Barlow may be deemed to be arguing that his defamatory speech is protected, this notion fails as well. Criminal speech is not protected speech. The government may criminalize speech that facilitates crime. See, e.g., *United States v. Stevens* (2010) 559 U.S. 460, 468 (explaining that "speech integral to criminal conduct" is one of the traditional First Amendment exceptions); see also *United States v. Osinger* (2014) 753 F.3d 939, 947; *Gibony v. Empire Storage & Ice Co.* (1949) 336 U.S. 490, 498 (speech "used as an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment).) Additionally, the speech of those who <u>actively conspire with and facilitate</u> the commission of crimes by others has no protection. *Brandenburg v. Ohio* (1969) 395 U.S. 444. (Emphasis added.) The Ninth Circuit has likewise held that speech in furtherance of a plan to commit blackmail is not constitutionally protected. *Planned Parenthood of Columbia / Willamette, Inc. v. Am. Coal. of Life Activists* (9th Cir. 2001) 244 F.3d 1007, 1015 n.8, aff'd in part, rev'd in part on r'hg en banc, (9th Cir. 2002) 290 F.3d 1058.

Each of Defendant Barlow's defamatory posts and letters to ResortAG clients, the false criminal complaints he drafted and directed the Barlow 10 to file, and all of his other threatening "speech," was solely done as part of a conspiracy to extort

ResortAG, a crime substantially similar to blackmail. It is therefore not protected by the First Amendment or any other communication privilege.

### CLAIM 3: Misprision of Felony

Defendant Barlow's attempts to justify his actions, by claiming he is "remedying" a felony, rests on a misinterpretation and misapplication of 18 U.S.C. § 4, a federal criminal statute. There is no private right of action to enforce a criminal statute unless the intent to create a private right of action is expressed in the statute or clearly implied. *Thompson v. Thompson* (1988) 484 U.S. 174, 179. As there is no private right of action under this criminal statute, it cannot serve as the basis for a defense by Barlow to the Motion[5]. *See Apollo v. Peake* (Fed. Cir. 2009) 306 F. App'x 584, 586-87 ("We are aware of no authority for the proposition that an alleged violation of the federal misprision of felony statute gives rise to a private right of action.").

Further, the law of misprision of felony applies to a defendant who actively conceals the crime witnessed, and does not impose any "duty" to sniff out and report crime, especially crime that exists only in a defendant's imagination. *United States v. Ciambrone* (9th Cir. 1984) 750 F.2d 1416, 1417. It thus does not even have application here. Defendant Barlow, as a licensed attorney, should be expected by this Court to be savvy enough to simply look up the underlying legal standard before attempting to use an arcane defense where he lacks standing to do so and it is not germane to the Motion.

### CLAIM 4: There is No Valid Contract Between Developer and Barlow 10

To invoke the jurisdiction of the federal courts, a plaintiff must establish "the irreducible constitutional minimum of standing," consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury. *Lopez v. Candaele* (9th Cir. 2010) 630 F.3d 775, 785. A plaintiff also must satisfy prudential standing principles. Prudential standing

---

[5] See also *Reed v. East End Props., Inc.*, No. ED CV 17-955-DMG (KKx), 2018 U.S. Dist. LEXIS 228558, at *14 (C.D. Cal. Mar. 15, 2018) (concluding that plaintiffs lacked standing to bring claim for misprision of felony)

requires that "a plaintiff . . . assert its own legal rights and . . . not assert the legal rights of others." *Veal v. Am. Home Mortg. Servicing, Inc.* (In re Veal) (9th Cir. BAP 2011) 450 B.R. 897, 907. Defendant Barlow's contract claims meet none of the above requirements.

Defendant Barlow is improperly and without standing attempting to assert the legal rights of third parties in effectively asking this Court to enter a one-sided ruling against Diamond Resorts, Wyndham, and other timeshare operators that their timeshare contracts are void without any notice, without any discovery, and without citing any valid legal authority that indicates this Court is able to do so. Given that the timeshare industry in the United States alone has over 9 million individual owners and the global industry is valued at well over $30 billion dollars[6], it is reasonable for this Court to expect that the major players in the timeshare industry (some of whom are publicly traded) all fully believe their contracts are valid and binding and have able counsel to vigorously defend and enforce them. If Defendant Barlow has actual evidence to the contrary, his fight is with Diamond or Wyndham directly, in a separate lawsuit.[7]

Once again, Defendant Barlow has raised another claim that is in no way related to the grounds for the Motion, and thus should be ignored.

