**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
Christopher Urner (SBN 311532)
Diba Alemi (SBN 320986)
10250 Constellation Blvd. Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.net

**LAW OFFICES OF WILLIAM I. ROTHBARD**
William I. Rothbard (CA Bar No. 72447)
2333 Canyonback Rd.
Los Angeles, CA  90049
Telephone: (310) 453-8713
Email: Bill@Rothbardlaw.com

Attorneys for Plaintiffs
Intermarketing Media, LLC d/b/a
Resort Advisory Group, Law Offices of David Alan Klein,
and David Alan Klein, Esquire

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERMARKETING MEDIA, LLC, a Wyoming limited liability company dba RESORT ADVISORY GROUP; LAW OFFICES OF DAVID ALAN KLEIN, P.C.; and DAVID ALAN KLEIN, ESQUIRE,<br><br>               Plaintiffs,<br><br>            vs.<br><br>BRENT DAVID BARLOW, an individual et al.,<br><br>               Defendants. | CASE NO.: 8:20-cv-00889-JLS (DFMx)<br><br>**JOINT RULE 26(f) REPORT**<br><br>Time: 10:30 a.m.<br>Date: September 18, 2020<br>Department: 10A<br>Judge: Hon. Josephine L. Staton |

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(f), parties to this action respectfully submit this jointly filed Rule 26(f) report. The parties met and conferred by telephone to coordinate the efforts to complete this report on August 26, 2020, and in subsequent email. The report was drafted by Plaintiffs' counsel and distributed to Defendants' counsel for addition of their portions of the report.  Defendants Brent David Barlow ("Barlow"), *pro se*, and counsel for Defendants John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hannah, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert, Castro, Eva Castro, Paul Martinez, Renee Martinez, Glenn Perley and Connie Perley have contributed to this report. Defendants Barlow & Associates, Cooperative Dispute Resolution Society ("CDRS"), Case in Chief, LLC, ATT Fund, and Phoenix Investments Alliance, LLC ("Phoenix"), are unrepresented, did not participate in the meet and confer, and did not contribute to the report.

## II. STATEMENT OF THE CASE

Plaintiffs' Position:

Plaintiffs are alleging a total of twenty-five (25) claims against Defendants. Plaintiffs will summarize the Statement of the Case in groups of related claims rather than one at a time pursuant to the space limitations of two (2) pages provided in the Court's Order Setting Scheduling Conference.

**Theft and Misappropriation of ResortAG Trade Secrets to Unfairly Compete**

Defendant Barlow[1], as the former timeshare resolution legal counsel of Plaintiff Intermarketing Media, LLC dba Resort Advisory Group ("ResortAG"),

---

[1] Defendants CDRS, Phoenix Investments Alliance, LLC, Case in Chief LLC, and ATT Fund are believed to be owned and controlled by Defendants Barlow and Barlow & Associates (collectively hereafter, "Barlow" or "Barlow Defendants").

with regulated computer access to its trade secrets, including its valuable and confidential proprietary client database, intentionally engaged in a course of conduct to steal and use, in violation of federal and California law and his contractual and fiduciary duties as counsel to ResortAG, ResortAG's client list and Business Knowhow as part of his scheme to illegally and unfairly compete in the timeshare resolution business with ResortAG. During his tenure and continuing after his firing by ResortAG, Defendant Barlow actively solicited the clients and former clients of ResortAG for purposes of competition with ResortAG, including recruiting them into CDRS.

**Formation of the Barlow Racketeering Enterprise**

Defendant Barlow set into action an intentional plan to use the stolen customer database from ResortAG as a source of "leads" to repeatedly send out targeted communications to recruit ResortAG's clients. His goal was two-fold, to elicit confidence in himself and CDRS by defamation and pseudo-legal arguments designed to intentionally harm the reputation of ResortAG, and to mislead and entice others to assist him to form an illegal "Enterprise" with these clients ("Barlow 10 Defendants"[2]) for the purpose of extortion.

**Circular Logic of Defendants "Void *Ab Initio*" Theory**

Defendant Barlow's "void ab initio" theory was adopted and utilized by each Barlow 10 Defendant in furtherance of the same illegal scheme to harass and extort Resort AG. The theory relies on circular logic and leaps of faith. In its simplest terms, Defendants believe all timeshare contracts are inherently void and unenforceable due to a lack of consideration. Rather than rely on case law or

---

[2] The Barlow 10 are Defendants and John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hanna, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert Castro, Eva Castro, Paul Martinez, Renee Martinez, Glenn Perley and Connie Perley. Robert and Mary Zimmermann, formerly named as part of this group of defendants, have been dismissed. A couple is counted as a single client.

statute for support – for which there is none - Defendants are instead relying on "Dan," a moniker for a supposed member of the shadowy CDRS (for which no public record of its existence can be found) that may or may not be an alias for the person, even assuming he exists. Further, the fantastical theory goes, because ResortAG did not demand Defendant Barlow solely utilize the unknown, untested and illogical "void *ab initio*" theory, Resort AG has committed fraud for charging clients for its timeshare exit services, regardless of its use of actual ***real*** legal theories and strategies in achieving success for its clients. Defendants are applying the "void *ab initio*" theory *ex post facto* to claim ResortAG has retroactively committed fraud[3], which is baseless and meritless.