### CLAIM 5: ResortAG Does Not Have Valid Contracts with its Clients

Defendant Barlow is again asserting the legal rights of others, something he has no standing to pursue. He asserts that the ResortAG client contract is fraudulent because the underlying timeshare contract requires no legal intervention whatsoever because of his novel "void" theory, despite failing to explain ***how*** no intervention is required (because he cannot) and providing exactly zero evidence of the legal merits or success of his theory. The ResortAG client contract is not fraudulent and further to the point, has nothing to do with the grounds for its Motion.

### CLAIM 6: Barlow's Retainer Agreement is Invalid.

---

[6] As of 2018, Source: Google.com
[7] Defendant Barlow does not cite even one individual case where the "void" theory has been successful in either of his two oppositions.

This is the first "claim" that Defendant Barlow actually has standing to assert, yet he utterly fails to show how it is related in any way to the injunctive claims of Plaintiffs. His argument is that he was misled and tricked by Resort AG into signing the retainer agreement to perform "fraudulent" legal tasks for ResortAG clients because his new friend "Dan" (Doc 72, p. 6) informed him that all timeshare contracts are "void *ab initio*." Defendant Barlow has no explanation for how, as a California licensed attorney who personally reviewed the actual timeshare contracts from Diamond and Wyndham, amongst others, he was not able to determine the contracts were "void" nor did he even have any suspicions of such that he brought to ResortAG's attention while under contract.

Even assuming, *arguendo*, timeshare contract fraud of the type claimed by Barlow may be provable in certain cases, it has no bearing on the validity of his retainer agreement with ResortAG. Virtually all of Barlow's illegal behavior that Plaintiffs' Motion covers occurred **after** his termination, when the retainer agreement, except for its surviving confidentiality, non-compete and non-circumvention provisions, was no longer in effect. Defendant Barlow has not denied he performed legal duties for ResortAG clients in exchange for being paid more than $300,000 pursuant to the retainer agreement he now claims is fraudulent. Defendant Barlow has undertaken his illegal actions of his own volition, in pursuit and furtherance of his racketeering activity to extort, in violation of his duties of confidentiality and non-competition under his valid and enforceable contract with ResortAG, and without any conflict waiver from ResortAG to represent its clients referred to him adversely against ResortAG. (Second Declaration of Jason Krieck, pp. 1-2.)

### CLAIM 7: "Assessment Fees" Indicate Timeshare Non-Ownership

Defendant Barlow contends at length that assessment fees render timeshare ownership invalid. He once again provides no case law support for this claim and

7

further fails to explain how he as an attorney did not catch this "obvious" illegality when he worked for ResortAG for more than a year. His theory collides with well-established precedent that a failure to pay HOA fees (very similar to annual fees in timeshare) can and does result in the seizure and foreclosure of a property. An obligation to pay assessments or HOA fees does not invalidate the underlying real estate contract, provided they are disclosed, nor is there any legal authority that imposition of such fees voids "ownership" of the property. This is another made up legal fiction by Defendant Barlow.

Again, Defendant Barlow completely fails to show how assessments (whether paid or not) between third parties is related in any way to the Motion.

**CLAIM 8: Barlow 10 Defendants' Demand for Sums Mistakenly Given**

Defendant Barlow has developed yet another legal theory on his own, this time labeled *Demand, Notice, and Warning of Commercial Grace*, for which he also lacks standing.[8] He apparently believes this gives him actual legal authority to take many of the illegal actions he has repeatedly engaged in as an apparent sovereign citizen, yet he provides zero legal support for this proposition because there is none. This is another made-up legal fiction designed to coerce and manipulate his Barlow 10 followers into a false belief that their actions, including extortion, are somehow legal.

This fanciful claim, like all the others, is completely irrelevant to the Motion.

**B. PLAINTFFS MEET THE STANDARD FOR PRELIMINARY INJUNCTION**

To obtain a preliminary injunction, a moving party must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or (2) that existence of serious questions governing the merits and that the balance of hardships tips in its favor." *A&M Records, Inc. v.*

---

[8] This fictitious legal theory is found nowhere in any case on Lexis but can be found on Google.com on sites such as https://supremecourtcase.wordpress.com/ and others that appear to be forms of "Sovereign Citizen" type websites. See Urner Decl..