**Goal to Extort Resort AG**

Once the "void" theory was disseminated and adopted, each of the Barlow 10 Defendants then sent out substantially identical "demand letters" claiming they are owed treble damages of the fees paid to ResortAG due to the fabricated "void ab initio" based fraud claims. These efforts were coordinated together along with other coordinated planned actions designed to ultimately extort payment from Resort AG.

Each of the Barlow 10 Defendants affirmatively agreed by words and actions to join the Enterprise in furtherance of joint illicit goals to extort pursuant to the guidance and direction of Mr. Barlow, Barlow & Associates, CDRS and Phoenix to extort by: filing baseless criminal charges against ResortAG and its executives, filing false allegations with the state bars of New Jersey and Pennsylvania against Plaintiff David Alan Klein, Esq., publishing the results of

---

[3] Defendant Barlow apparently does not believe his $300,000 paid to him by ResortAG to provide claimed "illegal services" is fraudulent and Plaintiff has no facts to indicate that Defendant Barlow paid each of the Barlow 10 their share of his salary for committing fraud against them by not using the void *ab initio* method.

- 4 -
JOINT RULE 26(f) REPORT

their "campaign" on the internet to intentionally disparage ResortAG, and by filing fake litigation liens on the property of ResortAG executives[4], amongst other illicit tasks. All Defendants then attempted to extort more than $800,000 from ResortAG in return for stopping the illicit activity targeting ResortAG, and further threatened to continue to ramp up their illegal actions until ResortAG pays the demanded sum or is forced out of business.

Defendant Barlow's Position:

Brent Barlow "Barlow" was engaged by plaintiffs as "personal counsel" to review and evaluate certain of plaintiffs' customers' complaints respecting contract disputes with various timeshare developers ("RAG Customers"). Barlow performed all work required under this engagement for which plaintiffs paid Barlow $700 for each file reviewed.

After such review was completed and with plaintiffs' knowledge, a number of RAG Customers engaged Barlow under separate written retainer agreements in which Barlow agreed to assist with and "…to seek a withdrawal from and/or cancellation…" of each such client's timeshare contract ("Barlow's Clients"). Barlow diligently performed all legal services for which Barlow was engaged including paid-for services (i.e., the file review for plaintiffs) and contingency-based services (i.e., assisting Barlow's Clients with their timeshare disputes).

Initially, Barlow believed the timeshare contract to be a generally valid and enforceable agreement between the timeshare customer and a timeshare developer. Nonetheless, the tactics employed industry-wide raised concerns about the legality of these practices and, after reviewing hundreds of timeshare

---

[4] As an indication of the objective unreasonableness of Defendants' actions and evidence of intention to extort, the total money demanded in fraudulent litigation liens (as currently discovered by Plaintiffs) is $ 1,479,590,000.

customer complaints, Barlow was confident there was a flaw timeshare transaction that Barlow had yet identified.

Later, Barlow came to be introduced to individuals with extensive knowledge of the commercial transaction who were loosely bound together in a private association known as Cooperative Dispute Resolution Society ("CDRS"). These individuals demonstrated great success assisting their members in addressing diverse grievances utilizing long-standing legal traditions and principles. Barlow enlisted several members of CDRS to help analyze the timeshare contract.

With the assistance of CDRS members, it became clear to Barlow that, at its inception, the contemporary timeshare contract had at least two critical flaws: there is no evidence of the loan supposedly extended to the purchaser whereby a timeshare is purportedly acquired and that the timeshare contract lacks consideration. The reality of these facts was enforced by Barlow's personal knowledge of hundreds of instances when a timeshare customer defaults on a "timeshare loan" – evidently amounting to millions of dollars – and no timeshare developer brings suit to recover the defaulted amounts.

Given it is beyond Barlow's expertise how to establish these facts, that it exceeds the scope of Barlow's representation of Barlow's Clients, and that it is likely an important issue about which Barlow's Clients should be aware, Barlow issues two communique to Barlow's Clients informing them of the facts as Barlow has now come to understand them deeming this to be Barlow's ethical responsibility to do so. Barlow informs Barlow's Clients that, while Barlow was unable to secure the desired outcome sought when Barlow's Clients engaged Barlow, CDRS may be able to further assist them in their dispute with the timeshare company. Several of Barlow's Clients request an introduction to CDRS—among these are the other individually named defendants in this action.

Barlow has only ever had contact with and is only aware of those customers of plaintiffs' with whom Barlow enjoyed an attorney-client relationship (i.e., Barlow's Clients).  Barlow is aware plaintiff, Resort Advisory Group, has experience marketing and selling timeshare "resolution" services as well as in customer relationship management but Barlow has no knowledge or insight into plaintiffs' business practices related to or ability to deliver any other services.  Barlow does not compete with plaintiffs as Barlow neither markets timeshare resolution services nor has Barlow ever represented a client with a timeshare dispute who was not specifically referred by plaintiffs.