*Napster, Inc.* (9th Cir. 2001) 239 F.3d 1004, 1013. "In evaluating these factors[9], courts in the Ninth Circuit employ a sliding scale approach, according to which the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *hiQ Labs, Inc. v. LinkedIn Corp.* (N.D.Cal. 2017) 273 F. Supp. 3d 1099, 1103. ("Specifically, the Ninth Circuit has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised' and the balance of hardships tips sharply in plaintiff's favor."); see also *Alliance for the Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127,1135. ("Thus, upon a showing that the balance of hardships tips sharply in its favor, a party seeking a preliminary injunction need only show that there are serious questions going to the merits in order to be entitled to relief.")

When a court applies the "serious questions" test, the plaintiff still must show the likelihood of irreparable harm and that the public interest favors an injunction. *Cottrell*, 632 F.3d at 1135. Evidence of injury to a business's reputation and customer goodwill can support a finding of irreparable harm.[10] Similarly, evidence of threatened loss of prospective customers or goodwill certainly supports a finding of irreparable harm. *hiQ Labs, Inc., supra, at* 1103.

A preliminary injunction is necessary to stop Defendant Barlow's: theft and use of ResortAG trade secrets; his unfair competition against Resort AG; his rampant defamatory attacks on ResortAG and Attorney Klein; his tortious interference with ResortAG's business; his hostile and illegal solicitation of ResortAG clients to turn

---

[9] *Winter v. Natural Res. Def. Council, Inc.* (2008) 555 U.S. 7, 20. ("A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.")

[10] See, e.g, *Herb Reed Enters.* (9th Cir. 2013) 736 F.3d 1239, 1250; *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.* (9th Cir. 2001) 240 F.3d 832, 841("The threat of being driven out of business [also] is sufficient to establish irreparable harm."). See also *Am. Passage Media Corp. v. Cass Commn's, Inc.* (9th Cir. 1985) 750 F.2d 1470, 1474 (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League* (9th Cir. 1980) 634 F.2d 1197, 1203.

them against ResortAG and direct them to file knowingly false and meritless civil and criminal cases in furtherance of his extortion plot; and his ability to continue these actions to "put Resort Advisory Group out of business."

### 1. **Plaintiff is Likely to Succeed on the Merits of All Claims**

Plaintiff ResortAG has provided proof of its valid retainer contract with Defendant Barlow during his tenure as "personal counsel" to ResortAG between January 2017 and August-September 2018. (Doc 10-3) In signing this contract, Defendant Barlow agreed that all information provided to him, including client information, was Confidential Information that should only be used in pursuit of his duties as counsel to ResortAG, and belonged exclusively to ResortAG (Doc 10-1, p. 3-4.) In addition to admitting trade theft and misappropriation ( Doc 72, page 6), Defendant Barlow has not denied he retained and used private client data of ResortAG after termination, has not denied he continues to disparage ResortAG to its clients as recently as late May, 2020 (See Declaration of Debra Joy Kizer Doc. 27-7) and Second Kizer Declaration filed herewith), and has no explanation as to why he continues to solicit ResortAG clients to join CDRS when there are millions of other timeshare owners that he can actively solicit on his own without violating the law and his contractual and fiduciary duties to ResortAG. The answer is simple: other consumers do not provide him an angle and opportunity to extort.

Defendant Barlow has admitted that he recruited ResortAG clients into CDRS in violation of his contractual obligations as an attorney for the company (Doc 72, p.6; Doc 10-5), and further has admitted to drafting the baseless extortive demand letter on behalf of all Barlow 10 members (Doc 10-7; see also Decl. of Christopher Urner, providing a sample "Sovereign Citizen Demand Letter" similar to Defendant Barlow's "Demand, Notice, and Warning of Commercial Grace"), and to directing and orchestrating the Barlow 10 to then use that demand letter as "legal proof" to file baseless civil and criminal claims against ResortAG. (Doc 10-13; Doc 72, p. 6-7) Resort AG has provided actual proof in Barlow's handwriting and other concrete damning evidence (including his own words from his shakedown meeting

with ResortAG executives on March 2, 2020) of his extortive demand on behalf of the Barlow 10 for more than $800,000 (Doc 10-1, p.12-15 and Ex. 8), as well as his demands and threats to put ResortAG out of business. (Doc 10-1, p. 13:27-28)