RAG Customer Defendants' Statement of the Case:

The individual defendants who are RAG's former customers object to being called the "Barlow 10 Defendants."  None of the RAG Customer Defendants conspired with Barlow or CDRS to do anything but rather followed Barlow's and CDRS' advice to take steps to get their money back from RAG and those that profited from RAG's fraudulent and tortious actions that caused the individual customer defendants to pay hundreds of thousands of dollars in the aggregate to RAG for nothing more than a referral to an attorney.  RAG engaged in fraudulent misrepresentations, pressured sales tactics and, with the older customers, blatant financial elder abuse to cause them to pay money to RAG for little or no benefit.

The specific facts of each case are different, but generally RAG's agents used high-pressure sales tactics to convince the Customer Defendants to pay RAG to get them out of their expensive timeshare contracts.  RAG led them to think that RAG had a tested method of getting them out of their timeshare contracts without hurting their credit.  RAG told them to stop paying their timeshares and referred them to an attorney, Brent Barlow, to represent them.  RAG paid Barlow to write a letter or two, but ultimately the customers had to enter into other agreements to pay Barlow separately for additional services.

Thus, instead of providing any services to get defendants out of their timeshares, RAG essentially referred them to an attorney, Barlow, who was paid a very small portion of the money that they paid to RAG to send cease and desist letters and a demand letter.

Based on RAG's representations, these defendants had believed that the timeshares would be canceled and that their credit would not be affected because they were challenging the timeshare purchases based on the developer's fraudulent sales tactics, which they had discussed during their meetings.

Ultimately, however, many of the defendants discovered that RAG and its agents had mislead them, including as to the reasons upon which they would be extricated from the timeshares, the use of a timeshare foreclosure process, the effect of such foreclosure(s) on their credit, and their subsequent large tax liability by way of a 1099-C for the canceled debt.  Only then did defendants realize that RAG was not delivering a safe, legal or economically sound method to exit their timeshares, but rather the "service" was going to ruin their credit, which they could have done on their own by simply stopping the timeshare payments and waiting for their credit scores to plummet.

In total, the defendants paid RAG hundreds of thousands of dollars.  For example, the Pressneys paid RAG $71,112.33, which they borrowed on their credit cards. They have been paying credit card interest on this amount since mid-2018. Their credit scores were negatively impacted as a result of taking RAG's advice to stop paying the timeshares.  RAG told them that their scores wouldn't be negatively affected because RAG would use a service called Tradeblok to save their credit.  This was a useless service that only disputed the negative credit reports, and in turn the creditors verified the non-payment, which caused the derogatory (and truthful) credit item to remain on the Pressneys' credit reports.  The other remaining customer defendants have similar stories.

1   Barlow introduced the Pressneys to their current counsel in this case, who
2   filed a lawsuit in Orange County Superior Court for elder abuse, fraud and
3   rescission.  The Court denied RAG's motion to compel arbitration, finding that
4   the arbitration clause in RAG's contracts with the Pressneys was unenforceable.
5       Barlow introduced the RAG Customer Defendants to CDRS, which
6   helped them submit complaints to various agencies and the state bar.  The RAG
7   Customer Defendants did not conspire with Barlow, CDRS or each other, but
8   rather they desperately followed advice they hoped would result in getting their
9   money back from RAG.  All they ever want or wanted was to get their money
10  back from RAG, who committed blatant fraud.

11  ### III.    LEGAL ISSUES

12  Plaintiffs: In an effort to streamline review by the Court, Plaintiffs provide the
13  following non-exhaustive description of the key legal issues:

14      **LEGAL ISSUE 1**: Violations of 18 U.S.C. 1961-1968, "RICO":
15      a.  Whether the Barlow Defendants have committed two or more predicate
16          acts within the 10-year period preceding the Complaint.
17      b.  Whether the Barlow 10 Defendants have committed two or more
18          predicate acts within the 10-year period preceding the Complaint.
19      c.  Whether Defendants Barlow and Barlow & Associates illegally
20          accessed the protected computer systems of ResortAG, and whether
21          such actions were in furtherance of joint goals.
22      d.  Whether Defendants Barlow and Barlow & Associates stole and
23          misappropriated the trade secrets of ResortAG in violation of 18 U.S.C.
24          1836, and whether such actions were in furtherance of joint goals.
25      e.  Whether Defendants CDRS, Phoenix, Case in Chief LLC, and ATT
26          Fund misappropriated the trade secrets of ResortAG in violation of 18
27          U.S.C. 1836, and whether it was in furtherance of joint goals.
28

- 9 -

f.  Whether Barlow Defendants utilized the U.S. mail in violation of 18
    U.S.C. 1341 in furtherance of illegal activities and joint goals.

g.  Whether Barlow 10 Defendants utilized the U.S. mail in violation of 18
    U.S.C. 1341 in furtherance of illegal activities and joint goals.

h.  Whether Barlow Defendants' use of the internet, including email, to
    recruit and communicate with Barlow 10 Defendants is a predicate act,
    and whether the communication was in violation of 18 U.S.C. 1343 and
    in furtherance of joint goals.

i.  Whether Barlow Defendants' use of the internet, including email, to
    "report" the results of Enterprise members' orchestrated filings of
    criminal charges against ResortAG is a predicate act in violation of 18
    U.S.C. 1343 done in furtherance of joint goals.

j.  Whether the Barlow 10's use of the U.S. mail to file false criminal
    claims against ResortAG and its executives is a predicate act in
    furtherance of joint goals.