**2. Plaintiff Is Likely to Suffer Irreparable Harm Absent Relief**

Defendant Barlow has never ceased his vicious and harmful vendetta against ResortAG. Given his attempted "recruitment" of Ms. Kizer as recently as late May 2020, it is reasonable to conclude he has sent out many dozens, if not hundreds, of disparaging recruitment letters to ResortAG clients well beyond those identified. Indeed, he has admitted to such. (Doc 10-1, p. 8:2-4) In service of his scheme to ruin the company, he has falsely and outrageously represented to ResortAG clients that ResortAG faces "almost certain criminal indictment and prosecution." (Doc 10-1, p.10:23-11:5) As a result of this campaign of libel and vilification, the goodwill of ResortAG has been harmed and ResortAG's customer service department has to field phone calls and emails from upset clients, like Ms. Kizer, questioning what is going on after unwelcomed and disparaging recruitment attempts from Barlow. (Doc 10-5, 10-7, 10-8)

Defendant Barlow is using circular self-promotion in furtherance of his scheme. He recruits clients to CDRS via illegal access to the clients of ResortAG; convinces them of the fake "fraud" of both ResortAG and the timeshare developers; drafts the bogus "demand letter;" drafts a baseless criminal complaint/bar complaint and instructs them to file it; and then uses that filing in future recruitment efforts and defamatory publications as "evidence" of the "massive illegality" of ResortAG, without any disclosure that he is the sole conductor behind everything. Such harm to the reputation of ResortAG cannot currently be quantified, but as stated, is sufficient to meet the irreparable harm element for a preliminary injunction.[11]

---

[11] ResortAG also has suffered actual and mounting economic damages caused by Barlow in replacement attorney costs after Barlow's termination, in legal costs associated with defending the frivolous Barlow-directed civil lawsuit filed against ResortAG by Barlow 10 defendants John and Pamela Pressney, and in the legal costs of prosecuting this litigation to force Barlow to stop his illegal and harmful vendetta against ResortAG. To date, ResortAG has sustained losses in the hundreds of thousands of dollars due to Defendants illegal actions.

### 3. The Balance of Equities Tips Heavily in Plaintiff's Favor

Preliminarily enjoining Defendant Barlow from further harming Plaintiffs ResortAG and Attorney Klein in no way harms Defendant Barlow. He is free to independently find as many of clients as he likes and recruit them into CDRS or help them on his own, but he should not be permitted to continually target ResortAG clients through the misappropriation of its customer list, to defame and unfairly compete with Resort AG, or to orchestrate and coordinate extortion attempts against ResortAG using the cudgel of baseless civil and criminal complaints. ResortAG and Attorney Klein simply want to be left alone to carry on their businesses without continual harassment, defamation and extortion demands from Defendant Barlow.

### 4. Granting the Injunction is in The Public Interest

Defendant Barlow has, through his manipulative and devious methods, convinced many ResortAG clients to join his "cause" so that he can direct them to take concerted actions that he himself cannot take alone. There is no public interest in allowing an individual such as Defendant Barlow to steal trade secrets and use them to purposefully target and irreparably harm a company, including through use of the fear-inducing tactic of orchestrated threats of criminal law enforcement until it succumbs to extortion or goes out of business. Likewise, the public is served by prohibiting further recruitment of ResortAG clients into committing illegal and extortive acts on behalf of CDRS and/or Defendant Barlow, particularly given that Defendant Barlow is able to leverage susceptible lay individuals as an attorney to garner far more credibility than an average person might have and convince them they are doing the "righteous" thing. Defendant Barlow is a menace and enjoining his illegal behavior serves the public interest.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs ResortAG and Attorney Klein respectfully request the Court to enter in full the proposed order submitted with its earlier Application for Temporary Restraining Order. (Doc. 10-17)

DATED: August 7, 2020			THE ALTMAN LAW GROUP


					BY: __/s/ Bryan Altman_____
					BRYAN C. ALTMAN


DATED: August 7, 2020			LAW OFFICES OF WILLIAM I. ROTHBARD


					BY: _/s/ William I. Rothbard_____
					WILLIAM I. ROTHBARD

Attorneys for Plaintiff Intermarketing Media, LLC d/b/a Resort Advisory Group, Law Offices of David Alan Klein, and David Alan Klein, Esq.

**PLAINTIFF'S REPLY TO DEFENDANT BARLOW'S OPPOSITION TO A REQUEST FOR PRELIMINARY INJUNCTION**