k.  Whether the Barlow 10's use of the internet, including email, to send
    and receive emails relating to their drafting and filing of the false
    criminal complaints against ResortAG and its executives is a predicate
    act in furtherance of joint goals.

l.  Whether the attempt by all Defendants to demand payment for more
    than $800,000 in exchange for stopping current and future planned
    illicit actions against ResortAG constitutes extortion under Federal and
    California law and whether it was done in furtherance of joint goals.

m. Whether the use of the U.S. mail to file fraudulent litigation liens
    against ResortAG executives' property is a predicate act in violation of
    18 U.S.C 1341 and whether it was done in furtherance of joint goals.

n.  Whether Defendant Barlow and Barlow & Associates created, assisted
    in creating, directed and controlled Defendant CDRS in furtherance of

joint goals to harm ResortAG and extortion, and to what extent they directed and controlled CDRS for this purpose.

o. Whether Defendant Barlow and Barlow & Associates created, assisted in creating, directed and controlled Defendant Phoenix in furtherance of joint goals to harm ResortAG and extortion, and to what extent they directed and controlled Phoenix for this purpose.

**LEGAL ISSUE 2**: Violations of 18 U.S.C. 1030, 18 U.S.C 1836(b), California Penal Code 502 (CFAA), Misappropriation and Misuse of Confidential Information.

a. Whether the computer systems of ResortAG meet the definition of a protected computer system under 18 U.S.C. 1030 and 18 U.S.C. 1836(b).

b. Whether Defendant Barlow accessed the protected computer systems of ResortAG in excess of his permissions.

c. Whether Defendant Barlow knowingly accessed the protected computer systems of ResortAG for purposes of misappropriation of confidential information and unfair competition.

d. Whether Defendant Barlow accessed the protected computer systems of ResortAG, and/or accessed information previously derived from the systems, after the date of his termination.

e. Whether Defendant Barlow used the computer systems, internet, and resources of Barlow & Associates to access the protected computer systems of ResortAG.

f. Whether the proprietary computer database and client list of ResortAG is considered a trade secret of ResortAG.

g. Whether Defendants Barlow and Barlow & Associates have disseminated the trade secrets of Plaintiff ResortAG to other Defendants and unknown third parties.

h. Whether Defendant Barlow accessed the trade secrets of ResortAG in furtherance of the goal to extort more than $800,000 from Plaintiffs.

**LEGAL ISSUE 3**: Tortious Interference with Contractual Relations, Interference with Prospective Economic Relations.

a. Whether Defendant Barlow and Barlow & Associates' contact and solicitation of clients and former clients of ResortAG constitutes an illegal form of competition.

b. Whether Defendant Barlow's repeated contact by email and by phone of ResortAG clients to recruit them as members of CDRS constitutes interference with the contractual relations of ResortAG.

c. Whether the actions by Barlow Defendants to solicit active clients of ResortAG by email or phone constitutes interference with the contractual relations of ResortAG.

d. Whether the actions by Barlow Defendants to solicit inactive ResortAG clients whom ResortAG has already successfully exited from their timeshare contracts constitutes interference with the prospective contractual relations of ResortAG.

e. Whether the actions by the Barlow 10 Defendants to intentionally file false criminal and civil claims against Plaintiffs constitute tortious interference with the contractual relations of ResortAG.

f. Whether publishing or promoting the "results" of the false criminal claims filed by the Barlow 10 on the internet constitutes tortious interference with contractual and economic relations.

**LEGAL ISSUE 4**: False Light, Defamation.

a. Whether the internet posting of various summaries of criminal charges filed against ResortAG which have been intentionally orchestrated by Defendants and known to be false by Defendants prior to posting constitutes false light or defamation.

b.  Whether the intentional solicitation by Barlow Defendants of the clients of ResortAG by email, involving accusations of fraudulent conduct by ResortAG, constitutes false light or defamation.

c.  Whether the intentional solicitation by Barlow Defendants of the clients of ResortAG by email, involving accusations of fraudulent conduct by ResortAG executives and Plaintiff Klein, constitutes false light or defamation.

d.  Whether a reasonable person would consider the statements made by Barlow Defendants accusing ResortAG, its executives, and Plaintiff Klein of fraud to have damaged the reputations of ResortAG and Klein.

e.  Whether Barlow Defendants had any reasonable belief that the written and oral statements made by Barlow Defendants accusing ResortAG, its executives, and Klein of fraud were truthful at the time they were made.

f.  Whether a reasonable person would consider the statements made by Barlow 10 Defendants accusing ResortAG, its executives and Klein of fraud to have damaged the reputation of ResortAG.

**LEGAL ISSUE 5**: Extortion – Wrongful Threat of Criminal and Civil Prosecution, Violation of 18 U.S.C. 875(d), 18 U.S.C 1951.

a.  Whether the threat by Defendant Barlow to bring or cause additional fraudulent criminal allegations against ResortAG constitutes a threatened use of force or threats against ResortAG.

b.  Whether the threat by Defendant Barlow to bring or cause additional fraudulent criminal allegations was done to compel ResortAG to hand over money or property.

c.  Whether the filings of criminal complaints by Barlow 10 Defendants were done in furtherance of the plan to compel ResortAG to hand over money or property.

   d. Whether the filings of false state bar complaints by Barlow 10 Defendants were done in furtherance of the plan to compel ResortAG and/or Klein to hand over money or property.

   e. Whether the Barlow 10 Defendants conspired with Barlow Defendants to make the extortion demand for payment of more than $800,000.

**LEGAL ISSUE 6**: Fraud and Conspiracy to Defraud.

   a. Whether Defendant Barlow owed a fiduciary duty to ResortAG for the handling of clients assigned to him as an attorney by ResortAG.

   b. Whether Defendant Barlow owed a duty of loyalty to ResortAG as an independently contracted attorney for ResortAG.

   c. Whether the fiduciary duty owed by Defendant Barlow to ResortAG continued beyond his termination

   d. Whether the statements made by Barlow Defendants to ResortAG clients in their effort to recruit them to be CDRS clients were materially misleading.

   e. Whether Barlow Defendants intentionally withheld material facts from communications with Barlow 10 Defendants or other clients of ResortAG.

   f. Whether the intentionally withheld material facts by Barlow Defendants were done in furtherance of the joint goals of the racketeering enterprise.

   g. Whether Barlow Defendants' scope and breadth of withholding material facts from communications extends to additional as yet unknown ResortAG clients.

   h. Whether Barlow Defendants' intentionally misleading communications have been utilized to target prospective clients of ResortAG in order to turn them away from becoming a ResortAG customer.

i.  Whether Barlow Defendants have used intentional misstatements and omissions of material facts to recruit additional unknown clients from ResortAG.

j.  Whether Defendants Barlow and Barlow & Associates' intentional misstatements and omissions of material facts to and from ResortAG clients occurred during the employment of Defendant Barlow.

k.  Whether Defendant Barlow made intentional misstatements and omissions of material facts when executing his retention agreement with ResortAG.

l.  Whether Defendant Barlow and Barlow & Associates made intentional misstatements and omissions of material facts when soliciting Resort AG clients for additional payments for services not required under their ResortAG contract and kept entirely by Defendant Barlow.

**LEGAL ISSUE 7**: Breach of Contract and Fiduciary Duty

a.  Whether Defendants Barlow and Barlow & Associates breached their employment contract during the tenure of employment by Resort Advisory Group by soliciting ResortAG clients to join or meet with CDRS.

b.  Whether Defendants Barlow and Barlow & Associates owed a fiduciary duty to ResortAG.

c.  Whether any fiduciary duty Defendants Barlow and Barlow & Associates had to Resort AG extended beyond the date of termination.

d.  Whether Defendant Barlow as an attorney for Resort AG owed a duty of loyalty to Resort AG.

e.  Whether Defendant Barlow as an attorney for ResortAG had an attorney/client relationship with ResortAG.

JOINT RULE 26(f) REPORT

f. Whether Defendant Barlow is estopped from making claims of fraud against ResortAG related to direct actions taken by him while employed by ResortAG.

g. Whether Defendant Barlow breached his fiduciary duty to Barlow 10 clients (and others) by not utilizing the "void ab initio" theory while employed by ResortAG.

h. Whether Defendant Barlow breached his fiduciary duty to ResortAG by not sharing and utilizing the "void ab initio" theory to assist ResortAG clients in exiting their timeshare while employed and paid by ResortAG.

i. Whether Defendant Barlow breached his contract with ResortAG by employing illegal or fraudulent methods to assist clients to exit their timeshare contracts.

j. Whether Defendant Barlow breached his fiduciary duty to clients assigned to him by ResortAG by employing illegal or fraudulent methods to assist clients to exit their timeshare contracts.

k. Whether Resort AG has breached their contract with any Barlow 10 Defendant.

l. Whether Defendant Barlow breached his contract with ResortAG by soliciting and/or accepting payments directly from clients that belongs in whole or part to ResortAG or were in excess of the contracted-for amount by the client.

m. Whether Defendant Barlow breached his fiduciary duty to ResortAG by soliciting and/or accepting payments directly from clients that belongs in whole or part to ResortAG or were in excess of the contracted-for amount by the client.

n. Whether Defendant Barlow breached his contract with ResortAG by soliciting and accepting payments from ResortAG clients after his termination from ResortAG.

o. Whether Defendant Barlow breached his fiduciary duty to ResortAG by soliciting and accepting payments from ResortAG clients after his termination from ResortAG.

Defendant Barlow's Position:

The issue before the Court is straight-forward, whether there is evidence of the material fact of a contract (i.e., consideration from the timeshare developer) between any developer and any defendant. The predicate to plaintiffs' successful prosecution of the claims contained in the complaint require plaintiffs establish the existence of a valid and enforceable timeshare contract between each of the defendant identified therein as the "Barlow 10" ("Defendants") and a timeshare developer. Otherwise there is nothing for plaintiffs to "terminate/transfer" as was their duty under the contract with each Defendant.

The Court has before it unrebutted material evidence that no timeshare contract between any timeshare developer and any Defendant is supported by consideration. Each Defendant has sworn out an affidavit to this effect, which affidavits stand without rebuttal or response. Whether Defendants have acted in a commercially reasonable manner in their dealings with plaintiffs and whether they have appropriately exercised their guaranteed rights of free speech by lodging, after notice and grace had been given, affidavits sworn true, correct, and complete of the facts as they had come to know them is Defendants' argument to make.

This Court is being asked whether the alleged conspiracy can root absent evidence of a timeshare contract plaintiffs can, as claimed, terminate/transfer on behalf of Defendants.

JOINT RULE 26(f) REPORT

RAG Customer Defendants' Position:

The RAG Customer defendants deny that they ever conspired or participated in any extortion against RAG.  Plaintiffs' claims are subject to and barred by California's anti-SLAPP statute and the Noerr-Perrington doctrine, and thus must be dismissed as a matter of law.  If the entire first amended complaint is not dismissed as a matter of law, the RAG Customer Defendants will likely file cross-complaints for damages suffered from RAG's financial elder abuse, fraud, failure of consideration and other related claims.

## IV.     DAMAGES

Plaintiffs' Position:

Plaintiffs are seeking hard actual out-of-pocket damages caused by Defendants of at least $400,000, damages for lost business and reputational harm to be proven at trial, including, in the case of Plaintiff David Klein, Esq., economic and reputational harm arising from an adverse impact on his ability to practice law, and recovery of legal fees and costs which are already in the hundreds of thousands of dollars and climbing. Plaintiffs are also seeking punitive damages jointly and severally against all Defendants. Plaintiffs are also requesting preliminary injunctive relief against all Defendants, to be determined at the scheduled preliminary injunction hearing, and permanent injunctive relief.

Defendant Barlow's Position:

Barlow concurs and supports in whole the RAG Customer Defendants' position.

RAG Customer Defendants' Position:

The RAG Customer Defendants dispute Plaintiffs incurred damages. Plaintiffs' damages, if any, are speculative, at best.

## V.   INSURANCE

Plaintiffs:

It is currently unknown whether any of the entities asserted to be controlled by Defendant Barlow have any business liability insurance or executives/director's insurance in place. Plaintiffs are unaware of any Reservation of Rights letters that may have been issued and/or may be pending issuance by any insurance company for any Defendant in this matter.

<u>Defendant Barlow's Position</u>:

There is no insurance.

<u>RAG Customer Defendants' Position</u>:

There is no insurance.

## VI. MOTIONS

<u>Plaintiffs</u>:

Plaintiffs have filed two applications for temporary restraining order, both of which were denied (Docs 10, 27), and have a pending motion for preliminary injunction against all defendants scheduled for hearing on October 23, 2020. Plaintiffs filed and served a Notice of Dismissal of Defendants Mary Zimmerman and Robert Zimmermann on August 25, 2020. (Doc 85) Upon research and investigation, Plaintiffs determined that these defendants were inadvertently named in error. Plaintiffs anticipate shortly seeking leave to amend the Complaint to name at least two additional former clients of ResortAG who they have recently discovered to be part of the Barlow Racketeering Enterprise.

Plaintiffs also anticipate filing multiple motions *in limine*, to be further discussed with the Court after fact discovery has been completed and the topics are known to Plaintiff.

Plaintiffs reserve the right to file a *Daubert* motion, should it be deemed necessary.

JOINT RULE 26(f) REPORT

Defendant Barlow's Position:

Barlow has filed a motion to dismiss this action in whole.  If that is not entirely successful, they anticipate filing other dispositive motions, and motions in limine prior to trial.

RAG Customer Defendants' Position:

As noted above, the RAG Customer Defendants will attack the complaint at the pleadings stage via motion to dismiss/strike.  If that is not entirely successful, they anticipate filing other dispositive motions, and motions in limine prior to trial.

**VII. COMPLEXITY**

Plaintiffs' Position:

Plaintiffs do not believe this case qualifies as complex, but there is the possibility that the trial testimony of at least 16 to 24 individuals (including Defendants, percipient witnesses, and Plaintiffs' expert(s)) will be required. Currently, Defendant Barlow is self-represented, and the Barlow 10 Defendants are represented by John Vukmanovic, Esq. and Dana Delman, Esq. It is unknown whether the defendants Plaintiffs intend to seek to leave to add will be represented by Mr. Vukmanovic and Ms. Delman, should leave be granted and they are named in a second amended complaint.

It is currently unknown if Defendants CDRS and Phoenix will have counsel, as they have not been served with the Amended Complaint as Plaintiffs require discovery in order to locate an address and agent for service of process of for each of these entities, if such exist. Through normal diligence and efforts, Plaintiffs counsel have not been able to locate the names of any potential owners

1  Barlow's Position:

2      Barlow concurs and supports in whole the RAG Customer Defendants'

3  position.

4  RAG Customer Defendants' Position:

5      The RAG Customer Defendants agree that the case is not complex.

6  However, there are challenges relating to coordination of sixteen defendants,

7  due to their age and lack of technological savviness.

8  **VIII.       STATUS OF DISCOVERY**

9  Plaintiffs' Position:

10      Plaintiffs have not yet begun any formal discovery in this case. Plaintiffs

11  anticipate that some initial discovery from Mr. Barlow and Barlow & Associates

12  is needed to ascertain addresses and agents for service of process of Defendants

13  CDRS and Phoenix before they can be served with the Amended Complaint.

14      **Discovery Issues ESI**: Spoliation issues

15      Plaintiffs anticipate substantial e-discovery may be required to obtain and

16  review the email records of multiple email accounts utilized by Barlow

17  Defendants and by Barlow10 Defendants. It is also believed that certain email

18  accounts utilized by Barlow Defendants are anonymous encrypted email

19  accounts which will require different handling than traditional email accounts to

20  gather and review any evidence these accounts may contain.

21      **Plaintiffs Request Order to Prevent Spoliation of ESI**

22      Plaintiffs respectfully request this Court to issue an order requiring all

23  Defendants not to destroy, delete, or alter existing information, including any

24  contained in electronic form.  This includes, but is not limited to: existing email

25  accounts, including the deletion or altering of: archived emails of any provider,

26  sent-file storage of any email provider, inbox storage of emails of any provider,

27  and drafts folders of any email provider; text messages stored on cell phones;

28  backups and copies of Microsoft Word documents drafted by Defendants on any

device related in any way to ResortAG; information contained in social media accounts controlled by Defendants, including, without limitation, Facebook, Twitter, Yelp, and Instagram.

<u>Defendant Barlow's Position</u>:

Barlow concurs and supports in whole the RAG Customer Defendants' position.

<u>RAG Customer Defendants' Position</u>:

The RAG Customer Defendants do not oppose an order prohibiting spoliation of evidence.

## IX.  DISCOVERY PLAN

<u>Plaintiffs' Position</u>:

**Discovery Dates**:

Plaintiffs propose that fact discovery occur until July 1, 2021.

Plaintiffs propose an expert discovery cutoff of September 10, 2021.

Plaintiffs anticipate sending out comprehensive document and written discovery requests and deposition notices to all Defendants.  Plaintiffs also anticipate it may be necessary to conduct third party discovery directed at percipient witnesses with knowledge of facts and elements of the Barlow Racketeering Enterprise, including conduct of the Defendants in carrying out the Enterprise and attempts by Barlow and the Barlow 10 to recruit other ResortAG clients into the Enterprise.

<u>Defendant Barlow's Position</u>:

Barlow concurs and agrees in whole the RAG Customer Defendants' position.

<u>RAG Customer Defendants' Position</u>:

The RAG Customer Defendants agree with Plaintiffs' proposed discovery dates. If not dismissed, the RAG Customer Defendants also anticipate serving

comprehensive document and written discovery requests and deposition notices to all plaintiffs, as well as third party discovery directed at percipient witnesses with knowledge of facts of Plaintiffs' dealings and misconduct.

## X.   EXPERT DISCOVERY

Plaintiffs' Position:

     Plaintiffs anticipate utilizing at least one Timeshare Property, Contract, and Financing expert in the prosecution of the claims against all Defendants. Plaintiffs are currently unaware if a single expert can be found or whether more than one timeshare industry expert will be required. Plaintiffs also anticipate having a damages expert. Plaintiffs have not interviewed or selected any experts as of the date of this report.

Defendant Barlow's Position:

     Barlow concurs and agrees in whole the RAG Customer Defendants' position.

RAG Customer Defendants' Position:

     The RAG Customer Defendants anticipate utilizing expert(s) to counter Plaintiffs' expert(s).

## XI.   DISPOSITIVE MOTIONS

Plaintiffs' Position:

     Plaintiffs anticipate filing a motion for summary judgment. The issue is slightly complicated by the number of Defendants in this matter and the fact that not all legal claims target all Defendants. Plaintiffs are requesting the Court's guidance on whether Plaintiffs must bring one single motion for summary judgment against all Defendants at once, or whether they may be permitted to bring separate summary judgment motions, with one covering the claims against Mr. Barlow and related entities (Barlow & Associates, Case in Chief, ATT Fund, CDRS, and Phoenix) and one covering the legal claims against Barlow 10 Defendants.

Plaintiffs reserve the right to file a motion for judgment on the pleadings against one or all Defendants, if deemed necessary, but have no current plans to do so.

Defendant Barlow's Position:

Barlow concurs and agrees in whole the RAG Customer Defendants' position.

RAG Customer Defendants' Position:

The RAG Customer Defendants believe that their prospective motion to dismiss/strike will result in the order of dismissal of the entire action against each of them.  In the event it does not, the RAG Customer Defendants will likely file a motion for summary judgment or, alternatively, summary adjudication.

**XII. ALTERNATIVE DISPUTE RESOLUTION ("ADR") PROCEDURE SELECTION**

Plaintiffs' Position:

Plaintiffs are amenable to either a formal settlement conference overseen by the Court or a third-party named by the Court and are also amenable to mediation.

Defendant Barlow's Position:

Barlow concurs and supports in whole the RAG Customer Defendants' position.

RAG Customer Defendants' Position:

The RAG Customer Defendants include individuals, mostly elders, that have paid significant amounts of money to RAG induced by RAG's fraud. Unfortunately, in some instances this has impacted their ability to retire.  The RAG Customer Defendants therefore cannot afford private mediation and request a mediator from the court's panel.

## XIII.      SETTLEMENT EFFORTS

Plaintiffs' Position:

Plaintiffs and counsel for the Pressney Defendants engaged in brief and short-lived settlement discussions that did not yield a positive result. Plaintiffs have not engaged in settlement discussions with any other Defendants and do not anticipate any such discussions until at least disposition of the pending preliminary injunction motion and undertaking of discovery.

Defendant Barlow's Position:

Barlow requested from plaintiffs' counsel a statement regarding plaintiffs' settlement posture to which little was offered beyond plaintiffs receiving everything sought in this action.  No further substantive or constructive negotiations have been undertaken.

RAG Customer Defendants' Position:

The RAG Customer Defendants agree with Plaintiffs' Position.

## XIV.      PRELIMINARY TRIAL ESTIMATE

Plaintiffs' Position:

Due to the number of Defendants and causes of action, Plaintiffs are currently estimating 25 days will be required to complete the trial.

Defendant Barlow's Position:

Barlow agrees with plaintiffs' position.

RAG Customer Defendants' Position:

The RAG Customer Defendants agree with Plaintiffs' Position.

## XV. TRIAL COUNSEL

Plaintiffs' Position:

Plaintiffs lead trial counsel will be Bryan C. Altman (SBN 122976), assisted by William I. Rothbard (SBN 72447) and Christopher Urner (SBN 311532).

While Plaintiffs' counsel do not currently anticipate any conflicts with a trial date set by the Court, counsel wish to make the Court aware that Mr. Altman has several cases set for trial that are at or near the five-year California statutory deadline that were previously set for trial and have been further continued/delayed due to Covid-19. These matters could be suddenly set for trial by the respective court on a date that creates an immediate conflict with a trial date set in this case. Should this event occur, Plaintiffs' counsel intends to file an *ex parte* notice to inform the Court and Defendants of the conflict unless the Court directs otherwise.

Defendant Barlow's Position:

Barlow will be representing himself pro se. Barlow currently has no conflicts that interfere with the Court calendaring the matter at its convenience.

RAG Customer Defendants' Position:

The RAG Customer Defendants will be represented at trial by Dana Delman (SBN 167307) and John Vukmanovic (SBN 213442). Ms. Delman and Mr. Vukmanovic have cases set for trial that are at or near the five-year California statutory deadline that were previously set for trial and have been further continued/delayed due to Covid-19. In the event of a trial setting that conflicts with this matter, counsel intends to file a notice to inform the Court and Defendants of the conflict unless the Court directs otherwise.

## XVI.     INDEPENDED EXPERT OR MASTER

<u>Plaintiffs' Position</u>:

    Plaintiffs do not presently anticipate that an independent expert or master will be required to complete discovery.

<u>Defendant Barlow's Position</u>:

    Barlow agrees with plaintiffs' position.

<u>RAG Customer Defendants' Position</u>:

    The RAG Customer Defendants agree with Plaintiffs' Position.

## XVII.     OTHER ISSUES

<u>Plaintiffs' Position</u>:

    No other issues to address at this time.

<u>Defendant Barlow's Position</u>:

    No other issues to address at this time.

<u>RAG Customer Defendants Position</u>:

    No other issues to address at this time.

Respectfully submitted,

September 4, 2020

                /s/ Bryan C. Altman
                <u>/s/ William I. Rothbard</u>
                Bryan C. Altman
                William I. Rothbard
                Attorneys for Plaintiffs

September 4, 2020

                _____/ John Vukmanovic/_____
                John Vukmanovic
                Dana Delman

- 27 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Defendants John Pressney, Pamela Pressney, Herman Abel, Debora Abel, Morris Hannah, Virginia Hannah, Lee Harris Turk, Bernardo Bettinelli, Carol Bettinelli, Lari Castle, Gilbert, Castro, Eva Castro, Paul Martinez, Renee Martinez, Glenn Perley and Connie Perley

September 4, 2020

      /s/Brent D. Barlow
Brent Barlow
Attorney Pro-se

- 28 -
JOINT RULE 26(f) REPORT

# EXHIBIT A

Proposed Schedule of Pretrial and Trial Dates

Case Name: Intermarketing Media LLC v. Brent David Barlow et al.

Case No.: 8:20−cv−00889−JLS−DFM

| Matter | Deadline | Plaintiffs Request | Defendants Request |
|---|---|---|---|
| Last Day to File Motions to Add Parties and Amend Pleadings | Scheduling Conference Date plus 60 Days | Nov. 17, 2021 | |
| Fact Discovery Cut-Off | 18 weeks before the Final Pretrial Conference ("FPTC") | July 1, 2021 | |
| Last Day to Serve Initial Expert Reports | 16 weeks before the FPTC | July 16, 2021 | |
| Last Day to File Motions (except *Daubert* and all other Motions in Limine) | 16 weeks before the FPTC | July 16, 2021 | |
| Last Day to Serve Rebuttal Expert Reports | 12 weeks before the FPTC | Aug. 13, 2021 | |
| Last Day to Conduct Settlement Proceedings | 9 weeks before the FPTC | Sept. 3, 2021 | |
| Expert Discovery Cut-Off | 8 weeks before the FPTC | Sept. 10, 2021 | |
| Last Day to File *Daubert* Motions | 7 weeks before the FPTC | Sept. 17 2021 | |
| Last Day to File Motions in Limine (other than *Daubert* Motions) | 4 weeks before the FPTC | Oct. 8, 2021 | |
| Final Pre-Trial Conference **(Friday at 10:30 a.m.)** | | Friday, Nov. 5, 2021 | |

JOINT RULE 26(f) REPORT